UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MINNEAPOLIS FIREFIGHTERS' RELIEF ASSOCIATION, on behalf of itself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>BRISTOL-MYERS SQUIBB COMPANY, PETER R. DOLAN, and ANDREW R.J. BONFIELD,<br>    Defendants. | <u>**ELECTRONICALLY FILED**</u><br><br>CIVIL ACTION No. 07cv5867 (PAC) |
| JEAN LAI, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>BRISTOL-MYERS SQUIBB COMPANY, PETER R. DOLAN, and ANDREW R.J. BONFIELD,<br>    Defendants. | CIVIL ACTION No. 07cv6259 (PAC) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE MINNEAPOLIS FIREFIGHTERS' RELIEF ASSOCIATION FOR (1) CONSOLIDATION; (2) APPOINTMENT AS LEAD PLAINTIFF; AND (3) APPROVAL OF LEAD PLAINTIFF'S CHOICE OF CO-LEAD COUNSEL**

## I. INTRODUCTION

Presently pending in this District are two related securities fraud class actions (the "Related Actions") brought pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder. The pending cases are as follows:

|    | Case | Civil No. | Date Filed |
|----|------|-----------|------------|
| 1. | *Minneapolis Firefighters' Relief Association, v. Bristol-Myers Squibb Company, et al.* | 07-5867 (PAC) | 6/20/2007 |
| 2. | *Jean Lai v. Bristol-Myers Squibb Company, et al.* | 07- 6259 (PAC) | 7/6/2007 |

The Minneapolis Firefighters' Relief Association ("MFRA") suffered losses of approximately $7,367 as a result of the purchase of Bristol-Myers Squibb Company ("BMS") securities during the period between March 22, 2006 and August 8, 2006[1], and respectfully submits this Memorandum of Law in support of its motion to: (1) consolidate the Related Actions; (2) to be appointed Lead Plaintiff; and (3) approve its choice of Co-Lead Counsel.

MFRA is precisely the type of institutional investor that Congress sought to summon and empower when it enacted the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *See Ferrari v. Impath, Inc.*, 2004 WL 1637053, at *3 (S.D.N.Y. July 20, 2004) (stating that institutional investors are the type of lead plaintiff that Congress wanted to encourage to participate in the litigation of these actions and exercise control over the selection and actions of plaintiff's counsel); *see also In re Oxford Health Plans, Inc. Securities Litigation*, 182 F.R.D. 42, 46 (1998) (noting the PSLRA encourages institutional investors to take a role in securities class

---

[1] MFRA filed a plaintiff certification pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA")(15 U.S.C. § 78u-4(a)(2)(A)) with its Complaint filed on June 20, 2007. A chart of MFRA's estimated losses in BMS securities during the Class Period alleged in the Related Actions is attached as Exhibit A to the accompanying Declaration of Jeffrey P. Campisi, dated August 27, 2007 (hereinafter "Campisi Decl. Ex. ___").

actions). MFRA is accustomed to acting as a fiduciary and its experience in legal and financial matters will substantially benefit the Class.

MFRA believes that it has the largest financial interest of any movant. As set forth below, MFRA requests consolidation of the Related Actions, appointment as Lead Plaintiff and requests appointment of the law firms of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") and Lockridge Grindal Nauen P.L.L.P. ("Lockridge Grindal") as Co-Lead Counsel. Additionally, Kaplan Fox and Lockridge Grindal have extensive experience in securities and class action litigation. For these reasons and the reasons discussed below, MFRA should be appointed Lead Plaintiff.[2]

## II. PROCEDURAL BACKGROUND

On June 20, 2007, MFRA filed a securities class action on behalf of all persons who purchased BMS securities between March 22, 2006 and August 8, 2006 for violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder against BMS, Peter R. Dolan and Andrew R.J. Bonfield. The action was styled *Minneapolis Firefighters' Relief Association, v. Bristol-Myers Squibb Company, et al.*, 07-cv-5867.

On June 27, 2007, MFRA published a notice to purchasers of BMS securities with *Marketwire,* as required by the PSLRA (the "Notice"). Campisi Decl., Ex. B. The Notice advised purchasers of GSK securities of the existence of a lawsuit and the nature of defendants' statements, omissions and conduct which allegedly artificially inflated the price of BMS securities. The Notice further advised potential class members of their right to move the Court to be appointed Lead Plaintiff within 60 days of the publication of the Notice.

---

[2] Counsel for MFRA is aware of this Court's individual practice that, except in certain circumstances not applicable here, a pre-motion conference is required before making any motion. Counsel for MFRA respectfully requests a waiver of this requirement because at this time it is not possible to identify who the lead plaintiff movant(s) will be or identify who the other parties and their respective counsel will be.

