UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MINNEAPOLIS FIREFIGHTERS' RELIEF ASSOCIATION, on behalf of itself and all others similarly situated,<br><br>                              Plaintiff,<br><br>vs.<br><br>BRISTOL-MYERS SQUIBB COMPANY, PETER R. DOLAN, and ANDREW R.J. BONFIELD,<br><br>                              Defendants. | Case No. 07-CV-5867 (PAC)<br><br>ELECTRONICALLY FILED |
| JEAN LAI, Individually and On behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>vs.<br><br>BRISTOL-MYERS SQUIBB COMPANY, PETER R. DOLAN and ANDREW R. J. BONFIELD,<br><br>                              Defendants. | Case No. 07-CV-6259 (PAC) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF ONTARIO TEACHERS' PENSION PLAN BOARD FOR (1) APPOINTMENT AS LEAD PLAINTIFF; (2) APPROVAL OF ITS SELECTION OF COUNSEL AS LEAD COUNSEL FOR THE CLASS; AND (3) CONSOLIDATION OF ALL RELATED ACTIONS**

**TABLE OF CONTENTS**

**Page**

Preliminary Statement ................................................................................................................ 1

Factual and Procedural Background ........................................................................................... 2

ARGUMENT ............................................................................................................................... 5

I.    Ontario Teachers Should Be Appointed Lead Plaintiff ............................................. 5

      a.    Ontario Teachers Believes That It Has The Largest Financial Interest in the Relief Sought by the Class ......................................... 5

      b.    Ontario Teachers Otherwise Satisfies the Requirements of Rule 23 ................ 7

II.    The Court Should Approve Ontario Teachers' Selection of Lead Counsel ............. 10

III.    The Related Actions Should be Consolidated ........................................................... 11

CONCLUSION .......................................................................................................................... 11

Ontario Teachers' Pension Plan Board ("Ontario Teachers") respectfully submits this memorandum in support of its motion (i) to be appointed as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), (ii) for approval of its selection of the law firm of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Lead Counsel for the Class, and (iii) for consolidation of all related securities class actions pursuant to Fed. R. Civ. P. 42(a).

## PRELIMINARY STATEMENT

This federal securities class action lawsuit arises from allegations concerning violations of the federal securities laws by Bristol-Myers Squibb Co. ("Bristol-Myers" or the "Company") and certain of its officers (collectively, "Defendants"). During the period from March 22, 2006 through August 8, 2006 (the "Class Period"), Defendants made materially false and misleading statements about, and suppressed information known to them concerning, the proposed settlement of an intellectual property dispute related to the Company's most important product—the cardiovascular drug sold by Bristol under the trade name Plavix. Defendants' misstatements artificially inflated the price of Bristol securities and caused substantial damage to the Company's investors.

Ontario Teachers believes that it is the "most adequate plaintiff" under the PSLRA to serve as the Lead Plaintiff on behalf of investors harmed by that fraud. Ontario Teachers believes that it has the largest financial interest in the relief sought in this action by virtue of, among other things, the more than $1.7 million loss on its

investment in Bristol-Myers securities.[1]  Ontario Teachers further satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure as an adequate class representative with claims typical of the other Class members.  Ontario Teachers is, moreover, a sophisticated public institutional investor, highly experienced in conducting and supervising counsel in complex securities litigation, and is therefore a paradigmatic Lead Plaintiff under the PSLRA.

## FACTUAL AND PROCEDURAL BACKGROUND

Bristol-Myers is one of the world's largest pharmaceuticals companies.  The Company is based in New York City and its stock trades on the New York Stock Exchange under the symbol "BMY."  It has nearly two billion shares outstanding and held by public investors.

On March 22, 2006, Bristol-Myers announced that it had reached a settlement agreement in a lawsuit with a generic manufacturer named The Apotex Group ("Apotex") concerning Apotex's challenge to the validity of Bristol's patent for Plavix.  Plavix is a blood thinning agent—used principally in the prevention of heart attack and stroke as well as to inhibit blood clots from forming on arterial stents—and, as the second most prescribed drug in the world, is a highly material component of Bristol's earnings, responsible for approximately 20% of Bristol's earnings in the previous fiscal year.  If approved, the settlement would assure Bristol's exclusive right to distribute Plavix in the United States until late 2011, thereby maintaining the lucrative profit stream produced by the blockbuster drug.  News of the settlement was well received by the investing public

---

[1] A copy of the Certification of Ontario Teachers is attached as Exhibit A to the Declaration of Gerald H. Silk (the "Silk Decl.").  This Certification sets forth the transactions of Ontario Teachers in Bristol-Myers stock during the Class Period.

and the market price of Bristol's common shares experienced a single day increase of almost $2.50 per share or more than 10% of the stock's value, closing at $25.24 per share.

