UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
:
IN RE BRISTOL-MYERS SQUIBB CO.        :
SECURITIES LITIGATION                 :     07-Civ. 5867 (PAC)
                                      :
                                      :     **FILED**
                                      :     **ELECTRONICALLY**
                                      :
------------------------------------------------------------------ x

## MEMORANDUM OF LAW IN SUPPORT OF PETER R. DOLAN'S MOTION TO DISMISS THE AMENDED COMPLAINT

 

Richard J. Davis
Robert F. Carangelo
Bradley R. Aronstam
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

November 12, 2007                    *Attorneys for Defendant Peter R. Dolan*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................... 3

ARGUMENT .................................................................................................................................. 4

I.  PLAINTIFFS' SECTION 10(b) CLAIM MUST BE DISMISSED
    AGAINST MR. DOLAN FOR FAILURE TO PLEAD SCIENTER ..................... 4

    A.  Applicable Law ................................................................................................. 4

    B.  The Amended Complaint's Generalized Allegations Are
        Insufficient To Plead Scienter ......................................................................... 5

II. PLAINTIFFS HAVE FAILED TO ALLEGE A CLAIM FOR
    "CONTROL PERSON" LIABILITY AGAINST MR. DOLAN ......................... 11

    A.  Plaintiffs Have Failed To Allege A "Primary Violation" ......................... 11

    B.  Plaintiffs Have Failed To Allege Any Facts Demonstrating Mr.
        Dolan's Culpable Participation In The Alleged Fraud ............................. 12

CONCLUSION ............................................................................................................................ 14

## TABLE OF AUTHORITIES

**Cases**                                                                               **Page(s)**

ATSI, Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87 (2d Cir. 2007) ..................... 8, 12

In re Advanta Corp. Sec. Litig., 180 F.3d 525 (3d Cir. 1999) ............................................. 8

Boguslavsky v. Kaplan, 159 F.3d 715 (2d Cir. 1998) ........................................................ 12

Burstyn v. Worldwide Xceed Group, Inc., 2002 WL 31191741
    (S.D.N.Y. Sept. 30, 2002) .............................................................................................. 12

In re Carter-Wallace, Inc. Sec. Litig., 220 F.3d 36 (2d Cir. 2000) ...................................... 7

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002) ......................................... 10

Davidoff v. Farina, 2005 WL 2030501 (S.D.N.Y. Aug. 22, 2005) ..................................... 6

De Jesus v. Sears, Roebuck & Co., 87 F.3d 65 (2d Cir. 1996) ............................................ 3

In re Global Crossing, Ltd. Sec. Litig., 2005 WL 1907005
    (S.D.N.Y. Aug. 8, 2005) ............................................................................................... 13

In re Global Crossing, Ltd. Sec. Litig., 2005 WL 2990646
    (S.D.N.Y. Nov. 7, 2005) .......................................................................................... 12, 13

In re Global Crossing, Ltd. Sec. Litig., 2006 WL 1628469
    (S.D.N.Y. June 13, 2006) .............................................................................................. 13

Kalnit v. Eichler, 264 F.3d 131 (2d Cir. 2001) ................................................................ 4, 6

Malin v. XL Capital Ltd., 499 F. Supp. 2d 117 (D. Conn. 2007) ...................................... 10

Mfrs. Life Ins. Co. v. Donaldson, Lufkin & Jenrette Sec. Corp.,
    2000 WL 709006 (S.D.N.Y. June 1, 2000) ................................................................... 3

Novak v. Kasaks, 216 F.3d 300 (2d Cir. 2000) ................................................................ 8, 9

O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674 (2d Cir. 1991) ............................. 5

Rombach v. Chang, 355 F.3d 164 (2d Cir. 2004) .................................................... 5, 8, 11

SEC v. First Jersey Sec., Inc., 101 F.3d 1450 (2d Cir. 1996) ............................................ 11

In re Salomon Analyst Winstar Litig., 2006 WL 510526
   (S.D.N.Y. Feb. 28, 2006) ................................................................................................. 7, 9

San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.,
   75 F.3d 801 (2d Cir. 1996) ............................................................................................... 5, 7

Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124 (2d Cir. 1994) ....................................... 4, 6

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499 (2007) ................. 2, 4, 5, 6, 7

Yung v. Lee, 432 F.3d 142 (2d Cir. 2005) ........................................................................ 10

## Statutes & Rules

15 U.S.C. § 78u-4 ............................................................................................................ 4, 5

Fed. R. Civ. P. 9(b) ....................................................................................................... 1, 4, 5

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 3

Defendant Peter R. Dolan respectfully submits this memorandum of law and the accompanying declaration of Robert F. Carangelo ("Carangelo Decl.") in support of his motion to dismiss the amended class action complaint (the "Amended Complaint" or "Am. Compl.") of the Ontario Teachers' Pension Plan Board and Minneapolis Firefighters' Relief Association (collectively, "Plaintiffs") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

## PRELIMINARY STATEMENT

This case is brought on behalf of shareholders of Bristol-Myers Squibb Company ("BMS" or the "Company") for purported violations of the federal securities laws and arises out of allegations that defendants made materially false and misleading statements and omissions concerning BMS's attempt to settle patent litigation with Apotex, Inc. ("Apotex") relating to Apotex's intended introduction of a generic (and competing) drug of BMS's largest selling prescription drug, Plavix (the "Plavix Settlement"). In addition to Mr. Dolan, BMS and Andrew Bodnar are named as defendants.

Like the other defendants in this case, Mr. Dolan is alleged to have violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder in connection with BMS's disclosures concerning the Plavix Settlement. He is also alleged to be liable as a "control person" of BMS under Section 20(a) of the Exchange Act.

Plaintiffs' securities claims against Mr. Dolan are subject to dismissal for several independent reasons, including all of the grounds relied upon by the Company in

its motion to dismiss, which Mr. Dolan expressly adopts herein for the convenience of the Court and will not repeat.[1] Mr. Dolan further asserts that, stripped of its hyperbole, the Amended Complaint also fails because it lacks particularized facts sufficient to establish the critical Section 10(b) element of scienter (or fraudulent intent). Indeed, notwithstanding the PSLRA's requirement that plaintiffs plead with "particularity" facts giving rise to a "strong inference" of scienter, as recently expounded upon by the United States Supreme Court in Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499 (2007), the Amended Complaint contains no facts, particularized or otherwise, giving rise to any inference, much less the requisite strong one, demonstrating that Mr. Dolan acted with "fraudulent intent" in carrying out his duties. Nor are there any factual allegations giving rise to any inference that Mr. Dolan knew or believed that the challenged disclosures were inaccurate, incomplete, or inappropriate in any way. To the contrary, Plaintiffs rely on conclusory shopworn allegations that could be levied against any CEO and accordingly fall woefully short of the PSLRA's heightened pleading standard. See, e.g., Am. Compl. ¶ 17 ("Dolan, because of his senior position with the Company, possessed the power and authority to control the contents of Bristol-Myers'[disclosures]"); Am. Compl. ¶ 126 (Mr. Dolan "was the most senior officer of Bristol-Myers and issued statements and press releases on behalf of the Company"); Am. Compl. ¶ 141 (The alleged "course of conduct or scheme was designed to and did . . . .

---

[1] Specifically, Mr. Dolan incorporates the arguments of BMS that the Amended Complaint should be dismissed because (i) the Company's public filings provided accurate and appropriate disclosure as a matter of law (see BMS Br., Part I), (ii) Plaintiffs cannot establish loss causation as a matter of law (see BMS Br., Part II), and (iii) the scienter allegations in the Amended Complaint are insufficient under the Tellabs standard (see BMS Br., Part III).

maintain Dolan's executive and directorial positions at Bristol-Myers and the profits, power and prestige that Dolan enjoyed as a result of those positions"). See infra Point I. Plaintiffs' failure to plead a primary violation of Section 10(b) mandates dismissal of their Section 20(a) claim against Mr. Dolan as well. See infra Point II.

## STATEMENT OF FACTS[2]

Mr. Dolan adopts the detailed statement of facts set forth in the brief of BMS and addresses below the handful of specific alleged facts relevant to him.

