# EXHIBIT A



# FORM 10-K

## BRISTOL MYERS SQUIBB CO - bmy

**Filed: March 15, 2004 (period: December 31, 2003)**

Annual report which provides a comprehensive overview of the company for the past year

**Note 22 LEGAL PROCEEDINGS AND CONTINGENCIES**

Various lawsuits, claims, proceedings and investigations are pending against the Company and certain of its subsidiaries. In accordance with SFAS No. 5, *Accounting for Contingencies*, the Company records accruals for such contingencies when it is probable that a liability will be incurred and the amount of loss can be reasonably estimated. These matters involve antitrust, securities, patent infringement, the Employee Retirement Income Security Act of 1974, as amended (ERISA), pricing, sales and marketing practices, environmental, health and safety matters, product liability and insurance coverage. The most significant of these matters are described below.

In the fourth quarter of 2003, the Company established reserves for liabilities of $250 million, comprised of $150 million in relation to wholesaler inventory issues and certain other accounting matters as discussed below under Other Securities Matters, and $100 million in relation to pharmaceutical pricing and sales and marketing practices as discussed below under Pricing, Sales and Promotional Practices Litigation and Investigations. It is not possible at this time to reasonably assess the final outcome of these matters. In accordance with GAAP, the Company has determined that the above amounts represent minimum expected probable losses with respect to these groups of matters. Eventual losses related to these matters may exceed these reserves, and the further impact of either one of these groups of matters could be material. The Company does not believe that the top-end of the range for these losses can be estimated. With the exception of the above accruals and those for TAXOL®, BUSPAR, environmental and product liability proceedings, the Company has not established reserves for the matters described below. There can be no assurance that there will not be an increase in the scope of these matters or that any future lawsuits, claims, proceedings or investigations will not be material. Management continues to believe, as previously disclosed, that during the next few years, the aggregate impact, beyond current reserves, of these and other legal matters affecting the Company is reasonably likely to be material to the Company's results of operations and cash flows, and may be material to its financial condition and liquidity.

**PLAVIX* Litigation**

The Company's U.S. territory partnership under its alliance with Sanofi is a plaintiff in two pending patent infringement lawsuits instituted in the U. S. District Court for the Southern District of New York entitled Sanofi-Synthelabo, Sanofi-Synthelabo Inc., and Bristol-Myers Squibb Sanofi Pharmaceuticals Holding Partnership v. Apotex Inc. and Apotex Corp., 02-CV-2255 (RWS) and Sanofi-Synthelabo, Sanofi-Synthelabo Inc. and Bristol-Myers Squibb Sanofi Pharmaceuticals Holding Partnership v. Dr. Reddy's Laboratories, LTD, and Dr. Reddy's Laboratories, Inc., 02-CV-3672 (RWS). Similar proceedings involving PLAVIX* also have been instituted outside the United States.

The suits were filed on March 21, 2002 and May 14, 2002, respectively, and are based on U.S. Patent No. 4,847,265, a composition of matter patent, which discloses and claims, among other things, the hydrogen sulfate salt of clopidogrel, which is marketed as PLAVIX*, and on U.S. Patent No. 5,576,328, which discloses and claims, among other things, the use of clopidogrel to prevent a secondary ischemic event. The plaintiffs later withdrew Patent No. 5,576,328 from the lawsuit. Plaintiffs' infringement position is based on defendants' filing of their Abbreviated New Drug Application (ANDA) with the FDA, seeking approval to sell generic clopidogrel prior to the expiration of the composition of matter patent in 2011. The defendants responded by alleging that the patent is invalid and/or unenforceable. The cases were consolidated for discovery, and fact discovery closed on October 15, 2003.

Teva Pharmaceuticals USA, or Teva, a generic drug manufacturer, has filed an ANDA with the FDA claiming that patent No. 5576328 relating to PLAVIX* is invalid and that two others will not be infringed by Teva. None of these patents is involved in the pending patent infringement litigation involving PLAVIX*. The Teva filing does not challenge the patent at issue in the PLAVIX* litigation and therefore is not expected to have any impact on that litigation; nor does it appear that Teva intends to commercialize a generic form of PLAVIX* prior to the expiration or termination of the patent at issue in the litigation, although there can be no assurance that this will continue to be the case.

Net sales of PLAVIX* were approximately $2.5 billion in 2003 and are expected to grow substantially over the next several years. The Company anticipates that this revenue growth will be an important factor in offsetting expected decreases in sales of the Company's other products that recently have or will experience exclusivity losses during this period.

Currently, the Company expects PLAVIX* to have market exclusivity in the United States until 2011. If the composition of matter patent for PLAVIX* is found not infringed, invalid and/or unenforceable at the district court level, the FDA could then approve the defendants' ANDAs to sell generic clopidogrel, and generic competition for PLAVIX* could begin, before the Company has exhausted its appeals. Such generic competition would likely result in substantial decreases in the sales of PLAVIX* in the United States.

