# EXHIBIT C



# FORM 10-Q

## BRISTOL MYERS SQUIBB CO - bmy

**Filed: May 09, 2005 (period: March 31, 2005)**

Quarterly report which provides a continuing view of a company's financial position

**Table of Contents**

**Note 15. Pension and Other Postretirement Benefit Plans (Continued)**

**Contributions**

In the first quarter of 2005, there were no cash contributions to the U.S. pension plans and $16 million was contributed to the international pension plans. There was no cash funding for other benefits.

Those cash benefit payments from the Company, which are classified as contributions in the FAS 132 disclosure, totaled $4 million for pension benefits and $17 million for other benefits as of March 31, 2005.

**Note 16. Legal Proceedings and Contingencies**

Various lawsuits, claims, proceedings and investigations are pending against the Company and certain of its subsidiaries. In accordance with SFAS No. 5, *Accounting for Contingencies*, the Company records accruals for such contingencies when it is probable that a liability will be incurred and the amount of loss can be reasonably estimated. These matters involve antitrust, securities, patent infringement, the Employee Retirement Income Security Act of 1974, as amended (ERISA), pricing, sales and marketing practices, environmental, health and safety matters, product liability and insurance coverage. The most significant of these matters are described below. There can be no assurance that there will not be an increase in the scope of these matters or that any future lawsuits, claims, proceedings or investigations will not be material. Management continues to believe, as previously disclosed, that during the next few years, the aggregate impact, beyond current reserves, of these and other legal matters affecting the Company is reasonably likely to be material to the Company's results of operations and cash flows, and may be material to its financial condition and liquidity.

The Company's decision to obtain insurance coverage is dependent on market conditions, including cost and availability, existing at the time such decisions are made. As a result of external factors, the availability of insurance has become more restrictive while the cost has increased significantly. The Company has evaluated its risks and has determined that the cost of obtaining insurance outweighs the benefits of coverage protection against losses and as such, is self-insured for product liabilities effective July 1, 2004. The Company will continue to evaluate these risks and benefits to determine its insurance needs in the future.

**PLAVIX\* Litigation**

**United States**

The Company's U.S. territory partnership under its alliance with Sanofi is a plaintiff in three pending patent infringement lawsuits instituted in the U.S. District Court for the Southern District of New York entitled Sanofi-Synthelabo, Sanofi-Synthelabo Inc., and Bristol-Myers Squibb Sanofi Pharmaceuticals Holding Partnership v. Apotex Inc. and Apotex Corp. (Apotex), 02-CV-2255 (SHS); Sanofi-Synthelabo, Sanofi-Synthelabo Inc. and Bristol-Myers Squibb Sanofi Pharmaceuticals Holding Partnership v. Dr. Reddy's Laboratories, LTD, and Dr. Reddy's Laboratories, Inc., 02-CV-3672 (SHS); and Sanofi-Synthelabo, Sanofi-Synthelabo Inc., and Bristol-Myers Squibb Sanofi Pharmaceuticals Holding Partnership vs. Teva Pharmaceuticals USA, Inc. and Teva Pharmaceuticals Industries, Ltd., 04-CV-7458. Teva Pharmaceuticals Industries, Ltd. has since been dismissed from the case. Proceedings involving PLAVIX\* also have been instituted outside the United States.

The U.S. suits were filed on March 21, 2002, May 14, 2002, and September 23, 2004 respectively, and were based on U.S. Patent No. 4,847,265, a composition of matter patent, which discloses and claims, among other things, the hydrogen sulfate salt of clopidogrel, which is marketed as PLAVIX\*. The first two suits were also based on U.S. Patent No. 5,576,328, which discloses and claims, among other things, the use of clopidogrel to prevent a secondary ischemic event. The plaintiffs later withdrew Patent No. 5,576,328 from the two lawsuits. Plaintiffs' infringement position is based on defendants' filing of their Abbreviated New Drug Applications (ANDA) with the FDA, seeking approval to sell generic clopidogrel bisulfate prior to the expiration of the composition of matter patent in 2011. The defendants responded by alleging that the patent is invalid and/or unenforceable. Apotex has added antitrust counterclaims. The first two cases were consolidated for discovery. Fact discovery closed on October 15, 2003 and expert discovery was completed in November 2004. The trial may occur in the second half of 2005. In a stipulation approved by the U.S. District Court for the Southern District of New York on April 15, 2005, all parties to the patent infringement litigation against Teva have agreed that the Teva litigation will be stayed, pending resolution of the Apotex and Dr. Reddy's litigation, and that the parties to the Teva litigation will be bound by the outcome of the litigation in the District Court against Apotex or Dr. Reddy. On April 18, 2005, the Court denied as moot the pending motion to consolidate the Teva litigation with the litigation against Apotex and Dr. Reddy's, as a result of the Court's approval of the Stipulation.

On April 20, 2005, Apotex filed a complaint for declatory judgment against Sanofi-Aventis, Sanofi-Aventis, Inc., and Bristol-Myers Squibb Sanofi Pharmaceuticals Holding Partnership. The complaint seeks a declatory judgment that the '265 patent is unenforceable due to alleged inequitable conduct committed during the prosecution of the patent. No response has been submitted at this point.

