# EXHIBIT I



# FORM 8-K

## BRISTOL MYERS SQUIBB CO - bmy

**Filed: July 27, 2006 (period: July 27, 2006)**

Report of unscheduled material events or corporate changes.

As previously disclosed, the company has experienced substantial revenue losses due to the expiration of market exclusivity protection for certain of its products. The company expects substantial incremental revenue losses in 2006, representing continuing declines in revenues from products that lost market exclusivity in previous years, as well as declines in revenues of certain additional products that have lost market exclusivity this year. For 2006, the company estimates reductions of net sales in the range of $1.4 billion to $1.5 billion from the 2005 levels for products that have lost exclusivity protection in 2004, 2005 or 2006, primarily PRAVACHOL®, TAXOL® and CEFZIL®. The timing and amounts of sales reductions from exclusivity losses, their realization in particular periods and the eventual levels of remaining sales revenues are uncertain and dependent on the levels of sales at the time exclusivity protection ends, the timing and degree of development of generic competition (speed of approvals, market entry and impact) and other factors.

The company's expectations for future sales growth include increases in sales of PLAVIX®, which had net sales of $3.8 billion for 2005, and is currently the company's largest product ranked by net sales. The composition of matter patent for PLAVIX®, which expires in 2011, is currently the subject of litigation in the United States. As previously disclosed, the Apotex litigation has been suspended pending possible finalization of the previously announced proposed settlement among the parties. The proposed settlement is subject to certain conditions, including antitrust review and clearance by the Federal Trade Commission (FTC) and state attorneys general. In the response to concerns raised by the FTC and state attorneys general to that proposed settlement agreement, the company, sanofi-aventis and Apotex have amended the agreement. The modified agreement remains under review by the FTC and the state attorneys general. There is no assurance that the terms of the modified agreement will address all the concerns of the FTC or the state attorneys general. There remains significant risk that antitrust clearance will not be obtained. In such event, the proposed settlement would be terminated, and the litigation would be reinstated. If the litigation were reinstated, sanofi-aventis and Bristol-Myers Squibb intend to vigorously pursue enforcement of their patent rights in PLAVIX®. Additional patent proceedings involving PLAVIX® are ongoing in the United States and in less significant markets for the product. The company continues to believe that the PLAVIX® patents are valid and infringed, and with its alliance partner and patent-holder sanofi-aventis, is vigorously pursuing these cases. It is not possible at this time reasonably to assess the ultimate outcome of these litigations, or the timing of potential generic competition for PLAVIX®.

10

Source: BRISTOL MYERS SQUIBB, 8-K, July 27, 2006

The company learned yesterday that the Antitrust Division of the United States Department of Justice is conducting a criminal investigation regarding the proposed settlement of the Apotex litigation described above.

The company and its subsidiaries are the subject of a number of significant pending lawsuits, claims, proceedings and investigations, including the matters described above. It is not possible at this time reasonably to assess the final outcome of these investigations or litigations. Management continues to believe, as previously disclosed, that during the next few years, the aggregate impact, beyond current reserves, of these and other legal matters affecting the company is reasonably likely to be material to the company's results of operations and cash flows, and may be material to its financial condition and liquidity. The company's expectations for 2006 described above do not reflect the potential impact of litigation on the company's results of operations.

For additional discussion of legal matters including PLAVIX® patent litigation, see "Item 8. Financial Statements and Supplementary Data - Note 17 Legal Proceedings and Contingencies" in the company's Form 10-Q Quarterly Report for the period ended March 31, 2006.

Use of Non-GAAP Financial Information

This press release contains non-GAAP earnings and earnings per share information adjusted to exclude certain costs, expenses, gains and losses and other specified items. Among the items in GAAP earnings but excluded for purposes of determining adjusted earnings are: gains or losses from sale of businesses and product lines; from sale or write-down of equity investments and from discontinuations of operations; restructuring items that meet the requirements of SFAS 112 for severance and SFAS 146 for other exit costs; accelerated depreciation charges under SFAS 144 related to restructuring items described above; asset impairments; charges and recoveries relating to significant legal proceedings; upfront and milestone payments for in-licensing of products that have not achieved regulatory approval that are immediately expensed; copromotion or alliance charges and payments for in-process research and development which under GAAP are immediately expensed rather than amortized over the life of the agreement; income from upfront and milestone payments that is immediately recognized for out-licensing of products, including deferred income recognized upon termination; and significant tax events, including the repatriation of special dividends pursuant to the American Jobs Creation Act of 2004. This information is intended to enhance an investor's overall understanding of the company's past financial performance and prospects for the future. For example, non-GAAP earnings per share information is an indication of the company's baseline performance before items that are considered by the company not to be reflective of the company's operational results. In addition, this information is among the primary indicators the company uses as a basis for evaluating company performance, allocating resources, setting incentive compensation targets, and planning and forecasting of future periods. This information is not intended to be considered in isolation or as a substitute for diluted earnings per share prepared in accordance with GAAP.

11

# EXHIBIT J

Copyright 2006 PR Newswire Association LLC.
All Rights Reserved.
PR Newswire US

July 29, 2006 Saturday 12:02 AM GMT

**LENGTH:** 1205 words

**HEADLINE:** PLAVIX(R) Litigation Settlement Fails to Receive Antitrust Clearance From States Attorneys General

**DATELINE:** PARIS and NEW YORK July 28

**BODY:**

PARIS and NEW YORK, July 28 /PRNewswire-FirstCall/ -- Sanofi-aventis (Paris Bourse: EURONEXT: SAN; and New York: NYSE: SNY) and Bristol-Myers Squibb (New York: NYSE: BMY) ("companies") today announced that their agreement, as amended, with Apotex Inc. and Apotex Corp., ("Apotex") to settle the patent infringement lawsuit pending between the parties in the U.S. District Court for the Southern District of New York has failed to receive required antitrust clearance from the state attorneys general. The lawsuit relates to the validity of a composition of matter patent for clopidogrel bisulfate (the '265 patent), a medicine made available in the United States by sanofi-aventis and Bristol-Myers Squibb as PLAVIX(R). When sanofi-aventis and Bristol-Myers Squibb initially announced the settlement on March 21, 2006, the companies said that there was a significant risk that required antitrust clearance would not be obtained.

