# EXHIBIT N



# FORM 10-Q

## BRISTOL MYERS SQUIBB CO - bmy

Filed: May 10, 2007 (period: March 31, 2007)

Quarterly report which provides a continuing view of a company's financial position

**Table of Contents**
**Note 16. Legal Proceedings and Contingencies (Continued)**

In March 2006, the Companies announced that they had executed a proposed settlement agreement (the March Agreement) with Apotex to settle the pending patent infringement lawsuit. In response to concerns expressed by the Federal Trade Commission (FTC) and state attorneys general, the parties modified the March Agreement (the Modified Agreement) in May 2006. In July 2006, the Companies announced that the Modified Agreement had failed to receive required antitrust clearance from the state attorneys general. On August 8, 2006, Apotex launched a generic version of clopidogrel bisulfate.

On August 31, 2006, the District court issued a preliminary injunction in which it ordered Apotex to halt sales of generic clopidogrel bisulfate, but the Court did not order Apotex to recall product from its customers. The U.S. Court of Appeals for the Federal Circuit has affirmed the District court's issuance of the injunction, and Apotex's motion for reconsideration and/or rehearing was denied on January 19, 2007. Additionally, the District court has stayed certain additional antitrust counterclaims brought by Apotex pending the outcome of the trial. The trial commenced on January 22, 2007, and trial testimony ended on February 15, 2007. Post-trial briefing is complete and the parties are awaiting the District court's decision.

On April 18, 2007, Apotex filed a lawsuit in Canada in the Ontario Superior Court of Justice entitled Apotex Inc. and Apotex Corp. v. Sanofi-Aventis, Sanofi-Synthelabo Inc., Bristol-Myers Squibb Company, and Bristol-Myers Squibb Sanofi Pharmaceuticals Holding Partnership seeking a payment of $60 million, plus interest related to the break-up of the proposed settlement agreement. The Company believes that Apotex's claim is completely without merit and intends to vigorously defend its position.

It is not possible at this time reasonably to assess the outcomes of the litigations with Apotex, or the other PLAVIX* patent litigations, their impact on the Company, or the timing of any renewed generic competition for PLAVIX* from Apotex or additional generic competition for PLAVIX* from other third-party generic pharmaceutical companies. However, if Apotex were to prevail in the patent litigation, the Company would expect to face renewed generic competition for PLAVIX* from Apotex promptly thereafter. As noted above, loss of market exclusivity for PLAVIX* and/or sustained generic competition would be material to the Company's sales of PLAVIX*, results of operations and cash flows, and could be material to the Company's financial condition and liquidity.

As previously disclosed, the launch of the generic clopidogrel bisulfate product by Apotex in August 2006 had a significant adverse effect on PLAVIX* sales in 2006 which the Company estimates to be in the range of $1.2 billion to $1.4 billion. In the first quarter of 2007, U.S. sales of PLAVIX* declined 7% compared to the same period in 2006 due primarily to the residual supply of generic clopidogrel bisulfate in the market. The Company estimates the adverse effect of the at-risk launch of generic clopidogrel bisulfate to be in the range of $300 million to $350 million for the first quarter of 2007. The Company expects the supply of the generic product in distribution channels will continue to have a declining residual impact on PLAVIX* net sales and the Company's overall financial results at least through the second quarter of 2007. The full impact of Apotex's launch cannot be estimated with certainty at this time and will depend on a number of factors, including, among others, the amount of generic product sold by Apotex; whether the Companies prevail in the underlying patent litigation; even if the Companies prevail in the pending patent case, the extent to which the launch by Apotex will permanently adversely impact the pricing and prescription demand for PLAVIX*, the amount of damages that would be sought and/or recovered by the Companies and Apotex's ability to pay such damages.

On May 10, 2007, the Company and the Antitrust Division of the U.S. Department of Justice (DOJ) reached an agreement in principle to resolve the previously disclosed investigation by the Antitrust Division regarding the proposed settlement with Apotex of the pending PLAVIX* patent litigation. Under the agreement in principle, the Company or a subsidiary of the Company will plead guilty to criminal charges consisting of two violations of Section 1001 of U.S. Code Title 18 (relating to false statements to a government agency) carrying an aggregate statutory maximum fine of $1 million. The charges relate to representations made by a former senior executive of the Company during the renegotiation of the proposed settlement agreement with Apotex in May 2006 that were not disclosed to the FTC. The agreement in principle is contingent on the parties' agreement to the terms of a final agreement and acceptance of the plea by the court in which it is entered. There can be no assurance that the agreement in principle will be finalized or that the plea will be accepted. If the agreement in principle is not finalized or the plea is not accepted, it is not possible to assess the ultimate resolution of this investigation or its impact on the Company. Although there can be no assurance, the Company does not believe that resolution of this investigation in accordance with the agreement in principle should have a material impact on its ability to participate in federal procurement or health care programs.

