UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| : | |
| : | |
| IN RE BRISTOL-MYERS SQUIBB CO. : | No. 07 Civ. 5867 (PAC) |
| SECURITIES LITIGATION : | |
| : | FILED ELECTRONICALLY |
| : | |
| : | |
| : | |
| _____: | |

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT ANDREW G. BODNAR'S MOTION TO DISMISS

Elkan Abramowitz (EA-3987)
Lawrence S. Bader (LB-5481)
Jerrold L. Steigman (JS-9137)
MORVILLO, ABRAMOWITZ, GRAND,
    IASON, ANELLO & BOHRER, P.C.
565 Fifth Avenue
New York, New York 10017
(212) 856-9600

*Attorneys for Defendant Andrew G. Bodnar*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 3

ARGUMENT ...................................................................................................................... 4

    I.    Plaintiffs Cannot State Any Claim Against Dr. Bodnar Under Section 10(b)
        of the Exchange Act or SEC Rule 10b-5.................................................................. 4

        A.    Plaintiffs Have Not Adequately Alleged a Violation of Section 10(b) by
               Dr. Bodnar.......................................................................................... 5

        B.    Plaintiffs Have Not Adequately Alleged Reliance ............................... 6

        C.    Plaintiffs Have Not Adequately Alleged Loss Causation Against
               Dr. Bodnar.......................................................................................... 7

        D.    Plaintiffs Have Not Adequately Alleged That Dr. Bodnar's Conduct
               Was "In Connection With" the Purchase or Sale of Any Securities ................... 8

        E.    Plaintiffs Do Not Plead Facts Raising a Strong Inference That
               Dr. Bodnar Acted With Scienter ......................................................... 9

        F.    Plaintiffs Fail to Allege "Deceptive" Conduct by Dr. Bodnar........................... 9

    II.    Plaintiffs Cannot State Any Claim Against Dr. Bodnar Under Section 20(a)
        of the Exchange Act .............................................................................................. 10

CONCLUSION .................................................................................................................. 12

## TABLE OF AUTHORITIES

**Federal Cases**

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007)...........................................10

*Basic, Inc. v. Levinson*, 485 U.S. 224 (1988).............................................................................7

*Boguslavsky v. Kaplan*, 159 F.3d 715 (2d Cir. 1998) ...................................................................11

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994) ............................................................................................1, 5, 6, 7

*Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*, 135 F.3d 837
    (2d Cir. 1998) ..................................................................................................................5

*In re Alstom SA Sec. Litig.*, 406 F. Supp.2d 433 (S.D.N.Y. 2005) ...................................9, 10, 11

*In re Charter Commc'ns, Inc.*, 443 F.3d 987 (8th Cir. 2006), *cert. granted*,
    *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*,
    127 S. Ct. 1873 (U.S. Mar. 26, 2007) (No. 06-43) .....................................................2, 6, 9, 10

*In re Convertum Holding AG Sec. Litig.*, No. 04 Civ. 7987 (DLC),
    2006 WL 3804619 (S.D.N.Y. Dec. 28, 2006)..........................................................................2, 6

*In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001) .......................11

*In re Parmalat Sec. Litig.*, 376 F. Supp.2d 472 (S.D.N.Y. 2005) ...............................................6, 9

*In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig.*,
    No. 06 Civ. 643 (GEL), 2007 WL 2694469 (S.D.N.Y. Sept. 13, 2007)....................................9

*In re Refco, Inc. Sec. Litig.*, 503 F. Supp.2d 611 (S.D.N.Y. 2007) ..............................................11

*In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63 (2d Cir. 2001) .......................................................6

*Lapin v. Goldman Sachs Group, Inc.*, 506 F. Supp.2d 221 (S.D.N.Y. 2006) ...............................11

*Lentell v. Merrill Lynch & Co. Inc.*, 396 F.3d 161 (2d Cir. 2005).................................................8

