UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――――
                                          :
                                          :
IN RE BRISTOL-MYERS SQUIBB CO.            :     No. 07 Civ. 5867 (PAC)
SECURITIES LITIGATION                     :
                                          :     FILED ELECTRONICALLY
                                          :
                                          :
                                          :
                                          :
―――――――――――――――――――――――――――――――:


REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT ANDREW G. BODNAR'S MOTION TO DISMISS

Elkan Abramowitz (EA-3987)
Lawrence S. Bader (LB-5481)
Jerrold L. Steigman (JS-9137)
MORVILLO, ABRAMOWITZ, GRAND,
   IASON, ANELLO & BOHRER, P.C.
565 Fifth Avenue
New York, New York 10017
(212) 856-9600

*Attorneys for Defendant Andrew G. Bodnar*

TABLE OF AUTHORITIES

Federal Cases

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ........................................ 7

*Basic, Inc. v. Levinson*, 485 U.S. 224 (1988).................................................................................. 5

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994)................................................................................................... *passim*

*Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*, 135 F.3d 837
    (2d Cir. 1998)..................................................................................................................... 2, 3

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) ......................................................... 6

*In re Charter Commc'ns, Inc.*, 443 F.3d 987 (8th Cir. 2006), *cert. granted*,
    *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*,
    127 S. Ct. 1873 (U.S. Mar. 26, 2007) (No. 06-43) ............................................................... 1, 3

*In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp.2d 319 (S.D.N.Y. 2004).................... 2, 3, 4, 6

*In re Parmalat Sec. Litig.*, 376 F. Supp.2d 472 (S.D.N.Y. 2005).......................................... *passim*

*In re Refco, Inc. Sec. Litig.*, 503 F. Supp.2d 611 (S.D.N.Y. 2007)................................................. 8

*In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63 (2d Cir. 2001) ....................................................... 7

*In re Scottish Re Group Sec. Litig.*, No. 06 Civ. 5853 (SAS),
    2007 WL 3256660 (S.D.N.Y. Nov. 2, 2007).............................................................................. 7

*Lapin v. Goldman Sachs Group, Inc.*, 506 F. Supp.2d 221 (S.D.N.Y. 2006)................................. 8

*Mishkin v. Ageloff.*, No. 07 Civ. 2690 (LAP), 1998 WL 651065
    (S.D.N.Y. Sept. 23, 1998)........................................................................................................ 4

*Regents of the State of California v. Credit Suisse First Boston (USA)*,
    482 F.3d 372 (5th Cir. 2007), *petition for cert. filed*, 75 U.S.L.W. 3557
    (U.S. Apr. 5, 2007) (No. 06-1341)........................................................................................ 3, 7

*Rich v. Maidstone Financial, Inc.*, No. 98 Civ. 2569 (DAB),
    2002 WL 31867724 (S.D.N.Y. Dec. 20, 2002) ....................................................................... 4

*SEC v. Cedric Kushner Promotions, Inc.*, 417 F. Supp.2d 326 (S.D.N.Y. 2006) .......................... 2

*SEC v. First Jersey Sec.*, 101 F.3d 1450 (2d Cir. 1996) ............................................................. 4, 7

*SEC v. U.S. Environmental, Inc.*, 155 F.3d 107 (2d Cir. 1998) ........................................................ 4

*SEC v. PIMCO Advisors Fund Mgmt. LLC*, 341 F. Supp.2d 454 (S.D.N.Y. 2004) ....................... 4

*SEC v. Zandford*, 535 U.S. 813 (2002) .............................................................................................. 6

*Shapiro v. Cantor*, 123 F.3d 717 (2d Cir. 1997) ............................................................................... 2

*United States v. O'Hagan*, 521 U.S. 642 (1997) ............................................................................... 6

*Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998) ....................................................... 2, 3


Statutes

Securities Exchange Act of 1934 § 10(b) ................................................................................. *passim*

