# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE BRISTOL-MYERS SQUIBB CO. SECURITIES LITIGATION | File No. 07-CV-5867 (PAC) |

## MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CERTIFICATION OF THE CLASS AND APPROVAL OF NOTICE TO THE CLASS

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Max W. Berger
Salvatore J. Graziano
Jai Chandrasekhar
Boaz Weinstein
Katherine M. Sinderson
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

Counsel for Lead Plaintiff and the Class

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ............................................................................. ii

INTRODUCTION ............................................................................................. 1

I.     DESCRIPTION OF THE LITIGATION ................................................ 3

     A.    Nature of the Action ..................................................................... 3

     B.    Procedural History ....................................................................... 4

II.    SETTLEMENT DISCUSSIONS AND CONSIDERATIONS ............... 6

     A.    Settlement Discussions ................................................................ 6

     B.    Reasons for the Settlement .......................................................... 7

III.   ARGUMENT ............................................................................................ 9

     A.    The Proposed Settlement Warrants Preliminary Approval ......... 9

     B.    The Proposed Notice And Notice Procedure Should Be Approved .................... 11

IV.   PROPOSED SCHEDULE OF EVENTS .............................................. 12

V.    THE CLASS SHOULD BE CERTIFIED UNDER RULES 23(a) and (b)(3) ............ 13

     A.    The Class Members Are Too Numerous To Be Joined ............. 13

     B.    Common Questions of Law and Fact Exist .............................. 14

     C.    The Claims Of Lead Plaintiff And Minneapolis Firefighters Are Typical Of Those Of The Class .................................................................. 15

     D.    The Class Representatives And Class Counsel Will Continue To Fairly And Adequately Represent The Class ................................ 16

     E.    The Class Satisfies The Requirements Of Rule 23(b)(3) ......... 17

CONCLUSION ................................................................................................ 19

## TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*Amchem Prods. v. Windsor,*
  521 U.S. 591 (1997)...........................................................................17

*Aramburu v. Health Fin. Servs.,*
  2005 U.S. Dist. LEXIS 42257 (E.D.N.Y. Apr. 18, 2005) ........................................13

*Armstrong v. Bd. of Sch. Dirs.,*
  616 F.2d 305 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas,*
  134 F.3d 873 (7th Cir. 1998) ................................................................10

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
  222 F.3d 52 (2d Cir. 2000)...................................................................17

*In re Blech Sec. Litig.,*
  187 F.R.D. 97 (S.D.N.Y. 1999) ...........................................................14, 19

*Cromer Fin. Ltd. v. Berger,*
  205 F.R.D. 113 (S.D.N.Y. 2001) .........................................................14, 18

*de la Fuente v. DCI Telecomms., Inc.,*
  206 F.R.D. 369 (S.D.N.Y. 2002) .............................................................14

*In re Drexel Burnham Lambert Group, Inc.,*
  960 F.2d 285 (2d Cir. 1992)..................................................................16

*In re Global Crossing Sec. and ERISA Litig.,*
  225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................14, 16, 17

*Greebel v. FTP Software,*
  939 F. Supp. 57 (D. Mass. 1996) .............................................................9

*In re Initial Pub. Offering Sec. Litig.,*
  243 F.R.D. 79 (S.D.N.Y. 2007) ..............................................................9

*Marisol A. v. Giuliani,*
  126 F.3d 372 (2d Cir. 1997)..................................................................14

*Maywalt v. Parker & Parsley Petroleum Co.,*
  147 F.R.D. 51 (S.D.N.Y. 1993) ..............................................................13

*In re Oxford Health Plans, Inc. Sec. Litig.,*
  191 F.R.D. 369 (S.D.N.Y. 2000) ............................................................15

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ..........................................................................9, 10

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
   237 F.R.D. 26 (E.D.N.Y. 2006) ....................................................................................11

*Robinson v. Metro-North Commuter R.R.*,
   267 F.3d 147 (2d Cir. 2001)...........................................................................................15

*Teachers Ret. Sys. Of Louisiana v. ACLN Ltd.*,
   2004 U.S. Dist. LEXIS 25927 (S.D.N.Y. Dec. 20, 2004) ......................................16

*In re Top Tankers, Inc. Sec. Litig.*,
   2008 WL 2944620 (S.D.N.Y. July 31, 2008) ...............................................................9

