**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

File No. 07-CV-5867 (PAC)

IN RE BRISTOL-MYERS SQUIBB CO.
SECURITIES LITIGATION

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN
AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**
Max W. Berger
Salvatore J. Graziano
Jai Chandrasekhar
Boaz A. Weinstein
Katherine M. Sinderson
1285 Avenue of the Americas
New York, NY 10019
Tel:  (212) 554-1400
Fax:  (212) 554-1444

Counsel for Lead Plaintiff and the Class

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................iii

I.      PRELIMINARY STATEMENT ................................................................................. 1

II.     ARGUMENT .............................................................................................................. 3

        A.      Plaintiffs' Counsel Are Entitled To An Award Of
                Attorneys' Fees  And Reimbursement Of Expenses From
                The Common Fund ......................................................................................... 3

        B.      A Percentage Of The Fund Should Be Awarded As
                Attorneys' Fees .............................................................................................. 4

        C.      The Requested Fee Percentage Is Reasonable ................................................ 5

        D.      Factors Considered By Courts In The Second Circuit
                Justify Approval Of The Requested Fee As Fair And
                Reasonable ..................................................................................................... 7

                1.      The Time And Labor Expended By Counsel............................................ 7

                2.      The Risks Of The Litigation ................................................................... 9

                3.      The Magnitude And Complexity Of The Litigation ............................... 13

                4.      The Quality Of Representation ............................................................... 13

                5.      The Requested Fee In Relation To The Settlement Amount .................... 15

                6.      Public Policy Considerations .................................................................. 15

                7.      A Lodestar Cross-Check Confirms The Reasonableness Of
                        The Requested Fees ............................................................................... 16

        E.      Lead Plaintiff's Approval Of The Fee And The Lack Of
                Objection From The Class To The Fee And Expense
                Request Favor Approval ................................................................................. 18

                1.      Lead Plaintiff's Fee and Expense Decisions Are
                        Presumptively Reasonable ...................................................................... 18

                2.      The Class's Reaction Is Overwhelmingly Positive.................................. 19

        F.      Plaintiffs' Counsel's Expenses Are Reasonable And Were
                Necessarily Incurred To Achieve The Benefit Obtained.................................. 21

i

G.    Lead Plaintiff Should Be Reimbursed For Its Costs And Expenses ........................................................................................... 22

III.    CONCLUSION............................................................................................................. 23

# TABLE OF AUTHORITIES

CASES                                                                                          PAGE(S)

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
    2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006), *aff'd*, 272 Fed. Appx. 9 (2d Cir. 2008)............6

*In re Am. Bank Note Holographics Sec. Litig.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)........................................................................9, 12

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) .........................................................................................10

*In re AT&T Corp. Sec. Litig.*,
    455 F.3d 160 (3d Cir. 2006)................................................................................................6

*AUSA Life Ins. Co. v. Ernst & Young*,
    39 F. Appx. 667 (2d Cir. 2002) (unpubl.) ..........................................................................9

*Backman v. Polaroid Corp.*,
    910 F.2d 10 (1st Cir. 1990)...............................................................................................10

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)............................................................................................................4

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985)..........................................................................................................15

*In re Bisys Sec. Litig.*,
    2007 WL 2049726 (S.D.N.Y. July 16, 2007) ..................................................................17

*Blum v. Stenson*,
    465 U.S. 886 (1984)............................................................................................................5

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)............................................................................................................3

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
    587 F. Supp. 2d 1266 (N.D. Ga. 2008) ..............................................................................6

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d. Cir. 2001)............................................................................................19

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)...............................................................................................9

*In re Deutsche Telekom AG Sec. Litig.*,
    2005 U.S. Dist. LEXIS 45798 (S.D.N.Y. June 9, 2005) ...................................................6

*In re DPL, Inc. Sec. Litig.*,
    307 F. Supp. 2d 947 (S.D. Ohio 2004) ..............................................................................7

*Feder v. Electronic Data Systems Corp.*,
    248 Fed. Appx. 579 (5th Cir. Sept. 25, 2007)..............................................................3, 20

*In re Gilat Satellite Networks, Ltd.,*
2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ....................................................22

*In re Global Crossing Sec. ERISA Litig.,*
225 F.R.D. 436 (S.D.N.Y. 2004) ...............................................12, 18, 19, 22

*Goldberger v. Integrated Res., Inc.,*
209 F.3d 43 (2d Cir. 2000) ..................................................................... passim

*Hicks v. Morgan Stanley & Co.,*
2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 19, 2005) ...............................15, 22

*In re Ikon Office Solutions, Inc. Sec. Litig.,*
194 F.R.D. 166 (E.D. Pa. 2000) .....................................................................7, 10

*In Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.,*
540 F.2d 102 (3d Cir. 1976) ..........................................................................16

*In re Indep. Energy Holdings PLC Sec. Litig.,*
2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept. 26, 2003) ...................................12

*In re Informix Corp. Sec. Litig.,*
1999 U.S. Dist. LEXIS 23579 (N.D. Cal. Nov. 23, 1999) ......................................7

*In re Interpublic Sec. Litig.,*
2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) .......................................................17

*J.I. Case Co. v. Borak,*
377 U.S. 426 (1964) ..........................................................................................15

*In re Lernout & Hauspie Sec. Litig.,*
138 F. Supp. 2d 39 (D. Mass. 2001) .................................................................18

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.,*
487 F.2d 161 (3d Cir. 1973) ..........................................................................16

*In re Lloyd's American Trust Fund Litig.,*
2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ...................................................21

*Maley v. Del Global Techs. Corp.,*
186 F. Supp. 2d 358 (S.D.N.Y. 2002)...........................................................4, 5, 15, 17

*In re Maxim Integrated Prods., Inc. Sec. Litig.,*
639 F. Supp. 2d. 1038 (N.D. Cal. 2009) ...........................................................11

*In re Medical X-Ray Film Antitrust Litig.,*
1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998)......................................14

*In re Merril Lynch & Co. Research Reports Sec. Litig.*
246 F.R.D. 156 (S.D.N.Y. 2007) ....................................................................5, 15

*In re Merrill Lynch Tyco Research Sec. Litig.,*
249 F.R.D. 124 (S.D.N.Y. 2008) ..........................................................4, 13, 14, 15