MFRA now moves this Court to be appointed as the Lead Plaintiff in this action.

## III. SUMMARY OF THE PENDING ACTION

The Complaint alleges that on March 22, 2006, BMS announced that it, along with Sanofi-Aventis SA, had entered into a settlement agreement with Apotex, Inc. ("Apotex") to resolve a patent infringement lawsuit ("Apotex Settlement") related to its drug Plavix. The Complaint alleges that throughout the Class Period, BMS failed to disclose material facts regarding the Apotex Settlement including: (1) that BMS had relinquished material rights in connection with the settlement, including the right to treble damages; (2) that if the Apotex Settlement was not approved, Apotex could flood the market with its generic version of Plavix; and (3) that BMS had negotiated improper side agreements in connection with the Apotex Settlement.

On July 27, 2006, BMS revealed that the Antitrust Division of the United States Department of Justice ("DOJ") was conducting a criminal investigation into the Apotex Settlement. As a result of this disclosure, the price of BMS's securities declined $1.95 per share, or 7.5%, to close at $24.04 per share. On August 8, 2006, BMS disclosed additional material facts regarding the Apotex Settlement. As a result of this disclosure, it is alleged that BMS' securities declined $1.56 per share, or approximately 7%, to close at $21.21 per share. The Complaint also alleges that in May 2007 BMS issued a press release disclosing that the Company agreed to plead guilty to federal charges of making false statements to a government agency in connection with the Apotex Settlement.

As a result of defendants' manipulative actions, MFRA and other similarly situated persons or entities that purchased BMS securities suffered tremendous losses on their investments.

## IV. ARGUMENT

### A. This Court Should Consolidate the Related Actions for Efficiency Purposes

Rule 42(a) of the Federal Rules of Civil Procedure permits the consolidation of actions that pose common questions of law or fact. *See* Fed.R.Civ.P. 42(a); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990); *Albert Fadem Trust v. Citigroup, Inc.*, 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002). Judicial economy generally favors consolidation and requires the court to conduct a careful inquiry that balances the prejudice and possible confusion that consolidation might entail, against the waste of resources, the burden on the parties, and the risk of inconsistent judgments that separate proceedings would engender. *See Celotex*, 899 F.2d at 1285; *Albert Fadem Trust*, 239 F. Supp. 2d at 347. Under Rule 42(a), this Court has broad discretion to consolidate cases pending within its district. *See Celotex*, 899 F.2d at 1284-85. Consolidation is generally ordered so long as any confusion or prejudice does not outweigh efficiency concerns. *Id.*

It is also well-recognized that consolidating shareholder class action suits often benefits *both* the court and the parties by expediting pretrial proceedings, reducing case duplication and minimizing the expenditure of time and money by all persons concerned. *In re Olsten Corp Sec. Litig.*, 3 F. Supp. 2d 286, 294 (E.D.N.Y. 1998).

Consolidation is appropriate in this litigation. Plaintiffs in the Related Actions have alleged that defendants failed to disclose and misrepresented material facts which were known to defendants or recklessly disregarded by them. Both Complaints seek to hold similar defendants responsible for the consequences of their course of conduct and seek relief under claims arising under the Exchange Act. Plaintiffs in each of the cases share a mutual interest in having the Court resolve questions concerning whether defendants made material misstatements and/or

4

omitted material facts and whether the price of BMS securities became artificially inflated as a result.

Because each of the actions pending before this Court presents related factual and legal issues, consolidation is appropriate.

### B. MFRA Should Be Appointed Lead Plaintiff

#### 1. MFRA Believes It Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA sets forth the procedure for the selection of lead plaintiff in "each private action arising under [the securities laws] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." Section 21D(a)(3)(A)(i) provides that within twenty days after the date on which a class action is filed:

> the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –
>
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the Court to serve as lead plaintiff of the purported class.

Further, Section 21D(a)(3)(B) directs the Court to consider any motions by a plaintiff or purported class member to serve as Lead Plaintiff in response to any such notice within ninety days after the date of publication of the notice pursuant to Section 21(a), or as soon as practicable after the Court decides any pending motion to consolidate any actions asserting substantially the same claim or claims.

Under these sections of the Exchange Act, the court "shall" appoint the most adequate plaintiff, and is to presume that plaintiff is the person, or group of persons, that:

    (aa) has either filed the complaint or made a motion in response to a notice...;

    (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

    (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

Section 21D(a)(3)(B); *Albert Fadem Trust v. Citigroup, Inc.*, 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002).