Throughout the Class Period, the Company issued numerous statements concerning the settlement agreement, repeatedly assuring investors that it would vigorously enforce its rights to the Plavix patent if the settlement agreement was not approved.  Bristol-Myers did not, however, disclose critical terms of the settlement agreement that were clearly material to investors.  Among other things, Bristol-Myers did not reveal that it had contracted away its rights to sue Apotex for treble damages under the federal patent laws in the event the settlement was not approved.  Nor did Bristol reveal that it had agreed not to seek any injunction against Apotex for five business days, which would allow Apotex to flood the market with its generic version of Plavix.  Further, Bristol-Myers concealed from investors secret side agreements that Defendants had negotiated with Apotex, under which Bristol agreed to honor numerous terms that were not revealed to regulators.  These side agreements included various benefits to Apotex, such as Bristol's undertaking not to launch an "authorized generic" to compete with Apotex's generic once the patent had expired—a critical concern for regulators.

The investing public first began to learn of the misconduct at Bristol when it was disclosed that the Department of Justice had commenced an investigation into the settlement agreement and that agents of the Federal Bureau of Investigation ("FBI") had raided Bristol's headquarters in New York City on July 26, 2006 to gather evidence of Bristol's secret side deals with Apotex.  The news commenced a steep decline in the Company's stock price with a single day stock price drop from $25.99 per share to

3

$24.04. Continued revelations culminated on August 8, 2006, when Apotex did, in fact, begin flooding the market with generic Plavix and Bristol was forced to disclose the actual text of its settlement agreement, revealing that Bristol had contracted away its ability to effectively enforce its patent, despite its repeated assurances to the contrary. The stock bottomed out upon the market's close for that business week at $20.24 per share, an over 22% drop since the highs before the FBI raid.

The Company's then-CEO—Defendant Peter Dolan—was forced to resign in the wake of the Plavix scandal and the Company has since pled guilty to making false statements to regulators, admitting that:

> [A] former Bristol-Myers Squibb senior executive made oral representations to Apotex for the purpose of causing Apotex to conclude that the company would not launch an authorized generic in the event that the parties reached a final revised settlement agreement. . . . The failure to disclose this information to the Federal Trade Commission (FTC) in connection with the FTC's review of the revised settlement agreement operated as incomplete and therefore false statements to the FTC. The company acknowledged in court today its responsibility for the conduct of the former senior officer.

Further, although the Company has never definitively quantified the impact of Apotex's generic launch, the Company has repeatedly admitted that the "generic launch had a significant adverse impact on PLAVIX sales and results of operations in 2006." The *National Law Journal* estimated that "Apotex had sold enough generic Plavix to cost [Bristol] more than $500 million in sales!"

The first securities class action complaint filed in this action, styled *Minneapolis Firefighters' Relief Association v. Bristol-Myers Squibb Co., et al.*, was filed on June 20, 2007—several days after Bristol-Myers had entered its guilty plea. As required by the PSRLA, notice of the pendency of this action was published on June 27, 2007, alerting

4

class members to the August 27, 2007 deadline for motions seeking appointment as Lead Plaintiff on behalf of Bristol-Myers' investors. The first such notice is attached to the Silk Decl. as Exhibit B. With the filing of this motion, Ontario Teachers satisfies the statutory deadline to move to be appointed as Lead Plaintiff in this action.

## ARGUMENT

### I.      Ontario Teachers Should Be Appointed Lead Plaintiff

Ontario Teachers respectfully submits that it should be appointed Lead Plaintiff because it is the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B); *see also Fishbury Ltd. v. Connetics Corp.*, No. 06-CV-11496 (SWK), 2006 U.S. Dist. LEXIS 90696, at *6-7 (S.D.N.Y. Dec. 14, 2006); *Glauser v. EVCI Career Colleges Holding Corp.*, 236 F.R.D. 184, 187-89 (S.D.N.Y. 2006); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 97-98 (S.D.N.Y. 2005).

####     a.      Ontario Teachers Believes That It Has The Largest Financial Interest in the Relief Sought by the Class

Ontario Teachers should be appointed Lead Plaintiff because it has the largest financial interest in the relief sought by the Class. 15 U.S.C. § 78u-4(a)(3)(B)(iii). Courts generally look to four factors in determining which movant has the largest financial interest in the litigation. These factors—sometimes called the "*Lax* Factors"

5

after *Lax v. First Merchants Acceptance Corp.*[2]—are (i) the number of gross shares purchased during the class period; (ii) the number of net shares purchased during the class period; (iii) the total net funds expended during the class period; and (iv) the approximate losses suffered. *See, e.g., Fishbury*, 2006 U.S. Dist. LEXIS 90696, at *7-8; *Glauser*, 236 F.R.D. at 187; *In re eSpeed*, 232 F.R.D. at 100. In light of each of these factors, Ontario Teachers believes that it has the largest financial interest in the outcome of this lawsuit.