Mr. Dolan served as the Company's Chief Executive Officer, a director of the Company, and the Chairman of the Company's Executive Committee at all times relevant to the allegations of the Amended Complaint. Am. Compl. ¶ 16. The Amended Complaint alleges that Mr. Dolan either made – or was responsible for – numerous BMS disclosures concerning the Plavix Settlement, which disclosures are alleged by Plaintiffs to have been false or misleading. See id. ¶¶ 72-73, 76, 122.

Mr. Bodnar – not Mr. Dolan – served as BMS's "principal negotiator with Apotex regarding Plavix." Id. ¶ 126. While Mr. Bodnar "report[ed] directly to [Mr.] Dolan" (id.), the Amended Complaint acknowledges that Mr. Dolan did not participate in either of the two May 2006 meetings where Mr. Bodnar is alleged to have met with Bernard Sherman (Apotex's Chairman) and entered into the "secret oral side agreements" with Apotex on BMS's behalf. See id. ¶ 39. The only link offered by Plaintiffs

---

[2] The standards under Federal Rule of Civil Procedure 12(b)(6) are familiar. Although the Court must accept the well-pleaded factual allegations set forth in the Amended Complaint as true, "bald assertions and conclusory allegations are insufficient to defeat a motion to dismiss." Mfrs. Life Ins. Co. v. Donaldson, Lufkin & Jenrette Sec. Corp., 2000 WL 709006, at *2 (S.D.N.Y. June 1, 2000); see also De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996) (same).

concerning Mr. Dolan's "knowledge" of these agreements stems from inadmissible hearsay statements contained in a self-interested affidavit proffered by Mr. Sherman. See id. ¶ 38.

## ARGUMENT

"To state a cause of action under Section 10(b) and Rule 10b-5, a plaintiff must plead that the defendant made a false statement or omitted a material fact, <u>with scienter</u>, and that plaintiff's reliance on defendant's action caused plaintiff injury." <u>Kalnit</u> v. <u>Eichler</u>, 264 F.3d 131, 138 (2d Cir. 2001) (emphasis added). A plaintiff must also plead a factual basis for the allegations of fraud, and must do so with particularity, as required by both Federal Rule of Civil Procedure 9(b) and the PSLRA. See <u>Shields</u> v. <u>Citytrust Bancorp, Inc.</u>, 25 F.3d 1124, 1127 (2d Cir. 1994). As set forth below and in BMS's motion to dismiss, Plaintiffs have failed to plead the necessary elements of a claim under Section 10(b) and Rule 10b-5.

### I. PLAINTIFFS' SECTION 10(b) CLAIM MUST BE DISMISSED AGAINST MR. DOLAN FOR FAILURE TO PLEAD SCIENTER

#### A. Applicable Law

The PSLRA requires a plaintiff to "state with <u>particularity</u> facts giving rise to a <u>strong inference</u>" of scienter as to each defendant. 15 U.S.C. § 78u-4(b)(2) (emphasis added). As recently explained by the United States Supreme Court in <u>Tellabs</u>, "[t]he 'strong inference' standard 'unequivocally raise[d] the bar for pleading scienter.'" 127 S. Ct. at 2509 (citation omitted). "Congress did not merely require plaintiffs to provide a factual basis for [their] scienter allegations, . . . . Congress required plaintiffs to

plead with particularity facts that give rise to a 'strong' -- i.e., a powerful or cogent -- inference." Id. at 2510 (citation omitted).

Thus, "an inference of scienter must be more than merely plausible or reasonable -- it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Id. at 2504-05. It is therefore necessary to consider "plausible opposing inferences" and whether the inference of scienter is "persuasive, effective and cogent" in light of those other possible, "non-culpable inferences." Id. at 2509-10. "A complaint will survive . . . only if a reasonable person would" – not just "could" – "deem the inference of scienter cogent and at least as compelling as any opposing inference [of nonfraudulent intent] one could draw from the facts alleged." Id. at 2502-03 (emphasis added). "[S]peculation and conclusory allegations" of scienter do not suffice (see San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 813 (2d Cir. 1996)), and the failure to satisfy the PSLRA's strict pleading standards mandates dismissal of a complaint. See 15 U.S.C. 78u-4(b)(3)(A).[3]