Although the plaintiffs intend to vigorously pursue enforcement of their patent rights in PLAVIX*, it is not possible at this time reasonably to assess the outcome of these lawsuits, or, if the Company were not to prevail in these lawsuits, the timing of potential generic competition for PLAVIX*. However, if such generic competition were to occur, the Company believes it is very unlikely to occur before sometime in the year 2005. It also is not possible reasonably to estimate the impact of these lawsuits on the Company. However, loss of market exclusivity of PLAVIX* and the subsequent development of generic competition would be material to the Company's sales of PLAVIX* and results of operations and cash flows and could be material to its financial condition and liquidity.

# EXHIBIT B

# FORM 10-Q

## BRISTOL MYERS SQUIBB CO - bmy

**Filed: May 10, 2004 (period: March 31, 2004)**

Quarterly report which provides a continuing view of a company's financial position

Table of Contents

**BRISTOL-MYERS SQUIBB COMPANY**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
**(UNAUDITED)**

**Note 15. Legal Proceedings and Contingencies (Continued)**

**PLAVIX* Litigation**

The Company's U.S. territory partnership under its alliance with Sanofi is a plaintiff in two pending patent infringement lawsuits instituted in the U.S. District Court for the Southern District of New York entitled Sanofi-Synthelabo, Sanofi-Synthelabo Inc., and Bristol-Myers Squibb Sanofi Pharmaceuticals Holding Partnership v. Apotex Inc. and Apotex Corp., 02-CV-2255 (SHS) and Sanofi-Synthelabo, Sanofi-Synthelabo Inc. and Bristol-Myers Squibb Sanofi Pharmaceuticals Holding Partnership v. Dr. Reddy's Laboratories, LTD, and Dr. Reddy's Laboratories, Inc., 02-CV-3672 (SHS). Similar proceedings involving PLAVIX* also have been instituted outside the United States.

The suits were filed on March 21, 2002 and May 14, 2002, respectively, and are based on U.S. Patent No. 4,847,265, a composition of matter patent, which discloses and claims, among other things, the hydrogen sulfate salt of clopidogrel, which is marketed as PLAVIX*, and on U.S. Patent No. 5,576,328, which discloses and claims, among other things, the use of clopidogrel to prevent a secondary ischemic event. The plaintiffs later withdrew Patent No. 5,576,328 from the lawsuit. Plaintiffs' infringement position is based on defendants' filing of their Abbreviated New Drug Applications (ANDA) with the FDA, seeking approval to sell generic clopidogrel prior to the expiration of the composition of matter patent in 2011. The defendants responded by alleging that the patent is invalid and/or unenforceable. The cases were consolidated for discovery, and fact discovery closed on October 15, 2003.

Teva Pharmaceuticals USA, or Teva, a generic drug manufacturer, has filed an ANDA with the FDA claiming that Patent No. 5,576,328 relating to PLAVIX* is invalid and that two others will not be infringed by Teva. None of these patents is involved in the pending patent infringement litigation involving PLAVIX*. The Teva filing does not challenge the patent at issue in the PLAVIX* litigation and therefore is not expected to have any impact on that litigation; nor does it appear that Teva intends to commercialize a generic form of PLAVIX* prior to the expiration or termination of the patent at issue in the litigation, although there can be no assurance that this will continue to be the case.

Net sales of PLAVIX* were approximately $2.5 billion in 2003 and are expected to grow substantially over the next several years. The Company anticipates that this revenue growth will be an important factor in offsetting expected decreases in sales of the Company's other products that recently have or will experience exclusivity losses during this period.

Currently, the Company expects PLAVIX* to have market exclusivity in the United States until 2011. If the composition of matter patent for PLAVIX* is found not infringed, invalid and/or unenforceable at the district court level, the FDA could then approve the defendants' ANDAs to sell generic clopidogrel, and generic competition for PLAVIX* could begin, before the Company has exhausted its appeals. Such generic competition would likely result in substantial decreases in the sales of PLAVIX* in the United States.

Although the plaintiffs intend to vigorously pursue enforcement of their patent rights in PLAVIX*, it is not possible at this time reasonably to assess the outcome of these lawsuits, or, if the Company were not to prevail in these lawsuits, the timing of potential generic competition for PLAVIX*. However, if such generic competition were to occur, the Company believes it is very unlikely to occur before sometime in the year 2005. It also is not possible reasonably to estimate the impact of these lawsuits on the Company. However, loss of market exclusivity of PLAVIX* and the subsequent development of generic competition would be material to the Company's sales of PLAVIX* and results of operations and cash flows and could be material to its financial condition and liquidity.

Source: BRISTOL MYERS SQUIBB, 10-Q, May 10, 2004