17

Source: BRISTOL MYERS SQUIBB, 10-Q, May 09, 2005

Table of Contents
Note 16. Legal Proceedings and Contingencies (Continued)

The Company's U.S. territory partnership under its alliance with Sanofi is a plaintiff in another pending patent infringement lawsuit instituted in the U.S. District Court for the District of New Jersey entitled Sanofi-Synthelabo, Sanofi-Synthelabo Inc. and Bristol-Myers Squibb Sanofi Pharmaceuticals Holding Partnership v. Watson Pharmaceuticals, Inc. and Watson Laboratories, Inc. 2:04-CV-4926. The suit was filed October 7, 2004 and was based on U.S. patent 6,429,210, which discloses and claims a particular crystalline or polymorph form of the hydrogen sulfate salt of clopidogrel, which is marketed as PLAVIX*. The case is in early stages.

PLAVIX* is currently the Company's largest product ranked by net sales. Net sales of PLAVIX* were approximately $3.3 billion for the year ended December 31, 2004.

Currently, the Company expects PLAVIX* to have market exclusivity in the United States until 2011. If the composition of matter patent for PLAVIX* is found not infringed, invalid and/or unenforceable at the district court level, the FDA could then approve the defendants' ANDAs to sell generic clopidogrel, and generic competition for PLAVIX* could begin before the Company has exhausted its appeals. Such generic competition would likely result in substantial decreases in the sales of PLAVIX* in the United States.

Although the plaintiffs intend to vigorously pursue enforcement of their patent rights in PLAVIX*, it is not possible at this time reasonably to assess the outcome of these lawsuits, or, if the Company were not to prevail in these lawsuits, the timing of potential generic competition for PLAVIX*. However, if generic competition in the U.S. were to occur, the Company believes it is very unlikely to occur before the second half of 2005. It also is not possible reasonably to estimate the impact of these lawsuits on the Company.

However, loss of market exclusivity of PLAVIX* and the subsequent development of generic competition would be material to the Company's sales of PLAVIX* and results of operations and cash flows and could be material to its financial condition and liquidity.

**Canada**

Sanofi-Synthelabo and Sanofi-Synthelabo Canada Inc. instituted a prohibition action in the Federal Court of Canada against Apotex Inc. (Apotex) and the Minister of Health in response to a Notice of Allegation from Apotex directed against Canadian Patent 1,336,777 covering clopidogrel bisulfate. Apotex's Notice of Allegation (NOA) indicated that it had filed an Abbreviated New Drug Submission (ANDS) for clopidogrel bisulfate tablets and that it sought approval (a Notice of Compliance) of that ANDS before the expiration of Canadian Patent 1,336,777, which expires August 12, 2012. Apotex's NOA further alleged that the '777 patent was invalid or not infringed. A hearing was held from February 21 to February 25, 2005. On March 21, 2005, the Canadian Federal Court of Ottawa rejected Apotex's challenge to the Canadian PLAVIX* patent and held that the asserted claims are novel, not obvious and infringed and granted Sanofi's application for an order of prohibition against the Minister of Health and Apotex Inc. That order of prohibition will preclude approval of Apotex's ANDS until the patent expires in 2012, unless the Federal Court's decision is reversed on appeal. Apotex has filed an appeal.

Sanofi-Aventis and Sanofi-Synthelabo Canada Inc. have also instituted a prohibition action in the Federal Court of Canada against Novopharm Limited (Novopharm) and the Minister of Health in response to a Notice of Allegation from Novopharm directed against Canadian Patent 1,336,777 covering clopidogrel bisulfate. Novopharm's Notice of Allegation (NOA) indicated that it had filed an Abbreviated New Drug Submission (ANDS) for clopidogrel bisulfate tablets and that it sought approval (a Notice of Compliance) of that ANDS before the expiration of Canadian Patent 1,336,777, which expires August 12, 2012. Novopharm's NOA further alleged that the '777 patent was invalid. The action is in its early stages and no hearing date has been set.

**United Kingdom**

In December 2004, Aircoat Limited (Aircoat) filed a nullity petition in the Court of Session in Glasgow, Scotland. By its nullity petition, Aircoat seeks revocation of European Patent 0 281 459, which has been registered in the United Kingdom. European Patent 0 281 459 covers, inter alia, clopidogrel bisulfate, the active ingredient in PLAVIX*. Aircoat specifically alleges that the claims of European Patent 0 281 459 are invalid and the UK patent should be revoked on the grounds of lack of novelty and/or lack of inventive step. The action is in its early stages and no hearing date has been set.

**OTHER PATENT LITIGATION**

*TEQUIN.* The Company and Kyorin Pharmaceuticals Co., Ltd. (Kyorin) commenced a patent infringement action on March 23, 2004, against Teva USA and Teva Industries in the United States District Court for the Southern District of New York, relating to the antibiotic gatifloxacin, for which Kyorin holds the composition of matter patent and which the Company sells as TEQUIN. Teva Industries has since been dismissed from the case. This action relates to Teva's filing of an ANDA for a generic version of gatifloxacin tablets with a certification that the composition of matter patent, which expires in December 2007 but which has been granted a patent term extension until December 2009, is invalid or not infringed. The filing of the suit places a stay on the approval of Teva's generic product until June 2007, unless there is a court decision adverse to the Company and Kyorin before that date.