The agreement also required the approval of the Federal Trade Commission ("FTC"). The FTC has not yet advised the companies of its decision. However, the agreement requires the approval of both the FTC and the states attorneys general to become effective. The originally scheduled trial date had been suspended pending possible finalization of the proposed settlement. A new trial date has not yet been established. As previously disclosed, sanofi- aventis and Bristol-Myers have filed patent infringement claims against three other generic pharmaceutical companies with respect to the '265 patent.

As previously disclosed, the companies learned earlier this week that the Antitrust Division of the United States Department of Justice is conducting a criminal investigation regarding the proposed settlement. It is not possible at this time reasonably to assess the outcome of the investigation or its impact on the companies.

It is also not possible at this time reasonably to assess the outcome on the PLAVIX(R) litigation, including the Apotex matter, or the timing of potential generic competition for PLAVIX(R). Apotex announced in January 2006 that it had received final approval of its aNDA for clopidogrel bisulfate from the FDA. As a result, Apotex could launch a generic clopidogrel product at its risk.

Under the terms of the agreement, Apotex may be eligible to receive a reimbursement payment from the companies for certain short-dated inventories of Apotex's clopidogrel bisulfate product, the amount, if any, of which has not been quantified. Any payment to Apotex will be paid 50% by sanofi-aventis and 50% by Bristol-Myers Squibb. As previously disclosed, each of the companies recorded reserves in the amount of $20 million in the first quarter of this year. It also is not possible reasonably to estimate the impact of the PLAVIX(R) litigation on sanofi-aventis and Bristol-Myers Squibb. However, loss of market exclusivity of PLAVIX(R) and the subsequent development of generic competition would be material to sanofi-aventis' and Bristol-Myers Squibb's sales of PLAVIX(R) and results of

PLAVIX(R) Litigation Settlement Fails to Receive Antitrust Clearance From States Attorneys General PR Newswire
US July 29, 2006 Saturday 12:02 AM GMT

operations and cash flows, and could be material to sanofi-aventis's and Bristol-Myers Squibb's financial condition and liquidity.

The companies intend to vigorously pursue enforcement of their patent rights in PLAVIX(R).

About Sanofi-aventis

Sanofi-aventis is the world's third largest pharmaceutical company, ranking number one in Europe. Backed by a world-class R&D organization, sanofi-aventis is developing leading positions in seven major therapeutic areas: cardiovascular, thrombosis, oncology, metabolic diseases, central nervous system, internal medicine, and vaccines.

About Bristol-Myers Squibb

Bristol-Myers Squibb is a global pharmaceutical and related health care company whose mission is to extend and enhance human life.

Statements on Cautionary Factors

Sanofi-aventis

This press release contains forward-looking statements as defined in the Private Securities Litigation Reform Act of 1995. Forward-looking statements are statements that are not historical facts. These statements include financial projections and estimates and their underlying assumptions, statements regarding plans, objectives and expectations with respect to future events, operations, products and services, and statements regarding future performance. Forward-looking statements are generally identified by the words "expect," "anticipates," "believes," "intends," "estimates," "plans" and similar expressions. Although sanofi-aventis' management believes that the expectations reflected in such forward-looking statements are reasonable, investors are cautioned that forward-looking information and statements are subject to various risks and uncertainties, many of which are difficult to predict and generally beyond the control of sanofi-aventis, that could cause actual results and developments to differ materially from those expressed in, or implied or projected by, the forward-looking information and statements. These risks and uncertainties include risks that may arise from the Department of Justice's criminal investigation as well as those discussed or identified in the public filings with the SEC and the AMF made by sanofi-aventis, including those listed under "Risk Factors" and "Cautionary Statement Regarding Forward-Looking Statements" in sanofi-aventis' annual report on Form 20-F for the year ended December 31, 2005. Other than as required by applicable law, sanofi-aventis does not undertake any obligation to update or revise any forward-looking information or statements.

Bristol-Myers Squibb

This press release contains certain forward-looking statements within the meaning of the Private Securities Litigation Reform Act of 1995 regarding, among other things, statements relating to goals, plans and projections regarding Bristol-Myers Squibb's future operating performance. Such forward-looking statements are based on current expectations and involve inherent risks and uncertainties, including factors that could delay, divert or change any of them, and could cause actual outcomes and results to differ materially from current expectations. Bristol-Myers Squibb cannot predict the outcomes of the PLAVIX(R) litigation or the U.S. Department of Justice's criminal investigation. For further details and a discussion of these and other risks and uncertainties, see Bristol-Myers Squibb's periodic reports, including current reports on Form 8-K, quarterly reports on Form 10-Q and those listed under "Risk Factors" and "Cautionary Statement Regarding Forward- Looking Statements" in the annual report on Form 10-K for the year ended December 31, 2005, furnished to and filed with the Securities and Exchange Commission. Bristol-Myers Squibb undertakes no obligation to publicly update any forward-looking statement, whether as a result of new information, future events or otherwise.