As previously disclosed, the Company entered into a Deferred Prosecution Agreement (DPA) with the U.S. Attorney's Office for the District of New Jersey (USAO) on June 15, 2005. Pursuant to the DPA, the USAO filed a criminal complaint against the Company alleging conspiracy to commit securities fraud, but deferred prosecution of the Company and will dismiss the complaint after two years if the Company satisfies all the requirements of the DPA. The Company has advised the USAO of the terms of the agreement in principle between the Company and the Antitrust Division. The U.S. Attorney for the District of New Jersey has advised the Company, although the guilty plea that is contemplated by the agreement in principle constitutes a violation of the DPA, the Company has cured that breach by terminating the employment of certain former officers of the Company as well as other actions taken to prevent the recurrence of the issues and events that led to this matter. The U.S. Attorney also has advised the Company that, assuming resolution of this investigation in accordance with the agreement in principle, and assuming the Company's compliance with the DPA between May 10, 2007, and June 15, 2007, it is the USAO's intention to terminate the DPA on June 15, 2007, and to seek dismissal with prejudice of the deferred charges pursuant to the DPA on a timely basis.

As previously disclosed, the Company has been served with a Civil Investigative Demand by the FTC requesting documents and information related to the proposed settlement. In addition, as previously disclosed, on April 13, 2007, the Company received a subpoena from the New York State Attorney General's Office — Antitrust Bureau for documents related to the proposed settlement. The Company is cooperating fully with the investigations. It is not possible at this time reasonably to assess the impact of the proposed settlement with the Antitrust Division described above on the investigations, the outcome of the investigations or their impact on the Company.

20

Source: BRISTOL MYERS SQUIBB, 10-Q, May 10, 2007

# EXHIBIT O

6 of 24 DOCUMENTS

Copyright 2007 PR Newswire Association LLC.
All Rights Reserved.
PR Newswire US

May 10, 2007 Thursday 8:41 PM GMT

**LENGTH:** 815 words

**HEADLINE:** Bristol-Myers Squibb Announces Agreement in Principle to Resolve Federal Antitrust Investigation

**DATELINE:** NEW YORK May 10

**BODY:**

NEW YORK, May 10 /PRNewswire-FirstCall/ -- Bristol-Myers Squibb Company (NYSE:BMY) and the Antitrust Division of the U.S. Department of Justice (DOJ) have reached an agreement in principle to resolve the previously disclosed DOJ criminal investigation regarding the proposed settlement agreement between Bristol-Myers Squibb, its product partner, sanofi-aventis, and Apotex Inc., and Apotex Corp. (Apotex). The proposed settlement agreement was related to the Plavix patent litigation, which is pending before the U.S. District Court for the Southern District of New York.

As part of the agreement with the DOJ, Bristol-Myers Squibb, or a subsidiary of the company, will plead guilty to criminal charges consisting of two counts of violating Section 1001 of U.S. Code Title 18 (relating to false statements to a government agency), carrying an aggregate statutory maximum fine of $1 million. The charges relate to representations made by a former Bristol-Myers Squibb senior executive during the renegotiation of the proposed settlement agreement in May 2006 that were not disclosed to the U.S. Federal Trade Commission.

Bristol-Myers Squibb has advised the U.S. Attorney's Office for the District of New Jersey (USAO) of this agreement in principle. The USAO has advised the company that it believes Bristol-Myers Squibb has cured resulting breaches of the Deferred Prosecution Agreement (DPA) entered into between the company and the USAO by terminating the employment of certain former senior officers of Bristol-Myers Squibb, as well as by taking other actions to prevent the recurrence of the issues and events that led to this matter. The USAO has further advised Bristol-Myers Squibb that assuming resolution of this investigation in accordance with the agreement in principle and assuming the company's compliance with the DPA between this date and June 15, 2007, it is the USAO's intention to terminate the DPA on June 15, 2007.

"Full compliance with all of the laws and regulations governing our company remains the highest priority for our leadership team, and for me personally," said James M. Cornelius, chief executive officer, Bristol-Myers Squibb. "As we move forward with our plans to grow our business and build shareholder value, compliance is an essential pillar that will support all of our goals."