*Regents of the State of California v. Credit Suisse First Boston (USA)*,
    482 F.3d 372 (5th Cir. 2007), *petition for cert. filed*, 75 U.S.L.W. 3557
    (U.S. Apr. 5, 2007) (No. 06-1341) ...............................................................................6, 9, 10

*SEC v. Cedric Kushner Promotions, Inc.*, 417 F. Supp.2d 326 (S.D.N.Y. 2006)...........................5

*SEC v. Zandford*, 535 U.S. 813 (2002) ........................................................................... 8

*Sec. Investor Prot. Corp. v. BDO Seidman LLP*, 222 F.3d 63 (2d Cir. 2000) ................................ 3

*Shapiro v. Cantor*, 123 F.3d 717 (2d Cir. 1997) ............................................................. 2

*Simpson v. AOL Time Warner, Inc.*, 452 F.3d 1040 (9th Cir. 2006),
  *petition for cert. filed*, 75 U.S.L.W. 3236 (U.S. Oct. 19, 2006) (No. 06-560)........................ 6, 9

*United States v. O'Hagan*, 521 U.S. 642 (1997)............................................................ 8

*Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998) ................................................ 2, 5, 7

## **Statutes**

Securities Exchange Act of 1934 § 10(b).............................................................*passim*

Securities Exchange Act of 1934 § 20(a)......................................................... 1, 2, 10

SEC Rule 10b-5............................................................................... 4, 7, 10

Defendant Dr. Andrew G. Bodnar submits this memorandum of law and the accompanying declaration of Lawrence S. Bader in support of Dr. Bodnar's motion to dismiss the purported Amended Class Action Complaint ("Am. Complaint" or "Amended Complaint").[1]

Dr. Bodnar joins in the arguments of defendant Bristol-Myers Squibb Co. ("BMS") in support of its motion to dismiss. Accordingly, we will not repeat the facts and legal arguments set forth in BMS's motion, but incorporate them by reference and assume the Court's familiarity with them.[2] If BMS's motion to dismiss is granted – as it should be – that would also dispose of the case against Dr. Bodnar because plaintiffs are seeking to hold Dr. Bodnar liable for the statements of BMS.

## PRELIMINARY STATEMENT

Dr. Bodnar is a defendant in two claims in the Amended Complaint. Plaintiffs' second claim alleges that Dr. Bodnar violated Section 10(b) of the Exchange Act of 1934 (the "Exchange Act"). Plaintiffs' fourth claim alleges that under Section 20(a) of the Exchange Act, Dr. Bodnar is liable as a "control person" for the acts of BMS. Both claims are meritless for the reasons argued by BMS and for the additional reasons set forth below, which are unique to Dr. Bodnar in this case.

Unlike BMS or co-defendant Peter R. Dolan, the former CEO of BMS, Dr. Bodnar is not alleged to have made any statements to the public. Given this failure of pleading, as a matter of well settled law, the Section 10(b) claim against Dr. Bodnar must be dismissed. *Central Bank of*

---

[1] A copy of the Amended Complaint is attached to the declaration of Lawrence S. Bader as Exhibit 1.

[2] Specifically, Dr. Bodnar joins in the arguments of BMS that (i) its public filings provided accurate and appropriate disclosure as a matter of law (*see* BMS Br., Part I), (ii) plaintiffs cannot establish loss causation as a matter of law (*see* BMS Br., Part II), and (iii) the scienter allegations in the amended complaint are insufficient under the *Tellabs* standard (*see* BMS Br., Part III).

*Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994); *Wright v. Ernst & Young LLP*, 152 F.3d 169, 179 (2d Cir. 1998); *Shapiro v. Cantor*, 123 F.3d 717, 720 (2d Cir. 1997); *In re Converium Holding AG Sec. Litig.*, No. 04 Civ. 7987 (DLC), 2006 WL 3804619 (S.D.N.Y. Dec. 28, 2006).