Securities Exchange Act of 1934 § 20(a) ......................................................................................... 8

SEC Rule 10b-5 ............................................................................................................................ 1, 5

Defendant Dr. Andrew G. Bodnar submits this reply memorandum of law in further support of his motion to dismiss the purported Amended Class Action Complaint ("Am. Complaint" or "Complaint").[1]

## INTRODUCTION

Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss ("Plaintiffs' Memo") frames most of the Section 10(b) and Rule 10b-5(a) and (c) issues relating to Dr. Bodnar well, and correctly notes that "[t]he Supreme Court is currently considering the parameters of scheme liability under Section 10(b) and Rule 10b-5(a) and (c) in *Stoneridge Investment Partners, LLC v. Scientific Atlanta, Inc.*, No. 06-43 (on appeal from *In re Charter Commc'ns, Inc.*, 443 F.3d 987 (8th Cir. 2006)." Plaintiffs' Memo at 32 n.14. The Court's decision in this case will probably be driven by the Supreme Court's decision in *Stoneridge*. However, until *Stoneridge* is decided, the parties and the Court must look to the authorities cited by both sides and decide which of the competing views of the law is most persuasive. The cases cited by plaintiffs on the Section 10(b) issues are either not on point or contradicted by other more persuasive authority which plaintiffs have largely ignored.

Plaintiffs' Memo also frames the "control person" issue well, relying principally on *In re Parmalat Sec. Litig.*, 376 F. Supp.2d 472 (S.D.N.Y. 2005), for the proposition that plaintiffs need not plead "culpable participation" in a "control person" claim. But once again, Plaintiffs' Memo simply ignores the contrary authority that Dr. Bodnar cited in his opening brief ("Bodnar Memo").

---

[1] Dr. Bodnar joins in the arguments of defendant Bristol-Myers Squibb Co. ("BMS") in its reply brief submitted in further support of the motion to dismiss.

This reply memorandum will focus on which of the cases cited by plaintiffs are distinguishable, and why other cases cited by plaintiffs should not be followed because they are contrary to more persuasive authority in this and other circuits and districts.

I

As stated in Dr. Bodnar's opening brief, the Complaint fails to make out a valid claim against Dr. Bodnar under Section 10(b) because he is not alleged to have made any statements to the public or have engaged in any manipulative trading. Bodnar Memo at 4-9. In the absence of such an allegation, Dr. Bodnar argued that the Complaint failed to adequately plead: (1) a primary violation of Section 10(b) by Dr. Bodnar, (2) reliance, (3) loss causation, (4) the "in connection with" requirement, (5) scienter, or (6) deceptive conduct.

In support of the argument that the Complaint failed to adequately plead the first of these requirements -- a primary violation of Section 10(b) by Dr. Bodnar in the absence of a public statement by him -- Dr. Bodnar cited to the Supreme Court's decision in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994), the Second Circuit's decisions in *Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998), *Dinsmore v. Squadron Ellenoff, Plesent, Sheinfeld & Sorkin*, 135 F.3d 837 (2d Cir. 1998), and *Shapiro v. Cantor*, 123 F.3d 717 (2d Cir. 1997), and to the Southern District of New York decision in *SEC v. Cedric Kushner Promotions, Inc.,* 417 F. Supp.2d 326 (S.D.N.Y. 2006). Apparently, plaintiffs have no way to distinguish these cases. Therefore, Plaintiffs' Memo mentions only *Central Bank* in its discussion of whether Section 10(b) can apply to a defendant who does not make a public statement.