*Trief v. Dun & Bradstreet Corp.*,
   144 F.R.D. 193 (S.D.N.Y. 1992) .............................................................................14, 15

## STATUTES AND OTHER AUTHORITIES

15 U.S.C. § 78u-4(a) .........................................................................................................3, 11

Fed. R. Civ. P. 23 .......................................................................................................... passim

2 *Newberg on Class Actions* § 4:25 ..............................................................................18

## INTRODUCTION

Lead Plaintiff, the Ontario Teachers' Pension Plan Board ("Lead Plaintiff" or "Ontario Teachers"), on behalf of itself and the other members of the Class (as hereinafter defined), and defendants Bristol-Myers Squibb Co. ("Bristol-Myers" or the "Company"), Peter R. Dolan ("Dolan") and Andrew G. Bodnar ("Bodnar") (the "Individual Defendants"; together with Bristol-Myers, the "Defendants"; and together with Lead Plaintiff, the "Parties"), have reached an agreement to settle this class action litigation (the "Consolidated Action"), subject to Court approval. The proposed Settlement provides for the payment of $125,000,000 in cash (the "Settlement Amount") plus any and all interest earned thereon (the "Settlement Fund") for the benefit of the Class, in exchange for dismissal of the claims against Defendants.

The Settlement, set forth in the Stipulation and Agreement of Settlement dated July 21, 2009 ("Stipulation"), was reached only after extensive litigation and negotiations overseen by an experienced mediator, Michael D. Young, Esq., and with the active participation of the Court-appointed Lead Plaintiff Ontario Teachers through its Senior Legal Counsel, Jeffrey M. Davis, who personally attended the mediation.[1] The proposed Settlement is an outstanding result for Lead Plaintiff and the Class, particularly in light of the risks that the Class faced if the Consolidated Action continued, including the risks of establishing Defendants' liability and the Class' full amount of damages at summary judgment or trial. In addition, litigating this complex securities fraud class action to completion would have resulted in significant expense and delay.

---

[1] A copy of the Stipulation and the exhibits thereto are attached as Exhibit 1 to Lead Plaintiff's Notice of Motion and Unopposed Motion for Preliminary Approval of Settlement, Certification of the Class and Approval of Notice to the Class ("Notice of Motion") submitted concurrently herewith. All capitalized terms herein not otherwise defined shall have the meaning ascribed to them in the Stipulation.

As set forth below, Lead Plaintiff and Lead Counsel – based upon their evaluation of the facts and applicable law, and their recognition of the substantial risks and expense of continued litigation – submit that the proposed Settlement is in the best interests of the Class, providing an outstanding recovery for the Class now.   Accordingly, Lead Plaintiff respectfully moves for preliminary approval of the Settlement.

At the final settlement approval hearing (the "Settlement Hearing"), the Court will have before it more extensive motion papers submitted in support of the proposed Settlement, and will be asked to make an ultimate determination as to whether the Settlement is fair, reasonable, and adequate under all of the circumstances surrounding the Consolidated Action.  At this juncture, however, Lead Plaintiff requests only that the Court grant preliminary approval of the Settlement so that notice of the Settlement may be sent to the Class.

Lead Plaintiff respectfully requests that this Court enter the [Proposed] Order Preliminarily Approving Settlement and Providing For Notice (the "Preliminary Approval Order"), a copy of which is attached as Exhibit 2 to the accompanying Notice of Motion, which, among other things, will:

(i)      preliminarily approve the Settlement on the terms set forth in the Stipulation;

(ii)     certify the Class pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure;[2]

---

[2] The parties have stipulated and agreed to certification of the following Class:

"Class" means all persons and entities who purchased or acquired Bristol-Myers common stock during the period from after the close of the market on March 21, 2006, through August 8, 2006, inclusive, and suffered damages as a result. Excluded from the Class are (i) Defendants; (ii) members of the immediate families of individual defendants Dolan and Bodnar; (iii) any person who was an executive officer or director of Bristol-Myers during the Class Period; (iv) any person, firm, trust, corporation, officer, director, or any other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any Defendant; (v) any person who actively participated in the