*Missouri v. Jenkins*,
    491 U.S. 274 (1989)...........................................................................................5

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998).....................................................................21

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)..................12

*Parker v. Time Warner Entm't. Co., L.P.*,
    631 F. Supp. 2d 242 (E.D.N.Y. 2009)...............................................................4

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    912 F. Supp. 97 (S.D.N.Y. 1996).......................................................................6

*Ressler v. Jacobson*,
    149 F.R.D. 651 (M.D. Fla. 1992).....................................................................16

*In re Rite Aid Corp. Sec. Litig.*,
    362 F. Supp. 2d 587 (E.D. Pa. 2005) ...............................................................7

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005).............................................................................6

*Robbins v. Koger Props.*,
    116 F.3d 1441 (11th Cir. 1997) .......................................................................9

*S.E.C. v. Wolfson*,
    539 F.3d 1249 (10th Cir. 2008) .....................................................................10

*Savoie v. Merchs. Bank*,
    166 F.3d 456 (2d Cir. 1999).............................................................................5

*Schwartz v. TXU Corp.*,
    2005 WL 3148350 (N.D. Tex. Nov. 8, 2005)....................................................6

*Steed Fin. LDC v. Nomura Sec. Int'l. Inc.*,
    148 Fed. Appx. 66 (2d Cir. 2005) (unpubl.) .....................................................9

*In re Sumitomo Copper Litig.*,
    189 F.R.D. at 281 (S.D.N.Y. 1999) ...............................................................13

*In re Sumitomo Copper Litig.*,
    74 F. Supp. 2d 393 (S.D.N.Y. 1999)..........................................................6, 17

*In re Synthroid Mktg. Litig.*,
    325 F.3d 974 (7th Cir. 2003) .........................................................................19

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*,
    2004 WL 1087261 (S.D.N.Y. May 14, 2004) ..............................................9, 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)........................................................................................15

*Varljen v. H.J. Meyers & Co.*,
    2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) .......................................................................22

*In re Veeco Instruments Inc. Sec. Litig.*,
    2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ................................................................4, 14

*In re Visa Check/Mastermoney Antitrust Litig.*,
    2008 WL 1787674 (E.D.N.Y. Apr. 14, 2008) ...................................................................16

*Wal-Mart Stores, Inc. v. VISA USA, Inc.*,
    396 F.3d 96 (2d Cir. 2005) ...............................................................................................17

*In re Warner Chicott Ltd. Sec. Litig.*,
    2009 WL 2025160 (S.D.N.Y. July 10, 2009) .........................................................4, 16, 21

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ..........................14, 16

*Winkler v. NRD Mining, Ltd.*,
    198 F.R.D. 355 (E.D.N.Y. 2000) .....................................................................................10

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ...................................................................5, 17, 18

## STATUTES AND OTHER AUTHORITIES

15 U.S.C. § 78u-4(a) ..................................................................................................................5, 22

H.R. Conf. Rep. No. 104-369 (1995) (reprinted in 1995 U.S.C.C.A.N. 730, 731, 1995
    WL 709276 (1995)) ..........................................................................................................18

Lead Plaintiff, the Ontario Teachers' Pension Plan Board ("Lead Plaintiff" or "Ontario Teachers") and Lead Counsel, Bernstein Litowitz Berger & Grossmann LLP ("Lead Counsel" or "Bernstein Litowitz"), have achieved an outstanding recovery of $125,000,000 in cash plus accrued interest for the benefit of the Class (the "Settlement Amount").[1]

Lead Counsel undertook the prosecution of this action on an entirely contingent basis. As compensation for the efforts expended to achieve the recovery for the Class, Lead Counsel requests a fee award of 17% of the Settlement Amount, or $21.25 million, and for reimbursement of $377,407.75 in out-of-pocket expenses, plus accrued interest. In addition, Lead Counsel requests, on behalf of Lead Plaintiff, reimbursement of $19,680.47 to Lead Plaintiff for its own costs and expenses (including lost wages) relating to its representation of the Class. For the reasons set forth below and in the accompanying papers, Lead Plaintiff and Lead Counsel respectfully submit that the application for attorneys' fees and reimbursement of expenses is reasonable and should be granted in its entirety.[2]

## I.    PRELIMINARY STATEMENT

The substantial monetary recovery obtained for the Class in this action was achieved only after a hard-fought two year litigation battle through the skill, work, tenacity, and effective advocacy of Plaintiffs' Counsel. As set forth in detail below and in the Graziano Declaration,

---

[1] Unless otherwise indicated, all initial capitalized terms are used as defined in the Stipulation and Agreement of Settlement, dated July 21, 2009, and filed August 18, 2009 (the "Stipulation"). Defendants agreed in the Stipulation not to take any position on Lead Counsel's fee and expense application. Although Defendants support the Settlement, they do not necessarily endorse Lead Plaintiff's version of events or analysis.

[2] Detailed information about the history of the litigation and work performed by Plaintiffs' Counsel is set forth in the Declaration of Salvatore J. Graziano in Support of Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation of Settlement Proceeds and Final Certification of the Class for Settlement Purposes and Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses ("Graziano Declaration" or "Graziano Decl.").

Plaintiffs' Counsel's prosecution of this Action, which was done entirely on a contingency fee basis, included, *inter alia*, (i) drafting a detailed amended complaint after review and analysis of the Company's SEC filings, press releases, other public statements issued by Defendants, media and news reports about the Company, publicly available trading data relating to the price and volume of Bristol-Myers common stock, and other information; (ii) thoroughly researching the law pertinent to the claims against Defendants and potential defenses thereto; (iii) extensive briefing on Defendants' three separate motions to dismiss; (iv) review and analysis of approximately 740,000 pages of documents produced by Defendants and third-parties; (v) depositions of Bristol-Myers' in-house and external counsel; (vi) consulting with experts on issues relating to liability, damages, and materiality; (vii) exchanging confidential mediation statements; and (viii) participating in mediation before an experienced mediator and extensive negotiations thereafter. These efforts have led to an outstanding result for the Class. The $125,000,000 settlement is approximately 22% of Plaintiffs' maximum estimated aggregate damages (assuming all Class Members file proofs of claim), and would represent a significantly higher percentage if Defendants had prevailed at least in part on any of their loss causation arguments.