 Thus, the statutory language explicitly provides that a member of the class, or a person or group of persons with "the largest financial interest" is entitled to presumptive appointment as lead plaintiff. Section 21D(a)(3)(B). MFRA has estimated losses in BMS securities of $7,367. *See* Campisi Decl. Ex. A. Therefore, it believes it has the largest financial interest of any lead plaintiff movant and is presumptively entitled to appointment as the Lead Plaintiff.

    2. **MFRA Is Qualified Under Rule 23**

 The PSLRA provides that, at the outset of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See* Section 21D(a)(3)(B)(iii)(I)(cc) of the Exchange Act; *Albert Fadem Trust*, 239 F. Supp. 2d at 347; *In re Olsten Corp. Sec. Litig*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998).

 With respect to the qualifications of the class representative, Rule 23(a) requires generally that the claims of the representative be typical of the claims of the class and that the representative will fairly and adequately protect the interests of the class. As detailed below, MFRA satisfies the typicality and adequacy requirements of Rule 23(a) and is qualified to be appointed as Lead Plaintiff.

      a.    **MFRA's Claims Are Typical of the Claims of the Class**

The typicality requirement of Rule 23(a) is satisfied when each class member's claim arises from the same course of conduct, even when minor distinctions exist. *Albert Fadem Trust*, 239 F. Supp. 2d at 347-48; *Olsten*, 3 F. Supp. 2d at 296. MFRA's Exchange Act claims are typical of the claims of the members of the proposed putative Class. MFRA and all other members of the proposed class purchased BMS securities at prices inflated by defendants' misrepresentations and omissions and were damaged thereby.

Because MFRA's claims arise from the same course of conduct which caused other members of the class to acquire BMS securities at artificially inflated prices, typicality is satisfied.

      b.    **MFRA Will Fairly and Adequately Represent the Interests of the Class**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the Class." Adequate representation will be found if the plaintiffs are represented by able and experienced counsel, and that such plaintiffs have no fundamental conflicts of interest with the legitimate interests of the class as a whole. *Halford v. Goodyear Tire & Rubber Co.*, 161 F.R.D. 13, 19 (W.D.N.Y. 1995). Here, lead plaintiff movant's interests are clearly aligned with the members of the Class, and there is no evidence of any antagonism between MFRA and the interests of the Class. MFRA shares numerous common questions of law and fact with the members of the Class, and its claims are typical of the Class. Moreover, MFRA has demonstrated that it is willing to serve as an advocate on behalf of the Class by filing the initial complaint and now moving for appointment as lead plaintiff. Walter C. Schirmer, the Executive Secretary of MFRA has signed a certification stating that MFRA is willing to serve as a representative party on behalf of a class. Thus, the close alignment of interests between MFRA

combined with its strong desire to prosecute these actions on behalf of the Class, militates in favor of granting the instant motion.

### C. This Court Should Approve MFRA's Choice of Co-Lead Counsel

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 21D(a)(3)(B)(v). Thus, this Court should not disturb the Lead Plaintiff's choice of counsel unless necessary to "protect the interests of the class." MFRA has selected counsel highly experienced in prosecuting securities class actions. MFRA has retained the law firms of Kaplan Fox and Lockridge Grindal to serve as Co-Lead Counsel. Kaplan Fox and Lockridge Grindal have extensive experience litigating securities class actions and have successfully prosecuted numerous securities class actions on behalf of injured investors. Campisi Decl. Ex. C (firm resume of Kaplan Fox) and Ex. D (firm resume of Lockridge Grindal).

## V.   CONCLUSION

For the above reasons, MFRA respectfully requests that the Court: (1) consolidate the Related Actions; (2) appoint MFRA as the Lead Plaintiff in the above-captioned related actions; and (3) approve its choice of Co-Lead Counsel.

DATED: August 27, 2007

Respectfully submitted,

KAPLAN FOX & KILSHEIMER LLP

By: _____s/ Frederic S. Fox_____
    Frederic S. Fox
    Joel B. Strauss
    Jeffrey P. Campisi
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

          LOCKRIDGE GRINDAL NAUEN P.L.L.P.
Richard A. Lockridge
Karen H. Riebel
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
Fax: (612) 339-0981

*Attorneys for Lead Plaintiff Movant the
Minneapolis Firefighters' Relief Association*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 27, 2007, I caused to be electronically filed the foregoing paper with the Clerk of the Court using the ECF System which will electronically send notification of such filing to the registered participants and paper copies will be sent via first-class mail postage pre-paid to those indicated as non-registered participants on August 27, 2007.

/s/    Jeffrey P. Campisi
Jeffrey P. Campisi

August 27, 2007