Ontario Teachers purchased 1,350,800 shares of Bristol on a gross basis during the Class Period. During the same period, Ontario Teachers had net purchases of 1,334,200 shares. In addition, Ontario Teachers had total net expenditures of $33,141,223.15 during the Class Period. As a result of the revelation of Bristol's misconduct, Ontario Teachers suffered approximately $1.7 million in losses, whether calculated on a LIFO or FIFO basis.[3] Specifically, Ontario Teachers lost $1,735,223.95 on a FIFO basis and $1,708,938.77 on a LIFO basis (charts setting forth Ontario Teachers' transactions and losses in Bristol securities on FIFO and LIFO bases are attached as Exhibits C and D, respectively, to the Silk Decl.). The magnitude of Ontario Teachers' financial interest in this litigation can be summarized as follows:

---

[2] *See Lax v. First Merch. Acceptance Corp.*, No. 97-Civ-2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997).

[3] Courts in this District and elsewhere rely on two principal methods for calculating approximate loss for purposes of Lead Plaintiff motions under the PSLRA. These are the FIFO (first in, first out) and LIFO (last in, first out) methods. Under the FIFO method, sales are offset against the movant's inventory of stock acquisitions, starting with the earliest and moving chronologically forward (hence, "first in, first out"). Under the alternative LIFO method, the sales are offset against the movant's inventory of stock acquisitions, starting with the latest and moving chronologically backward (hence, "last in, first out").

| *Lax* Factor | Ontario Teachers' Position |
|---|---|
| **Gross Purchases:** | 1,350,800 shares |
| **Net Purchases:** | 1,334,200 shares |
| **Net Expenditures:** | $33,141,223.15 |
| **Approximate FIFO Loss:** | $1,735,223.95 |
| **Approximate LIFO Loss:** | $1,708,938.77 |

Accordingly, Ontario Teachers believes that it has the largest financial interest of any qualified movant seeking appointment as Lead Plaintiff.

   **b.**  **Ontario Teachers Otherwise Satisfies the Requirements of Rule 23**

Ontario Teachers should be appointed Lead Plaintiff because it also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. On a motion to serve as Lead Plaintiff, the movant "need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." *Glauser*, 236 F.R.D. at 188 (quoting *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998)); *see also Fishbury*, 2006 U.S. Dist. LEXIS 90696, at *7 (same); *In re eSpeed*, 232 F.R.D. at 102 (same). Ontario Teachers unquestionably satisfies both requirements in this case.

Ontario Teachers' claim is typical of the claims of other Class members. "Typicality is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise." *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002). Ontario Teachers' claims in this action arise from the very same course of misconduct at Bristol as the claims of the other Class members— *i.e.*, the artificial inflation and consequent market correction of Bristol stock caused by Defendants' fraudulent public disclosures. *See, e.g.*, *Glauser*, 236 F.R.D. at 188-89 (finding a Lead Plaintiff movant's claim to be typical where the movant "like all class members, (1) purchased or acquired EVCI securities during the proposed class period, (2) at prices allegedly artificially inflated by Defendants' false and misleading statements

7

and/or omissions, and (3) suffered damages thereby."); *In re eSpeed*, 232 F.R.D. at 102 (finding a Lead Plaintiff movant's claim to be typical where "[m]embers of the class claim to have been injured by a fraudulent inflation of eSpeed's stock price" and the movant "makes the same claim.").

Ontario Teachers likewise satisfies the adequacy requirement of Rule 23. The adequacy requirement is satisfied where "the class members' interests are not antagonistic to one another;" "the class has a sufficient interest in the outcome of the case to ensure vigorous advocacy," and where "class counsel is qualified, experienced, and generally able to conduct the litigation." *In re Initial Public Offering Sec. Litig.*, 214 F.R.D. at 121. Ontario Teachers satisfies each of these elements of the adequacy requirement.

Ontario Teachers is adequate to represent the Class because its interests are perfectly aligned with those of the other Class members and are not antagonistic in any way. Indeed, Ontario Teachers seeks identical relief on identical claims based on identical legal theories. There are, furthermore, no facts suggesting that any actual or potential conflict of interest or other antagonism exists between Ontario Teachers and other Class members.

Ontario Teachers has also submitted a Certification affirming its understanding of the duties owed to Class members through its commitment to oversee the prosecution of this Class action. *See* Silk Decl., Exhibit A. Through that Certification, Ontario Teachers accepts the fiduciary obligations it will assume if appointed Lead Plaintiff in this action.