B. **The Amended Complaint's Generalized Allegations Are Insufficient To Plead Scienter**

None of the allegations in the Amended Complaint provide a "cogent" inference of scienter under Tellabs, let alone an inference that is "at least as compelling"

---

[3] Because Section 10(b) claims sound in fraud, they are also subject to Federal Rule of Civil Procedure 9(b), which requires that "[i]n all averments of fraud . . ., the circumstances constituting fraud . . . shall be stated with particularity." (emphasis added). "The particularity requirement of Rule 9(b) serves to 'provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit.'" Rombach v. Chang, 355 F.3d 164, 171 (2d Cir. 2004) (quoting O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991)).

as the inference that Mr. Dolan acted with "nonfraudulent intent" in carrying out his duties as a fiduciary of BMS. Indeed, Plaintiffs point to no insider sales of BMS stock effected by Mr. Dolan, no specific profits realized by Mr. Dolan, or any other hallmark indicia of scienter on the part of Mr. Dolan in connection with the allegedly fraudulent scheme concerning the Plavix Settlement.

Plaintiffs instead allege conclusorily that Mr. Dolan concocted the alleged scheme concerning the Plavix Settlement in furtherance of his desire to "maintain [his] executive and directorial position at Bristol-Myers and the profits, power and prestige that Dolan enjoyed as a result of those positions." Am. Compl. ¶ 141. But, even before Tellabs, courts have repeatedly rejected this type of allegation as far too generalized to pass muster under the PSLRA. See, e.g., Shields, 25 F.3d at 1130 (holding that plaintiffs "must do more than merely charge that executives aim to prolong the benefits of the positions they hold"); Davidoff v. Farina, 2005 WL 2030501, at *17 n.30 (S.D.N.Y. Aug. 22, 2005) ("Plaintiffs cannot establish the requisite fraudulent motive simply by alleging that the Individual Defendants desired to keep their jobs or increase their compensation"). Indeed, that motive may be ascribed to all senior officers and is plainly insufficient to subject Mr. Dolan to liability under Section 10(b). See id.; see also Kalnit, 264 F.3d at 139 ("Motives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud").

Nor have Plaintiffs met the stringent requirements in this Circuit for pleading either conscious misbehavior or recklessness as a means of establishing

scienter.[4] As to conscious misbehavior, a plaintiff must plead particularized facts, not conclusory allegations, that "point strongly to an inference that defendants harbored intent to deceive, manipulate or defraud." In re Salomon Analyst Winstar Litig., 2006 WL 510526, at *7 n.11, *14 (S.D.N.Y. Feb. 28, 2006) (citation omitted). To establish recklessness, a plaintiff must allege particularized facts demonstrating "'at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" In re Carter-Wallace, Inc. Sec. Litig., 220 F.3d 36, 39 (2d Cir. 2000) (citation omitted).

      First, intentional misconduct or recklessness cannot be inferred because, as detailed in BMS's motion to dismiss, there was no duty to disclose more detailed information concerning the terms of the Plavix Settlement. See BMS Br. at pgs. 21-22. Indeed, because Plaintiffs have failed to allege with sufficient particularity that any of the challenged statements were, in fact, false or misleading when made, Plaintiffs also have failed to allege adequately that Mr. Dolan knew or believed that any such statements were false or misleading (or that Mr. Dolan was reckless for not knowing of the purported falsity or misleading nature of the disclosures in question). See, e.g., San Leandro, 75 F.3d at 813 ("Since we have already determined that the Complaint fails adequately to allege that defendants' statements were false . . . the Complaint obviously fails to allege facts constituting circumstantial evidence of reckless or conscious misbehavior on the part of defendants in making the statements").

---

[4] Tellabs did not address the question of whether and when recklessness satisfies Section 10(b)'s scienter requirement. See Tellabs, 127 S. Ct. at 2507 n.3.