18

Source: BRISTOL MYERS SQUIBB, 10-Q, May 09, 2005

# EXHIBIT D



# Form 10-K

BRISTOL MYERS SQUIBB CO - bmy

Filed: March 14, 2006 (period: December 31, 2005)

Annual report which provides a comprehensive overview of the company for the past year

**Item 1A. RISK FACTORS.**

Any of the factors described below could significantly and negatively affect our business, prospects, financial condition, operating results, or our credit ratings, which could cause the trading price of our common stock to decline. Additional risks and uncertainties not presently known to the Company, or risks that the Company currently considers immaterial, may also impair the Company's operations.

*Litigation—PLAVIX\**

The Company cannot predict the outcome of the PLAVIX\* litigation in the U.S., which is scheduled to go to trial in June 2006. Although the plaintiffs intend to vigorously pursue enforcement of their patent rights in PLAVIX\*, it is not possible at this time reasonably to assess the outcome of this litigation, or, if the Company were not to prevail in the litigation, or, if Apotex Inc. and Apotex Corp. (Apotex), which now has final approval of its sNDA in the U.S. were to enter the market with a generic product at risk, the timing of potential generic competition for PLAVIX\*. However, loss of market exclusivity for PLAVIX\* and the subsequent development of generic competition and/or a decision by Apotex to launch generic clopidogrel at risk, would be material to the Company's sales of PLAVIX\* and results of operations and cash flows, and could be material to its financial condition and liquidity.

The Company has recorded deferred tax assets related to U.S. foreign tax credit and research tax credit carryforwards, which expire in varying amounts beginning in 2012. Realization of the foreign tax credit and research tax credit carryforwards is dependent on generating sufficient taxable income prior to their expiration. Although realization is not assured, management believes it is more likely than not that these deferred tax assets will be realized. The amount of foreign tax credit and research tax credit carryforwards considered realizable, however, could be reduced in the near term if the outcome of the PLAVIX\* litigation in the U.S. is unfavorable, and/or if the timing of successful generic competition for PLAVIX\* were to be accelerated. If such events occur, the Company may need to record significant additional valuation allowances against these deferred tax assets. For additional information on PLAVIX\* litigation see "Item 8. Financial Statements—Note 20. Legal Proceedings and Contingencies."

*Competition*

Competition from manufacturers of generic versions of our products is a major challenge as our products mature and patents expire on products. Generic companies are also increasingly seeking to challenge patents. Other competitive factors the Company faces include (i) new products developed by competitors that have lower prices or superior performance features or that are otherwise competitive with our current products; (ii) technological advances and patents attained by competitors; (iii) results of clinical studies related to our products or a competitor's products; (iv) problems with licensors, suppliers and distributors; and (v) business combinations among our competitors or major customers.

*Manufacturing*

The Company may experience difficulties and delays inherent in product development, manufacturing and sale, such as (i) products that may appear promising in development but fail to ever reach market or to be approved for additional indications for any number of reasons, including efficacy or safety concerns, the delay or denial of necessary regulatory approvals and the difficulty or excessive cost to manufacture; (ii) failure of one or more of the Company's products to achieve or maintain commercial viability; (iii) seizure or recalls of pharmaceutical products or forced closings of manufacturing plants; (iv) the failure to obtain, the imposition of limitations on the use of, or loss of patent and other intellectual property rights; (v) failure of the Company or any of its vendors or suppliers to comply with Current Good Manufacturing Practices and other application regulations and quality assurance guidelines that could lead to temporary manufacturing shutdowns, product shortages and delays in product manufacturing; and (vi) other manufacturing or distribution problems including changes in manufacturing production sites and limits to manufacturing capacity due to regulatory requirements, changes in types of products produced, such as biologics, or physical limitations that could impact continuous supply.

*Other Litigation*

The Company has continuing obligations under the Deferred Prosecution Agreement and United States Securities and Exchange Commission (SEC) Consent Order relating to wholesaler inventory and various accounting matters, pursuant to which the Company agreed to implement certain remedial measures, including all recommendations made by the Independent Monitor under with the Deferred Prosecution Agreement, undertake corporate reforms, and include additional disclosure in its periodic reports filed with the SEC and annual report to shareholders.

The Company may experience legal difficulties, including lawsuits, claims, proceedings and government investigations, any of which can preclude or delay commercialization of products or adversely affect operations, profitability, liquidity or financial condition, including (i) intellectual property disputes; (ii) sales and marketing practices in the U.S. and internationally; (iii) adverse decisions in litigation, including product liability and commercial cases; (iv) the Company's determination to self-insure for product liabilities effective July 1, 2004; (v) recalls or withdrawals of pharmaceutical products or forced closings of manufacturing plants; (vi) the failure to fulfill obligations under supply contracts with the government and other customers which may result in liability; (vii) product pricing and promotion matters; (viii) claims asserting violations of securities, antitrust, federal and state pricing and other laws; (ix) environmental, health and safety matters; and (x) tax liabilities. There can be no assurance that there will not be an increase in scope of these matters or that any future lawsuits, claims, proceedings or investigations will not be material.