CONTACT: Media: Jean-Marc Podvin, Sanofi-aventis, +33-1-53-77-42-43,

PLAVIX(R) Litigation Settlement Fails to Receive Antitrust Clearance From States Attorneys General PR Newswire
US July 29, 2006 Saturday 12:02 AM GMT

jean-marc.podvin@sanofi-aventis.com , or Tony Plohoros, +1-609-252-7938,
tony.plohoros@bms.com ; or Investors: Sanjay Gupta, Sanofi-aventis,
+1-33-1-53-77-45-45,  sanjay.gupta@sanofi-aventis.com ; or John Elicker,
+1-212-546-3775,  john.elicker@bms.com

Web site:  http://www.bms.com/

SOURCE Bristol-Myers Squibb

**URL:** http://www.prnewswire.com

**LOAD-DATE:** July 29, 2006

# EXHIBIT K



# Form 10-Q

## BRISTOL MYERS SQUIBB CO - bmy

Filed: August 08, 2006 (period: June 30, 2006)

Quarterly report which provides a continuing view of a company's financial position

Table of Contents

**Note 17. Legal Proceedings and Contingencies (Continued)**

**INTELLECTUAL PROPERTY**

**PLAVIX\* Litigation**

PLAVIX\* is currently the Company's largest product ranked by net sales. Net sales of PLAVIX\* were approximately $3.8 billion for the year ended December 31, 2005. The PLAVIX\* patents are subject to a number of challenges in the United States and other less significant markets for the product. It is not possible reasonably to estimate the impact of these lawsuits on the Company. However, loss of market exclusivity of PLAVIX\* and development of generic competition would be material to the Company's sales of PLAVIX\* and results of operations and cash flows, and could be material to the Company's financial condition and liquidity. The Company currently anticipates that generic clopidogrel bisulfate product will be delivered to customers shortly by Apotex Inc. and Apotex Corp. (Apotex). The Company and Sanofi intend to vigorously pursue enforcement of their patent rights in PLAVIX\*.

**United States**

On March 21, 2006, the Company and Sanofi (the companies) announced that they had executed a proposed settlement agreement (the March Agreement) with Apotex to settle the patent infringement lawsuit pending between the parties in the U.S. District Court for the Southern District of New York. The lawsuit relates to the validity of a composition of a matter patent for clopidogrel bisulfate (the '265 Patent), a medicine made available in the United States by the companies as PLAVIX\*. A copy of the March Agreement is filed as an exhibit to this Form 10-Q. The proposed settlement was subject, among other things, to antitrust review and clearance by both the Federal Trade Commission (FTC) and state attorneys general. On June 25, 2006, the companies announced that the March Agreement had been modified by the parties in response to concerns raised by the FTC and the state attorneys general. Both agreements require the parties to cooperate and use all reasonable efforts to facilitate the review by the FTC and the state attorneys general. When the companies announced the proposed settlement, the companies said that there was a significant risk that required antitrust clearance would not be obtained.

The March Agreement included the following provisions, among others: The companies would grant Apotex a royalty-bearing license under the '265 patent to manufacture and sell its FDA-approved generic clopidogrel bisulfate product in the United States, and Apotex would agree not to sell a clopidogrel product in the United States until the effective date of the license. The license would be exclusive for six months (other than for the PLAVIX\* brand product) and would be effective September 17, 2011, or earlier in certain specified circumstances. The companies agreed not to launch an authorized generic product during the period in which the Apotex license was exclusive. If the proposed settlement were to become effective, the March Agreement provided for a reimbursement of up to $40 million by the companies to Apotex relating to Apotex's existing inventory and for provisions in relation to supply arrangements for its clopidogrel bisulfate product. The companies also agreed to compensate Apotex by prescribed amounts in the event that U.S. sales of PLAVIX\* were lower than specified amounts during a period immediately preceding the commencement of the license. In the event that the required antitrust clearance was not obtained, a fee would be payable to Apotex by the companies in an amount which varied based on the date on which it was determined that the required antitrust clearance had not been obtained and Apotex would be eligible to receive a reimbursement payment from the companies for certain short-dated inventories, if any, of Apotex's clopidogrel bisulfate product. Any payments to Apotex would be paid 50% by Sanofi and 50% by the Company. In addition, under the March Agreement, if the settlement efforts were terminated, the litigation would be resumed, and Apotex could launch a generic clopidogrel product five business days after such termination although Apotex would be at risk of an award for damages if Apotex were not to prevail in the pending litigation. If Apotex were to launch at risk prior to final resolution of the pending litigation and the companies ultimately prevailed in the pending litigation, the companies agreed their damages would be limited based on varying percentages of Apotex's net sales of such generic clopidogrel bisulfate product but in any event would not exceed 70% of such net sales. In addition, the companies waived their right to seek treble damages under applicable patent laws if they were to prevail in the pending patent litigation. The companies also agreed not to seek a temporary restraining order or a preliminary injunction against a launch by Apotex of its generic clopidogrel bisulfate product (which could not occur until five business days after failure to obtain antitrust clearance) until either they had first given Apotex five business days prior notice of their intention to do so, or Apotex had initiated a launch. The March Agreement provides that the companies would not be required to comply with any provision of the March Agreement that would violate the companies' existing consent decrees with the FTC and state attorneys general.

In response to concerns expressed by the FTC and state attorneys general, the parties modified the March Agreement. A copy of the modified proposed settlement agreement (the Modified Agreement) is filed as an exhibit to this Form 10-Q. Under the terms of the Modified Agreement, Apotex's license would be effective on June 1, 2011, or earlier in certain circumstances. The companies' agreement not to launch an authorized generic product during the term at the Apotex license was also deleted. The provisions relating to a payment to Apotex in the event U.S. sales of PLAVIX\* were lower than specified amounts and to a payment to Apotex in the event the required antitrust clearances were not obtained also were deleted. The limitation on damages in the event Apotex launched at risk and the companies prevailed in the pending litigation was reduced to 40% of Apotex's net sales if the companies had launched an authorized generic clopidogrel bisulfate product and otherwise 50% of Apotex's net sales. In addition, the companies again waived their right to seek treble damages under applicable patent laws if they were to prevail in the pending patent litigation. The companies agreed not to seek a temporary restraining order and agreed they could seek a preliminary injunction only after giving Apotex five business days' notice, which notice could be given only after Apotex had initiated a launch. The Modified Agreement provides that the companies would not be required to comply with any provision of the Modified Agreement that would violate the companies' existing consent decrees with the FTC and state attorneys general.