Bristol-Myers Squibb does not believe this resolution of the investigation should have a material impact on its ability to participate in federal procurement or health care programs, although there can be no assurance of this.

The agreement in principle is contingent upon the parties' assent to the terms of a final agreement and acceptance of the plea by the court in which it is entered. There can be no assurance that an agreement will be finalized or that the plea will be accepted. Further, Bristol-Myers Squibb cannot predict the impact of the agreement in principle or final

agreement on the previously disclosed investigations by the FTC or the New York State Attorney General into the proposed Plavix patent settlement.

Bristol-Myers Squibb is a global pharmaceutical and related healthcare products company whose mission is to extend and enhance human life.

This press release contains "forward-looking statements" as that term is defined in the Private Securities Litigation Reform Act of 1995, regarding the prospective resolution of a criminal investigation. Such forward-looking statements are based on current expectations and involve inherent risks and uncertainties, including factors that could delay, divert or change any of them, and could cause actual outcomes and results to differ materially from current expectations. No forward-looking statement can be guaranteed. Among other risks, there can be no guarantee that the agreement in principle will be finalized or that the plea will be accepted. If the agreement is not finalized and the plea is not accepted, it is not possible to assess the ultimate resolution of this investigation or its impact on the Company. Forward- looking statements in the press release should be evaluated together with the many uncertainties that affect Bristol-Myers Squibb's business, particularly those identified in the cautionary factors discussion in Bristol-Myers Squibb's Annual Report on Form 10-K for the year ended December 31, 2006, its Quarterly Reports on Form 10-Q, and Current Reports on Form 8-K. Bristol-Myers Squibb undertakes no obligation to publicly update any forward-looking statement, whether as a result of new information, future events, or otherwise.

CONTACT: Media, Laura Hortas, Communications, +1-609-252-4587, laura.hortas@bms.com , or Tony Plohoros, Communications, +1-609-252-7938, tony.plohoros@bms.com , or Investors, John Elicker, Investor Relations, +1-212-546-3775, john.elicker@bms.com , all of Bristol-Myers Squibb

Web site: http://www.bms.com/

SOURCE Bristol-Myers Squibb

URL: http://www.prnewswire.com

LOAD-DATE: May 11, 2007

# EXHIBIT P

**U.S. Department of Justice Investigation of Bristol-Myers Squibb in Proposed Plavix Patent Settlement Is Resolved**

NEW YORK, June 11 /PRNewswire-FirstCall/ -- Bristol-Myers Squibb Company (NYSE: BMY) today pleaded guilty to two counts of violating 18 U.S.C. Sec. 1001 in U.S. District Court for the District of Columbia. This guilty plea resolved as to the company the previously disclosed investigation by the Antitrust Division of the U.S. Department of Justice into the proposed settlement of the Plavix patent litigation with Apotex Inc., and Apotex Corp. (Apotex). As a result of the plea, the company will pay a fine of $1 million.

The company acknowledged that a former Bristol-Myers Squibb senior executive made oral representations to Apotex for the purpose of causing Apotex to conclude that the company would not launch an authorized generic in the event that the parties reached a final revised settlement agreement. Those representations included the former senior executive's statement that he expected to oppose personally the launch of an authorized generic in the future, his statement that he expected to advocate against such a launch, and his implied suggestion that the company's former CEO shared his views. The failure to disclose this information to the Federal Trade Commission (FTC) in connection with the FTC's review of the revised settlement agreement operated as incomplete and therefore false statements to the FTC. The company acknowledged in court today its responsibility for the conduct of the former senior officer.

The company continues to believe that there was no "side agreement" with Apotex not to launch an authorized generic version of Plavix.

The impact of the plea on the previously disclosed investigations by the FTC and the New York State Attorney General into the proposed Plavix patent settlement cannot be predicted.

Bristol-Myers Squibb is a global pharmaceutical and related healthcare products company whose mission is to extend and enhance human life.

SOURCE: Bristol-Myers Squibb Company

CONTACT: Laura Hortas, Communications, +1-609-252-4587, laura.hortas@bms.com, or Tony Plohoros, Communications, +1-212-546-4379, tony.plohoros@bms.com, or Investors, John Elicker, Investor Relations, +1-212-546-3775, john.elicker@bms.com, all of Bristol-Myers Squibb Company

Web site: http://www.bms.com/