The Section 10(b) claim against Dr. Bodnar also fails as a matter of law because plaintiffs have not adequately alleged (i) reliance on Dr. Bodnar's conduct, (ii) that their loss was caused by his conduct, (iii) that his conduct was "in connection with" plaintiffs' purchases of BMS stock, (iv) that he acted with scienter, or (v) that his conduct was "deceptive" within the meaning of Section 10(b). The Supreme Court recently heard argument in *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc. and Motorola Inc.*, a private action brought under Section 10(b).[3] In *Stoneridge*, the parties (and 31 amici curiae) briefed most of these issues, albeit in a different factual setting. Pending the Supreme Court's decision in *Stoneridge*, we rely on current case law to demonstrate that none of these elements has been adequately pleaded against Dr. Bodnar.

Plaintiffs' only other claim against Dr. Bodnar, a claim for control person liability under Section 20(a) of the Exchange Act, must also be dismissed because (i) there was no primary violation (*see* BMS Br., Parts I, II and III) and (ii) it fails to allege facts from which one could infer Dr. Bodnar's control over BMS or his "culpable participation" in the statements by BMS that plaintiffs claim are actionable.

---

[3] *Stoneridge* is an appeal from the Eighth Circuit's decision in *In re Charter Commc'ns, Inc.*, 443 F.3d 987 (8th Cir. 2006). Certiorari was granted on March 26, 2007, and the case was argued on October 9, 2007. 127 S. Ct. 1873 (U.S. Mar. 26, 2007) (No. 06-43).

## STATEMENT OF FACTS[4]

Dr. Bodnar is both a medical doctor and a lawyer. During the class period, he was BMS's Senior Vice President for Strategy and Medical and External Affairs and a member of BMS's Executive Committee. Am. Complaint ¶ 18.

In March 2002, BMS and Sanofi-Aventis, S.A. sued Apotex, Inc. for patent infringement. *Id.* ¶ 32. Dr. Bodnar participated in negotiations that led to the settlement of that lawsuit (the "Apotex Settlement"). *Id.* ¶ 39. After the close of the stock market on March 21, 2006, BMS announced the Apotex Settlement. *Id.* ¶ 58. The Amended Complaint takes issue with the completeness of that announcement. Am. Complaint ¶¶ 60-66. However, the Amended Complaint does not allege that Dr. Bodnar made the announcement or that the announcement was in any way attributed to Dr. Bodnar.

The Apotex Settlement required the approval of the Federal Trade Commission ("FTC") and a consortium of state attorneys general. *Id.* ¶ 34. On May 5, 2006, the state attorneys general first notified BMS that they would not approve the Apotex Settlement. *Id.* ¶ 4. On May 12 and 24, 2006, Dr. Bodnar met with Apotex's Chairman, Bernard Sherman, to negotiate a revised settlement agreement. *Id.* ¶¶ 38-39. At one point during the second of those negotiations, Dr. Bodnar was joined on the telephone by BMS outside counsel Evan Chesler, Esq. Am. Complaint ¶ 42. Plaintiffs allege that at these meetings, BMS and Apotex reached an "Amended Apotex Settlement" and entered into "unlawful oral side agreements."[5] *Id.* ¶¶ 19, 42.

---

[4] Well-pleaded allegations in the Amended Complaint are assumed to be true only for purposes of this motion to dismiss. *See Sec. Investor Prot. Corp. v. BDO Seidman LLP*, 222 F.3d 63, 68 (2d Cir. 2000).

[5] Both Dr. Bodnar and BMS deny that there were unlawful oral side agreements. *See* BMS Br. 22-23.

On May 31, 2006, Mr. Dolan spoke to securities analysts and made statements about the ongoing review by the FTC and state attorneys general. *Id*. ¶¶ 76-77. Plaintiffs allege that some of Mr. Dolan's statements were false and misleading. *Id*. ¶ 78. It is not alleged that Dr. Bodnar had anything to do with Mr. Dolan's statements.