Instead, plaintiffs rely principally on *Parmalat* and *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp.2d 319 (S.D.N.Y. 2004). Plaintiffs' Memo at 28-29. It is respectfully

2

submitted that *Parmalat* cannot be reconciled with the cases Dr. Bodnar cited and should not be followed for the reasons set forth therein. *See e.g.*, *Wright*, 152 F.3d at 175 ("if *Central Bank* is to have any real meaning, a defendant must actually make a false or misleading statement in order to be held liable under Section 10(b). Anything short of such conduct is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger liability under Section 10(b)….") (internal quotation marks and citations omitted); *Dinsmore*, 135 F.3d at 843 ("where the requirements for primary liability are not independently met, they may not be satisfied based solely on one's participation in a conspiracy in which *other parties* have committed a primary violation") (emphasis in original).[2]  Moreover, *Global Crossing* is distinguishable because in that case the court approved the view that:

> . . . a plaintiff may state a claim for primary liability under section 10(b) for a false statement (or omission), even where the statement is not publicly attributed to the defendant, where the defendant's participation is substantial enough that s/he may be deemed to have *made* the statement, and where investors are sufficiently aware of defendant's participation that they may be found to have *relied* on it as if the statement had been attributed to the defendant.

322 F. Supp.2d at 333 (emphases in original). The complaint in this case does not allege that Dr. Bodnar's alleged participation was substantial enough that he may be deemed to have made BMS's public statements or that investors were sufficiently aware of Dr. Bodnar's alleged participation so that they would have attributed BMS's public statements to Dr. Bodnar.

In a lengthy footnote, Plaintiffs' Memo (at 32 n.14) cites to other cases for the proposition that a defendant can be sued privately under Section 10(b) even in the absence of a

---

[2] *Parmalat* is also clearly in conflict with *In re Charter Commc'ns, Inc.*, 443 F.3d 987 (8th Cir. 2006), *cert. granted*, *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 127 S. Ct. 1873 (U.S. Mar. 26, 2007) (No. 06-43)  and with *Regents of the State of California v. Credit Suisse First Boston (USA)*, 482 F.3d 372 (5th Cir. 2007), *petition for cert. filed*, 75 U.S.L.W. 3557 (U.S. Apr. 5, 2007) (No. 06-1341).

3

false statement by him. However, those cases are clearly distinguishable. For example, in *SEC v. U.S. Environmental, Inc.*, 155 F.3d 107 (2d Cir. 1998), the defendant's "participation" was actually *making* the manipulative trades.[3] *Id*. at 112 ("Indeed, if the trader who executes manipulative buy and sell orders is not a primary violator, it is difficult to imagine who would remain liable after *Central Bank*"). And in *SEC v. First Jersey Sec.*, 101 F.3d 1450 (2d Cir. 1996), and *Rich v. Maidstone Financial, Inc.*, No. 98 Civ. 2569 (DAB), 2002 WL 31867724 (S.D.N.Y. Dec. 20, 2002), while the defendants did not make any statements, they were found to have orchestrated schemes to make false statements or omissions. There is no allegation in this case which suggests that Dr. Bodnar orchestrated the making of the public statements which plaintiffs allege were false.[4]

On the separate issues of whether plaintiffs have adequately alleged reliance, loss causation, the "in connection with" requirement, and a "deceptive device" by Dr. Bodnar, Plaintiffs' Memo again does not address the authorities cited in Dr. Bodnar's opening brief. Instead, for *all* these subjects, they rely almost exclusively on *Parmalat*, which, it is respectfully submitted, cannot be reconciled with the many cases on which Dr. Bodnar relied.

For example, on the reliance issue, Dr. Bodnar's opening brief cited to (and quoted from) *Central Bank* and *Wright* for the proposition that plaintiffs must allege reliance on the defendants' misstatements, and not on the representations of others. Bodnar Memo at 6-7. Plaintiffs do not address these quotations at all. Instead they cite to cases which hold that

---

[3] Also cited by plaintiffs are *SEC v. PIMCO Advisors Fund Mgmt. LLC*, 341 F. Supp.2d 454, 469 (S.D.N.Y. 2004), and *Mishkin v. Ageloff*, No. 97 Civ. 2690 (LAP), 1998 WL 651065, *13-*18 (S.D.N.Y. Sept. 23, 1998). Those cases involve making or supervising manipulative trades and are distinguishable for the same reasons as *U.S. Environmental*.