(iii)    approve the form, substance and requirements of the Notice of Pendency of Class Action and Proposed Settlement, Settlement Fairness Hearing, and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses, attached as Exhibit 1 to the Preliminary Approval Order ("Notice"), the Summary Notice of Pendency of Class Action and Proposed Settlement, Settlement Fairness Hearing, and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses, attached as Exhibit 3 to the Preliminary Approval Order (the "Publication Notice"; and together with the Notice, the "Notices"), and the Proof of Claim and Release (the "Claim Form"), attached as Exhibit 2 to the Preliminary Approval Order;

(iii)    find that the procedures established for publication, mailing and distribution of the Notices substantially in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and are in full compliance with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7), as amended by the Private Securities Litigation Reform Act (the "PSLRA"); and

(iv)    set a schedule and procedures for dissemination and publication of the Notices, for requesting exclusion from the Class, for submitting papers in support of final approval of the Settlement, for objecting to the Settlement, and for the Settlement Hearing.

## I.   **DESCRIPTION OF THE LITIGATION**

### A.   **Nature of the Action**

This action arises out of Bristol-Myers' disclosures about its attempts to settle patent litigation with a Canadian generic pharmaceutical company, Apotex, Inc., and its U.S. subsidiary, Apotex Corp. (collectively, "Apotex"). Under the proposed Apotex settlement, which required regulatory approval, Apotex agreed not to introduce an allegedly infringing generic equivalent of Bristol-Myers' largest-selling drug, Plavix, prior to the license period established in the agreement. Lead Plaintiff alleges that Defendants failed to disclose that the

---

alleged wrongdoing at issue; and (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party. Also excluded from the Class are any persons who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Notice.

Company had agreed to significant limitations on its damages and patent enforcement rights (including the availability of injunctive relief) against Apotex if the regulators rejected the settlement; that regulators had rejected the initial proposed settlement in a timely manner; and that the renegotiated settlement agreement contained certain alleged secret and unlawful oral representations that were not disclosed to investors or regulators.

Lead Plaintiff alleges that when this information was disclosed to the public – in a partial corrective disclosure on July 27, 2006, and a subsequent corrective disclosure on August 8, 2006 – the stock price of Bristol-Myers fell and investors suffered damages.

**B.    <u>Procedural History</u>**

Beginning on June 20, 2007, two class action complaints were filed in the United States District Court for the Southern District of New York, styled *Minneapolis Firefighters' Relief Association v. Bristol-Myers Squibb Company, et al.*, Case No. 07-CV-5867 (PAC), and *Lai v. Bristol-Myers Squibb Company, et al.*, Case No. 07-CV-6259 (PAC).

On September 5, 2007, the plaintiff in *Lai v. Bristol-Myers Squibb Company, et al.*, Case No. 07-CV-6259 (PAC), filed a Notice of Voluntary Dismissal without prejudice. In a Scheduling Order dated September 20, 2007, the Court dismissed that case without prejudice. In that same Scheduling Order, the Court ordered that the remaining action, *Minneapolis Firefighters' Relief Association v. Bristol-Myers Squibb Company, et al.*, Case No. 07-CV-5867 (PAC), be recaptioned as "*In re Bristol-Myers Squibb Co. Securities Litigation.*" In a separate Order, also dated September 20, 2007, the Court appointed Ontario Teachers as Lead Plaintiff for the Consolidated Action and approved its selection of Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel for the Class.

On October 15, 2007, Lead Plaintiff filed the Amended Class Action Complaint ("Amended Complaint"), asserting claims under Sections 10(b) and 20(a) of the Exchange Act

4

on behalf of all persons or entities who purchased or acquired Bristol-Myers common stock during the period from after the close of the market on March 21, 2006, through August 8, 2006, inclusive, and suffered damages as a result.

Beginning on November 12, 2007, three separate motions to dismiss the Amended Complaint were filed by Defendants, which motions Lead Plaintiff opposed on December 17, 2007. Following a hearing on March 12, 2008, on August 19, 2008, the Court issued an Opinion and Order denying Defendants' motions to dismiss. Defendants thereafter filed their Answers to the Amended Complaint on September 29 and October 6, 2008.