Lead Plaintiff, a sophisticated institutional investor that stayed well-informed about the progress of the action and participated fully in the settlement negotiations, has reviewed and approved Lead Counsel's fee request. Significantly, Ontario Teachers recommended and approved the fee request – which was below that set forth in the Notice – ***after*** the settlement was reached and all facts regarding the merits of the case and the time and costs expended by counsel were known to it. *See* Declaration of Jeffrey Davis, attached as Exhibit ("Exh.") B to the Graziano Declaration.

The reaction from Class Members further supports Lead Counsel's request for attorneys' fees and expenses. Notices have been mailed to more than 242,000 potential Class Members or their nominees, stating that Lead Counsel would seek fees of not more than 20% of the total Settlement Amount, reimbursement of counsel's expenses in an amount not to exceed $500,000 plus interest, and would potentially seek reimbursement of Lead Plaintiff for reasonable and necessary expenses directly related to its representation of the class. Notably, as discussed below, the actual requests now (both the fees and expenses) are substantially *less* than stated in the Notice. Only one individual (and no institutional investor) has voiced any objection to the attorneys' fee request. *See* Exh. F attached to the Graziano Decl. The individual, however, entirely fails to demonstrate that he is even a member of the Class (as required by the Notice), and thus lacks standing to object.[3] The lack of material objection to Lead Counsel's requests for fees and expenses necessarily incurred for the successful prosecution of this case further supports Lead Counsel's position that the requested fees and expenses are fair and reasonable.

## II.    ARGUMENT

### A.    Plaintiffs' Counsel Are Entitled To An Award Of Attorneys' Fees And Reimbursement Of Expenses From The Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980);

---

[3] The sole purported objection, therefore, should be overruled on this ground, alone. *See, e.g., Feder v. Electronic Data Systems Corp.*, 248 Fed. Appx. 579, at *2 (5th Cir. Sept. 25, 2007) (unpubl.) ("[T]he right to object to settlement in a securities class action must rest on something more than the sort of bare assertions of stock ownership made by [the objector]"; finding lack of standing to object). As discussed below, even if the objector had demonstrated his membership in the Class, his generic objection should be overruled based on the merits and his failure to communicate with counsel when requested.

*see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000*); Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) ("[T]he Second Circuit recognizes that class counsel who create a settlement fund for the benefit of a class are entitled to be compensated for their services from that settlement fund").[4]

Public policy supports granting attorneys' fees that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC.  The federal securities laws are remedial in nature, and the courts must encourage private lawsuits to effectuate their purpose of protecting investors.  *Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988).  In addition, the typical class representatives are unlikely to be able to pursue long and protracted litigation at their own expense.

### B.      A Percentage Of The Fund Should Be Awarded As Attorneys' Fees

Although courts in the Second Circuit have the discretion to choose between the lodestar method and the percentage of fund method, "the trend in this [the Second] Circuit is toward the percentage method, which directly aligns the interest of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *In re Warner Chicott Ltd. Sec. Litig.,* 2009 WL 2025160, at *3 (S.D.N.Y. July 10, 2009) (citations omitted). *See also Goldberger*, 209 F.3d at 47 (holding that either the percentage of fund method or lodestar method may be used to determine appropriate attorneys' fees).  In expressly approving the percentage method, the Second Circuit recognized that "the lodestar method proved vexing"

---

[4]  *See also Parker v. Time Warner Entm't. Co., L.P.*, 631 F. Supp. 2d 242, 264 (E.D.N.Y. 2009); *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 136 (S.D.N.Y. 2008); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007); *Maley*, 186 F. Supp. 2d at 369  (Second Circuit "recognizes that class counsel who create a settlement fund for the benefit of a class are entitled to be compensated for their services from that settlement fund").

and had resulted in "an inevitable waste of judicial resources." *Id*. at 48-49; *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) (stating that "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"). Lead Counsel respectfully submits that this Court should award a fee based on a percentage of the common fund obtained for the Class.[5]

### C.    The Requested Fee Percentage Is Reasonable

The Supreme Court has recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 33% of the recovery. *Blum v. Stenson*, 465 U.S. 886, 904 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring).

Courts in the Second Circuit have applied a wide range of percentages in determining the appropriate fee award. *Id*.  In securities class actions where the amount recovered by the class is in the range of $100 to $200 million, courts in this District have commonly awarded fees much higher than here, between 20% to 30%. *See, e.g., In re Merrill Lynch & Co. Research Reports Sec. Litig.*, ("ML Tech"), 246 F.R.D. 156, 178 (S.D.N.Y. 2007) (awarding 24% of $133 million

---

[5] The determination of attorneys' fees using the percentage-of-the-fund method is also supported by the PSLRA which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a *reasonable percentage* of the amount. . . ." recovered for the class. 15 U.S.C. § 78u-4(a)(6) (emphasis added). Courts have concluded that by drafting the PSLRA in such a manner, Congress expressed a preference for the percentage method, as opposed to the lodestar method, when determining attorneys' fees in securities class actions. *See In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005); *Maley*, 186 F. Supp. 2d at 370.

settlement fund); *In re Am. Express Fin. Advisors Sec. Litig.*, No. 04 Civ. 1773 (DAB), Order and Final Judgment, at 8 (S.D.N.Y. July 18, 2007) (Dkt. No. 170) (awarding 27% of $100 million settlement fund); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) (awarding 21.4% of $455 million settlement fund), *aff'd*, 272 Fed. Appx. 9 (2d Cir. 2008); *In re Deutsche Telekom AG Sec. Litig.,* 2005 U.S. Dist. LEXIS 45798, at *12-*13 (S.D.N.Y. June 9, 2005) (awarding 28% of $120 million settlement fund); *Kurzweil v. Philip Morris Cos. Inc.*, 1999 WL 1076105, at *1 (S.D.N.Y. Nov. 30, 1999) (awarding 30% of $123.8 million settlement fund); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 400 (S.D.N.Y. 1999) (awarding 27.5% of $116.6 million settlement fund); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 912 F. Supp. 97, 103-04 (S.D.N.Y. 1996) (awarding 27% of $110 million settlement fund).