8

Ontario Teachers also has substantial experience overseeing the prosecution of complex securities class action lawsuits such as this one.  For example, Ontario Teachers served as Co-Lead Plaintiff in *In re Nortel Networks Corp. Securities Litigation*, No. 05-MD-1659 (LAP) (S.D.N.Y.), in which a $1.3 billion settlement that included extensive corporate governance reforms was obtained on behalf of investors.  Ontario Teachers' well-established record of success seeking redress on behalf of its fellow investors is also reflected in the critical leadership role it played in *In re Williams Securities Litigation*, No. 02-CV-72 (N.D. Okla.), in which Ontario Teachers was specifically selected by the District Court for the Northern District of Oklahoma to replace previously appointed lead plaintiffs that had withdrawn from the case for undisclosed reasons, threatening to leave the Class with no ability to recover its losses.  Ontario Teachers' prosecution of the case resulted in a recovery of $311 million for the class following completion of fact discovery.  Ontario Teachers also currently serves as a Lead Plaintiff in *In re Biovail Securities Litigation*, No. 03-CV-8917 (RO) (S.D.N.Y.).

Moreover, Ontario Teachers is a classic example of the sort of Lead Plaintiff envisioned by Congress in its enactment of the PSLRA—a sophisticated institutional investor with a real financial interest in the litigation.  *See* H.R. Conf. Rep. No. 104-369, at 34, 104th Cong. 1st Sess. (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *see also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 180 (3d Cir. 2005) (holding that the PSLRA establishes "a paradigm in which the plaintiff with the largest stake in the case, usually a large and sophisticated institution, is accorded the status of

lead plaintiff and assigned the right to appoint and duty to monitor lead counsel for the class"); *Glauser*, 236 F.R.D. at 188.  Finally, Ontario Teachers has demonstrated its adequacy through its selection of Bernstein Litowitz as counsel to represent the Class. As discussed more fully below, Bernstein Litowitz is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated its ability to conduct complex securities class action litigation effectively.

**II.     The Court Should Approve Ontario Teachers' Selection of Lead Counsel**

The Court should approve Ontario Teachers' choice of the law firm of Bernstein Litowitz to serve as Lead Counsel.  Pursuant to Section 21D(a)(3)(B)(v) of the PSLRA, codified at 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff is to select and retain Lead Counsel to represent the Class, subject to Court approval.  Ontario Teachers has selected and retained the law firm of Bernstein Litowitz.

Bernstein Litowitz is among the preeminent securities class action law firms in the country, having been appointed sole or co-lead counsel in numerous complex securities class actions in this District and around the country.  *See, e.g.*, Bernstein Litowitz's Firm Biography attached as Exhibit E to the Silk Decl.  Bernstein Litowitz served as co-lead counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-CV-3288 (DLC) (S.D.N.Y.), in which settlements totaling in excess of $6 billion—one of the largest recoveries in securities class action history—were obtained for the class. Bernstein Litowitz was also counsel for Ontario Teachers in the successful prosecution of *In re Nortel Networks Corp. Securities Litigation*, No. 05-MD-1659 (LAP) (S.D.N.Y.). Bernstein Litowitz also presently serves as co-counsel in *In re Refco, Inc. Securities Litigation*, No. 05 Civ. 8626 (GEL) (S.D.N.Y.).

Accordingly, the Court should approve Ontario Teachers' selection of Bernstein Litowitz as Lead Counsel for the Class.

### III. The Related Actions Should be Consolidated

There are at least two securities class action complaints pending in the Southern District of New York on behalf of investors in Bristol securities:

| Case Number | Abbreviated Case Name | Date Filed |
| --- | --- | --- |
| 07-CV-5687 (PAC) | *Minneapolis Firefighters' Relief Association v. Bristol-Myers Squibb Co., et al.* | June 20, 2007 |
| 07-CV-6259 (PAC) | *Jean Lai v. Bristol-Myers Squibb Co., et al.* | July 6, 2007 |

These actions present virtually identical factual and legal issues, as they all arise out of the same alleged misstatements regarding the financial condition of Bristol. Accordingly, consolidation is appropriate here. *See, e.g., Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) ("In securities actions where the complaints are based on the same 'public statements and reports,' consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced.") (internal citation omitted).

### CONCLUSION

For the foregoing reasons, Ontario Teachers respectfully requests that the Court: (i) appoint Ontario Teachers as Lead Plaintiff pursuant to the PSLRA; (ii) approve

Ontario Teachers' selection of Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel for the Class; (iii) consolidate all related actions; and (iv) grant such other and further relief as the Court may deem just and proper.

Dated: August 27, 2007                     Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

/s/ Gerald H. Silk
Gerald H. Silk (GS-4565)
Salvatore J. Graziano (SG-6854)
Noam Mandel (NM-0203)
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
(212) 554-1400

Counsel for Ontario Teachers' Pension Plan Board and Proposed Lead Counsel for the Class