As further explained by BMS in its motion to dismiss, another obvious "nonculpable explanation" existed for not publicly reporting more detailed information about the Plavix Settlement – i.e., so that competitors and potential competitors adverse to BMS in related litigation concerning Plavix could not use the information to disadvantage the Company. See BMS Br. at pg. 22; see also ATSI, Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 104 (2d Cir. 2007) (holding post-Tellabs that plaintiffs' had failed to satisfy the requisite scienter showing where there were "'plausible nonculpable explanations' for the defendants' actions").

Those arguments aside, it additionally bears emphasis that no court has inferred recklessness or fraudulent intent merely because, as Plaintiffs allege here, a defendant was in a "senior position" and arguably "possess[ed] the power and authority to control the contents" of a company's disclosures. See, e.g., Am. Compl. ¶ 17. Were that the case, every CEO of every publicly traded company would necessarily be held liable in every securities fraud lawsuit involving the company. Fatal to Plaintiffs' claim, Section 10(b) does not impose strict liability. See, e.g., In re Advanta Corp. Sec. Litig., 180 F.3d 525, 539 (3d Cir. 1999) (rejecting as inadequate plaintiffs' "blanket statements that defendants must have been aware of the impending losses by virtue of their positions within the company"); Novak v. Kasaks, 216 F.3d 300, 309 (2d Cir. 2000) (same). Indeed, "a 'pleading technique [that] couple[s] a factual statement with a conclusory allegation of fraudulent intent' is insufficient to 'support the inference that the defendants acted recklessly or with fraudulent intent.'" Rombach v. Chang, 355 F.3d 164, 176 (2d Cir. 2004) (citation omitted).

Moreover, the Amended Complaint is devoid of any <u>factual</u> (as opposed to conclusory) allegations that Mr. Dolan "knew facts or had access to information suggesting" that the disclosures concerning the Plavix Settlement were inaccurate, misleading or made with a fraudulent intent. <u>Novak</u>, 216 F.3d at 311. Again, Plaintiffs merely allege that Mr. Dolan "occupied the highest position at Bristol-Myers and was privy to non public information" and therefore "knew or recklessly disregarded the adverse facts . . . and omitted to disclose those facts." Am. Compl. ¶ 134. These unparticularized allegations are far too general to support the strong inference of scienter required by the PSLRA. <u>See</u>, <u>e.g.</u>, <u>Novak</u>, 216 F.3d at 309 ("Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information"); <u>Salomon Analyst</u>, 2006 WL 510526, at *13 (plaintiffs must "'specifically identify the reports or statements containing this information' in order to sustain a claim of recklessness") (citation omitted).

The Amended Complaint is similarly devoid of any factual averments demonstrating that Mr. Dolan had any knowledge of the purported "secret oral side agreements" allegedly entered into by Mr. Bodnar with Apotex. Plaintiffs' only support concerning these agreements stems from an inadmissible hearsay statement contained in a self-interested affidavit proffered by Mr. Sherman. <u>See</u> Am. Compl. ¶¶ 39, 42-43, 45. In fact, the only other reference to Mr. Dolan's role in those alleged negotiations is reflected in an inaccurate statement attributed to a Dow Jones article, which stated that Mr. Dolan himself negotiated away the Company's right to seek treble damages from Apotex. <u>See</u> <u>id.</u> ¶ 123. But even Plaintiffs concede that Mr. Bodnar – not Mr. Dolan – served as BMS's negotiator with Apotex. <u>See</u> <u>id.</u> ¶¶ 18, 42, 126. Moreover, Plaintiffs

acknowledge that Mr. Dolan did not attend either of the two meetings in which Mr. Bodnar allegedly entered into the "secret oral side agreements." See id. ¶ 39.