*Regulation*

The Company could become subject to new government laws and regulations, such as (i) health care reform initiatives in the United States at the state and federal level and in other countries; (ii) changes in the FDA and foreign regulatory approval processes that may cause delays in approving, or preventing the approval of, new products; (iii) tax changes such as the phasing out of tax benefits heretofore available in the United States and certain foreign countries; (iv) new laws, regulations and judicial decisions affecting pricing or marketing within or across jurisdictions; and (v) changes in intellectual property law.

*Pricing Pressures*

Pharmaceutical products are subject to increasing price pressures and other restrictions in the United States and worldwide, including (i) rules and practices of managed care groups and institutional and governmental purchasers, (ii) judicial decisions and governmental laws and regulations related to Medicare, Medicaid and healthcare reform, including the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, and (iii) the potential impact of importation restrictions, legislative or otherwise, pharmaceutical reimbursement, Medicare Part D Formularies, and product pricing in general.

*Reliance on Third Parties*

The Company relies on vendors, partners and other third parties to meet their contractual, regulatory and other obligations in relation to their arrangements with the Company.

*Economic Factors*

The Company is exposed to changes in interest rates and fluctuation of foreign currency exchange rates and other economic factors over which the Company has no control.

**Note 20 LEGAL PROCEEDINGS AND CONTINGENCIES**

Various lawsuits, claims, proceedings and investigations are pending against the Company and certain of its subsidiaries. In accordance with SFAS No. 5, *Accounting for Contingencies* , the Company records accruals for such contingencies when it is probable that a liability will be incurred and the amount of loss can be reasonably estimated. These matters involve antitrust, securities, patent infringement, pricing, sales and marketing practices, environmental, health and safety matters, product liability and insurance coverage. The most significant of these matters are described below. There can be no assurance that there will not be an increase in the scope of these matters or that any future lawsuits, claims, proceedings or investigations will not be material. Management continues to believe, as previously disclosed, that during the next few years, the aggregate impact, beyond current reserves, of these and other legal matters affecting the Company is reasonably likely to be material to the Company's results of operations and cash flows, and may be material to its financial condition and liquidity.

The Company's decision to obtain insurance coverage is dependent on market conditions, including cost and availability, existing at the time such decisions are made. As a result of external factors, the availability of insurance has become more restrictive while the cost has increased significantly. The Company has evaluated its risks and has determined that the cost of obtaining insurance outweighs the benefits of coverage protection against losses and as such, became self-insured for product liabilities effective July 1, 2004. The Company will continue to evaluate these risks and benefits to determine its insurance needs in the future.

## INTELLECTUAL PROPERTY

### PLAVIX* Litigation

PLAVIX* is currently the Company's largest product ranked by net sales. Net sales of PLAVIX* were approximately $3.8 billion for the year ended December 31, 2005. The PLAVIX* patents are subject to a number of challenges in the United States and Canada as described below.

Currently, the Company expects PLAVIX* to have market exclusivity in the United States until 2011. Apotex announced that on January 2006 it had received final approval of its aNDA for clopidogrel bisulfate from the FDA. Accordingly, Apotex could decide to launch a generic product at risk at any time. Such generic competition would likely result in substantial decreases in the sales of PLAVIX* in the United States. The Company expects that the final approval of the aNDAs of the other defendants will be subject to any potential 180-day semi-exclusivity of Apotex.

### United States

The Company's U.S. territory partnership under its alliance with Sanofi is a plaintiff in four pending patent infringement lawsuits instituted in the U.S. District Court for the Southern District of New York entitled Sanofi-Synthelabo, Sanofi-Synthelabo Inc., and Bristol-Myers Squibb Sanofi Pharmaceuticals Holding Partnership v. Apotex Inc. and Apotex Corp. (Apotex), 02-CV-2255 (SHS); Sanofi-Synthelabo, Sanofi-Synthelabo Inc. and Bristol-Myers Squibb Sanofi Pharmaceuticals Holding Partnership v. Dr. Reddy's Laboratories, LTD, and Dr. Reddy's Laboratories, Inc., 02-CV-3672 (SHS); Sanofi-Synthelabo, Sanofi-Synthelabo Inc., and Bristol-Myers Squibb Sanofi Pharmaceuticals Holding Partnership v. Teva Pharmaceuticals USA, Inc. and Teva Pharmaceuticals Industries, Ltd., 04-CV-7458 and Sanofi-Aventis, Sanofi-Synthelabo Inc., and Bristol-Myers Squibb Sanofi Pharmaceuticals Holding Partnership v. Cobalt Pharmaceuticals Inc., 05-CV-8055 (SHS). Teva Pharmaceuticals Industries, Ltd. has since been dismissed from the case. Proceedings involving PLAVIX* are also in progress in Canada.