On July 28, 2006, the companies announced that the amended settlement agreement had failed to receive required antitrust clearance from the state attorneys general. When the companies announced the proposed settlement on March 21, 2006, the companies said that there was a significant risk that required antitrust clearance would not be obtained. The FTC has not advised the companies of its decision. However, as noted above, the settlement requires the approval of both the FTC and the state attorneys general to become effective.

Table of Contents

Based on a provision in the Modified Agreement permitting either party to terminate their obligations to pursue the settlement if both required antitrust clearances were not received by July 31, 2006, Apotex has delivered a notice to the companies to terminate their obligations to pursue the settlement effective as of July 31, 2006.

Apotex announced in January 2006 that it had received final approval of its Abbreviated New Drug Application (aNDA) for clopidogrel bisulfate from the FDA. The companies anticipate that generic clopidogrel bisulfate product will be delivered to customers shortly by Apotex. The companies sought leave from the U.S. District Court for the Southern District of New York to move for provisional relief, including a temporary restraining order. The Court declined to entertain such a motion prior to the expiration of the five business day period described above.

The companies are evaluating their legal and commercial options, as well as possible remedies under the agreement with Apotex. If the companies seek and obtain a preliminary injunction halting Apotex's sale of a generic clopidogrel bisulfate product, the companies might be required to post a bond in favor of Apotex to compensate it for any losses Apotex incurs as a result of the preliminary injunction if Apotex ultimately prevails in the pending litigation. The amount, if any, required to be posted cannot be reasonably estimated, but the amount could be material to the Company. There can be no assurance that such a preliminary injunction ruling will be sought or can be obtained.

As previously disclosed, each of the companies recorded reserves in the amount of $20 million in the first quarter of this year with respect to the potential payments under the proposed settlement. The impact of Apotex's launch of its generic clopidogrel bisulfate product on the Company cannot be reasonably estimated at this time and will depend on a number of factors, including, among others, the amount of generic product sold by Apotex and the pricing of Apotex's generic product; whether the companies seek a preliminary injunction restraining Apotex's sale of its generic product; the amount of time it would take for the Court to consider and act on such a request if made; whether the Court would grant such a request if made; whether, even if a preliminary injunction were obtained, the launch by Apotex would permanently adversely impact the pricing for PLAVIX* and, if so, to what extent; whether the companies launch an authorized generic clopidogrel bisulfate product; when the pending lawsuit is finally resolved and whether the companies prevail; and, even if the parties ultimately prevail in the pending lawsuit, the amount of damages that the parties would be granted and Apotex's ability to pay such damages. Under any circumstances, sustained generic competition for PLAVIX* would be material to the Company's sales of PLAVIX* and results of operations and cash flows, and could be material to the Company's financial condition and liquidity. The Company is evaluating other actions that it may take in order to mitigate the impact of generic competition for PLAVIX*. These actions will vary depending on the extent and duration of such generic competition.

The originally scheduled trial date for the litigation between the companies and Apotex had been suspended pending possible finalization of the proposed settlement. A new trial date has not yet been set by the Court.

As previously disclosed, the Company learned recently that the Antitrust Division of the United States Department of Justice is conducting a criminal investigation regarding the proposed settlement. The Company received a grand jury subpoena to produce documents, the Company's chief executive officer and another senior officer received grand jury subpoenas to provide testimony, and a search warrant was executed at their New York offices. The Company intends to cooperate fully with the investigation. It is not possible at this time reasonably to assess the outcome of the investigation or its impact on the Company.

As previously disclosed, the Company entered into a Deferred Prosecution Agreement (DPA) with the U.S. Attorney's Office for the District of New Jersey (USAO) on June 15, 2005. Pursuant to the DPA, the USAO filed a criminal complaint against the Company alleging conspiracy to commit securities fraud, but deferred prosecution of the Company and will dismiss the complaint after two years if the Company satisfies all the requirements of the DPA. Under the terms of the DPA, the USAO, in its discretion, may prosecute the Company for the matters that were the subject of the criminal complaint filed by the USAO against the Company in connection with the DPA should the USAO make a determination that the Company committed any criminal conduct. Under the DPA, "criminal conduct" is defined as any crime related to the Company's business activities committed by one or more executive officers or director; securities fraud, accounting fraud, financial fraud or other business fraud materially affecting the books and records of publicly filed reports of the Company; and obstruction of justice. It is not possible at this time reasonably to assess the impact, if any, of the pending criminal investigation by the Department of Justice may have on the Company's compliance with the DPA. Additional information with respect to the DPA is included in "Management's Discussion and Analysis—SEC Consent Order and Deferred Prosecution Agreement".

The Company's U.S. territory partnership under its alliance with Sanofi is also a plaintiff in three additional pending patent infringement lawsuits instituted in the U.S. District Court for the Southern District of New York against Dr. Reddy's Laboratories, LTD and Dr. Reddy's Laboratories, Inc. (Dr. Reddy's), Teva Pharmaceuticals USA, Inc. (Teva) and Cobalt Pharmaceuticals Inc. (Cobalt), all related to the '265 patent. The litigation against Dr. Reddy's has been inactive due to the proposed Apotex settlement. A new trial date has not yet been set. The patent infringement actions against Teva and Cobalt have been stayed pending resolution of the Apotex litigation, and the parties to those actions have agreed to be bound by the outcome of the litigation in the District Court against Apotex.