On June 25, 2006, BMS issued a press release announcing the "Amended Apotex Settlement." Am. Complaint ¶ 79. Between June 25 and August 8, 2006 (the end of the class period), BMS made additional public statements. *Id*. ¶¶ 82-85, 87, 95. Plaintiffs allege that these statements were also false and misleading. Id. ¶¶ 86, 88. However, once again, plaintiffs do not allege that Dr. Bodnar made any of these public statements or that the statements were attributed to Dr. Bodnar.

## ARGUMENT

**I.     Plaintiffs Cannot State Any Claim Against Dr. Bodnar Under Section 10(b) of the Exchange Act or SEC Rule 10b-5**

In Claim II, plaintiffs allege that Dr. Bodnar violated Section 10(b) of the Exchange Act and SEC Rules 10b-5(a) and (c) by engaging in a scheme to defraud investors.[6] Am. Complaint ¶¶ 145-55. BMS's motion to dismiss Claim I (also a Section 10(b) claim) demonstrates many reasons why that claim should be dismissed as against BMS. The same arguments apply to Claim II against Dr. Bodnar. However, there are a number of additional independent reasons why Claim II must be dismissed as to Dr. Bodnar.

---

[6] Section 10(b) makes it unlawful, directly or indirectly, "[t]o use or employ, in connection with the purchase or sale of any security []... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). Rules 10b-5(a) and (c) prohibit the use of "any device, scheme, or artifice to defraud," or the engaging "in any act, practice, or course of business" that perpetrates a fraud on investors, in connection with the purchase or sale of a security. 17 C.F.R. § 240.10b-5.

**A.     Plaintiffs Have Not Adequately Alleged a Violation of Section 10(b) by Dr. Bodnar**

Under *Central Bank* and *Wright*, liability cannot extend to those who do not make statements or representations to the public.  *See Central Bank*, 511 U.S. at 177 ("[W]e again conclude that the statute prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act.  . . .  The proscription does not include giving aid to a person who commits a manipulative or deceptive act."); *Wright*, 152 F.3d at 175 ("[I]f *Central Bank* is to have any real meaning, a defendant must actually make a false or misleading statement in order to be held liable under Section 10(b).  Anything short of such conduct is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger liability under Section 10(b).") (internal quotation marks and citations omitted).  *See also SEC v. Cedric Kushner Promotions, Inc*., 417 F. Supp.2d 326, 332 (S.D.N.Y. 2006) (director defendant could not be held responsible for statements of others where the statements were not attributed to the defendant).

To avoid the holdings of *Central Bank* and *Wright*, plaintiffs have alleged that Dr. Bodnar is liable to them under Section 10(b) on the theory that, while *he* did not make any statements to the public, he "carried out a plan, scheme and course of conduct which was intended to" deceive the members of the Class.  Am. Complaint ¶ 146.  These and other rhetorical flourishes in the Amended Complaint are attempts to mask the fact that plaintiffs do not allege a "primary violation" by Dr. Bodnar.  The allegation that Dr. Bodnar "carried out a plan" that ultimately led to false statements being made by others is the very kind of allegation that *Central Bank* forbids.  *See Wright*, 152 F.3d at 175; *Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*, 135 F.3d 837, 842 (2d Cir. 1998) (*Central Bank* and *Wright*

foreclose liability for not only aiding and abetting, but also for "assisting" or "participating in" a Section 10(b) violation and for conspiring with others to violate the statute).[7]

Section 10(b) liability can attach to a non-speaker who is a corporate insider if he is so closely associated with a public statement that investors understood *him* to have made it.  *See In re Converium*, 2006 WL 3804619, at *12 ("the relevant inquiry is whether investors *understood* [the defendant] to be speaking through [the public statement]") (emphasis in original).[8]  Because plaintiffs do not allege that Dr. Bodnar made any public statements or that they understood that it was Dr. Bodnar who was speaking *through BMS*, the Section 10(b) claim against Dr. Bodnar must be dismissed under *Central Bank* and its progeny.