[4] Similarly, *Global Crossing* is distinguishable because one of the theories accepted by the court in that case was that defendant Arthur Anderson LLP "masterminded" fraudulent activity intended to deceive the public. *See Global Crossing*, 322 F. Supp.2d at 336. No such allegation was made in this case against Dr. Bodnar.

4

reliance need not be alleged when there is a "fraud on the market presumption." Plaintiffs' Memo at 30. However, plaintiffs do not address at all the argument that the "fraud on the market presumption" is not available against Dr. Bodnar "because it only applies to publicly disseminated information." Bodnar Memo at 7 n.9, *citing Basic, Inc. v. Levinson*, 485 U.S. 224, 247 (1988).

Interestingly, the position advocated by Dr. Bodnar on reliance was the exact position taken by the United States Solicitor General's Office in *Stoneridge*. *See* Brief for the United States as Amicus Curiae Supporting Affirmance.[5] Before the Supreme Court, the Solicitor General argued:

> Words or actions by a secondary actor that facilitate an issuer's misstatement, but are not themselves communicated to investors, simply cannot give rise to reliance (and thus primary liability in a private action). That principal is at the heart of the distinction between primary liability and secondary liability of the kind rejected in *Central Bank*.

*Id*. at 22.

The Solicitor General also disagreed with the theory espoused by plaintiffs in this case that the "fraud on the market theory" can create a presumption of reliance against one who does not make a false public statement:

> By its very terms, the presumption [of reliance] applies only to publicly disseminated misrepresentations: "Because most *publicly available* information is reflected in market price, an investor's reliance on any *public* material misrepresentations * * * may be presumed for purposes of a Rule 10b-5 action." *Basic*, 485 U.S. at 247 (emphases added). Petitioner's complaint does not identify any public statements or actions by respondents. Accordingly, petitioners cannot rely on the fraud-on-the-market theory to satisfy the reliance requirement here.

---

[5] The Solicitor General's amicus brief can be found online at: http://law.du.edu/jbrown/corporateGovernance/secGovernance/stonebridge/documents/StoneridgeSGAmicus.pdf.

5

*Id*. at 24-25.

On the loss causation issue that is particular to Dr. Bodnar, Dr. Bodnar argued that plaintiffs do not allege that their loss was caused by his conduct, and that therefore, the Complaint does not adequately allege "loss causation" as to Dr. Bodnar.  Bodnar Memo at 7-8. Once again, Plaintiffs' Memo relies only on *Parmalat*.  Not only is *Parmalat* wrong on this issue, but again, the Solicitor General sides with Dr. Bodnar:

> For many of the same reasons that the complaint does not satisfy the reliance (or transaction-causation) requirement, it also does not satisfy the related loss-causation requirement. [footnote omitted].  In order to show loss causation, a plaintiff must prove that the defendant's fraudulent conduct "proximately caused the plaintiff's economic loss." [*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (additional citation omitted)]. In its complaint, petitioner alleges only that it purchased stock during a specified class period. . . .  Petitioner does not allege that *respondents'* conduct caused its loss . . .

Brief for the United States as Amicus Curiae Supporting Affirmance at 25.  Here, the Complaint essentially argues that plaintiffs' alleged loss was caused by BMS's public disclosures, not by Dr. Bodnar's alleged conduct prior to those disclosures.

Plaintiffs' Memo (at 30) also relies exclusively on *Parmalat* in opposition to Dr. Bodnar's argument that his alleged conduct was not "in connection with" plaintiffs' purchases of BMS stock.  However, plaintiffs make no attempt to address *SEC v. Zandford*, 535 U.S. 813 (2002) or *United States v. O'Hagan*, 521 U.S. 642 (1997), both of which support Dr. Bodnar's "in connection with" argument.  *See* Bodnar Memo at 8.