Lead Counsel conducted an extensive investigation into the facts and legal issues in this case and engaged in significant discovery. Lead Counsel reviewed and analyzed the Company's filings with the Securities and Exchange Commission ("SEC"), press releases and other public statements issued by Defendants, media and news reports about the Company, publicly available trading data relating to the price and volume of Bristol-Myers common stock, and other information. Beginning in September 2008, Lead Plaintiff issued 52 subpoenas to nonparties; served letters rogatory on Canadian corporation Apotex and its officers; and served document requests on all Defendants. Lead Plaintiff received and reviewed approximately 740,000 pages of documents in response to these subpoenas and requests for documents. In addition, Lead Counsel consulted with experts on issues relating to liability, damages, and materiality, and engaged in confirmatory deposition discovery after the agreement in principle to settle was reached.

Defendant Bristol-Myers served requests for documents on Lead Plaintiff and named plaintiff Minneapolis Firefighters' Relief Association ("Minneapolis Firefighters"). Plaintiffs produced approximately 2,000 pages of documents in response to these requests.

On October 22, 2008, the Court held a Pretrial Conference and issued a Civil Case Management Plan and Scheduling Order, including an April 22, 2009 deadline for completion of fact discovery. Thereafter, on January 27, 2009, the Court held another Status Conference, following which the parties submitted and the Court ordered a Revised Scheduling Order, extending the deadlines by sixty days.

## II.     SETTLEMENT DISCUSSIONS AND CONSIDERATIONS

### A.     Settlement Discussions

On April 16, 2009, Lead Plaintiff and Bristol-Myers, through counsel, participated in a mediation session before Michael D. Young at JAMS in New York City. Lead Plaintiff, through its Senior General Counsel, Jeffrey M. Davis, attended in person and actively participated in the mediation session. Although there was no settlement reached at the conclusion of that session, after additional discussions, and with the continued assistance of Mr. Young, the Parties reached an agreement in principle to settle this action on the terms set forth in the Stipulation.

In advance of the mediation session, the Parties prepared detailed mediation statements which they exchanged. In their mediation statements and at the mediation session, the Parties presented their respective views regarding the merits of the Consolidated Action, as well as their views concerning available defenses, potential sources of recovery, the evidence and damage analyses.

Before entering into the Stipulation, however, Lead Counsel conducted additional discovery to confirm the fairness of the Settlement resulting in Lead Plaintiff taking the depositions of Sandra Leung, Bristol-Myers' General Counsel, and Susan Webster, a corporate partner at Cravath, Swaine & Moore LLP who provided advice to Bristol-Myers on disclosure issues.

B.     <u>Reasons for the Settlement</u>

Lead Plaintiff has entered into the Settlement with a thorough understanding of the strengths and weaknesses of the claims asserted in the Consolidated Action.  This understanding is based on Lead Counsel's prosecution of the Consolidated Action, which has included, *inter alia,* (i) drafting of a detailed consolidated complaint after review and analysis of the Company's SEC filings, press releases and other public statements issued by Defendants, media and news reports about the Company, publicly available trading data relating to the price and volume of Bristol-Myers common stock, and other information; (ii) extensive briefing on Defendants' three separate motions to dismiss; (iii) review and analysis of approximately 740,000 pages of documents produced by Defendants and third-parties; (iv) two depositions; (v) consultations with experts; and (vi) drafting of a mediation statement and preparing for and participating in a mediation session and extensive negotiations.

While Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants have merit, they also recognize that there were serious risks as to whether Lead Plaintiff would ultimately prevail on the merits.  Additionally, there was a very substantial risk that, even if Lead Plaintiff were to prevail on the merits, the Class might not recover as much as the Settlement Amount on a judgment, much less more than the Settlement Amount.

While Lead Plaintiff's investigation and analysis of the evidence provides support for its claims, Lead Plaintiff also recognizes that a jury could conclude that there were no material misstatements or omissions or, that if there were such material misstatements or omissions, they were not made with the requisite scienter.  For example, with respect to whether there were any material misstatements or omissions, Defendants would have continued to argue that:  (i) the statements made were literally true; (ii) certain alleged false statements were not material; and

(iii) contrary to the allegations in the Amended Complaint, the Company did not enter into oral side agreements with Apotex.

Defendants would also have likely continued to dispute whether Lead Plaintiff could establish Defendants' scienter. Defendants would have likely argued that (i) a special disclosure committee at Bristol-Myers, the Exceptional Circumstances Disclosure Committee ("ECDC"), met to review disclosures with outside counsel; (ii) the challenged disclosures were reviewed by outside counsel and a federally appointed monitor, a former federal court judge, prior to issuance; and (iii) Bristol-Myers relied on the advice of its outside counsel in making these disclosures.