An examination of fee decisions in securities class actions with settlements between $100 and $200 million in other federal jurisdictions also shows that an award of 17% is on the low end of the range of awards. For example, in *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 298 (3d Cir. 2005), the Third Circuit noted the District Court's reliance on an expert declaration of Professor John C. Coffee, which found that "percentage recoveries between 25% to 30% were 'fairly standard' in . . . class actions involving settlements between $100 and $200 million."[6]

---

[6] *See also, e.g., In re AT&T Corp. Sec. Litig.*, 455 F.3d 160 (3d Cir. 2006) (affirming award of 21.25% of $100 million settlement fund); *In re Brocade Sec. Litig.*, No. 05-CV-2042-CRB, Final Order and Judgment, at 13 (N.D. Cal. Jan. 26, 2009) (Dkt. No. 496) (awarding 25% of $160 million settlement fund); *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 587 F. Supp. 2d 1266, 1275 (N.D. Ga. 2008) (awarding 21% of $137.5 million settlement fund); *In re CMS Energy Sec. Litig.*, 2007 U.S. Dist. LEXIS 96786, at *14-*15 (E.D. Mich. Sept. 6, 2007) (awarding 22.5% of $200 million settlement fund); *In re Bristol-Myers Squibb Sec. Litig.*, No. 00-1990 (SRC), Order, at 2 (D.N.J. May 11, 2006) (Dkt. No. 367) (awarding 19.77% of $185 million settlement fund), *aff'd*, 2007 WL 2153284 (3d Cir. 2007) (unpublished opinion); *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *24, *34 (N.D. Tex. Nov. 8, 2005) (awarding

**D.    Factors Considered By Courts In The Second Circuit Justify Approval Of The Requested Fee As Fair And Reasonable**

The Second Circuit sets forth the following criteria that courts should consider when undertaking an analysis of a request for attorneys' fees in a common fund case:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50 (internal quotes and citation omitted).  Consideration of these factors, together with the analyses above, demonstrates that the negotiated fee requested by Lead Counsel is reasonable and should be approved.

**1.    The Time And Labor Expended By Counsel**

Over a two year period, Plaintiffs' counsel expended 24,662 hours at full contingent risk in conducting the litigation, leading to an outstanding result for the Class.  As set forth in the Graziano Declaration, these efforts included among other things: (i) reviewing all publicly-available documents submitted in the Apotex patent litigation, all publicly-available news on the Apotex settlement, the applicable patent and antitrust law, past patent settlements, and other facts related to Bristol-Myers' guilty plea; (ii) reviewing and analyzing the Company's SEC filings, press releases and other public statements issued by the Defendants, media and news reports

---

22.2% of $149.75 million settlement fund); *In re Charter Commc'ns, Inc. Sec. Litig.*, 2005 WL 4045741, at *12-*14, *18 (E.D. Mo. June 30, 2005) (awarding 20% of $146.25 million settlement fund); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 590-91 (E.D. Pa. 2005) (awarding 25% of $126.6 million settlement fund); *In re DPL, Inc. Sec. Litig.*, 307 F. Supp. 2d 947, 954-55 (S.D. Ohio 2004) (awarding 20% of $110 million settlement fund); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1337 (S.D. Fla. 2001) (awarding 25% of $110 million settlement fund); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 197 (E.D. Pa. 2000) (awarding 28.4% of $111 million settlement fund); *In re Informix Corp. Sec. Litig.*, 1999 U.S. Dist. LEXIS 23579, at *6 (N.D. Cal. Nov. 23, 1999) (awarding 30% of $132 million settlement fund).

about the Company, publically available trading data relating to the price and volume of Bristol-Myers stock, and other information; (iii) drafting a detailed, particularized amended complaint; (iv) researching, analyzing, and briefing Defendants' arguments presented in three separate motions to dismiss;  (v) reviewing approximately 740,000 pages of documents produced by Defendants and third parties; (vi) engaging in protracted meet-and-confer discussions with Defendants and Bristol-Myers' outside counsel Cravath, Swaine & Moore LLP concerning the appropriate scope of Bristol-Myers' waiver of the attorney-client privilege as a result of its assertion of a reliance on counsel defense; (vii) engaging in motion practice both before this Court and in Canada in connection with efforts to obtain discovery from Apotex; (viii) preparing to embark on an intensive program of depositions scheduled to take place over approximately a month and a half; (ix) taking depositions of Bristol-Myers' in-house and outside counsel to vigorously probe Bristol-Myers' reliance on counsel defense and validate the reasonableness of the Settlement; (x) consulting with experts regarding the market's understanding of "at risk" launches and patent settlements with generic manufacturers generally as well as damages; and (xi) exchanging confidential mediation statements with Defendant Bristol-Myers; and (xii) engaging in mediation under the auspices of an experienced mediator (which at first failed to yield an agreement) and extensive negotiations thereafter. *See* Graziano Decl. ¶¶32-81.

As a result of Plaintiffs' counsel's efforts, by the time the Settlement negotiations began, Lead Counsel and Lead Plaintiff had a thorough understanding of the strengths and weaknesses of the claims asserted in the Action.  Lead Counsel engaged in hard-fought and protracted settlement negotiations.  Although the mediation with Bristol-Myers under the auspices of Michael D. Young, Esq., an experienced mediator at JAMS in New York, failed to bring about an agreement, the parties thereafter engaged in further negotiations, under the supervision of the

mediator, and eventually reached the settlement set forth in the Stipulation.[7]  Plaintiffs' counsel's

extensive efforts leading to the settlement strongly support the requested percentage fee.

## 2. The Risks Of The Litigation

The Second Circuit has recognized that the risk associated with a case undertaken on a

contingent fee basis is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended…

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted).  "Little

about litigation is risk-free, and class actions confront even more substantial risks than other

forms of litigation."  *Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3

(S.D.N.Y. May 14, 2004); *see also In re Am. Bank Note Holographics Sec. Litig.,* 127 F. Supp.

2d 418, 433 (S.D.N.Y. 2001) (it is "appropriate to take this [contingent-fee] risk into account in

determining the appropriate fee to award").  The risk of the litigation is often cited as the most

important *Goldberger* factor.[8]

---

[7] *See* Graziano Decl. ¶¶95-96.  In addition, the legal work required of Lead Counsel will not end with the Court's approval of the Settlement.  Additional hours and resources will necessarily be expended assisting Class Members with the submission of Proofs of Claim and related inquiries, and in connection with the distribution of the Net Settlement Fund.  Lead Counsel will not receive additional fees in connection with this work.