Nor, finally, does Mr. Dolan's termination as BMS's CEO constitute any, much less compelling, evidence of scienter. The Company's September 12, 2006 press release announcing Mr. Dolan's termination in no way linked Mr. Dolan's dismissal to any participation in (or knowledge concerning) the alleged "secret oral side agreements," the alleged fraudulent scheme concerning the Plavix Settlement, or any of the challenged disclosures. To the contrary, the complete text of the press release explicitly recognizes that while Mr. Dolan's termination followed an inquiry related to BMS's corporate governance in connection with the negotiation of the Plavix Settlement, there were no findings of "any violation of the deferred prosecution agreement" or "any unlawful conduct by the [C]ompany or any of its employees . . . ." Carangelo Decl., Ex. A (emphasis added).[5] Plaintiffs' selective omission of these disclosures in Paragraph 105 of the Amended Complaint speaks volumes. No inference of scienter, much less the requisite strong one, may be reasonably drawn from the Company's September 12, 2006 press release or Mr. Dolan's departure from BMS. See, e.g., Malin v. XL Capital Ltd., 499 F. Supp. 2d 117, 162 (D. Conn. 2007) (termination alone is not indicative of scienter because "[i]n the absence of facts connecting [defendants] to the alleged fraud, it is more likely that they were terminated and resigned as a result of company mismanagement, not securities fraud").

---

[5] When reviewing a motion to dismiss under Rule 12(b)(6), courts may consider "'any statements or documents incorporated in it by reference . . . .'" Yung v. Lee, 432 F.3d 142, 146 (2d Cir. 2005) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002)).

In short, the Amended Complaint alleges that Mr. Dolan "must have known" and/or "been involved with" the underlying "fraud" and the "false and misleading" statements relating thereto because he was "the most senior officer of Bristol-Myers." Am. Compl. ¶ 126. These allegations fall woefully short of pleading particularized facts establishing a cogent and compelling inference that Mr. Dolan acted with a fraudulent intent as opposed to the normal desire of any CEO to see his company succeed.

## II. PLAINTIFFS HAVE FAILED TO ALLEGE A CLAIM FOR "CONTROL PERSON" LIABILITY AGAINST MR. DOLAN

Plaintiffs further allege that Mr. Dolan was a "control person" of BMS and thus secondarily liable under Section 20(a) of the Exchange Act for the Company's alleged primary violations of Section 10(b) and Rule 10b-5. See Am. Compl. ¶¶ 156-166. To state a claim under Section 20(a), a plaintiff must allege: (1) a primary violation by the controlled person or entity; (2) "control of the primary violator by the targeted defendant"; and (3) "that the controlling person was in some meaningful sense [a] culpable participant[] in the fraud." SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1472 (2d Cir. 1996) (citations omitted) (internal quotation marks omitted). Plaintiffs' failure to meet all of these requirements mandates dismissal of this claim as well.

### A. Plaintiffs Have Failed To Allege A "Primary Violation"

To establish a Section 20(a) claim for control person liability, a plaintiff must allege a "primary violation" of the Exchange Act. See, e.g., Rombach, 355 F.3d at 177-78 (holding that a Section 20(a) claim is necessarily predicated on a primary violation of the securities laws). Plaintiffs' Section 20(a) "control person" claim against

Mr. Dolan must accordingly be dismissed because, as established above (and in the motion to dismiss filed by BMS), the Amended Complaint fails to state a legally sufficient underlying claim for liability under Section 10(b).

### B. Plaintiffs Have Failed To Allege Any Facts Demonstrating Mr. Dolan's Culpable Participation In The Alleged Fraud

Assuming, arguendo, the sufficiency of Plaintiffs' alleged primary violation, their Section 20(a) claim still must be dismissed against Mr. Dolan because they have not pled his culpable participation in the alleged fraud with the required particularity. As the courts in this Circuit have repeatedly held, "[i]n order to establish a prima facie case of liability under § 20(a), a plaintiff must show . . . 'that the controlling person was in some meaningful sense a culpable participant' in the primary violation." Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998) (citation omitted); Burstyn v. Worldwide Xceed Group, Inc., 2002 WL 31191741, at *7 (S.D.N.Y. Sept. 30, 2002) ("[S]everal recent Second Circuit opinions appear to treat culpable participation as an element of the prima facie case," and thus, the defendant's culpable participation must be alleged in addition to control); In re Global Crossing, Ltd. Sec. Litig., 2005 WL 2990646, at *8 (S.D.N.Y. Nov. 7, 2005) ("[C]ulpable participation must be alleged in addition to control" for a Section 20(a) claim).