The U.S. suits were filed on March 21, 2002, May 14, 2002, September 23, 2004 and September 16, 2005, respectively, and were based on U.S. Patent No. 4,847,265, a composition of matter patent, which discloses and claims, among other things, the hydrogen sulfate salt of clopidogrel, which is marketed as PLAVIX*. The first two suits were also based on U.S. Patent No. 5,576,328, which discloses and claims, among other things, the use of clopidogrel to prevent a secondary ischemic event. The plaintiffs later withdrew Patent No. 5,576,328 from the two lawsuits. Plaintiffs' infringement position is based on defendants' filing of their Abbreviated New Drug Applications (aNDA) with the FDA, seeking approval to sell generic clopidogrel bisulfate prior to the expiration of the composition of matter patent in 2011. The defendants responded by alleging that the patent is invalid and/or unenforceable. Apotex has added antitrust counterclaims. The first two cases were consolidated for discovery. Fact discovery closed on October 15, 2003 and expert discovery was completed in November 2004. The joint pretrial order in the Apotex case was submitted May 27, 2005, and the court approved it.

The court has scheduled trial in the Apotex matter to begin in June 2006. The Apotex case will be tried without a jury. Plaintiffs filed a motion to consolidate the Dr. Reddy's case with the Apotex case for trial. That motion is pending before the court. In a stipulation approved by the U.S. District Court for the Southern District of New York on April 15, 2005, all parties to the patent infringement litigation against Teva have agreed that the Teva litigation will be stayed, pending resolution of the Apotex and Dr.

111

**Note 20 LEGAL PROCEEDINGS AND CONTINGENCIES (Continued)**

Reddy's litigation, and that the parties to the Teva litigation will be bound by the outcome of the litigation in the District Court against Apotex or Dr. Reddy's. On April 18, 2005, the Court denied as moot the pending motion to consolidate the Teva litigation with the litigation against Apotex and Dr. Reddy's, as a result of the Court's approval of the stipulation. The parties submitted a similar stipulation to the court in the Cobalt case on October 12, 2005, and the Court approved it. Thus the case against Cobalt is also stayed.

On April 20, 2005, Apotex filed a complaint for declaratory judgment against Sanofi-Aventis, Sanofi-Aventis, Inc., and Bristol-Myers Squibb Sanofi Pharmaceuticals Holding Partnership. The complaint seeks a declaratory judgment that the '265 patent is unenforceable due to alleged inequitable conduct committed during the prosecution of the patent. The defendants responded by submitting a motion to dismiss, which the court granted on September 12, 2005. Apotex has filed an appeal to the United States Court of Appeals for the Federal Circuit.

The Company's U.S. territory partnership under its alliance with Sanofi is a plaintiff in another pending patent infringement lawsuit instituted in the U.S. District Court for the District of New Jersey entitled Sanofi-Synthelabo, Sanofi-Synthelabo Inc. and Bristol-Myers Squibb Sanofi Pharmaceuticals Holding Partnership v. Watson Pharmaceuticals, Inc. and Watson Laboratories, Inc. 2:04-CV-4926. The suit was filed October 7, 2004 and was based on U.S. patent 6,429,210, which discloses and claims a particular crystalline or polymorph form of the hydrogen sulfate salt of clopidogrel, which is marketed as PLAVIX*. The case is in the discovery phase. On December 8, 2005, the court permitted Watson to pursue its declaratory judgment counterclaim with respect to U.S. Patent No. 6,504,030. On January 24, 2006, the Court approved the parties' stipulation to stay this case pending the outcome of the trial in the Apotex matter. Thus this case is officially stayed.

**Canada**

Sanofi-Synthelabo and Sanofi-Synthelabo Canada Inc. instituted a prohibition action in the Federal Court of Canada against Apotex Inc. (Apotex) and the Minister of Health in response to a Notice of Allegation (NOA) from Apotex directed against Canadian Patent 1,336,777 covering clopidogrel bisulfate. Apotex's Notice of Allegation indicated that it had filed an Abbreviated New Drug Submission (ANDS) for clopidogrel bisulfate tablets and that it sought approval (a Notice of Compliance) of that ANDS before the expiration of Canadian Patent 1,336,777, which expires August 12, 2012. Apotex's NOA further alleged that the '777 patent was invalid or not infringed. A hearing was held from February 21 to February 25, 2005. On March 21, 2005, the Canadian Federal Court of Ottawa rejected Apotex's challenge to the Canadian PLAVIX* patent and held that the asserted claims are novel, not obvious and infringed, and granted Sanofi's application for an order of prohibition against the Minister of Health and Apotex Inc. That order of prohibition will preclude approval of Apotex's ANDS until the patent expires in 2012, unless the Federal Court's decision is reversed on appeal. Apotex has filed an appeal.

Sanofi-Synthelabo and Sanofi-Synthelabo Canada Inc. also instituted a prohibition action in the Federal Court of Canada against Apotex and the Minister of Health in response to a NOA directed against Canadian Patent 2,334,870 covering the form 2 polymorph of clopidogrel bisulfate. Apotex seeks approval of its ANDS before expiration of the '870 patent in 2019. Apotex alleges in its NOA that it does not infringe the '870 patent and that it is invalid. That action was discontinued.

Sanofi-Aventis and Sanofi-Synthelabo Canada Inc. instituted a prohibition action in the Federal Court of Canada against Novopharm Limited (Novopharm) and the Minister of Health in response to a Notice of Allegation from Novopharm directed against Canadian Patent 1,336,777 covering clopidogrel bisulfate. Novopharm's NOA indicated that it had filed an ANDS for clopidogrel bisulfate tablets and that it sought approval (a Notice of Compliance) of that ANDS before the expiration of Canadian Patent 1,336,777, which expires August 12, 2012. Novopharm's NOA further alleged that the '777 patent was invalid. Novopharm has since withdrawn its NOA and agreed to be bound by the result in the Apotex proceeding. The prohibition action has therefore been discontinued.