25

**Table of Contents**

The Company's U.S. territory partnership under its alliance with Sanofi is also a plaintiff in another pending patent infringement lawsuit instituted in the U.S. District Court of the District of New Jersey against Watson Pharmaceuticals, Inc. and Watson Laboratories, Inc., based on a different patent related to PLAVIX*. This case has also been stayed pending the outcome of the litigation in the District Court against Apotex.

The Company and Sanofi intend to vigorously pursue enforcement of their patent rights in PLAVIX*.

In related matters, since the announcement of the settlement agreement with Apotex in March 2006, fourteen lawsuits, making essentially the same allegations, have been filed against the Company, Sanofi and Apotex in U.S. District Court, Southern District of Ohio, Western Division, by various plaintiffs, including pharmacy chains (individually and as assignees, in whole or in part, of certain wholesalers), various health and welfare benefit plans/funds and individual residents of various states. These lawsuits allege, among other things, that the Apotex settlement violates the Sherman Act and related laws. The plaintiffs are seeking, among other things,

26

Table of Contents

**Note 17. Legal Proceedings and Contingencies (Continued)**

permanent injunctive relief barring the Apotex settlement and/or monetary damages. The fourteen lawsuits are comprised of both individual actions and purported class actions. In the cases filed as purported class actions, the plaintiffs are seeking class action status on behalf of similarly situated purchasers. The class actions filed on behalf of direct purchasers have been or are expected to be consolidated under the caption *In re: Plavix Direct Purchaser Antitrust Litigation,* and the class actions filed on behalf of indirect purchasers have been or are expected to be consolidated under the caption *In re: Plavix Indirect Purchaser Antitrust Litigation* . It is not possible at this time reasonably to estimate the impact of these lawsuits on the Company.

**International**

As previously reported, in March 2005, the Canadian Federal Court of Ottawa rejected Apotex's challenge to the Canadian PLAVIX* patent. The Court also granted Sanofi's application for an order of prohibition against the Minister of Health and Apotex Inc., which would preclude approval of Apotex's Abbreviated New Drug Submission (ANDS) until the patent expires in 2012, unless the Court's decision is reversed on appeal. Apotex's appeal has now been scheduled to be heard in December 2006.

In Korea, in response to separate invalidation actions brought by several generic manufacturers, in June of this year the Korean Intellectual Property Tribunal (IPT) invalidated all claims of Sanofi's Korean Patent 103,094, including claims directed to clopidogrel and pharmaceutically acceptable salts and to clopidogrel bisulfate. Sanofi has filed an appeal with the Patent Court in Korea. It is not possible at this time to reasonably assess the impact of these matters on the Company.

**OTHER INTELLECTUAL PROPERTY LITIGATION**

*ERBITUX\*.* As previously reported, in October 2003, Yeda Research and Development Company Ltd. (Yeda) filed suit against ImClone and Aventis Pharmaceuticals, Inc. in federal court claiming that three individuals associated with Yeda should be named as inventors of U.S. Patent No. 6,217,866, which covers the therapeutic combination of any EGFR – specific monoclonal antibody and anti-neoplastic agents, such as chemotherapeutic agents, for use in treatment of cancer. If Yeda's action were successful, Yeda could be in a position to practice, or to license others to practice, the invention. This could result in product competition for ERBITUX* that might not otherwise occur. Trial on the matter was completed in June 2006, and the parties await a judgment of the court. The Company, which is not a party to this action, is unable to predict the outcome of these proceedings.

As also previously reported, in 2004, RepliGen Corporation (Repligen) and Massachusetts Institute of Technology (MIT) filed a lawsuit in the United States District Court for the District of Massachusetts against ImClone, claiming that ImClone's manufacture and sale of ERBITUX* infringes a patent that generally covers a process for protein production in mammalian cells. On July 28, 2006, the Court granted summary judgment in favor of Repligen and MIT by rejecting ImClone's defense of patent exhaustion. The Company is not a party to this action.

*ABILIFY\*.* As previously reported, in August 2004, Otsuka filed with the United States Patent and Trademark Office (the USPTO) a Request for Reexamination of the U.S. composition of matter patent covering ABILIFY* (U.S. Patent No. 5,006,528, the '582 Patent). In June 2006, the USPTO officially issued an Ex Parte Reexamination Certificate for the '528 Patent, in which the USPTO confirmed the patentability of all original claims and three new claims.

**Securities Litigation**

**VANLEV Litigation**

As previously reported, the Company and certain of its current and former officers were named as defendants in a number of federal class actions alleging violations of federal securities laws and regulations based on alleged materially misleading statements or failure to disclose material information concerning VANLEV, a drug formerly in development by the Company. In February 2006, the U.S. District Court for the District of New Jersey granted preliminary approval of a settlement between the parties under which the Company paid $185 million into a settlement fund and agreed to certain non-monetary terms. The $185 million was fully reserved by the Company in the fourth quarter of 2005. In May 2006, the Court conducted a fairness hearing with respect to the settlement agreement, and subsequently entered final approval of the settlement, awarded attorneys' fees and costs, and approved the plan of allocation. In June 2006, a notice of appeal with respect to the allocation of attorneys' fees and expenses was filed and remains pending.

**Other Securities Matters**

As previously reported, in September 2005, certain of the Company's current and former officers were named in a purported class action, *Starkman v. Bristol-Myers Squibb et al,* filed in New York State Supreme Court alleging factual claims similar to the now resolved federal class action in the Southern District of New York related to alleged violations of federal securities laws and regulations in connection with sales incentives and wholesaler inventory levels, and asserting common law fraud and breach of

27

Table of Contents

**PART II—OTHER INFORMATION**

**Item 1. LEGAL PROCEEDINGS**

Information pertaining to legal proceedings can be found in "Item 1. Financial Statements—Note 17. Legal Proceedings and Contingencies," to the interim consolidated financial statements, and is incorporated by reference herein.