### B.    Plaintiffs Have Not Adequately Alleged Reliance

Plaintiffs do not allege that they relied on anything Dr. Bodnar said.  This also requires dismissal of the Section 10(b) claim against Dr. Bodnar.

*Central Bank* held that a private plaintiff who seeks recovery under Section 10(b) must allege that he or she relied upon the alleged misstatements or omissions of a particular defendant.

---

[7] *See also In re Charter Commc'ns, Inc.* and *Regents of the State of California v. Credit Suisse First Boston (USA)*, 482 F.3d 372 (5th Cir. 2007), *petition for cert. filed*, 75 U.S.L.W. 3557 (U.S. Apr. 5, 2007) (No. 06-1341).  Both cases hold that unless a defendant made misstatements or omissions, or directly engaged in manipulative securities trading practices, he cannot be held liable for "deceptive acts" under Section 10(b).  *In re Charter Commc'ns*, 443 F.3d at 992; *Regents v. Credit Suisse*, 482 F.3d at 390.  *But see Simpson v. AOL Time Warner, Inc.*, 452 F.3d 1040 (9th Cir. 2006), *petition for cert. filed*, 75 U.S.L.W. 3236 (U.S. Oct. 19, 2006) (No. 06-560), and *In re Parmalat Sec. Litig.*, 376 F. Supp.2d 472 (S.D.N.Y. 2005) (recognizing the validity of "scheme liability," *i.e.*, liability where the defendant did not make a false statement or omission, and did not engage in manipulative trading).  This issue is now before the Supreme Court in *Stoneridge*.

[8] *Cf. In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 76 (2d Cir. 2001) (corporation's vice president for finance and investor relations held liable for unattributed misstatements where he was the official responsible for the company's public statements, and "was involved in the drafting, producing, reviewing and/or disseminating of the false and misleading statements issued by Scholastic during the class period").

In that case, the plaintiffs alleged that an indenture trustee could be liable as an aider and abettor for statements made by a land developer. The Supreme Court ruled that private plaintiffs could not sue for aiding and abetting a Section 10(b) violation, and also noted that plaintiffs' argument would negate the element of reliance:

> [R]espondents' argument would impose 10b-5 aiding and abetting liability when at least one element critical for recovery under 10b-5 is absent: reliance. A plaintiff must show reliance on *the defendant's* misstatement or omission to recover under 10b-5. Were we to allow the aiding and abetting action proposed in this case, the defendant could be liable *without any showing that the plaintiff relied upon the aider and abettor's statements or actions*. . . . Allowing plaintiffs to circumvent the reliance requirement would disregard the careful limits on 10b-5 recovery mandated by our earlier cases.

511 U.S. at 180 (emphasis added; citation omitted). *See also Wright*, 152 F.3d at 175 ("[r]eliance only on representations made by others cannot itself form the basis of liability") (citations omitted; brackets in original).

Accordingly, Claim II must be dismissed for failure to plead reliance.[9]

### C.    Plaintiffs Have Not Adequately Alleged Loss Causation Against Dr. Bodnar

There are two loss causation problems with the Amended Complaint. The first, discussed in BMS's motion to dismiss, is that the alleged price declines in BMS stock were linked to risks that were fully disclosed. *See* BMS Brief, Part II. The second problem, unique to Dr. Bodnar, is that plaintiffs have alleged that BMS stock was trading at an artificially high price because of statements made by BMS, not by Dr. Bodnar. Accordingly, plaintiffs have not adequately pleaded loss causation with regard to Dr. Bodnar.

---

[9] Plaintiffs allege that they are entitled to a "fraud-on-the-market" presumption of reliance because the market for BMS's stock is an efficient one. Am. Complaint ¶¶ 115-119. But this theory is not available against *Dr. Bodnar*, because it only applies to publicly disseminated information. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 247 (1988) ("an investor's reliance on any *public* material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action") (emphasis added). Dr. Bodnar is not alleged to have made any public statements.