Finally, Plaintiffs' Memo (at 31-32) relies exclusively on *Parmalat* and *Global Crossing* in opposition to Dr. Bodnar's argument that plaintiffs have failed to allege a "deceptive device or contrivance" by Dr. Bodnar as that term is used in Section 10(b).  But plaintiffs fail to

6

acknowledge or address the authority that contradicts their position. It is respectfully submitted that a careful reading of *Regents of the State of California v. Credit Suisse First Boston (USA)*, 482 F.3d 372, 386-90 (5th Cir. 2007), *petition for cert. filed*, 75 U.S.L.W. 3557 (U.S. Apr. 5, 2007) (No. 06-1341) will show why Dr. Bodnar has the better of this argument.[6]

II

With regard to plaintiffs' "control person" claim against Dr. Bodnar, it was pointed out in Dr. Bodnar's opening brief that (i) the failure to allege a primary violation in this matter eliminates the possibility of control person liability, (ii) plaintiffs failed to adequately allege Dr. Bodnar's control of BMS, and (iii) plaintiffs have not alleged facts regarding Dr. Bodnar's "culpable participation" in the statements which plaintiffs claim were false. Bodnar Memo at 10-11.

Plaintiffs argue that they are not required to plead "culpable participation" to survive a motion to dismiss on the pleadings. Plaintiffs' Memo at 25-27. It is true that there is a difference of opinion among judges in the Southern District of New York as to whether plaintiffs must do so. In *In re Parmalat Sec. Litig.*, 474 F. Supp.2d 547, 554 n.34 (S.D.N.Y. 2007), the court recognized the existence of a split in the Southern District on this point. However, the weight of Second Circuit and Southern District decisions requires allegations of "culpable participation." Bodnar Memo at 11. Most recently, in *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007), the Second Circuit identified culpable participation as an element of a prima facie case of control person liability. 493 F.3d at 108. *See also In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 78-79 (2d Cir. 2001), *citing First Jersey*, 101 F.3d at 1472 (same); *In re Scottish Re Group Sec. Litig.*, No. 06 Civ. 5853 (SAS), 2007 WL 3256660, *9 (S.D.N.Y. Nov. 2,

---

[6] Indeed, the Court in *Regents of California* specifically disagreed with the analysis in *Parmalat* on the meaning of "deceptive" conduct under Section 10(b). 482 F.3d at 377-90.

7

2007) (culpable participation an element); *Lapin v. Goldman Sachs Group, Inc.*, 506 F. Supp.2d 221, 244-49 (S.D.N.Y. 2006) (same).

Plaintiffs' fallback position is that they have, in any event, adequately alleged "culpable participation" by Dr. Bodnar. But they nowhere allege that Dr. Bodnar *made any statements to the public*. This makes plaintiffs' control person claim against Dr. Bodnar inadequate. *See In re Refco, Inc. Sec. Litig.*, 503 F. Supp.2d 611, 663 (S.D.N.Y. 2007) ("a claim under § 20(a) requires culpable *participation* -- that is, actual involvement in the making of the fraudulent statements by the putatively controlled entity") (emphasis in original).

## CONCLUSION

For all of the foregoing reasons, plaintiffs' claims against defendant Andrew G. Bodnar should be dismissed with prejudice.

Dated: New York, New York
       January 10, 2008

>                    MORVILLO, ABRAMOWITZ, GRAND,
>                      IASON, ANELLO & BOHRER, P.C.
>
>                    By:    /s Lawrence S. Bader
>                       Elkan Abramowitz (EA-3987)
>                       Lawrence S. Bader (LB-5841)
>                       Jerrold L. Steigman (JS-9137)
>                       565 Fifth Avenue
>                       New York, New York 10017
>                       (212) 856-9600
>                       Email: lbader@maglaw.com
>
>                       *Attorneys for Defendant Andrew G. Bodnar*