In addition, defendant Bodnar would have continued to argue that he cannot be held liable under Section 10(b) of the Exchange Act because he did not make any of the alleged false statements, and both Individual Defendants would have continued to argue that they did not have the requisite scienter. Indeed, the recent Sentencing Memorandum filed in support of Bodnar in connection with his guilty misdemeanor plea for filing a false document with the Federal Trade Commission ("FTC"), asserts that Bodnar was unaware of the inaccuracy at the time he signed a certification on behalf of his employer, Bristol-Myers; paints a picture of a distinguished physician devoted to the service of others; and is supported by numerous supporting letters, including by Evan Chesler, the Presiding Partner at Cravath, Swaine & Moore LLP, and Frederick B. Lacey, a former U.S. District Court Judge.[3]

Lead Plaintiff and Lead Counsel also considered that, even if Lead Plaintiff were to prevail on the merits, the ability to recover as much as the Settlement Amount on a judgment,

---

[3]   *See United States v. Bodnar*, 08-CR-115 (RMU) (D.D.C.), Sentencing Memorandum On Behalf Of Dr. Andrew G. Bodnar, filed May 28, 2009, Docket No. 44.

much less *more* than the Settlement Amount, was far from certain. Defendants would have argued that the declines in the share price of Bristol-Myers common stock on July 27, 2006 and on August 8, 2006 were only partially related to the alleged fraud, or not related at all, and thus no damages were recoverable. Lead Plaintiff and Lead Counsel also considered the certainty of payment now as opposed to having to wait years for a final resolution after a jury trial and the appeals that would inevitably follow.

III.   **ARGUMENT**

A.   **The Proposed Settlement Warrants Preliminary Approval**

The settlement of complex class action litigations are clearly favored by the courts. *In re Top Tankers, Inc. Sec. Litig.*, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008) ("Courts observe a general policy favoring the settlement of disputed claims, especially with respect to class actions."); *In re Prudential Sec. Inc. Ltd. P'ships Litig.,* 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions."). In considering whether to grant preliminary approval to a class action settlement, courts make a preliminary evaluation of the fairness of the settlement, prior to a hearing on notice. As this Court stated:

> Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.

*In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) (J. Scheindlin) (citations omitted) ("*IPO Sec. Litig.*"). Additionally, where, as here, the settlement was reached under the supervision of an appropriately selected institutional Lead Plaintiff, it is entitled to an even greater presumption of reasonableness. *See Greebel v. FTP Software*, 939 F. Supp. 57, 64 (D. Mass. 1996) ("'Institutions with large stakes in class actions have much the same interests as

9

the plaintiff class generally; thus, courts could be more confident settlements negotiated under the supervision of institutional plaintiffs were 'fair and reasonable' . . .'").

The preliminary approval hearing "is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 314 (7th Cir. 1980) (footnote omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). The Parties here request only that the Court take the first step in this process, which is to grant preliminary approval of the proposed Settlement. The proposed Settlement, which provides the sum of $125 million in cash (plus interest) is clearly beneficial to the Class. Given the complexities of this Consolidated Action, and the continued risks if the parties were to proceed to trial, the Settlement represents an outstanding resolution, and eliminates the risk that the Class might not otherwise recover from Defendants (or recover an amount substantially less than the $125 million Settlement Amount negotiated here). *See, e.g., Prudential Sec. Litig.*, 163 F.R.D. at 210 ("Instead of the lengthy, costly, and uncertain course of further litigation, the settlement provides a significant and expeditious route to recovery for the Class.").

Moreover, reference to the factors set forth above considered b y courts in granting preliminary approval of class action settlements confirms that the Settlement is well within the range of possible approval. First, the terms of the proposed Settlement are the product of extensive arm's-length negotiations. The Consolidated Action was actively prosecuted for over two years. At the time the Parties agreed to settle, approximately 740,000 pages of documents had been reviewed, depositions were scheduled, and fact discovery was scheduled to be completed only seven weeks later. In addition, Lead Counsel also conducted confirmatory

discovery, including two depositions, to confirm the reasonableness of the Settlement. Accordingly, there is no evidence here of any collusion between the Parties.