[8]  *See also Goldberger*, 209 F.3d at 54.  The risk of no recovery in complex cases of this type is real.  There have been numerous class actions in which lead counsel expended thousands of hours and yet received no remuneration despite their diligence and expertise.  *See, e.g., Steed Fin. LDC v. Nomura Sec. Int'l. Inc.,* 148 Fed. Appx. 66 (2d Cir. 2005) (unpubl.) (affirming summary judgment and dismissal of all plaintiffs' claims, including 10(b) and 20(a) claims); *AUSA Life Ins. Co. v. Ernst & Young*, 39 F. Appx. 667 (2d Cir. 2002) (unpubl.) (affirming district court's dismissal after a full bench trial and earlier appeal and demand); *Robbins v. Koger Props.,* 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for

Courts have recognized that "securities actions have become more difficult from a plaintiffs' perspective in the wake of the PSLRA." *In re Ikon*, 194 F.R.D. at 194. As discussed at ¶¶79-88 of the Graziano Decl., while Lead Counsel remained confident that all of the claims asserted against Defendants have merit, it also recognized that there were serious risks as to whether Lead Plaintiff would ultimately prevail on the merits, including as a result of Defendants' affirmative defense of reliance on the advice on counsel or based on arguments concerning loss causation and damages.

Throughout the litigation, Defendants vehemently denied Plaintiffs' allegations of scienter. Defendants argued that they relied on the advice of their outside counsel, Cravath, Swaine & Moore LLP ("Cravath"), in making the disclosures at issue in this case – an assertion buttressed by the testimony of the Company's outside counsel. Moreover, Defendants argued that the decisions were approved by a special disclosure committee at Bristol-Myers, the Exceptional Circumstances Disclosure Committee ("ECDC"), which reviewed the disclosures with outside counsel; and that the challenged disclosures were also reviewed by Frederick B. Lacey, Bristol's federally-appointed monitor and a former U.S. District Court Judge.

Though Lead Plaintiff believes that it had sufficient evidence to establish scienter, impeach the testimony of its in-house and outside counsel, and refute Defendants' arguments concerning the role of the ECDC and former Judge Lacey through, *inter alia*, contemporaneous

---

defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996), abrogated on other grounds by *S.E.C. v. Wolfson*, 539 F.3d 1249 (10th Cir. 2008) (appellate court overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988, on the basis of 1994 Supreme Court opinion); *Backman v. Polaroid Corp.,* 910 F.2d 10 (1st Cir. 1990) (class won a substantial jury verdict and a motion for judgment n.o.v. was denied, but on appeal judgment was reversed and the case dismissed, after 11 years of litigation); *Winkler v. NRD Mining, Ltd.*, 198 F.R.D. 355 (E.D.N.Y. 2000) (granting defendants' motion for judgment as a matter of law after jury verdict for plaintiffs).

emails and memoranda, Lead Plaintiff recognized that there was significant uncertainty as to whether it would successfully do so given the testimony of distinguished outside counsel, including the heads of Cravath's corporate and litigation departments and a former federal judge.[9]

In addition to the risk that Lead Plaintiff might not succeed on the merits before a jury, there was a very substantial risk that, even if Lead Plaintiff were to prevail, the Class might not recover as much as the Settlement Amount on a judgment, much less more than the Settlement Amount. Defendants could persuade a jury that the allegations related to stock price drops on the two alleged corrective disclosure dates are actually only partially recoverable on one of those days or not at all.

With regard to the alleged July 27, 2006 corrective disclosure, Defendants would have continued to argue that the disclosure of the FBI investigation did not reveal the subject matter of the non-disclosures alleged in the Amended Complaint, and thus cannot constitute a corrective disclosure because it does not correct any previous omissions or false or misleading statements. While Lead Plaintiff would have vigorously contested this point, there is out-of-circuit case law supporting Defendants' contention. *See, e.g., In re Maxim Integrated Prods., Inc. Sec. Litig.*, 639 F. Supp. 2d. 1038, 1047 (N.D. Cal. 2009) ("Maxim disclosures regarding compliance with an SEC investigation, subpoenas from the United States Attorney's office, and the formation of its own Special Committee to investigate options granting practices do not reveal the alleged fraud.") With regard to August 8, 2006, Defendants would have argued that the fall in the share

---

[9] *See* Graziano Decl. ¶81. As discussed in the Graziano Decl. ¶¶82-86, there was also uncertainty concerning whether Lead Plaintiff could establish the existence of materially false and misleading statements or material omissions.

price of Bristol-Myers stock was reflective of the news that Apotex had launched its generic version of Plavix, and not the disclosure of the full terms of the settlement with Apotex.

While Lead Plaintiff was confident that it could show that the disclosure of the settlement terms on August 8, 2006 was what drove the fall in Bristol-Myers' share price as the share price reached its lowest point at 9:28 a.m. on August 8, 2006, before news of Apotex's launch came out, it recognized that there was significant uncertainty concerning its ability to recover all the damages captured in its highest damages estimate. Proving damages would come down to "a battle of the experts," and it is impossible to predict which expert and theory of damages the jury would accept. *See Am. Bank Note Holographics*, 127 F. Supp. 2d at 426-27 ("[i]n such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount of Plaintiffs' losses"); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997) ("damages are a matter for the jury, whose determinations can never be predicted with certainty"), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *see also In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 U.S. Dist. LEXIS 17090, at *11-*12 (S.D.N.Y. Sept. 26, 2003) (noting difficulty of proving damages in securities cases).

"'Litigation risk must be measured as of when the case is filed,' rather than with the hindsight benefit of subsequent events." *In re Global Crossing Sec. ERISA Litig.,* 225 F.R.D. 436, 467 (S.D.N.Y. 2004) (quoting *Goldberger*, 209 F.3d at 55). Here, the following additional risks existed, that: (i) the Court could have granted summary judgment in Defendants' favor which could have been affirmed on appeal; (ii) an adverse judgment could have been entered against Lead Plaintiff following trial, or judgment as a matter of law could have been entered for Defendants after the Class' case-in-chief was presented; (iii) even if Lead Plaintiff succeeded at

trial, judgment may have been overturned on appeal or on judgment notwithstanding the verdict; and (iv) success in proving liability could have been followed by a rejection of Plaintiffs' damages. Settlement at this time eliminates the significant risks associated with prosecuting this case further and supports the requested award of attorneys' fees.