Moreover, the PLSRA's heightened pleading requirements apply to Section 20(a)'s culpable participation prong. See ATSI Comm., Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007); Burstyn, 2002 WL 31191741, at *8. Accordingly, a plaintiff must make detailed, individualized allegations of the alleged control person's state of mind: "'[D]etermination of § 20(a) liability requires an individualized

determination of a defendant's control of the primary violator as well as the defendant's particular culpability' . . . A complaint that does not contain 'detailed allegations regarding the state of mind of the "control person" must be dismissed.'" In re Global Crossing, Ltd. Sec. Litig., 2005 WL 1907005, at *12 (S.D.N.Y. Aug. 8, 2005) (citations omitted); see also In re Global Crossing, Ltd. Sec. Litig., 2006 WL 1628469, at *11 (S.D.N.Y. June 13, 2006) (same).

Pleading culpable participation requires pleading "'facts giving rise to a strong inference that the controlling person knew or should have known that the primary violator . . . was engaging in fraudulent conduct.'" Global Crossing, 2005 WL 2990646, at *7 (citation omitted). More than mere negligence is required – namely, "facts supporting a strong inference" that the alleged control person had an "awareness of fraud." Id. at *9. As discussed at length above in the preceding section, Plaintiffs' scienter allegations against Mr. Dolan fail as a matter of law. Plaintiffs' control allegations accordingly fail with them.

## CONCLUSION

For all of the foregoing reasons, the Amended Complaint should be dismissed in its entirety with prejudice as to Mr. Dolan.

Dated: November 12, 2007
       New York, New York

                                               Richard J. Davis (RD-3932)
                                               Robert F. Carangelo (RC-3162)
                                               Bradley R. Aronstam (BA-4023)
                                               WEIL, GOTSHAL & MANGES LLP
                                               767 Fifth Avenue
                                               New York, New York 10153
                                               (212) 310-8000

                                               *Attorneys for Defendant Peter R. Dolan*

## CERTIFICATE OF SERVICE

I, Emily L. Katz, hereby certify that on November 12, 2007, I caused the foregoing DEFENDANT PETER R. DOLAN'S NOTICE OF MOTION, MEMORANDUM OF LAW IN SUPPORT OF THIS MOTION TO DISMISS THE AMENDED COMPLAINT, AND DECLARATION OF ROBERT F. CARANGELO IN SUPPORT OF THIS MOTION TO DISMISS THE AMENDED COMPLAINT to be served by Federal Express upon the attorneys for Ontario Teachers' Pension Plan Board, Minneapolis Firefighters' Relief Association, Andrew A. Bodnar, and Bristol-Myers Squibb Company at the following addresses:

>Salvatore J. Graziano
>Jai K. Chandrasekhar
>Gerald H. Silk
>BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
>1285 Avenue of the Americas
>New York, NY 10019
>Tel.: (212) 554-1400
>Fax: (212) 554-1444
>
>*Attorneys for Lead Plaintiff Ontario Teachers' Pension Plan Board and Lead Counsel for the Class*
>
>Frederic S. Fox
>Joel B. Strauss
>Jeffrey P. Campisi
>KAPLAN FOX & KILSHEIMER LLP
>850 Third Avenue
>New York, NY 10022
>Tel.: (212) 687-1980
>Fax.: (212) 687-7714
>
>-and-

Richard A. Lockridge
Karen H. Riebel
Lockridge Grindal Nauen P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel.: (612) 339-6900
Fax.: (212) 399-0981

*Attorneys for Plaintiff Minneapolis
Firefighters' Relief Association*

Elkan Abramowitz
Lawrence S. Bader
Jerrold L. Steigman
MORVILLO, ABRAMOWITZ, GRAND, IASON, ANELLO &
BOHRER, P.C.
565 Fifth Avenue
New York, NY 10017
Tel.: (212) 880-9300
Fax.: (212) 856-9494

*Attorneys for Defendant Andrew A. Bodnar*

Lorin L. Reisner
Michael R. Potenza
Jacob W. Stahl
DEBOVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Tel.: (212) 909-6000
Fax.: (212) 909- 6836

*Attorneys for Bristol-Myers Squibb Company*

_____
Emily L. Katz