Sanofi-Aventis and Sanofi-Synthelabo Canada instituted a prohibition action in the Federal Court of Canada against Cobalt Pharmaceuticals Inc. and the Minister of Health in response to a Notice of Allegation from Cobalt directed against Canadian patents 1,336,777 and 2,334,870. Cobalt's NOA indicated that it has filed an ANDS for clopidogrel bisulfate tablets and that it sought a Notice of Compliance for that ANDS before the expiration of the '777 and '870 patents. Cobalt alleged that the '777 patent was invalid and that the '870 patent was invalid and not infringed. The case has been stayed pending the outcome of the Apotex appeal.

Although the plaintiffs intend to vigorously pursue enforcement of their patent rights in PLAVIX*, it is not possible at this time reasonably to assess the outcome of these lawsuits, or, if the Company were not to prevail in these lawsuits, or, if Apotex, which now has final approval of its aNDA in the U.S. were to enter the market with a generic product at risk, the timing of potential generic competition for PLAVIX*. It also is not possible reasonably to estimate the impact of these lawsuits on the Company.

112

# EXHIBIT E



# Form 8-K

BRISTOL MYERS SQUIBB CO - bmy

Filed: March 21, 2006 (period: March 21, 2006)

Report of unscheduled material events or corporate changes.

# Table of Contents

Item 8.01.  Other Events.
Item 9.01   Financial Statement and Exhibits.
SIGNATURES
EXHIBIT INDEX

EX-99.1 (PRESS RELEASE)

EX-99.2 (SUPPLEMENTAL INFORMATION)

# UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

---

## FORM 8-K

---

### CURRENT REPORT
**Pursuant to Section 13 OR 15(d) of The Securities Exchange Act Of 1934**

**Date of Report (Date of earliest event reported): March 21, 2006**

---

# BRISTOL-MYERS SQUIBB COMPANY
**(Exact Name of Registrant as Specified in its Charter)**

---

| **Delaware** | **1-1136** | **22-079-0350** |
|---|---|---|
| (State or Other Jurisdiction of Incorporation) | (Commission File Number) | (IRS Employer Identification Number) |

**345 Park Avenue**
**New York, NY, 10154**
**(Address of Principal Executive Office)**

**Registrant's telephone number, including area code: (212) 546-4000**

---

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions ( *see* General Instruction A.2. below):

☐   Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐   Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐   Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐   Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Item 8.01. Other Events.**

On March 21, 2006, sanofi-aventis and Bristol-Myers Squibb Company (the "Company) issued a joint press release announcing that they have reached an agreement subject to certain conditions with Apotex Inc. and Apotex Corp. to settle the patent infringement lawsuit pending between the parties in the U.S. District Court for the Southern District of New York. The lawsuit relates to the validity of a composition of matter patent for clopidogrel bisulfate, a medicine made available in the United States by sanofi-aventis and the Company as PLAVIX* . The trial in the lawsuit had previously been scheduled to begin in June 2006. As a result of the agreement, the Court has now suspended the trial date pending the possible finalization of the proposed settlement.

The agreement is subject to certain conditions, including antitrust review and clearance by the Federal Trade Commission and state attorneys general. There is a significant risk that required antitrust clearance will not be obtained. In such event, the proposed settlement would be terminated, and the litigation would be reinstated in the same Court. If the litigation were reinstated, sanofi-aventis and the Company intend to vigorously pursue patent enforcement of their patent rights in PLAVIX* .

It is not possible at this time reasonably to assess the outcome of this lawsuit or the timing of potential generic competition for PLAVIX*. Apotex announced in January 2006 that it had received final approval of its aNDA for clopidogrel bifulfate from the FDA. As a result, if the litigation were reinstated, Apotex could launch a generic clopidogrel at risk.

A copy of the press release is attached to this report as Exhibit 99.1. Also attached to this report as Exhibit 99.2 is supplemental information posted on the Company's website at www.bms.com .

**Item 9.01 Financial Statement and Exhibits.**

**(d) Exhibits**

99.1    Press release, dated March 21, 2006
99.2    Supplemental information posted on Bristol-Myers Squibb Company's website at www.bms.com

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the Registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

Bristol-Myers Squibb Company

Date: March 21, 2006

By:     /s/ Sandra Leung

Name:   Sandra Leung
Title:    Secretary

**EXHIBIT INDEX**

| Exhibit No. | Description |
|---|---|
| 99.1 | Press release, dated March 21, 2006 |
| 99.2 | Supplemental information posted on Bristol-Myers Squibb Company's website at www.bms.com |


Bristol-Myers Squibb Company

**MEDIA**

Jean-Marc Podvin
33-1-53-77-42-43
jean-marc.podvin@sanofi-aventis.com

Laura Hortas
609-252-4587
laura.hortas@bms.com
Tony Plohoros
609-252-7938
tony.plohoros@bms.com