**Item 1A. RISK FACTORS**

There has been no material changes in the Company's risk factors from those disclosed in our 2005 Annual Report on Form 10-K and Form 10-Q for the quarterly period ended March 31, 2006 other than as follows:

*Litigation – PLAVIX\**

On March 21, 2006, the Company and Sanofi-Aventis (the companies) announced that they had executed a proposed settlement agreement with Apotex Inc. and Apotex Corp. (Apotex), to settle the patent infringement lawsuit pending between the parties in the U.S. District Court for the Southern District of New York. The lawsuit relates to the validity of a composition of a matter patent for clopidogrel bisulfate (the '265 Patent), a medicine made available in the United States by the companies as PLAVIX\*. The proposed settlement was subject, among other things, to antitrust review and clearance by both the Federal Trade Commission (FTC) and state attorneys general. On June 25, 2006, the companies announced that the agreement had been modified by the parties in response to concerns raised by the FTC and the state attorneys general. When the companies announced the proposed settlement on March 21, 2006, the companies said that there was a significant risk that the required antitrust clearance would not be obtained.

On July 28, 2006, the companies announced that the amended settlement agreement had failed to receive required antitrust clearance from the state attorneys general. The FTC has not advised the companies of its decision. However, as noted above, the settlement requires the approval of both the FTC and the state attorneys general to become effective.

Based on a provision in the agreement permitting either party to terminate their obligations to pursue the settlement if both required antitrust clearances were not received by July 31, 2006, Apotex has delivered a notice to the companies to terminate their obligations to pursue the settlement effective as of July 31, 2006. Apotex announced in January 2006 that it had received final approval of its Abbreviated New Drug Application (aNDA) for clopidogrel bisulfate from the U.S. Food and Drug Administration. The companies anticipate that generic clopidogrel bisulfate product will be delivered to customers shortly by Apotex. The companies sought leave from the U.S. District Court for the Southern District of New York to move for provisional relief, including a temporary restraining order. The Court declined to entertain such a motion prior to the expiration of the five business day period provided in the settlement agreement. The companies agreed not to seek a temporary restraining order, and they agreed that they could seek a preliminary injunction only after giving Apotex five business days notice, which could be given only after Apotex had initiated a launch.

The companies are evaluating their legal and commercial options as well as possible remedies under the agreement with Apotex. If the companies seek and obtain a preliminary injunction halting Apotex's sale of a generic clopidogrel bisulfate product, the companies might be required to post a bond in favor of Apotex to compensate it for any losses Apotex incurs as a result of the preliminary injunction if Apotex ultimately prevails in the pending litigation. The amount, if any, required to be posted cannot be reasonably estimated, but the amount could be material to the Company. There can be no assurance that such a preliminary injunction ruling will be sought or can be obtained.

The Company is in the process of assessing the impact of these developments, which are ongoing, and cannot reasonably estimate the impact of such potential generic competition at this time. Under any circumstances, sustained generic competition for PLAVIX\* would be material to the Company's sales of PLAVIX\* and results of operations and cash flows, and could be material to the Company's financial condition and liquidity. The Company is evaluating actions that it may take in order to mitigate the impact of generic competition for PLAVIX\*. These actions will vary depending on the extent and duration of such generic competition. Additional information about the pending PLAVIX\* patent litigation and the recent adverse developments is included in "Item 1. Financial Statements—Note 17. Legal Proceedings and Contingencies—Intellectual Property—PLAVIX\* Litigation" and "Management's Discussion and Analysis—Outlook."

The Company learned recently that the Antitrust Division of the United States Department of Justice is conducting a criminal investigation regarding the proposed settlement. The Company intends to cooperate fully with the investigation. It is not possible at this time reasonably to assess the outcome of the investigation or its impact on the Company.

In June 2005, the Company entered into a Deferred Prosecution Agreement (DPA) with the U.S. Attorney's Office for the District of New Jersey (USAO). Pursuant to the DPA, the USAO filed a criminal complaint against the Company alleging conspiracy to commit securities fraud, but deferred prosecution of the Company and will dismiss the complaint after two years if the Company satisfies all the requirements of the DPA. Under the terms of the DPA, the USAO, in its discretion, may prosecute the Company for the matters that were the subject of the criminal complaint filed by the USAO against the Company in connection with the DPA should the USAO make a determination that the Company committed any criminal conduct. Under the DPA, "criminal conduct" is defined as any crime related to the Company's business activities committed by one or more executive officers or director; securities fraud, accounting fraud, financial fraud or other business fraud materially affecting the books and records of publicly filed reports of the Company; and obstruction of justice. It is not possible at this time reasonably to assess the impact, if any, the pending criminal investigation by the Department of Justice may have on the Company's compliance with the DPA. Additional information with respect to the DPA is included in "Management's Discussion and Analysis—SEC Consent Order and Deferred Prosecution Agreement".

The Company has recorded significant deferred tax assets related to U.S. foreign tax credit and research tax credit carryforwards which expire in varying amounts beginning in 2012. Realization of foreign tax credit and research tax credit carryforwards is dependent on generating sufficient domestic-sourced taxable income prior to their expiration. Although realization is not assured, assuming the absence of sustained generic competition for PLAVIX\*, management believes it is more likely than not that these deferred tax assets will be realized. However, if there is sustained generic competition for PLAVIX\* as a result of the outcome of the pending PLAVIX\* patent litigation, or otherwise, the Company believes that the amount of foreign tax credit and research tax credit carryforwards considered realizable may be reduced. In such event, the Company may need to record significant additional valuation allowances against these deferred tax assets.