"[L]oss causation has to do with the relationship between the plaintiff's investment loss and the information misstated or concealed by the defendant. If that relationship is sufficiently direct, loss causation is established, but if the connection is attenuated, or if the plaintiff fails to demonstrate a causal connection between the content of the alleged misstatements or omissions and the harm actually suffered, a fraud claim will not lie." *Lentell v. Merrill Lynch & Co. Inc.*, 396 F.3d 161, 174 (2d Cir. 2005). Here, the connection between Dr. Bodnar's alleged conduct and the plaintiffs' alleged losses is attenuated, as it is the public statements, and *only* the public statements, on which plaintiffs allegedly relied.

Therefore, plaintiffs' claim against Dr. Bodnar should be dismissed for failure to adequately allege loss causation.

### D.     Plaintiffs Have Not Adequately Alleged That Dr. Bodnar's Conduct Was "In Connection With" the Purchase or Sale of Any Securities

Plaintiffs have not adequately alleged that Dr. Bodnar's conduct was "in connection with" any securities transactions. In the absence of a false statement by a particular defendant, to satisfy the "in connection with" element of a private 10(b) claim, a plaintiff must allege that the defendant's conduct "coincided" with the 10(b) violation. In *SEC v. Zandford*, 535 U.S. 813 (2002), where the defendant stockbroker sold his customer's securities to convert the proceeds and failed to disclose that to the customer, the non-disclosure satisfied the "in connection with" requirement because the non-disclosure "coincided with the sales themselves." *Id.* at 820-21. And in *United States v. O'Hagan*, 521 U.S. 642 (1997), where an attorney for a corporation misappropriated material non-public information by trading in the corporation's stock, the "in connection with" requirement was satisfied because "the securities transaction and the breach of duty . . . coincide[d]." *Id.* at 656. No such allegation has been made in this case with regard to Dr. Bodnar.

8

For this additional reason, the Section 10(b) claim against him must be dismissed.

### E.    Plaintiffs Do Not Plead Facts Raising a Strong Inference That Dr. Bodnar Acted With Scienter

Given the fact that Dr. Bodnar did not make any public statements on which plaintiffs relied, it follows that Dr. Bodnar could not have acted with scienter. The concept of scienter – intent to defraud – is not an abstract notion to attach to actions on which the plaintiffs did not and could not have relied. Here, as with the other elements discussed above, the Amended Complaint fails because it alleges no statement or representation by Dr. Bodnar, and therefore does not allege scienter in connection with a public statement on which plaintiffs relied.

### F.    Plaintiffs Fail to Allege "Deceptive" Conduct by Dr. Bodnar

Section 10(b) is limited to "manipulative or deceptive device[s] or contrivance[s]." The case law on what constitutes a "deceptive" device or contrivance has now evolved to the point that two federal Courts of Appeal, relying on Supreme Court precedent, have held that the word "deceptive" as used in Section 10(b) is limited to statements (or omissions) made by the defendants and to manipulative trades. *See In re Charter Commc'ns, Inc.*, 443 F.3d 987, 992 (8th Cir. 2006), *cert. granted*, No. 06-43, 127 S. Ct. 1873, 2007 U.S. LEXIS 3582 (Mar. 26, 2007); *Regents of the State of California v. Credit Suisse First Boston (USA)*, 482 F.3d 372, 386-90 (5th Cir. 2007), *petition for cert. filed*, 75 U.S.L.W. 3557 (U.S. Apr. 5, 2007) (No. 06-1341). Other courts have taken a different view. *See, e.g., Simpson v. AOL Time Warner, Inc.*, 452 F.3d 1040, 1048 (9th Cir. 2006), *petition for cert. filed*, 75 U.S.L.W. 3236 (U.S. Oct. 19, 2006) (No. 06-560); *In re Parmalat Sec. Litig.*, 376 F. Supp.2d 472, 504 (S.D.N.Y. 2005); *In re Alstom SA Sec. Litig.*, 406 F. Supp.2d 433, 474-77 (S.D.N.Y. 2005); *In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig.*, No. 06 Civ. 643 (GEL), 2007 WL 2694469, *6-*12 (S.D.N.Y. Sept. 13, 2007). This is one of the key issues now before the Supreme Court in *Stoneridge*.