Nor is there any evidence that the class representatives, Lead Plaintiff Ontario Teachers and named plaintiff Minneapolis Firefighters, will improperly receive preferential treatment. To the contrary, Lead Plaintiff and Minneapolis Firefighters will be treated exactly the same as any other Class Member with the single exception that an application may be made to compensate them for their expenses incurred in representing the Class, as expressly provided in the PSLRA. *See* 15 U.S.C. § 78u-4(a)(4). Moreover, Lead Counsel has significant experience in securities and other complex class action litigation, and has negotiated hundreds of other substantial class action settlements throughout the country. Lead Counsel has taken extensive discovery and is thus "well informed as to the operative facts" and "considerable risks" of the Consolidated Action. *See Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006).

At this point, the Court need not answer the ultimate question: whether the Settlement is fair, reasonable and adequate. The Court is only being asked to permit notice of the terms of the Settlement to be sent to the Class, and to schedule a hearing, pursuant to Rules 23(e) of the Federal Rules of Civil Procedure, to consider any views expressed by Class Members as to the fairness of the Settlement, the Plan of Allocation, and Lead Counsel's request for an award of attorneys' fees and Litigation Expenses.

### B.      The Proposed Notice And Notice Procedure Should Be Approved

As outlined in the Preliminary Approval Order, Lead Plaintiff will cause the Claims Administrator to notify Class Members of the Settlement by mailing the Notice and Claim Form to Class Members no later than ten (10) business days after entry of the Preliminary Approval Order. The Notice will advise Class Members of the essential terms of the Settlement, of

information regarding Lead Counsel's application for attorneys' fees and Litigation Expenses, and of the proposed plan for allocating the net Settlement proceeds among Class Members (the "Plan of Allocation"). It also sets forth the procedure for objecting to the Settlement, Plan of Allocation or the request for an award of attorneys' fees and Litigation Expenses, or opting out of the Class, and will provide specifics on the date, time and place of the Settlement Hearing. The proposed Preliminary Approval Order further requires Lead Plaintiff to cause the Publication Notice to be published once in the national edition of *The Wall Street Journal* and over the *PR Newswire* within ten (10) business days of the mailing of the Notice. Because the Notice and Publication Notice fairly apprise Class Members of their rights with respect to the Settlement, they represent the best notice practicable under the circumstances and should be approved.

## IV.    PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing and publication of the Notice and Publication Notice, and deadlines for submitting claims, for opting out of the Class or for objecting to the Settlement. The Parties propose the following schedule:

| Event | Timeframe for Compliance |
|---|---|
| Deadline for mailing the Notice and Claim Form to Class Members ("Notice Date") | No later than ten (10) business days after entry of the Preliminary Approval Order |
| Deadline for publishing Publication Notice | No later than ten (10) business days after mailing of the Notice |
| Deadline for submitting exclusion requests or objections | No later than twenty-one (21) calendar days prior to the Settlement Hearing |

| Event | Timeframe for Compliance |
|---|---|
| Filing of papers in support of final approval of Settlement, Plan of Allocation and Lead Counsel's application for attorneys' fees and Litigation Expenses | No later than seven (7) business days prior to the Settlement Hearing |
| Deadline for submitting Claim Forms | No later than 120 calendar days after the Notice Date |

## V.     THE CLASS SHOULD BE CERTIFIED UNDER RULES 23(a) AND (b)(3)

In connection with the Settlement, the Parties have stipulated and agreed that the Court may certify the Class, and appoint Lead Plaintiff Ontario Teachers and named plaintiff Minneapolis Firefighters as Class Representatives and Lead Counsel Bernstein Litowitz Berger & Grossmann LLP as Class Counsel. *See* Stipulation, ¶2.

"The law in the Second Circuit favors the liberal construction of Rule 23 . . . and courts may exercise broad discretion when they determine whether to certify a class." *Aramburu v. Health Fin. Servs.*, 2005 U.S. Dist. LEXIS 42257, at *5 (E.D.N.Y. Apr. 18, 2005) (citation omitted).

Lead Plaintiff requests certification of the Class pursuant to the numerosity, commonality, typicality and adequacy requirements of Rule 23(a)(1)-(4) and the predominance and superiority requirements of Rule 23(b)(3).  As demonstrated below, the proposed Class warrants certification.