### 3. The Magnitude And Complexity Of The Litigation

Securities class actions are "notably difficult and notoriously uncertain." *In re Sumitomo Copper Litig.*, 189 F.R.D. at 281 (S.D.N.Y. 1999) (citation omitted, emphasis omitted). Here, the factual disputes increase the complexity and uncertainty regarding the outcome of the litigation. As noted above, and in the Graziano Declaration, resolution of the factual disputes at issue here involved an understanding of the patent laws concerning infringement and the statutory damages scheme as well as the meaning of the term "at risk" launch as used by market analysts and other market participants. Consequently there was a risk that the complex fraud alleged would not be readily understood by or compelling to a jury. Furthermore, this complex securities class action would have required numerous depositions and expert discovery, multiple motions for summary judgment, and a lengthy trial of the issues.

### 4. The Quality Of Representation

The fourth factor in the *Goldberger* analysis – the quality of representation – also supports the reasonableness of the requested fee award. In determining the quality of the representation, the background of the lawyers involved and the recovery obtained are relevant considerations. *Merrill Lynch*, 249 F.R.D. at 141. Plaintiffs' Counsel have extensive experience in complex litigation and are nationally known leaders in the field of securities class actions. *See, e.g.,* Exhibit G to the Graziano Decl., Exhibit 3 (BLB&G Firm Resume). Lead Counsel's reputation as experienced counsel in complex class action cases, both willing and able to litigate the case to resolution, facilitated Lead Counsel's ability to negotiate this superior Settlement

notwithstanding the presence of sophisticated and dedicated adversaries.  *See Teachers' Ret. Sys.*, 2004 WL 1087261, at *6 (noting that skill and prior experience of counsel in specialized field of shareholder securities litigation is relevant in determining fair compensation).  To achieve the significant Settlement in this action required skill and diligence by Plaintiffs' counsel and a willingness to fully research and investigate the facts and legal theories.  Despite difficult factual arguments regarding scienter, materiality and falsity, Plaintiffs' counsel overcame Defendants' motions to dismiss and, after hard-fought discovery, achieved an excellent recovery for the Class.

Courts have repeatedly recognized that the quality of the opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality of plaintiffs' counsel's performance.  *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *see also Merrill Lynch*, 249 F.R.D. at 141.[10]  Plaintiffs' Counsel were opposed in this litigation by very skilled and highly respected counsel.  Bristol-Myers was represented by Debevoise & Plimpton, LLP, a nationally recognized law firm, and the Individual Defendants were represented by distinguished legal counsel Weil Gotshal & Manges LLP and Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C.  Defendants' counsel were diligent in battling for their clients, filing separate motions to dismiss and raising numerous affirmative defenses to the claims asserted by Plaintiffs.  Notwithstanding this formidable opposition, Plaintiffs' Counsel's ability to present a strong case and to demonstrate

---

[10] *See, e.g., Veeco Instruments*, 2007 WL 4115808, at *7 (among factors supporting 30% award of attorneys' fees was that defendants were represented by "one of the nation's largest law firms"); *In re Medical X-Ray Film Antitrust Litig.*, 1998 WL 661515, at *8 (E.D.N.Y. Aug. 7, 1998) (among factors supporting 33% award of attorneys' fees was that "plaintiffs' counsel confronted defense counsel from highly respected law firms that raised several challenges to the merits of this case").

their willingness to continue to vigorously prosecute the Action enabled them to achieve a very favorable settlement for the benefit of the Class.

### 5.    The Requested Fee In Relation To The Settlement Amount

The fifth *Goldberger* factor requires the court to compare the fee requested to the total Settlement Amount.   Here, the requested fee represents only 17% of the total Settlement Amount. As discussed in detail in Section III(D) above, courts in the Second Circuit have consistently awarded percentage fees to plaintiffs' counsel that are greater than the fee requested here by Lead Counsel.   Thus, the present request for a fee award of 17% of the Settlement Amount is modest in relation to the fees typically awarded in complex class actions. Importantly, this fee request is the result of the informed judgment by a sophisticated Lead Plaintiff, Ontario Teachers, when all of the facts were known, as set forth below.

### 6.    Public Policy Considerations

A strong public policy concern exists for rewarding firms for bringing successful securities litigation.  *See Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *ML Tech*, 246 F.R.D. at 175 ("Public policy concerns favor the award of reasonable attorneys' fees in class action securities litigation.").   Indeed, the Supreme Court has emphasized that private securities actions, such as this action, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"  *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). Vigilant representation by experienced counsel "further[s] the objectives of the federal securities laws by protecting investors and consumers against fraud and other deceptive practices." *In re Merrill Lynch*, 249 F.R.D. at 142 (quoting *Hicks v. Morgan Stanley & Co.*, 2005

WL 2757792, at \*26-\*27 (S.D.N.Y. Oct. 24, 2005) ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.")); *see also In re Visa Check/Mastermoney Antitrust Litig.*, 2008 WL 1787674, at \*8 (E.D.N.Y. Apr. 14, 2008) (finding that there is "commendable sentiment in favor of providing lawyers with sufficient incentive" to undertake the complex task of competently representing the financial interests of class members once settlement has resulted in the creation of a significant common fund) (citation omitted).

The typical class representative is unlikely to be able to pursue long and protracted litigation at his, her, or its own expense. Thus, "public policy favors the granting of [attorneys'] fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions." *Ressler v. Jacobson*, 149 F.R.D. 651, 657 (M.D. Fla. 1992). Public policy favors granting Plaintiffs' Counsel's fee and expense application here.