**INVESTORS**

Sanjay Gupta
33-1-53-77-45-45
sanjay.gupta@sanofi-aventis.com

John Elicker
212-546-3775
john.elicker@bms.com

**SANOFI-AVENTIS AND BRISTOL-MYERS SQUIBB ANNOUNCE
AGREEMENT TO SETTLE U.S. PLAVIX® LITIGATION WITH APOTEX
SUBJECT TO CERTAIN CONDITIONS**

**PARIS, FRANCE AND NEW YORK, NEW YORK (March 21, 2006)** – Sanofi-aventis (Paris Bourse: EURONEXT: SAN; and New York: NYSE: SNY) and Bristol-Myers Squibb Company (NYSE: BMY) announced today that they have reached an agreement subject to certain conditions with Apotex Inc. and Apotex Corp. to settle the patent infringement lawsuit pending between the parties in the U.S. District Court for the Southern District of New York. The lawsuit relates to the validity of a composition of matter patent for clopidogrel bisulfate (the '265 patent), a medicine made available in the United States by sanofi-aventis and Bristol-Myers Squibb as PLAVIX® . The trial in the lawsuit had previously been scheduled to begin in June 2006. As a result of the agreement, the Court has now suspended the trial date pending the possible finalization of the proposed settlement.

Under the terms of the proposed settlement, sanofi-aventis would grant Apotex a royalty-bearing license under the '265 patent to manufacture and sell its FDA-approved clopidogrel bisulfate product in the United States, and Apotex would agree not to sell a clopidogrel product in the United States until the effective date of the license. The license would be exclusive (except for the PLAVIX® brand product) and would be effective on September 17, 2011, with

the possibility of an effective date earlier in 2011 if sanofi-aventis does not receive an extension of exclusivity for pediatric use under the '265 patent. If a third party obtains a final decision that the '265 patent is invalid or unenforceable, under certain circumstances, the license to Apotex may become effective earlier. As previously disclosed, sanofi-aventis and Bristol-Myers Squibb have filed a patent infringement claim against Dr. Reddy's Laboratories with respect to the '265 patent. Sanofi-aventis and Bristol-Myers Squibb have approached Dr. Reddy's to discuss a possible settlement of this matter. The outcome of these discussions cannot be assured.

The agreement includes other provisions, including payments by sanofi-aventis and Bristol-Myers Squibb to Apotex in the event of either finalization of the proposed settlement or termination of the agreement. Payments due to Apotex under the agreement are payable 50% by sanofi-aventis and 50% by Bristol-Myers Squibb.

The proposed settlement is subject to certain conditions, including antitrust review and clearance by the Federal Trade Commission and state attorneys general. There is a significant risk that required antitrust clearance will not be obtained. In such event, the proposed settlement would be terminated, and the litigation would be reinstated in the same Court.

If the litigation were reinstated, sanofi-aventis and Bristol-Myers Squibb intend to vigorously pursue enforcement of their patent rights in PLAVIX®. It is not possible at this time reasonably to assess the outcome of this lawsuit or the timing of potential generic competition for PLAVIX®. Apotex announced in January 2006 that it had received final approval of its aNDA for clopidogrel bisulfate from the FDA. As a result, if the litigation were reinstated, Apotex could launch a generic clopidogrel product at risk.

It also is not possible reasonably to estimate the impact of this lawsuit on sanofi-aventis and Bristol-Myers Squibb. However, loss of market exclusivity of PLAVIX® and the subsequent development of generic competition would be material to Sanofi-Aventis' and Bristol-Myers Squibb's sales of PLAVIX® and results of operations and cash flows, and could be material to sanofi-aventis' and Bristol-Myers Squibb's financial condition and liquidity.

2

Questions and answers relating to this press release are posted at www.sanofi-aventis.com and www.bms.com/news.

**Statements on Cautionary Factors**

*Sanofi-aventis*

This press release contains forward-looking statements as defined in the Private Securities Litigation Reform Act of 1995. Forward-looking statements are statements that are not historical facts. These statements include financial projections and estimates and their underlying assumptions, statements regarding plans, objectives and expectations with respect to future operations, products and services, and statements regarding future performance. Forward-looking statements are generally identified by the words "expect," "anticipates," "believes," "intends," "estimates," "plans" and similar expressions. Although sanofi-aventis' management believes that the expectations reflected in such forward-looking statements are reasonable, investors are cautioned that forward-looking information and statements are subject to various risks and uncertainties, many of which are difficult to predict and generally beyond the control of sanofi-aventis, that could cause actual results and developments to differ materially from those expressed in, or implied or projected by, the forward-looking information and statements. These factors include, among other things, the likelihood of obtaining the required antitrust clearance and satisfying the other conditions to the proposed settlement and, if such conditions are not satisfied, the outcome of the Apotex lawsuit, as well as the risk of a third party obtaining a decision of invalidity or unenforceability of the '265 patent notwithstanding finalization of the proposed settlement. These risks and uncertainties include those discussed or identified in the public filings with the SEC and the AMF made by sanofi-aventis, including those listed under "Risk Factors" and "Cautionary Statement Regarding Forward-Looking Statements" in sanofi-aventis' annual report on Form 20-F for the year ended December 31, 2004. Other than as required by applicable law, sanofi-aventis does not undertake any obligation to update or revise any forward-looking information or statements.