**Item 2. UNREGISTERED SALES OF EQUITY SECURITIES AND USE OF PROCEEDS**

The following table summarizes the surrenders of the Company's equity securities in connection with stock option and restricted stock programs during the six-month period ended June 30, 2006:

# EXHIBIT L

15 of 24 DOCUMENTS

Copyright 2006 PR Newswire Association LLC.
All Rights Reserved.
PR Newswire US

September 1, 2006 Friday 1:30 AM GMT

**LENGTH:** 1015 words

**HEADLINE:** Preliminary Injunction Ordered in Plavix(R) Patent Infringement Case Apotex to Halt Sales of Unauthorized Generic

**DATELINE:** PARIS and NEW YORK Aug. 31

**BODY:**

PARIS and NEW YORK, Aug. 31  /PRNewswire-FirstCall/ -- Sanofi-aventis (Paris Bourse: EURONEXT: SAN; and New York: NYSE: SNY) and Bristol-Myers Squibb (New York: NYSE: BMY) (the "companies") today announced that the U.S. District Court for the Southern District of New York has granted a preliminary injunction ordering Apotex Inc. and Apotex Corp. ("Apotex") to halt its sales of a generic version of clopidogrel bisulfate product that competes with PLAVIX(R). The Court, however, did not order Apotex to recall products already sold/shipped.

The order was entered in connection with the patent infringement lawsuit pending among the parties relating to the validity of a composition of matter patent for clopidogrel bisulfate.  On August 8, 2006, Apotex announced that it had launched a generic version of clopidogrel bisulfate 75 mg tablets.

The Court has ordered the companies to post a bond in the amount of $400 million to provide security to Apotex should the Court conclude at the end of the patent litigation that the injunction was wrongly imposed. The injunction will remain in effect until the pending patent infringement lawsuit is resolved.

The companies continue to believe that the Apotex generic product infringes their intellectual property rights, which are currently the subject of the pending patent litigation.  The companies intend to continue to vigorously defend their patent rights against infringement.  A trial has been set for January 22, 2007.

About sanofi-aventis

Sanofi-aventis is the world's third largest pharmaceutical company, ranking number one in Europe.  Backed by a world-class R&D organization, sanofi-aventis is developing leading positions in seven major therapeutic areas: cardiovascular, thrombosis, oncology, metabolic diseases, central nervous system, internal medicine, and vaccines.

About Bristol-Myers Squibb

Bristol-Myers Squibb is a global pharmaceutical and related health care products company whose mission is to extend and enhance human life.

Statements on Cautionary Factors

Sanofi-aventis

Preliminary Injunction Ordered in Plavix(R) Patent Infringement Case Apotex to Halt Sales of Unauthorized Generic
PR Newswire US September 1, 2006 Friday 1:30 AM GMT

This press release contains forward-looking statements as defined in the Private Securities Litigation Reform Act of 1995, as amended.  Forward-looking statements are statements that are not historical facts.  These statements include financial projections and estimates and their underlying assumptions, statements regarding plans, objectives, intentions and expectations with respect to future events, operations, products and services, and statements regarding future performance.  Forward-looking statements are generally identified by the words "expect," "anticipates," "believes," "intends," "estimates," "plans" and similar expressions.  Although sanofi-aventis' management believes that the expectations reflected in such forward-looking statements are reasonable, investors are cautioned that forward-looking information and statements are subject to various risks and uncertainties, many of which are difficult to predict and generally beyond the control of sanofi-aventis, that could cause actual results and developments to differ materially from those expressed in, or implied or projected by, the forward- looking information and statements.  These risks and uncertainties include risks that may arise from the Department of Justice's criminal investigation on the Plavix(R) proposed settlement with Apotex, the adverse impact of generic product distributed into the market prior to the Court's injunction, the risks related to the launch of a generic clopidogrel bisulfate product by Apotex, the potential launch of a generic clopidogrel bisulfate product by other entities, as well as those discussed or identified in the public filings with the SEC and the AMF made by sanofi-aventis, including those listed under "Risk Factors" and "Cautionary Statement Regarding Forward-Looking Statements" in sanofi-aventis' annual report on Form 20-F for the year ended December 31, 2005.  Other than as required by applicable law, sanofi-aventis does not undertake any obligation to update or revise any forward-looking information or statements.

Bristol-Myers Squibb

This press release contains certain forward-looking statements within the meaning of the Private Securities Litigation Reform Act of 1995 regarding, among other things, statements relating to goals, plans and projections regarding Bristol-Myers Squibb's future operating performance.  Such forward- looking statements are based on current expectations and involve inherent risks and uncertainties, including factors that could delay, divert or change any of them, and could cause actual outcomes and results to differ materially from current expectations.  These risks and uncertainties include the outcome of the Plavix litigation, the adverse impact of generic product distributed into the market prior to the Court's injunction, the Department of Justice's criminal investigation and the launch of a generic clopidogrel bisulfate and the potential launch of generic clopidogrel bisulfate product by other generic companies.  For further details and a discussion of these and other risks and uncertainties, see Bristol-Myers Squibb's periodic reports, including current reports on Form 8-K, quarterly reports on Form 10-Q and those listed under "Risk Factors" and "Cautionary Statement Regarding Forward-Looking Statements" in the annual report on Form 10-K for the year ended December 31, 2005, furnished to and filed with the Securities and Exchange Commission.  Bristol- Myers Squibb undertakes no obligation to publicly update any forward-looking statement, whether as a result of new information, future events or otherwise.