For the reasons set forth in *In re Charter Commc'ns* and *Regents of California v. Credit Suisse*, the Section 10(b) claim against Dr. Bodnar should be dismissed for failure to allege a "deceptive" act by Dr. Bodnar, as that term has been interpreted by the Supreme Court.

## II.    Plaintiffs Cannot State Any Claim Against Dr. Bodnar Under Section 20(a) of the Exchange Act

As noted above, Claim IV seeks to hold Dr. Bodnar vicariously liable, under Section 20(a) of the Exchange Act,[10] for BMS's alleged violations of Section 10(b) of the Exchange Act and Rule 10b-5.  *See* Am. Complaint ¶¶ 167-75.  This claim must be dismissed on a number of grounds.

*First*, as argued by BMS (and by Dr. Bodnar in this motion to dismiss), there was no primary violation of Section 10(b).  There cannot be control person liability absent a primary violation.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).

*Second*, plaintiffs have not alleged facts which, if believed, would demonstrate that Dr. Bodnar controlled BMS.  *See In re Alstom*, 406 F. Supp.2d at 487 ("the Section 20(a) defendant must . . . have actual control over the primary violator . . .") (internal quotations omitted).  All that plaintiffs allege against Dr. Bodnar is that he had certain corporate titles at BMS and that he participated in negotiating the Apotex Settlement, the Amended Apotex Settlement, and the alleged "unlawful, secret oral side agreements."  Am. Complaint ¶¶ 170-71.  These allegations

---

[10] Section 20(a) states:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

are not sufficient to establish that Dr. Bodnar controlled BMS. *See In re Alstom*, 406 F. Supp.2d at 486 ("[a]ctual control is essential to control person liability") (internal quotations omitted); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 436 (S.D.N.Y. 2001) ("[o]fficer or director status alone does not constitute control for purposes of § 20(a) liability"); *Lapin v. Goldman Sachs Group, Inc.*, 506 F. Supp.2d 221, 245 (S.D.N.Y. 2006) (courts must undertake "an individualized determination of a defendant's control of the primary violator . . ."), *quoting Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998).

*Third*, plaintiffs have not alleged facts regarding Dr. Bodnar's "culpable participation" in the statements which plaintiffs claim were false. *In re Alstom*, 406 F. Supp.2d at 486 (for Section 20(a) liability, plaintiffs must allege that the alleged controlling person, "in some meaningful sense," was a "culpable participant" in the fraud committed by the controlled person); *In re Refco, Inc. Sec. Litig.*, 503 F. Supp.2d 611, 663 (S.D.N.Y. 2007) ("a claim under § 20(a) requires culpable *participation* -- that is, actual involvement in the making of the fraudulent statements by the putatively controlled entity") (emphasis in original).

Since plaintiffs have not pleaded that Dr. Bodnar actually controlled BMS, or that he culpably participated in its alleged fraud, he cannot be held liable on a control person theory.

## <u>CONCLUSION</u>

For all of the foregoing reasons, plaintiffs' claims against defendant Andrew G. Bodnar

should be dismissed with prejudice.

Dated:  New York, New York
        November 26, 2007

> MORVILLO, ABRAMOWITZ, GRAND,
> IASON, ANELLO & BOHRER, P.C.
>
> By:  _____/s/ Lawrence S. Bader_____
>        Elkan Abramowitz (EA-3987)
>        Lawrence S. Bader (LB-5841)
>        Jerrold L. Steigman (JS-9137)
>        565 Fifth Avenue
>        New York, New York 10017
>        (212) 856-9600
>        Email: lbader@maglaw.com
>
> *Attorneys for Defendant Andrew G. Bodnar*