### A.     The Class Members Are Too Numerous To Be Joined

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. *See Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 54 (S.D.N.Y. 1993).  Here, the proposed Class includes all persons or entities who purchased or acquired Bristol-Myers common stock during the period from after the close of the market on

13

March 21, 2006, through August 8, 2006, inclusive, and suffered damages as a result. During the Class Period, Bristol-Myers had almost 2 billion shares outstanding and its common stock was actively traded on the NYSE. The proposed Class likely consists of tens of thousands of investors who purchased Bristol-Myers common stock during the Class Period. Thus, the numerosity requirement is satisfied. *See, e.g.*, *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004); *de la Fuente v. DCI Telecomms., Inc.*, 206 F.R.D. 369, 390 (S.D.N.Y. 2002) ("Given the large numbers of outstanding DCI stock, it is reasonable to infer that the number of plaintiffs satisfies the requirement of numerosity.").

### B.    Common Questions of Law and Fact Exist

Rule 23(a)(2) requires the existence of questions of law or fact common to the class. *See Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 122 (S.D.N.Y. 2001) (commonality inquiry "asks if the named plaintiffs' 'grievances share a common question of law or of fact' with those of the proposed class . . . .") (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)) (emphasis added). Generally, courts have "liberally construed" the commonality prerequisite, requiring only a "minimum of one issue common to all class members." *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992). The existence of a common course of conduct arising out of a single set of operative facts satisfies the commonality requirement. *In re Blech Sec. Litig.*, 187 F.R.D. 97, 104 (S.D.N.Y. 1999).

In the present Consolidated Action, there are numerous common legal and factual issues, and the same facts giving rise to the claims of Lead Plaintiff and Minneapolis Firefighters also give rise to absent Class Members' claims. Indeed, absent Class Members would have to prove identical facts, and answer identical questions, were they to pursue their claims individually. The common legal and factual issues include, among others:

a.   Whether the federal securities laws were violated by Defendants' acts and omissions;

b.   Whether Defendants' public statements, including Defendants' SEC filings, press releases, and conference calls, contained misstatements of material fact or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

c.   Whether Defendants acted with scienter in omitting or misrepresenting material facts in the Company's SEC filings, press releases, conference calls, and other public statements;

d.   Whether the market price of Bristol-Myers common stock during the Class Period was artificially inflated due to the material misrepresentations and omissions alleged;

e.   With respect to Plaintiffs' claims pursuant to Section 20(a) of the Exchange Act, whether Defendants Dolan and Bodnar were controlling persons of the Company during the Class Period; and

f.   Whether the members of the Class have sustained damages as a result of the misconduct alleged and, if so, the proper measure of such damages.

Complaint, ¶27.  As the court stated in *In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000), "[w]here the facts as alleged show that Defendants' course of conduct concealed material information from an entire putative class, the commonality requirement is met."  Thus, the commonality requirement of Rule 23(a)(2) is satisfied by the facts alleged in this Consolidated Action.

### C.   The Claims Of Lead Plaintiff And Minneapolis Firefighters Are Typical Of Those Of The Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a).  Typicality is satisfied if "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001).  The typicality requirement of Rule 23(a)(3) is liberally construed, and "typical" does not mean "identical." *Trief,* 144 F.R.D. at 200.

The focus of the typicality inquiry is not the plaintiff's behavior, but rather the defendants' actions. *See, e.g.*, *Teachers Ret. Sys. Of Louisiana v. ACLN Ltd.*, 2004 U.S. Dist. LEXIS 25927, at *12-13 (S.D.N.Y. Dec. 20, 2004). The critical question is whether the proposed class representatives and the class can point to the same "common course of conduct" to support a claim for relief. Courts have recognized that typicality is established when "the same [alleged] unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Global Crossing*, 225 F.R.D. at 452 (quoting *Robidoux*, 987 F.2d at 936-37). Proposed class representatives' claims satisfy the typicality requirement if – as here – they arise "from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).

Here, the claims asserted by Lead Plaintiff and Minneapolis Firefighters are typical, if not identical, to the claims of every other Class Member. The Amended Complaint alleges that Defendants violated the federal securities laws by making public statements that misrepresented or omitted material facts. Lead Plaintiff and Minneapolis Firefighters allege that they, like the rest of the Class, purchased Bristol-Myers common stock during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged in the Amended Complaint. Those claims, and the claims of the absent Class Members, are based upon precisely the same theories, and will be proven by precisely the same evidence. Thus, the requirements of Rule 23(a)(3) are satisfied.