### 7. A Lodestar Cross-Check Confirms The Reasonableness Of The Requested Fees

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, district courts may cross check the proposed award against counsel's lodestar. *Warner Chilcott*, 2009 WL 2025160, at \*3 (citation omitted).[11] In cases of this nature, fees representing multiples above the lodestar are regularly awarded to reflect the contingency fee risk and other relevant

---

[11] Under the lodestar method, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained and the quality of the attorney's work. *See, e.g., Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167-69 (3d Cir. 1973), *subsequently refined in Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116-18 (3d Cir. 1976) (*en banc*). Courts are encouraged to award a multiplier because calculation of the lodestar is "simply the beginning of the analysis." *Med. X-Ray*, 1998 WL 661515, at \*7 (quoting *Warner Communc'ns*, 618 F. Supp. at 747).

factors. *See, e.g., Wal-Mart Stores, Inc. v. VISA USA, Inc.*, 396 F.3d 96 (2d Cir. 2005) (affirming fee award equaling a 3.5 multiplier); *Maley,* 186 F. Supp. 2d at 369 (awarding fee equal to a 33% of the common fund, equaling a 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country"); *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (approving fee representing multiplier of 3.96 times lodestar and noting that "[I]n recent years multipliers of between 3 and 4.5 have been common in federal securities cases.") (quoting *Sumitomo Copper*, 74 F. Supp. 2d at 399) (27.5% fee of $116.6 million settlement fund, equaling a 2.5 multiplier)); *In re WorldCom*, 388 F. Supp. 2d 319 (approving fee award equaling 4.0 multiplier); *In re Bisys Sec. Litig.,* 2007 WL 2049726 (S.D.N.Y. 2007) (approving fee award of 30%, equaling 2.99 multiplier). The lodestar "cross check" here more than fully supports the requested percentage fee.

The total lodestar of Plaintiffs' Counsel, derived by multiplying their hours by each firm's current hourly rates for attorneys and paraprofessionals, amounts to over $8,400,000, such that the requested 17% fee, which amounts to $21,250,000 (plus interest), represents only 2.5 times Plaintiffs' Counsel's lodestar amount.[12] Thus, the 17% fee requested is well within the range of fees routinely awarded.

In sum, the attorneys' fees requested by Lead Counsel are well within the range of what courts in this Circuit commonly award in complex class actions such as this one. The requested fee is, therefore, reasonable and fair, whether calculated as a percentage of the fund or in relation to Plaintiffs' Counsel's lodestar, and warrants the Court's full approval.

---

[12]  *See* Graziano Decl. ¶118.  The declarations of Plaintiffs' Counsel regarding their time, lodestar and expenses are attached as Exh. G to the Graziano Decl.

**E.    Lead Plaintiff's Approval Of The Fee And The Lack Of Objection
From The Class To The Fee And Expense Request Favor Approval**

**1.    Lead Plaintiff's Fee and Expense
Decisions Are Presumptively Reasonable**

In enacting the PSLRA, Congress sought to encourage sophisticated institutional investors to play an active role in prosecuting cases under the securities laws. *See In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 43 (D. Mass. 2001) (citing H.R. Conf. Rep. No. 104-369, at 32 (1995) (reprinted in 1995 U.S.C.C.A.N. 730, 731)). Congress believed that increasing the role of institutional investors would "ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions." H.R. Conf. Rep. No. 104-369, at 34. Sophisticated investors with large financial stakes in litigation have a particular interest in ensuring that class counsel seeks reasonable fees upon final resolution of the case. *See WorldCom,* 388 F. Supp. 2d at 356 ("The establishment of criteria for the appointment of a lead plaintiff capable of exercising a significant supervisory role in the litigation, including management of the fees and costs, was an important innovation of the PSLRA.") (citation omitted).

Accordingly, a fee arrangement negotiated between a sophisticated and fully-informed PSLRA lead plaintiff and their counsel should be presumptively reasonable. *See Global Crossing*, 225 F.R.D. at 466 ("in class action cases under the PSLRA, courts presume fee requests submitted pursuant to a retainer agreement negotiated at arm's length . . . are reasonable"); *WorldCom,* 388 F. Supp. 2d at 356 ("when class counsel in a securities lawsuit have negotiated an arm's-length agreement with a sophisticated lead plaintiff possessing a large stake in the litigation, and when that lead plaintiff endorses the application following close supervision of the litigation, the court should give the terms of that agreement great weight."). As the court in *Global Crossing* explained:

> In cases subject to the PSLRA, the lawyers representing a class are not mere entrepreneurs acting on behalf of purely nominal plaintiffs, but are lawyers selected by court-appointed Lead Plaintiffs who are substantial and sophisticated institutional investors with access to independent legal and financial specialists and a huge stake in the litigation. These various entities and counsel participated in negotiating the settlement, carefully reviewed the Agreement, and have advised the Court that the proposal fairly represents their interests.

225 F.R.D. at 462.  The presumption of reasonableness ensures "that the lead plaintiff, not the court, functions as the class's primary agent vis-a-vis its lawyers."  *Id.* at 466 (citation and internal quotes omitted); *see also In re Synthroid Mktg. Litig.*, 325 F.3d 974, 975 (7th Cir. 2003).

Lead Plaintiff embodies all the qualities that Congress envisioned in lead plaintiffs – it is "a sophisticated investor who has suffered sizeable losses and can be counted on to serve the interests of the class in an aggressive manner."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 277 (3d. Cir. 2001).  After extensive discussions with its counsel, Lead Plaintiff has authorized an application for 17% of the Settlement Amount, after the Settlement was reached and its precise terms were known to them and notice was provided to the Class.  This authorization is below the 20% noticed to the Class.  The fee request here has the support of a duly-selected institutional Lead Plaintiff, which undertook a process which included reviewing counsel's time and expenses in prosecuting this action, that is consistent with that envisioned by the PSLRA.  *See* Davis Decl. ¶12, attached as Exh. B to the Graziano Decl.  Lead Plaintiff's informed support of the fee is persuasive evidence that the fee is reasonable, and weighs strongly in favor of approval.

## 2.    The Class's Reaction Is Overwhelmingly Positive

The Claims Administrator disseminated the Notice to over 242,000 potential Class Members or their nominees informing them, *inter alia,* that Lead Counsel intended to apply to the Court for an award of attorneys' fees not to exceed 20% of the Settlement Amount with interest thereon, and up to $500,000 in expenses.  *See* Exhibit A to the Cirami Aff.  Notably, the request now is significantly less in both respects – the fee request is 17% instead of 20% (a

reduction of $3.75 million by the recommendation of the Lead Plaintiff), and the expense request, including the request for the Lead Plaintiff, is $397,088.22 instead of $500,000.00 (a difference of $102,911.78). The time to object to the fee request expired on November 17, 2009.