3

*Bristol-Myers Squibb*

This press release contains certain forward-looking statements within the meaning of the Private Securities Litigation Reform Act of 1995 regarding, among other things, statements relating to goals, plans and projections regarding Bristol-Myers Squibb's financial position, results of operations, financial condition, liquidity and other operating matters. These statements may be identified by the fact that they use words such as "anticipate," "estimates," "should," "expect," "guidance," "project," "intend," "plan," "believe" and other words and terms of similar meaning in connection with any discussion of future operating or financial performance. Such forward-looking statements are based on current expectations and involve inherent risks and uncertainties, including factors that could delay, divert or change any of them, and could cause actual outcomes and results to differ materially from current expectations. These factors include, among other things, the likelihood of obtaining the required antitrust clearance, the risk of a third party obtaining a decision of invalidity or unenforceability of the '265 patent notwithstanding finalization of the proposed settlement, and satisfying the other conditions to the proposed settlement and, if such conditions are not satisfied, the outcome of the Apotex lawsuit. For further details and a discussion of these and other risks and uncertainties, see Bristol-Myers Squibb's periodic reports, including current reports on Form 8-K, quarterly reports on Form 10-Q and those listed under "Risk Factors" and "Cautionary Statement Regarding Forward-Looking Statements" in the annual report on Form 10-K for the year ended December 31, 2005, furnished to and filed with the Securities and Exchange Commission. Bristol-Myers Squibb undertakes no obligation to publicly update any forward-looking statement, whether as a result of new information, future events or otherwise.

**About Sanofi-Aventis**

Sanofi-aventis is the world's third largest pharmaceutical company, ranking number one in Europe. Backed by a world-class R&D organization, sanofi-aventis is developing leading positions in seven major therapeutic areas: cardiovascular, thrombosis, oncology, metabolic diseases, central nervous system, internal medicine, and vaccines. Sanofi-aventis U.S. is listed in Paris (EURONEXT: SAN) and New York (NYSE: SNY).

4

**About Bristol-Myers Squibb**

Bristol-Myers Squibb is a global pharmaceutical and related health care company whose mission is to extend and enhance human life.

###

Exhibit 99.2

     

**SANOFI-AVENTIS AND BRISTOL-MYERS SQUIBB ANNOUNCE AGREEMENT
TO SETTLE U.S. PLAVIX® LITIGATION WITH APOTEX
SUBJECT TO CERTAIN CONDITIONS**

<u>**Questions and Answers**</u>

**Q1.    Why did sanofi-aventis and Bristol-Myers Squibb (BMS) enter into this agreement?**

A1.    Sanofi-aventis and BMS entered into this agreement based on the balance between the risk of outcome in the litigation and the certainty of a settlement.

**Q2.    Does this mean that you think that Apotex's invalidity case is strong?**

A2.    No. We continue to believe that the '265 patent is valid. If the settlement is not finalized, we intend to vigorously pursue enforcement of our patent rights in PLAVIX.

**Q3.    What is the status of the other defendants (Dr. Reddy's, Cobalt, Teva)?**

A3.    We have contacted Dr. Reddy's to discuss a settlement with them. There can be no assurance that a settlement will be reached. We will communicate with Teva and Cobalt in due course.

**Q4.    Is this another case of an innovator company and generic company colluding to prevent a generic from coming on the market sooner?**

A4.    No. Under the agreement, Apotex will in fact enter the market before exclusivity on the '265 patent expires.

**Q5:    How long will the license to Apotex be in effect prior to the loss of exclusivity?**

A5    We expect the license will be in effect eight months prior to the loss of exclusivity.

**Q6.    What do you think about the prospects for obtaining FTC and state attorneys general antitrust review and clearance?**

A6    As we said in the release, there is a significant risk that the required antitrust clearance will not be obtained.

**Q7.    What is the process for obtaining antitrust review and clearance? How long do you think that will take?**

A7.    We will submit the settlement agreement to the FTC and state attorneys general for review promptly. We cannot predict how long they will take to evaluate the agreement.


**Q8.    What happens if the antitrust review and clearance is not obtained?**

A8.    As discussed in the release, if antitrust review and clearance is not obtained, the agreement would be terminated, Apotex would receive a payment, the litigation would be reinstated and Apotex could launch a generic clopidogrel at risk. If the litigation is reinstated, we would vigorously pursue enforcement of our patent rights in Plavix.


**Q9.    What are the financial terms of the settlement? Will you establish a reserve for the settlement?**

A9.    In the first quarter of 2006, sanofi-aventis and BMS each expect to establish a reserve that we do not expect to be material which represents the minimum estimated amount of payments under the agreement. Sanofi-aventis and BMS may record additional reserves in the future. At this time, we cannot reasonably estimate the amount of any future reserves. If the settlement is finalized, the agreement provides for certain possible payments to Apotex at the time the license becomes effective. While we do not currently believe it is likely that the conditions requiring such payments will occur, such payments, if required, could be material.


**Q10.    What are the other conditions to the settlement?**

A10.    We will not discuss the conditions and terms of the settlement other than what is disclosed in the press release.

###

2

_____

Created by 10KWizard    www.10KWizard.comSource: BRISTOL MYERS SQUIBB, 8-K, March 21, 2006