CONTACT:  MEDIA: Jean-Marc Podvin, +33-1-53-77-42-43,
jean-marc.podvin@sanofi-aventis.com , of sanofi-aventis; or Tony Plohoros,
+1-609-252-7938,  tony.plohoros@bms.com , of Bristol-Myers Squibb; or INVESTORS:
Sanjay Gupta, +33-1-53-77-45-45,  sanjay.gupta@sanofi-aventis.com , of
sanofi-aventis; or John Elicker, +1-212-546-3775,  john.elicker@bms.com , of
Bristol-Myers Squibb

Web site:  http://www.bms.com/

SOURCE Bristol-Myers Squibb; sanofi-aventis

**URL:** http://www.prnewswire.com

**LOAD-DATE:** September 1, 2006

# EXHIBIT M

1 of 1 DOCUMENT

Copyright 2006 PR Newswire Association LLC.
All Rights Reserved.
PR Newswire US

December 8, 2006 Friday 6:27 PM GMT

**LENGTH:** 939 words

**HEADLINE:** Preliminary Injunction Against Apotex Upheld on Appeal

**DATELINE:** PARIS and NEW YORK Dec. 8

**BODY:**

PARIS and NEW YORK, Dec. 8  /PRNewswire-FirstCall/ -- Sanofi-aventis (Paris Bourse: EURONEXT: SAN; and New York: NYSE: SNY) and Bristol-Myers Squibb Company (New York: NYSE: BMY) (the "companies") announced today that the United States Court of Appeals for the Federal Circuit has upheld the August 31, 2006 preliminary injunction issued by the United States District Court for the Southern District of New York.  The injunction ordered Apotex to halt its sales of a generic version of clopidogrel bisulfate that competes with PLAVIX(R) pending the District Court's decision in the trial on the merits. As a result of the decision of the Court of Appeals, the preliminary injunction remains in place.

The companies believe that the Apotex generic product infringes their intellectual property rights, which they continue to vigorously defend in the pending patent litigation. Trial on the merits is currently scheduled to begin on January 22, 2007.

About sanofi-aventis

Sanofi-aventis is the world's third largest pharmaceutical company, ranking number one in Europe.  Backed by a world-class R&D organization, sanofi-aventis is developing leading positions in seven major therapeutic areas: cardiovascular, thrombosis, oncology, metabolic diseases, central nervous system, internal medicine, and vaccines.

About Bristol-Myers Squibb

Bristol-Myers Squibb is a global pharmaceutical and related health care products company whose mission is to extend and enhance human life.

Statements on Cautionary Factors

Sanofi-aventis

This press release contains forward-looking statements as defined in the Private Securities Litigation Reform Act of 1995, as amended.  Forward-looking statements are statements that are not historical facts.  These statements include financial projections and estimates and their underlying assumptions, statements regarding plans, objectives, intentions and expectations with respect to future events, operations, products and services, and statements regarding future performance.  Forward-looking statements are generally identified by the words "expect," "anticipates," "believes," "intends," "estimates," "plans" and similar expressions.  Although sanofi-aventis' management believes that the expectations reflected in such forward-looking statements are reasonable, investors are cautioned that forward-looking information and statements are subject to various risks and uncertainties, many of which are difficult to predict and generally beyond the control of sanofi-aventis, that could cause actual results and developments to differ materially from those expressed in, or implied or projected by, the forward- looking information and statements.  These risks and uncertainties include risks that may arise from the Department of Justice's criminal investigation on the Plavix(R) proposed settlement with Apotex, the adverse impact of Apotex's launch and generic product distributed into the market prior to the Court's injunction, the potential launch of a generic clopidogrel bisulfate product by other entities, as well as those discussed or identified in the public filings with the SEC and the AMF made by sanofi-aventis, including those listed under

Preliminary Injunction Against Apotex Upheld on Appeal  PR Newswire US December 8, 2006 Friday 6:27 PM GMT

"Risk Factors" and "Cautionary Statement Regarding Forward- Looking Statements" in sanofi-aventis' annual report on Form 20-F for the year ended December 31, 2005.  Other than as required by applicable law, sanofi- aventis does not undertake any obligation to update or revise any forward- looking information or statements.

Bristol-Myers Squibb

This press release contains certain forward-looking statements within the meaning of the Private Securities Litigation Reform Act of 1995  regarding, among other things, statements relating to goals, plans and projections regarding the company's financial position. These statements may be identified by the fact that they use words such as "anticipate," "estimates," "expect," "guidance," "project," "intend," "plan," "believe" and other words and terms of similar meaning in connection with any discussion of future operating or financial performance. Such forward-looking statements are based on current expectations and involve inherent risks and uncertainties, including factors that could delay, divert or change any of them, and could cause actual outcomes and results to differ materially from current expectations. These risks and uncertainties include the inherent unpredictability of matters in litigation, the risks that may arise from the Department of Justice's criminal investigation on the Plavix(R) proposed settlement with Apotex, the adverse impact of Apotex's launch and generic product distributed into the market prior to the Court's injunction and the potential launch of a generic clopidogrel bisulfate product by other generic pharmaceutical companies.   For further details and a discussion of these and other risks and uncertainties, see the company's periodic reports, including current reports on Form 8-K, quarterly reports on Form 10-Q and the annual report on Form 10-K, furnished to and filed with the Securities and Exchange Commission. The company undertakes no obligation to publicly update any forward-looking statement, whether as a result of new information, future events or otherwise.

CONTACT:  Media: Jean-Marc Podvin, +33-1-53-77-42-23,
jean-marc.podvin@sanofi-aventis.com ; or Investors: Sanjay Gupta,
+33-1-53-77-45-45,  sanjay.gupta@sanofi-aventis.com ; or Media: Tony Plohoros,
+1-908-591-2839,  tony.plohoros@bms.com ; or Investors: John Elicker,
+1-212-546-3775,  john.elicker@bms.com

Web site:  http://www.bms.com/

SOURCE Bristol-Myers Squibb; sanofi-aventis

**URL:** http://www.prnewswire.com

**LOAD-DATE:** December 9, 2006