### D.    The Class Representatives And Class Counsel Will Continue To Fairly And Adequately Represent The Class

Rule 23(a)(4) requires that representative plaintiffs fairly and adequately protect the interests of the class. The inquiry into adequacy focuses on whether the class representatives'

interests are antagonistic to the interests of other class members; and whether Lead Counsel is qualified, experienced, and capable of conducting the litigation. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000); *Global Crossing,* 225 F.R.D. at 453.

As discussed above, the claims of Lead Plaintiff and Minneapolis Firefighters arise from the same course of conduct as, and are typical of, the claims of the Class. They, and all Class Members, share an interest in proving the alleged falsity of Defendants' representations, their scienter, and in obtaining redress. In addition, Lead Plaintiff has retained experienced, capable counsel to represent the Class. Lead Counsel Bernstein Litowitz Berger & Grossmann LLP has successfully pursued and resolved a multitude of complex class actions in courts throughout the United States. Furthermore, the proposed $125 million Settlement obtained for the Class is further evidence that Lead Plaintiff and its counsel have fairly and adequately protected the interests of the Class, and will continue to do so. Accordingly, the adequacy requirement of Rule 23(a)(4) is met in this Consolidated Action.

E.    **The Class Satisfies The Requirements Of Rule 23(b)(3)**

In addition to the four requirements of Rule 23(a), a certifiable class must also satisfy one of the three subparts of Rule 23(b). Lead Plaintiff here seeks class certification under Rule 23(b)(3), which requires that:

> the court find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3). This rule is designed to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997).

The predominance inquiry normally focuses "'on the legal or factual questions that qualify each class member's case as a genuine controversy . . . [and] tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Cromer,* 205 F.R.D. at 127 (quoting *Amchem,* 521 U.S. at 623) (alteration in *Cromer*).  Predominance "is a test readily met in certain cases alleging consumer or securities fraud . . . ." *Amchem,* 521 U.S. at 625.  "A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions." 2 *Newberg on Class Actions* § 4:25.

Here, the Amended Complaint alleges that all Class Members were subjected to, and harmed by, Defendants' uniform course of conduct in issuing materially false and misleading statements with respect to the proposed settlement with Apotex.

Rule 23(b)(3) also requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

> The matters pertinent to these findings include:  (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in the managing a class action.

*Id.*

> Courts have found that the superiority requirement is satisfied where:

> [t]he potential class members are both significant in number and geographically dispersed[, and t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions.

*Cromer,* 205 F.R.D. at 133.

Here, the utility of presenting the claims of Class Members through the class action device is substantial, as Class Members who allegedly have been injured by Defendants' conduct

number in the tens of thousands, but the vast majority would not be induced to bring their own suits, nor do they have the resources to conduct litigation of such complexity. *See Blech*, 187 F.R.D. at 107 ("violations of the federal securities laws, such as those alleged in the Complaint, inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible."). Thus, class certification is the superior method for resolving the claims of the Class.

## CONCLUSION

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant preliminary approval of the proposed Settlement, certify the Class, and enter the accompanying proposed Preliminary Approval Order.

Dated:  New York, New York  
       July 22, 2009

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

By:___/s/ Salvatore Graziano_____  
    Max W. Berger  
    max@blbglaw.com  
    Salvatore J. Graziano  
    sgraziano@blbglaw.com  
    1285 Avenue of the Americas  
    New York, New York 10019  
    Telephone:  (212) 554-1400  
    Facsimile:  (212) 554-1444

*Attorneys for Lead Plaintiff Ontario Teachers' Pension Plan Board and Lead Counsel for the Class*

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (FF-9102)
Joel B. Strauss (JS-6585)
850 Third Avenue
New York, NY 10022
Tel.: (212) 687-1980
Fax: (212) 687-7714

-and-

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
Richard A. Lockridge
Karen H. Riebel
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel.: (612) 339-6900
Fax: (612) 399-0981

*Attorneys for Plaintiff Minneapolis Firefighters' Relief Association*

393950.4