Only one individual (and no institutional investor) has voiced a purported objection to the attorneys' fee request, but his letter submission fails to comply with the requirements set forth in the Notice. *See* Exh. F to the Graziano Decl. Despite the express requirements in the Court-approved Notice that any objection must be filed with the Court and demonstrate membership in the Class, including the number of shares of Bristol-Myers common stock transacted during the Class Period, the letter, which was sent only to the Claims Administrator, fails to establish that it is by a Class Member or how many, if any, shares of Bristol-Myers common stock it represents. The objection should be overruled on this ground, alone. *See Electronic Data Systems,* 248 Fed. Appx. 579, at *2 ("[T]he right to object to settlement in a securities class action must rest on something more than the sort of bare assertions of stock ownership made by [the objector]"; finding lack of standing to object).

In addition, the individual failed to respond to Lead Plaintiff's letter request offering to discuss the objection and counsel's fee request. Because he failed to respond to Lead Counsel's letter, the individual did not have the ability to learn what the actual fee request is (17% instead of up to 20% as stated in the Notice), about the risks involved in the litigation, Lead Counsel's efforts on behalf of the Class, its lodestar, or other information necessary to make a fully informed decision about the appropriateness of the fee and expense requests.

Furthermore, even if the Court were inclined to substantively address the merits of the improper objection, it should be overruled. "Although each objection must be evaluated on its merits . . . the primary concern . . . is to compare the terms of the proposal with the likely

rewards of litigation (citation omitted).  In other words, an objection based on an assertion or argument not readily supportable at trial should not be permitted to bar settlement." *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 479 (S.D.N.Y. 1998).  Here, the generic objection does not address any of the *Goldberger* factors relevant to the fee assessment or any evidence offered by Lead Plaintiffs and Lead Counsel in support of the fee request. Therefore, it lacks both legal and factual support.  Additionally, one general, unsupported objection (representing an unknown amount of shares, if any), compared to overwhelming support from a class representing approximately 296 million shares and substantial institutional investor ownership, supports approval of the fee request.  *See In re Lloyd's American Trust Fund Litigation*, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) (noting "relatively low number of objections itself supports approval of the settlement").

Due to the overwhelming support of the Class and the evidence provided by Lead Counsel in support of the fee request, Lead Counsel and Lead Plaintiff respectfully request approval of the fee request.

### F.    Plaintiffs' Counsel's Expenses Are Reasonable And Were Necessarily Incurred To Achieve The Benefit Obtained

Lead Counsel's fee application includes reimbursement for counsel expenses that were reasonably incurred and necessary to the prosecution of this action.  *See* Graziano Decl. ¶¶120-27 and the respective declarations of Plaintiffs' Counsel, attached as Exh. G thereto.  These expenses primarily consist of costs related to consultation with experts, computerized legal research, copying, and service of process fees.  These expenses are properly recoverable by counsel from the Settlement Fund.  *See Warner Chilcott*, 2009 WL 2025160, at *5 ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients.").  Reasonable expenses for investigative and expert witnesses, filing fees, service

of process, travel, legal research and document production and review "are the type for which 'the paying, arms' length market' reimburses attorneys …[and such expenses] are properly chargeable to the Settlement fund." *Global Crossing*, 225 F.R.D. at 468.

The Court-approved Notice informed the Class Members that Lead Counsel intended to seek reimbursement for expenses incurred in the prosecution of the litigation, not to exceed $500,000. The actual amount of Plaintiffs' Counsel's expenses sought is now $377,407.75 (or $397,088.22 including Lead Plaintiff's expenses discussed below), and the deadline for objecting to the fee and expense application expired on November 17, 2009. There are no objections to the expense request. The reaction of the Class supports a finding that these expenses are fair, reasonable and properly payable from the Settlement Fund. Indeed, the total expenses in this case are well below those often incurred in cases of this type, demonstrating Lead Plaintiff and Lead Counsel's diligent control of expenditures in the litigation.

### G.    Lead Plaintiff Should Be Reimbursed For Its Costs And Expenses

Under the PSLRA, the Court may award "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4). Courts have noted that it is important to reimburse time and expenses of class representatives because doing so "encourages participation of plaintiffs in the active supervision of their counsel." *Varljen v. H.J. Meyers & Co.,* 2000 WL 1683656, at *5, n.2 (S.D.N.Y. Nov. 8, 2000). Time spent by class representatives in: managing the case; performing economic analysis; providing audit services and for computer expenses are properly reimbursable from the Settlement Fund. *In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *19 (E.D.N.Y. Sept. 18, 2007) (awarding $10,000 for named plaintiff expenses). "Courts in [the Second Circuit] routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement . . . in the litigation and to incur

such expenses in the first place." *Id.* (citing *Hicks*, 2005 WL 2757792, at *10) (awarding $7,500 for reasonable costs and expenses).

The Notice informed the Class that Lead Counsel might request an award for Lead Plaintiff directly related to its representation of the Class.  The expenses incurred by Lead Plaintiff were $19,680.47, as further detailed in the Davis Declaration at ¶14.  No Class Member objected to the request.

These expenses are directly related to the Lead Plaintiff's representation of the Class and are properly reimbursable from the Settlement Fund.

## III.  <u>CONCLUSION</u>

Based on the foregoing and the entire record herein, Lead Counsel respectfully requests that the Court award 17% of the Settlement Amount, or $21,250,000, as payment for attorneys' fees, and $377,407.75 in reimbursement of counsel expenses incurred in connection with the prosecution of this action, with interest on both such sums at the same rate as earned by the Settlement Fund.  Additionally, Lead Plaintiff should be awarded $19,680.47 in reimbursement of its reasonable costs and expenses (including lost wages) relating to its representation of the Class.

Dated:  November 20, 2009                                    Respectfully submitted,

                                                            BERNSTEIN LITOWITZ BERGER
                                                               & GROSSMANN LLP


                                                            <u>/s/ Salvatore J. Graziano          </u>
                                                            Max W. Berger
                                                            max@blbglaw.com
                                                            Salvatore J. Graziano
                                                            sgraziano@blbglaw.com
                                                            Jai Chandrasekhar
                                                            jai@blbglaw.com
                                                            Boaz A. Weinstein

boaz@blbglaw.com
Katherine M. Sinderson
Katiem@blbglaw.com
1285 Avenue of the Americas
New York, NY 10019
Tel:  (212) 554-1400
Fax:  (212) 554-1444

*Counsel for Lead Plaintiff and the Class*

417639