# EXHIBIT G

Bristol-Myers Lodestar and Expense Summary- Schedule

| FIRM | HOURS | LODESTAR | EXPENSES |
|---|---|---|---|
| Bernstein Litowitz Berger & Grossmann | 21,754.40 | $7,384,295.00 | $336,968.04 |
| Murray, Frank & Sailer | 527.00 | $223,975.00 | $0 |
| Kaplan Fox & Kilsheimer | 1,278.75 | $393,310.00 | $9,872.01 |
| Lockridge Grindal Nauen | 1,022.25 | $362,070.00 | $25,998.20 |
| Bennett Jones | 79.90 | $41,725.00 | $4,569.50 |
| **TOTAL:** | **24,662.30** | **$8,405,375.00** | **$377,407.75** |

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| IN RE BRISTOL-MYERS SQUIBB CO. SECURITIES LITIGATION |

File No. 07-CV-5867 (PAC)

**DECLARATION OF EDWARD GROSSMANN**
**IN SUPPORT OF PETITION FOR ATTORNEYS'**
**FEES AND REIMBURSEMENT OF EXPENSES FILED ON BEHALF OF**
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

EDWARD GROSSMANN, declares as follows:

1.     I am the Managing Director of the law firm of Bernstein Litowitz Berger & Grossmann LLP.  I submit this declaration in support of my firm's application for an award of attorneys' fees in connection with services rendered in the above-captioned consolidated securities class action (the "Action"), as well as for reimbursement of expenses incurred by my firm in connection with the Action.

2.     My firm was appointed as Lead Counsel in the action.  In this capacity, my firm performed the tasks performed in the accompanying Declaration Of Salvatore J. Graziano In Support Of Lead Plaintiff's Motion For Final Approval Of Settlement And Plan Of Allocation Of Settlement Proceeds And Lead Counsel's Motion For An Award Of Attorneys' Fees And Reimbursement Of Expenses.

3.     The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by each attorney and professional support staff of my firm who was involved in this action, and the lodestar calculation based on my firm's current billing rates.  For personnel

who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for

such personnel in his or her final year of employment by my firm. The schedule was prepared from

contemporaneous daily time records regularly prepared and maintained by my firm, which are

available at the request of the Court. Time expended in preparing this application for fees and

reimbursement of expenses has not been included in this request.

4.       The hourly rates for the attorneys and professional support staff in my firm included

in Exhibit 1 are the same as the regular current rates charged for their services in non-contingent

matters and/or which have been accepted in other securities or shareholder litigation.

5.       The total number of hours expended on this litigation by my firm through

November 10, 2009, is 21,754.40. The total lodestar for my firm is $7,384,295.00, consisting of

$7,037,436.25 for attorneys' time and $346,858.74 for professional support staff time.

6.       My firm's lodestar figures are based upon the firm's billing rates, which rates do not

include charges for expense items. Expense items are billed separately and such charges are not

duplicated in my firm's billing rates.

7.       As detailed in Exhibit 2, my firm has incurred a total of $336,968.04 in paid

unreimbursed expenses in connection with the prosecution of the action.

8.       The expenses incurred in this action are reflected on the books and records of my

firm. These books and records are prepared from expense vouchers, check records and other source

materials and are an accurate record of the expenses incurred.

\\

\\

2

9.      With respect to the standing of my firm, attached hereto as Exhibit 3 is a resume of my firm.

I declare, under penalty of perjury, that the foregoing facts are true and correct.  Executed on November 19, 2009.

_Edward A. Grossmann_
EDWARD GROSSMANN

3

EXHIBIT 1

*In re Bristol-Myers Squibb Co. Securities Litigation*
File No. 07-CV-5867 (PAC)

**Bernstein Litowitz Berger & Grossmann LLP**

**TIME REPORT**

**Inception through November 10, 2009**

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **Partners** | | | |
| Max Berger | 163.5 | 895 | 146,332.50 |
| Sean Coffey | 4.5 | 850 | 3,825.00 |
| Salvatore Graziano | 481.25 | 750 | 360,937.50 |
| Gerald Silk | 48 | 750 | 36,000.00 |
| **Senior Counsel** | | | |
| Jai Chandrasekhar | 370 | 550 | 203,500.00 |
| Rochelle Hansen | 52.5 | 650 | 34,125.00 |
| Niki Mendoza | 86.65 | 550 | 47,657.50 |
| **Associates** | | | |
| Pat Gillane | 23.5 | 470 | 11,045.00 |
| Noam Mandel | 125.75 | 465 | 58,473.75 |
| Katherine McCracken | 834 | 400 | 333,600.00 |
| John Mills | 86.5 | 490 | 42,385.00 |
| Argilo Rodriguez | 590 | 350 | 206,500.00 |
| Boaz Weinstein | 807 | 490 | 395,430.00 |
| **Staff Attorneys/Project Associates** | | | |
| Andrew Afifian | 204.25 | 310 | 63,317.50 |
| Tamara Bedic | 191.75 | 310 | 59,442.50 |
| Walter Brown | 233.25 | 310 | 72,307.50 |
| George Caballero | 45 | 310 | 13,950.00 |
| David C. Carlet | 603.25 | 310 | 187,007.50 |
| John J. Collins | 933.5 | 310 | 289,385.00 |
| George Doumas | 1,763.00 | 310 | 546,530.00 |
| David L. Duncan | 6.75 | 310 | 2,092.50 |
| Jason Fenley | 772 | 310 | 239,320.00 |
| Erika Flierl | 747.75 | 310 | 231,802.50 |
| Keith Geffen | 2,061.50 | 310 | 639,065.00 |
| Mary Hansel | 195 | 310 | 60,450.00 |
| Diana Jarvis | 535.5 | 310 | 166,005.00 |
| Donatella Keohane | 1,044.50 | 310 | 323,795.00 |

| | | | |
|---|---|---|---|
| Andrew McGoey | 260 | 310 | 80,600.00 |
| Valerie A. Molinaro | 1,904.25 | 310 | 590,317.50 |
| Matt Mulligan | 1,647.25 | 310 | 510,647.50 |
| David Rynn | 1,510.00 | 310 | 468,100.00 |
| Noreen Rhosean Scott | 804.5 | 310 | 249,395.00 |
| Andrew Tolan | 305.5 | 310 | 94,705.00 |
| Saundra Yaklin | 869 | 310 | 269,390.00 |
| **Investigators** | | | |
| Amy Bitkower | 15 | 425 | 6,375.00 |
| Lisa C. Burr | 76.75 | 250 | 19,187.50 |
| Gary Gaines | 2.5 | 285 | 712.5 |
| David Kleinbard | 2.5 | 345 | 862.5 |
| Joelle (Sfeir) Landino | 4 | 250 | 1,000.00 |
| **Litigation Support** | | | |
| Jesse Baidoe | 230.25 | 220 | 50,655.00 |
| Sheron P. Brathwaite | 91 | 250 | 22,750.00 |
| **Case Managers/Paralegals/Document Clerk** | | | |
| Yvette Badillo (Case Manager) | 171.5 | 275 | 47,162.50 |
| Maureen Duncan (Case Manager) | 215.5 | 275 | 59,262.50 |
| Larry Silvestro (Case Manager) | 20.5 | 275 | 5,637.50 |
| Erik Andrieux | 421.75 | 210 | 88,567.50 |
| Martin Braxton | 3.5 | 210 | 735 |
| Tracy Jordan | 7.5 | 205 | 1,537.50 |
| Naitrani Lugo | 4.5 | 195 | 877.5 |
| Dwayne Lunde | 63.25 | 205 | 12,966.25 |
| Dafne Maytorena | 30.25 | 220 | 6,655.00 |
| Brandy Roberts | 16.75 | 230 | 3,852.50 |
| Michael Andres | 2.50 | 175 | 437.50 |
| **Director of Institutional Investor Services/ Financial Analysts** | | | |
| Adam Weinschel | 23.75 | 350 | 8,312.50 |
| Kate B. Durant (Analyst) | 4 | 250 | 1,000.00 |
| Ben Heiss (Analyst) | 23 | 200 | 4,600.00 |
| Rochelle Moses (Analyst) | 13.5 | 275 | 3,712.50 |
| **TOTAL LODESTAR** | **21,754.40** | **19,745.00** | **7,384,295.00** |

EXHIBIT 2

*In re Bristol-Myers Squibb Co. Securities Litigation*
File No. 07-CV-5867 (PAC)

**Bernstein Litowitz Berger & Grossmann LLP**

**EXPENSE REPORT**

Inception through November 19, 2009

| CATEGORY | AMOUNT |
|---|---|
| **Service of Process** | |
| **-Serving by Irving** | 14,163.00 |
| **On-Line Legal Research** | |
| **-Lexis Nexis** | |
| **-Westlaw** | 33,306.07 |
| **On-Line Factual Research** | |
| **-PACER** | |
| **-Gary McClurg** | |
| **-Thomson Financial** | |
| **-U.S. Doc. Retrieval Service Inc.** | |
| **-Lexis Nexis CourtLink** | |
| **-Global Securities Information, Inc.** | |
| **-Accurint** | |
| **-Irma Herron** | |
| **-Federal Trade Commission** | |
| **-Courthouse News Service** | |
| **-GSI** | 10,214.22 |
| **Telephones** | 118.84 |
| **Express Mail** | |
| **-Federal Express** | 992.31 |
| **Hand Delivery Charges** | |
| **-Crown Delivery & Logistics** | 490.52 |
| **Local Transportation** | 2,853.65 |
| **Internal Copying** | |
| **-$0.25/page** | 15,178.75 |
| **Outside Copying** | |
| **-DTI Skyline** | |
| **-AmLaw Imaging** | |
| **-Office of the Attorney General** | |
| **-Superior Glacier** | 9,199.51 |
| **Out of Town Travel** | |
| **-K. Sinderson: 12/8/08 to Washington** | |
| **DC for Court Hearing** | 2,413.55 |

6

| | |
|---|---:|
| -K. Sinderson: 2/9/09 to Washington DC for Court Hearing | |
| -K. Sinderson: 4/5/09-4/6/09 to Washington DC for Pretrial Conference | |
| -A. Rodriguez: 6/8/09-6/9/09 to Washington DC for Sentencing Hearing | |
| **Working Meals** | 3,171.37 |
| **Court Reporters and Transcripts** | |
| -Rand Reporting & Transciption LLC | |
| -Southern District Reporting P.C. | |
| -Kristin M. Rusin | |
| -Wendy Ricard | |
| -Catalina Kerr RPR | |
| -Veritext New York Reporting Co. | 2,415.23 |
| **Experts** | |
| -CBIZ Valuation Group LLC | |
| -Chicago Partners LLC | |
| -C. Scott Hemphill | 230,358.54 |
| **Staff Overtime** | 1,013.83 |
| **Document Storage & Retrieval** | |
| -Nova Records Management | 55.50 |
| **Document Management** | |
| -Merrill Communications LLC | 3,790.58 |
| **Mediation Fees** | |
| -JAMS Inc. | 7,232.57 |
| **TOTAL EXPENSES:** | **$336,968.04** |

EXHIBIT 3

# 72248

# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

## ATTORNEYS AT LAW

### NEW YORK  ●  CALIFORNIA  ●  LOUISIANA

## FIRM RESUME

Visit our web site at www.blbglaw.com for the most up-to-date information on the firm, its lawyers and practice groups.

Bernstein Litowitz Berger & Grossmann LLP, a firm of over 50 attorneys in offices located in New York, California and Louisiana, prosecutes class and private actions, nationwide, on behalf of individual and institutional clients. The firm's litigation practice concentrates in the areas of securities class actions in federal and state courts; corporate governance litigation, including claims for breach of fiduciary duty and proxy violations; antitrust; prosecuting violations of federal and state anti-discrimination laws and vindication of employee rights; and consumer class actions. We also handle, on behalf of major institutional clients and lenders, more general complex commercial litigation involving allegations of breach of contract, accountants' liability, breach of fiduciary duty, fraud, and negligence.

We are the nation's leading firm in representing institutional investors in securities fraud class action litigation. The firm's institutional client base includes the New York State Common Retirement Fund, the California Public Employees Retirement System (CalPERS), and the Ontario Teachers' Pension Plan, the largest public pension funds in North America, collectively managing over $300 billion in assets; the Los Angeles County Employees' Retirement Association (LACERA); the Chicago Municipal, Police and Labor Retirement Systems; the State of Wisconsin Investment Board; the Retirement Systems of Alabama; the Connecticut Retirement Plans and Trust Funds; the City of Detroit Pension Systems; the Houston Firefighters' and Municipal Employees' Pension Funds; the Louisiana School, State, Teachers and Municipal Police Retirement Systems; the Public School Teachers' Pension and Retirement Fund of Chicago; the New Jersey Division of Investment of the Department of the Treasury; TIAA-CREF and other private institutions; as well as numerous other public and Taft-Hartley pension entities.

Since its founding in 1983, Bernstein Litowitz Berger & Grossmann LLP has litigated some of the most complex cases in history and has obtained over $20 billion on behalf of investors. Unique among its peers, the firm has negotiated the largest settlements ever agreed to by public companies related to securities fraud, and obtained five of the ten largest securities recoveries in history.

As Co-Lead Counsel for the Class representing Lead Plaintiff the New York State Common Retirement Fund in *In re WorldCom, Inc. Securities Litigation*, arising from the financial fraud and subsequent bankruptcy at WorldCom, Inc., we obtained unprecedented settlements from the investment bank defendants who underwrote WorldCom bonds totaling more than $6 billion, the second largest securities recovery in history. Additionally, all of the former WorldCom Director Defendants agreed to pay over $60 million to settle the claims against them. An unprecedented first for outside directors, $24.75 million of that amount is coming out of the pockets of the individuals—20% of their collective net worth. Also, after four weeks of trial, Arthur Andersen, WorldCom's former auditor, settled for $65 million. In July 2005, settlements had been reached with the former executives of WorldCom, bringing the total obtained for the Class to over $6.15 billion.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

The firm was also Co-Lead Counsel in *In re Cendant Corporation Securities Litigation*, which settled for more than $3 billion in cash. This settlement is the largest ever recovered from a public company and a public accounting firm and includes some of the most significant corporate governance changes ever achieved through securities class action litigation. The firm represented Lead Plaintiffs CalPERS, the New York State Common Retirement Fund, and the New York City Pension Funds on behalf of all purchasers of Cendant securities during the class period. In 2006, the firm also recovered over $1.3 billion for investors in Nortel Networks, and recent settlements in *In re McKesson HBOC Inc. Securities Litigation* total over $1 billion in monies recovered for investors. Additionally, the firm was lead counsel in the celebrated *In re Washington Public Power Supply System Litigation*, which, after seven years of litigation and three months of jury trial, resulted in what was then the largest securities fraud recovery ever – over $750 million.

A leader in representing institutional shareholders in litigation arising from the widespread stock options backdating scandals of recent years, the firm recovered nearly $920 million in ill-gotten compensation directly from former officers and directors in the *UnitedHealth Group, Inc. Shareholder Derivative Litigation*. The largest derivative recovery in history, the settlement is notable for holding individual wrongdoers accountable for their role in illegally backdating stock options, as well as for the company's agreement to far-reaching reforms to curb future executive compensation abuses. (Court approval of the recovery is pending.)

The firm's prosecution of Arthur Andersen LLP, for Andersen's role in the 1999 collapse of the Baptist Foundation of Arizona ("BFA"), received intense national and international media attention. As lead trial counsel for the defrauded BFA investors, the firm obtained a cash settlement of $217 million from Andersen in May 2002, after six days of what was scheduled to be a three month trial. In combination with prospective BFA asset sales and a settlement with BFA's former law firm, it is expected that the over 11,000 retirees and investors will recover over 70% of their losses. The case was covered in great detail by *The Wall Street Journal, The New York Times, The Washington Post*, "60 Minutes II," National Public Radio, and the BBC, as well as various other international news outlets.

Equally important, Bernstein Litowitz Berger & Grossmann LLP has successfully advanced novel and socially beneficial principles by developing important new law in the areas in which we litigate.

The firm served as co-lead counsel on behalf of Texaco's African-American employees in *Roberts v. Texaco Inc.*, which similarly resulted in the largest settlement ever in a race discrimination case. The creation of a Task Force to oversee Texaco's human resources activities for five years was unprecedented and will, undoubtedly, serve as a model for public companies into the next century.

On behalf of twelve public pension funds, including the New York State Common Retirement Fund, CalPERS, LACERA, and other institutional investors, the firm successfully prosecuted *McCall v. Scott*, a derivative suit filed against the directors and officers of Columbia/HCA Healthcare Corporation, the subject of the largest health care fraud investigation in history. This settlement, announced in February 2003, included a landmark corporate governance plan which went well beyond all recently enacted regulatory reforms, greatly enhancing the corporate governance structure in place at HCA.

In the consumer field, the firm has gained a nationwide reputation for vigorously protecting the rights of individuals and for achieving exceptional settlements. In several instances, the firm has obtained recoveries for consumer classes that represented the entirety of the class' losses – an extraordinary result in consumer class cases. Additionally, the firm has become a leader in the area of Internet Privacy and is counsel in several of the seminal cases that have been brought on behalf of Internet users whose personal information is being intercepted and sent to Web-based companies.

Our firm is dedicated to litigating with the highest level of professional competence, striving to secure the maximum possible recovery for our clients in the most efficient and professionally responsible manner. In those cases where we have served as either lead counsel or as a member of plaintiffs' executive committee, the firm has recovered billions of dollars for our clients.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

## THE FIRM'S PRACTICE AREAS

### Securities Fraud Litigation

Securities fraud litigation is the cornerstone of the firm's class action litigation practice. Since its founding, the firm has tried and settled many high profile securities fraud class actions and continues to play a leading role in major securities litigation pending in federal and state courts. Moreover, since passage of the Private Securities Litigation Reform Act of 1995, which sought to encourage institutional investors to become more pro-active in securities fraud class action litigation, the firm has become the nation's leader in representing institutional investors in securities fraud and derivative litigation.

The firm has the distinction of having prosecuted many of the most complex and high-profile cases in securities law history, recovering billions of dollars and obtaining unprecedented corporate governance reforms on behalf of our clients. Several of the firm's high-profile current prosecutions and outstanding accomplishments as class counsel are detailed in our Recent Actions and Significant Recoveries section beginning on page 8.

The attorneys in the securities fraud litigation practice group have extensive experience in the laws that regulate the securities markets and in the disclosure requirements of corporations that issue publicly traded securities. Many of the attorneys in this practice group also have accounting backgrounds and one is a certified public accountant. The group has access to state-of-the-art, online financial wire services and databases, which enable them to instantaneously investigate any potential securities fraud action involving a public company's debt and equity securities.

### Corporate Governance and Shareholders' Rights

The corporate governance and shareholders' rights practice group prosecutes derivative actions, claims for breach of fiduciary duty and proxy violations on behalf of individual and institutional investors in state and federal courts throughout the country. The group has prosecuted actions challenging numerous highly publicized corporate transactions which violated fair process and fair price, and the applicability of the business judgment rule. The group has also addressed issues of corporate waste, shareholder voting rights claims, and executive compensation. As a result of the firm's high profile and widely recognized capabilities, the corporate governance practice group is increasingly in demand by institutional investors who are exercising a more assertive voice with corporate boards regarding corporate governance issues and the board's accountability to shareholders. A major component of the *Cendant* settlement referenced above is Cendant's agreement to adopt the most extensive corporate governance changes in history.

Recent examples of highly successful M&A litigation conducted by Bernstein Litowitz Berger & Grossmann include the widely publicized lawsuit arising from the proposed acquisition of Caremark Corp. by CVS Corp.—which led to an increase of approximately $3.5 billion in the consideration offered to shareholders—as well as the lawsuit over an attempted buyout of Cablevision Corp. by its controlling family—which, although still ongoing, has resulted in an increase of over $2.2 billion in the consideration currently on offer to Cablevision shareholders. The firm is actively involved in litigating numerous cases in this area of law, an area that has become increasingly important in light of efforts by various market participants to buy companies from their public shareholders "on the cheap."

### Employment Discrimination and Civil Rights

The employment discrimination and civil rights practice group prosecutes class and multi-plaintiff actions, and other high impact litigation against employers and other societal institutions that violate federal or state employment, anti-discrimination, and civil rights laws. The practice group represents diverse clients on a wide range of issues

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

including Title VII actions, race, gender, sexual orientation and age discrimination suits, sexual harassment and "glass ceiling" cases in which otherwise qualified employees are passed over for promotions to managerial or executive positions.

Bernstein Litowitz Berger & Grossmann LLP is committed to effecting positive social change in the workplace and in society. The practice group has the necessary financial and human resources to ensure that the class action approach to discrimination and civil rights issues is successful. This litigation method serves to empower employees and other civil rights victims, who are usually discouraged from pursuing litigation because of personal financial limitations, and offers the potential for effecting the greatest positive change for the greatest number of people affected by discriminatory practice in the workplace. As stated, the firm's practice group recently settled the *Texaco* racial discrimination lawsuit for $176 million, the largest settlement in the history of employment discrimination cases.

## Consumer Advocacy

The consumer advocacy practice group at Bernstein Litowitz Berger & Grossmann LLP prosecutes cases across the entire spectrum of consumer rights, consumer fraud, and consumer protection issues. The firm represents victimized consumers in state and federal courts nationwide in individual and class action lawsuits that seek to provide consumers and purchasers of defective products with a means to recover their damages. The attorneys in this group are well versed in the vast array of laws and regulations that govern consumer interests and are aggressive, effective, court-tested litigators. The consumer practice advocacy group has recovered hundreds of millions of dollars for millions of consumers throughout the country. Most notably, in a number of cases, the firm has obtained recoveries for the class that were the entirety of the potential damages suffered by the consumer. For example, in recent actions against MCI and Empire Blue Cross, the firm recovered all of the damages suffered by the class.
The group has achieved its successes by advancing innovative claims and theories of liabilities, such as obtaining decisions in Pennsylvania and Illinois appellate courts that adopted a new theory of consumer damages in mass marketing cases. Bernstein Litowitz Berger & Grossmann LLP is, thus, able to lead the way in protecting the rights of consumers. For example, the firm is a recognized leader in Internet privacy, where it prosecuted several seminal cases on behalf of Web users whose personal information has been unwittingly intercepted and sent to Internet companies in violation of federal statutes and state law.

## THE COURTS SPEAK

Throughout the firm's history, many courts have recognized the professional competence and diligence of the firm and its members. A few examples are set forth below.

Judge Denise Cote (United States District Court for the Southern District of New York) has noted, several times on the record, the quality of BLB&G's ongoing representation of the Class in *In re WorldCom, Inc. Securities Litigation*. Judge Cote on December 16, 2003:

> "I have the utmost confidence in plaintiffs' counsel . . . they have been doing a superb job. . . . The Class is extraordinarily well represented in this litigation."

In granting final approval of the $2.575 billion settlement obtained from the Citigroup Defendants, Judge Cote again praised BLB&G's efforts:

> "The magnitude of this settlement is attributable in significant part to Lead Counsel's advocacy and energy....The quality of the representation given by Lead Counsel...has been superb...and is unsurpassed in this Court's experience with plaintiffs' counsel in securities litigation. Lead Counsel has been energetic and creative.... Its negotiations with the Citigroup Defendants have resulted in a settlement of historic proportions."

4

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

\* \* \*

In February 2005, at the conclusion of trial of *In re Clarent Corporation Securities Litigation*, The Honorable Charles R. Breyer of the United States District Court for the Northern District of California praised the efforts of counsel: "It was the best tried case I've witnessed in my years on the bench....[A]n extraordinarily civilized way of presenting the issues to you [the jury]....We've all been treated to great civility and the highest professional ethics in the presentation of the case.... The evidence was carefully presented to you....They got dry subject matter and made it interesting... [brought] the material alive... good trial lawyers can do that.... I've had fascinating criminal trials that were far less interesting than this case. [I]t's a great thing to be able to see another aspect of life... It keeps you young...vibrant... [and] involved in things... These trial lawyers are some of the best I've ever seen."

\* \* \*

In granting the Court's approval of the resolution and prosecution of *McCall v. Scott*, a shareholder derivative lawsuit against certain former senior executives of HCA Healthcare (formerly Columbia/HCA), Senior Judge Thomas A. Higgins (United States District Court, Middle District of Tennessee) said that the settlement "confers an exceptional benefit upon the company and the shareholders by way of the corporate governance plan. . . . Counsel's excellent qualifications and reputations are well documented in the record, and they have litigated this complex case adeptly and tenaciously throughout the six years it has been pending. They assumed an enormous risk and have shown great patience by taking this case on a contingent basis, and despite an early setback they have persevered and brought about not only a large cash settlement but sweeping corporate reforms that may be invaluable to the beneficiaries."

\* \* \*

Judge Walls (District of New Jersey), in approving the $3.2 billion *Cendant* settlement, said that the recovery from all defendants, which represents a 37% recovery to the Class, "far exceeds recovery rates of any case cited by the parties." The Court also held that the $335 million separate recovery from E&Y is "large" when "[v]iewed in light of recoveries against accounting firms for securities damages." In granting Lead Counsel's fee request, the Court determined that "there is no other catalyst for the present settlement than the work of Lead Counsel. . . . This Court, and no other judicial officer, has maintained direct supervision over the parties from the outset of litigation to the present time. In addition to necessary motion practice, the parties regularly met with and reported to the Court every five or six weeks during this period about the status of negotiations between them. . . . [T]he Court has no reason to attribute a portion of the Cendant settlement to others' efforts; Lead Counsel were the only relevant material factors for the settlement they directly negotiated." The Court found that "[t]he quality of result, measured by the size of settlement, is very high. . . . The Cendant settlement amount alone is over three times larger than the next largest recovery achieved to date in a class action case for violations of the securities laws, and approximately ten times greater than any recovery in a class action case involving fraudulent financial statements. . . The E&Y settlement is the largest amount ever paid by an accounting firm in a securities class action." The Court went on to observe that "the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel were high in this action. Lead Counsel are experienced securities litigators who ably prosecuted the action." The Court concluded that this Action resulted in "excellent settlements of uncommon amount engineered by highly skilled counsel with reasonable cost to the class."

\* \* \*

After approving the settlement in *Alexander v. Pennzoil Company*, the Honorable Vanessa D. Gilmore of the United States District Court for the Southern District of Texas ended the settlement hearing by praising our firm for the quality of the settlement and our commitment to effectuating change in the workplace. "... the lawyers for the plaintiffs ... did a tremendous, tremendous job. ... not only in the monetary result obtained, but the substantial and very innovative programmatic relief that the plaintiffs have obtained in this case ... treating people fairly and with respect can only inure to the benefit of everybody concerned. I think all these lawyers did an outstanding job trying to make sure that that's the kind of thing that this case left behind."

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

*   *   *

On February 23, 2001, the United States District Court for the Northern District of California granted final approval of the $259 million cash settlement in *In re 3Com Securities Litigation*, the largest settlement of a securities class action in the Ninth Circuit since the Private Securities Litigation Reform Act was passed in 1995, and the fourth largest recovery ever obtained in a securities class action. The district court, in an Order entered on March 9, 2001, specifically commented on the quality of counsel's efforts and the settlement, holding that "counsel's representation [of the class] was excellent, and ... the results they achieved were substantial and extraordinary." The Court described our firm as "among the most experienced and well qualified in this country in [securities fraud] litigation."

*   *   *

United States District Judge Todd J. Campbell of the Middle District of Tennessee heard arguments on Plaintiffs' Motion for Preliminary Injunction in *Cason v. Nissan Motor Acceptance Corporation Litigation*, the highly publicized discriminatory lending class action, on September 5, 2001. He exhibited his own brand of candor in commenting on the excellent work of counsel in this matter: "In fact, the lawyering in this case... is as good as I've seen in any case. So y'all are to be commended for that."

*   *   *

In approving the $30 million settlement in the *Assisted Living Concepts, Inc. Securities Litigation*, the Honorable Ann L. Aiken of the Federal District Court in Oregon, praised the recovery and the work of counsel. She stated that, "...without a doubt...this is a...tremendous result as a result of very fine work...by the...attorneys in this case."

*   *   *

The Honorable Judge Edward A. Infante of the United States District Court for the Northern District of California expressed high praise for the settlement and the expertise of plaintiffs' counsel when he approved the final settlement in the *Wright v. MCI Communications Corporation* consumer class action. "The settlement. . . . is a very favorable settlement to the class. . . . to get an 85% result was extraordinary, and plaintiffs' counsel should be complimented for it on this record. . . . The recommendations of experienced counsel weigh heavily on the court. The lawyers before me are specialists in class action litigation. They're well known to me, particularly Mr. Berger, and I have confidence that if Mr. Berger and the other plaintiffs' counsel think this is a good, well-negotiated settlement, I find it is." The case was settled for $14.5 million.

*   *   *

At the *In re Computron Software, Inc. Securities Litigation* settlement hearing, Judge Alfred J. Lechner, Jr. of the United States District Court for the District of New Jersey approved the final settlement and commended Bernstein Litowitz Berger & Grossmann's efforts on behalf of the Class. "I think the job that was done here was simply outstanding. I think all of you just did a superlative job and I'm appreciat[ive] not only for myself, but the court system and the plaintiffs themselves. The class should be very, very pleased with the way this turned out, how expeditiously it's been moved." *In re Computron Software, Inc. Securities Litigation* was a securities fraud class action filed on behalf of shareholders who purchased Computron common stock at inflated prices due to alleged misrepresentation about the company's financial obligation. The case settled for $15 million dollars.

*   *   *

The *In re Louisiana-Pacific Corporation Securities Litigation*, filed in the United States District Court, District of Oregon, was a securities class action alleging fraud and misrepresentations in connection with the sale of defective building materials. Our firm, together with co-lead counsel, negotiated a settlement of $65.1 million, the largest securities fraud settlement in Oregon history, which was approved by Judge Robert Jones on February 12, 1997.

6

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

The Court there recognized that ". . . the work that is involved in this case could only be accomplished through the unique talents of plaintiffs' lawyers . . . which involved a talent that is not just simply available in the mainstream of litigators."

\*    \*    \*

Judge Kimba M. Wood of the United States District Court for the Southern District of New York, who presided over the six-week securities fraud class action jury trial in *In re ICN/Viratek Securities Litigation*, also recently praised our firm for the quality of the representation afforded to the class and the skill and expertise demonstrated throughout the litigation and trial especially. The Court commented that ". . . plaintiffs' counsel did a superb job here on behalf of the class. . . This was a very hard fought case. You had very able, superb opponents, and they put you to your task. . . The trial work was beautifully done and I believe very efficiently done. . ."

\*    \*    \*

Similarly, the Court in the *In re Prudential-Bache Energy Income Partnership Securities Litigation*, United States District Court, Eastern District of Louisiana, recognized Bernstein Litowitz Berger & Grossmann LLP's ". . . professional standing among its peers." In that case, which was settled for $120 million, our firm served as Chair of Plaintiffs' Executive Committee.

\*    \*    \*

In the landmark securities fraud case, *In re Washington Public Power Supply System Litigation* (United States District Court, District of Arizona), the district court called the quality of representation "exceptional," noting that "[t]his was a case of overwhelmingly unique proportions. . . a rare and exceptional case involving extraordinary services on behalf of Class plaintiffs." The Court also observed that "[a] number of attorneys dedicated significant portions of their professional careers to this litigation, . . . champion[ing] the cause of Class members in the face of commanding and vastly outnumbering opposition. . . [and] in the face of uncertain victory. . . . [T]hey succeeded admirably."

\*    \*    \*

Likewise, in *In re Electro-Catheter Securities Litigation*, where our firm served as co-lead counsel, Judge Nicholas Politan of the United States District Court for New Jersey said:

> Counsel in this case are highly competent, very skilled in this very specialized area
> and were at all times during the course of the litigation...always well prepared, well
> spoken, and knew their stuff and they were a credit to their profession. They are the
> top of the line.

\*    \*    \*

In our ongoing prosecution of the *In re Bennett Funding Group Securities Litigation*, the largest "Ponzi scheme" fraud in history, partial settlements totaling over $140 million have been negotiated for the class. While the action continues to be prosecuted against other defendants, the United States District Court for the Southern District of New York has already found our firm to have been "extremely competent" and of "great skill" in representing the class.

\*    \*    \*

Judge Sarokin of the United States District Court for the District of New Jersey, after approving the $30 million settlement in *In re First Fidelity Bancorporation Securities Litigation*, a case in which were lead counsel, praised the ". . . outstanding competence and performance" of the plaintiffs' counsel and expressed "admiration" for our work in the case.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

## RECENT ACTIONS & SIGNIFICANT RECOVERIES

Currently, Bernstein Litowitz Berger & Grossmann LLP is counsel in many diverse nationwide class and individual actions and has obtained many of the largest and most significant recoveries in history. Some examples from our practice groups include:

## Securities Class Actions

*In re WorldCom, Inc. Securities Litigation* -- (United States District Court for the Southern District of New York) The largest securities fraud class action in history. The court appointed BLB&G client the **New York State Common Retirement Fund** as Lead Plaintiff and the firm as Lead Counsel for the class in this securities fraud action arising from the financial fraud and subsequent bankruptcy at WorldCom, Inc. The complaints in this litigation allege that WorldCom and others disseminated false and misleading statements to the investing public regarding its earnings and financial condition in violation of the federal securities and other laws. As a result, investors suffered tens of billions of dollars in losses. The Complaint further alleges a nefarious relationship between Citigroup subsidiary Salomon Smith Barney and WorldCom, carried out primarily by Salomon employees involved in providing investment banking services to WorldCom (most notably, Jack Grubman, Salomon's star telecommunications analyst), and by WorldCom's former CEO and CFO, Bernard J. Ebbers and Scott Sullivan, respectively. On November 5, 2004, the Court granted final approval of the $2.575 billion cash settlement to settle all claims against the Citigroup defendants. In mid-March 2005, on the eve of trial, the 13 remaining "underwriter defendants," including J.P. Morgan Chase, Deutsche Bank and Bank of America, agreed to pay settlements totaling nearly $3.5 billion to resolve all claims against them, bringing the total over $6 billion. Additionally, by March 21, 2005, the day before trial was scheduled to begin, all of the former WorldCom Director Defendants had agreed to pay over $60 million to settle the claims against them. An unprecedented first for outside directors, $24.75 million of that amount is coming out of the pockets of the individuals— 20% of their collective net worth. The case generated headlines across the country—and across the globe—and is changing the way Wall Street does business. In the words of Lynn Turner, a former SEC chief accountant, the settlement sent a message to directors "that their own personal wealth is at risk if they're not diligent in

their jobs." After four weeks of trial, Arthur Andersen, WorldCom's former auditor, settled for $65 million. In July 2005, settlements were reached with the former executives of WorldCom, bringing the total obtained for the Class to over $6.15 billion.

*In re Cendant Corporation Securities Litigation* -- (United States District Court, District of New Jersey) Securities class action filed against Cendant Corporation, its officers and directors and Ernst & Young, its auditors. Cendant settled the action for $2.8 billion and Ernst & Young settled for $335 million. The settlements are the third largest in history in a securities fraud action. Plaintiffs allege that the company disseminated materially false and misleading financial statements concerning CUC's revenues, earnings and expenses for its 1997 fiscal year. As a result of company-wide accounting irregularities, Cendant has restated its financial results for its 1995, 1996 and 1997 fiscal years and all fiscal quarters therein. The firm represents Lead Plaintiffs **CalPERS** - the **California Public Employees Retirement System**, the **New York State Common Retirement Fund** and the **New York City Pension Funds**, the three largest public pension funds in America, in this action.

*Baptist Foundation of Arizona v. Arthur Andersen, LLP* -- (Superior Court of the State of Arizona in and for the County of Maricopa) Firm client, the **Baptist Foundation of Arizona Liquidation Trust** ("BFA") filed a lawsuit charging its former auditors, the "Big Five" accounting firm of Arthur Andersen LLP, with negligence in conducting its annual audits of BFA's financial statements for a 15-year period beginning in 1984, and culminating in BFA's bankruptcy in late 1999. Investors lost hundreds of millions of dollars as a result of BFA's demise. The lawsuit alleges that Andersen ignored evidence of corruption and mismanagement by BFA's former senior management team and failed to investigate suspicious transactions related to the mismanagement. These oversights of accounting work, which were improper under generally accepted accounting principles,

8

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

allowed BFA's undisclosed losses to escalate to hundreds of million of dollars, and ultimately resulted in its demise. On May 6, 2002, after one week of trial, Andersen agreed to pay $217 million to settle the litigation. The court approved the settlement on September 13, 2002 and, ultimately, investors are expected to recover 70% of their losses.

*In re Nortel Networks Corporation Securities Litigation* -- ("Nortel II") (United States District Court for the Southern District of New York) Securities fraud class action on behalf of persons and entities who purchased or acquired the common stock of Nortel Networks Corporation. The action charges Nortel, and certain of its officers and directors, with violations of the Securities Exchange Act of 1934, alleging that the defendants knowingly or, at a minimum, recklessly made false and misleading statements with respect to Nortel's financial results during the relevant period. BLB&G clients the Ontario Teachers' Pension Plan Board and the Treasury of the State of New Jersey and its Division of Investment were appointed as Co-Lead Plaintiffs for the Class, and BLB&G was appointed Lead Counsel for the Class by the court in July 2004. On February 8, 2006, BLB&G and Lead Plaintiffs announced that they and another plaintiff had reached an historic agreement in principle with Nortel to settle litigation pending against the Company for approximately $2.4 billion in cash and Nortel common stock (all figures in US dollars). The Nortel II portion of the settlement totaled approximately $1.2 billion. Nortel later announced that its insurers had agreed to pay $228.5 million toward the settlement, bringing the total amount of the global settlement to approximately $2.7 billion, and the total amount of the Nortel II settlement to over $1.3 billion.

*HealthSouth Corporation Bondholder Litigation* -- (United States District Court for the Northern District of Alabama {Southern Division}) On March 19, 2003, the investment community was stunned by the charges filed by the Securities and Exchange Commission against Birmingham, Alabama based HealthSouth Corporation and its former Chairman and Chief Executive Officer, Richard M. Scrushy, alleging a "massive accounting fraud." Stephen M. Cutler, the SEC's Director of Enforcement, said "HealthSouth's fraud represents an appalling betrayal of investors." According to the SEC, HealthSouth overstated its earnings by at least $1.4 billion since 1999 at the direction of Mr. Scrushy. Subsequent revelations have disclosed that the overstatement actually exceeded over $2.4 billion, virtually wiping

out all of HealthSouth's reported profits for the last five years. A number of executives at HealthSouth, including its most senior accounting officers -- including every chief financial officer in HealthSouth's history -- have pleaded guilty to criminal fraud charges. In the wake of these disclosures, numerous securities class action lawsuits have been filed against HealthSouth and certain individual defendants. On June 24, 2003, the Honorable Karon O. Bowdre of the District Court appointed the **Retirement Systems of Alabama** to serve as Lead Plaintiff on behalf of a class of all purchasers of HealthSouth bonds who suffered a loss as a result of the fraud. Judge Bowdre appointed BLB&G to serve as Co-Lead Counsel for the bondholder class. On February 22, 2006, the RSA announced that it and several other institutional plaintiffs leading investor lawsuits arising from the corporate scandal at HealthSouth Corporation had reached a class action settlement with HealthSouth, certain of the company's former directors and officers, and certain of the company's insurance carriers. The total consideration to be paid in the settlement is approximately $445 million. The action continues against the remaining defendants.

*In re McKesson HBOC, Inc. Securities Litigation* -- (United States District Court, Northern District of California) Securities fraud litigation filed on behalf of purchasers of HBOC, McKesson and McKesson HBOC securities. On April 28, 1999, the Company issued the first of several press releases which announced that, due to its improper recognition of revenue from contingent software sales, it would have to restate its previously reported financial results. Immediately thereafter, McKesson HBOC common stock lost $9 billion in market value. On July 14, 1999, the Company announced that it was restating $327.8 million of revenue improperly recognized in the HBOC segment of its business during the fiscal years ending March 31, 1997, 1998 and 1999. The complaint alleges that, during the Class Period, Defendants issued materially false and misleading statements to the investing public concerning HBOC's and McKesson HBOC's financial results, which had the effect of artificially inflating the prices of HBOC's and the Company's securities. On February 24, 2006, the court granted final approval of a $960 million settlement which BLB&G and its client, Lead Plaintiff the **New York State Common Retirement Fund**, obtained from the company. On December 19, 2006, defendant Arthur Andersen agreed to pay $72.5 million in cash to settle all claims asserted against it. On January 18, 2008, the court granted final approval of a $10 million

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

settlement from remaining defendant Bear Stearns, bringing the total recovery to more than $1.04 billion for distribution to eligible Settlement Class Members.

***Ohio Public Employees Retirement System, et al. v. Freddie Mac, et al.*** -- (United States District Court for the Southern District of Ohio {Eastern Division}) Securities fraud class action filed on behalf of the **Ohio Public Employees Retirement System** and the **State Teachers Retirement System of Ohio** against the Federal Home Loan Mortgage Corporation ("Freddie Mac") and certain of its current and former officers. The Class includes all purchasers of Freddie Mac common stock during the period July 15, 1999 through June 6, 2003. The Complaint alleges that Freddie Mac and certain current or former officers of the Company issued false and misleading statements in connection with Company's previously reported financial results. Specifically, the complaint alleges that the defendants misrepresented the Company's operations and financial results by having engaged in numerous improper transactions and accounting machinations that violated fundamental GAAP precepts in order to artificially smooth the Company's earnings and to hide earnings volatility. On November 21, 2003, Freddie Mac restated its previously reported earnings in connection with these improprieties, ultimately restating more than $5.0 billion in earnings. In October 2005, with document review nearly complete, Lead Plaintiffs began deposition discovery. On April 25, 2006, the parties reported to the Court that they had reached an agreement in principle to settle the case for $410 million. On October 26, 2006, the Court granted final approval of the settlement.

***In re Washington Public Power Supply System Litigation*** -- (United States District Court, District of Arizona) Commenced in 1983, the firm was appointed Chair of the Executive Committee responsible for litigating the action on behalf of the class. The action involved an estimated 200 million pages of documents produced in discovery; the depositions of 285 fact witnesses and 34 expert witnesses; more than 25,000 introduced exhibits; six published district court opinions; seven appeals or attempted appeals to the Ninth Circuit; and a three-month jury trial, which resulted in a settlement of over $750 million – then the largest securities fraud settlement ever achieved.

***In re Lucent Technologies, Inc. Securities Litigation*** -- (United States District Court for the District of New Jersey) A securities fraud class action filed on behalf of purchasers of the common stock of Lucent Technologies, Inc. from October 26, 1999 through December 20, 2000. In the action, BLB&G served as Co-Lead Counsel for the shareholders and Lead Plaintiffs, the **Parnassus Fund** and **Teamsters Locals 175 & 505 D&P Pension Trust**, and also represented the **Anchorage Police and Fire Retirement System** and the **Louisiana School Employees' Retirement System**. Lead Plaintiffs' complaint charged Lucent with making false and misleading statements to the investing public concerning its publicly reported financial results and failing to disclose the serious problems in its optical networking business. When the truth was disclosed, Lucent admitted that it had improperly recognized revenue of nearly $679 million in fiscal 2000. On September 23, 2003, the Court granted preliminary approval of the agreement to settle this litigation, a package which is currently valued at approximately $517 million composed of cash, stock and warrants. The appointment of BLB&G as Co-Lead Counsel is especially noteworthy as it marks the first time since the 1995 passage of the Private Securities Litigation Reform Act that a court has reopened the lead plaintiff or lead counsel selection process to account for changed circumstances, new issues and possible conflicts between new and old allegations.

***In re Williams Securities Litigation*** -- (United States District Court for the Northern District of Oklahoma) Securities fraud class action filed on behalf of a class of all persons or entities that purchased or otherwise acquired certain securities of The Williams Companies. The action alleged securities claims pursuant to Section 10(b) of the Securities Exchange Act of 1934 and Section 11 of the Securities Act of 1933. After a massive discovery and intensive litigation effort, which included taking more than 150 depositions and reviewing in excess of 18 million pages of documents, BLB&G and its clients, the Arkansas Teacher Retirement System and the Ontario Teachers' Pension Plan Board, announced an agreement to settle the litigation against all defendants for $311 million in cash on June 13, 2006. The recovery is among the largest recoveries ever in a securities class action in which the corporate defendant did not restate its financial results.

***In re DaimlerChrysler Securities Litigation*** -- (United States District Court for the District of Delaware) A securities class action filed against defendants DaimlerChrysler AG, Daimler-Benz AG and two of DaimlerChrysler's top executives, charging that Defendants acted in bad faith and misrepresented the nature of the 1998 merger between Daimler-Benz AG and the Chrysler

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Corporation. According to plaintiffs, defendants framed the transaction as a "merger of equals," rather than an acquisition, in order to avoid paying an "acquisition premium." Plaintiffs' Complaint alleges that Defendants made this representation to Chrysler shareholders in the August 6, 1998 Registration Statement, Prospectus, and Proxy, leading 97% of Chrysler shareholders to approve the merger. BLB&G is court-appointed Co-Lead Counsel for Co-Lead Plaintiffs the **Chicago Municipal Employees Annuity and Benefit Fund** and the **Chicago Policemen's Annuity and Benefit Fund**. BLB&G and the Chicago funds filed the action on behalf of investors who exchanged their Chrysler Corporation shares for DaimlerChrysler shares in connection with the November 1998 merger, and on behalf of investors who purchased DaimlerChrysler shares in the open market from November 13, 1998 through November 17, 2000. On August 22, 2003, BLB&G, as Co-Lead Counsel for Plaintiffs, obtained an agreement in principle to settle the action for $300 million.

*In re Bennett Funding Group Securities Litigation* -- (United States District Court, Southern District of New York). Investor class action involving the sale of $570 million in fraudulent investments, described as the largest "Ponzi" scheme in United States history. The action was prosecuted against over fifty defendants including Bennett's former auditors, insurers and broker-dealers who sold Bennett investment. The class includes all purchasers of Bennett securities from March 29, 1992 through March, 29, 1996. The action settled with multiple defendants for over $165 million.

## Corporate Governance and Shareholders' Rights

*UnitedHealth Group, Inc. Shareholder Derivative Litigation* – (United States District Court, District of Minnesota) -- Shareholder derivative action filed on behalf of Plaintiffs the St. Paul Teachers' Retirement Fund Association, the Public Employees' Retirement System of Mississippi, the Jacksonville Police & Fire Pension Fund, the Louisiana Sheriffs' Pension & Relief Fund, the Louisiana Municipal Police Employees' Retirement System and Fire & Police Pension Association of Colorado ("Public Pension Funds"). The action is brought in the name and for the benefit of UnitedHealth Group, Inc. ("UnitedHealth" or the "Corporation") against certain current and former executive officers and members of the Board of Directors of UnitedHealth. It alleges that defendants obtained, approved and/or acquiesced in the issuance of stock options to senior executives that were unlawfully backdated to provide the recipients with windfall compensation at the direct expense of UnitedHealth and its shareholders. The firm recovered nearly $920 million in ill-gotten compensation directly from the former officer defendants—the largest derivative recovery in history. The settlement is notable for holding these individual wrongdoers accountable for their role in illegally backdating stock options, as well as for the fact that the company agreed to far-reaching reforms to curb future executive compensation abuses. As feature coverage in *The New York Times* indicated, "investors everywhere should applaud [the UnitedHealth settlement]....[T]he recovery sets a standard of behavior for other companies and boards when performance pay is later shown to have been based on ephemeral earnings." (Court approval of the recovery is pending.)

*McCall v. Scott* -- (United States District Court, Middle District of Tennessee). A derivative action filed on behalf of Columbia/HCA Healthcare Corporation -- now "HCA" -- against certain former senior executives of HCA and current and former members of the Board of Directors seeking to hold them responsible for directing or enabling HCA to commit the largest healthcare fraud in history, resulting in hundreds of millions of dollars of loss to HCA. The firm represents the **New York State Common Retirement Fund** as Lead Plaintiff, as well as the **California Public Employees' Retirement System ("CalPERS")**, the **New York City Pension Funds**, the **New York State Teachers' Retirement System** and the **Los Angeles County Employees' Retirement Association ("LACERA")** in this action. Although the district court initially dismissed the action, the United States Court of Appeals for the Sixth Circuit reversed that dismissal and upheld the complaint in substantial part, and remanded the case back to the district court. On February 4, 2003, the Common Retirement Fund, announced that the parties had agreed in principle to settle the action, subject to approval of the district court. As part of the settlement, HCA will adopt a corporate governance plan that goes well beyond the

11

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

requirements both of the Sarbanes-Oxley Act and of the rules that the New York Stock Exchange has proposed to the SEC, and also enhances the corporate governance structure presently in place at HCA. HCA also will receive $14 million. Under the sweeping governance plan, the HCA Board of Directors will be substantially independent, and will have increased power and responsibility to oversee fair and accurate financial reporting. In granting final approval of the settlement on June 3, 2003, the Honorable Senior Judge Thomas A. Higgins of the District Court said that the settlement "confers an exceptional benefit upon the company and the shareholders by way of the corporate governance plan."

***Official Committee of Unsecured Creditors of Integrated Health Services, Inc. v. Elkins, et al.*** -- (Delaware Chancery Court) The Official Committee of Unsecured Creditors (the "Committee") of Integrated Health Services ("HIS"), filed a complaint against the current and former officers and directors of IHS, a health care provider which declared bankruptcy in January 2000. The Committee, on behalf of the Debtors Bankruptcy Estates, sought damages for breaches of fiduciary duties and waste of corporate assets in proposing, negotiating, approving and/or ratifying excessive and unconscionable compensation arrangements for Robert N. Elkins, the Company's former Chairman and Chief Executive Officer, and for other executive officers of the Company. BLB&G is a special litigation counsel to the committee in this action. The Delaware Chancery Court sustained most of Plaintiff's fiduciary duty claims against the defendants, finding that the complaint sufficiently pleaded that the defendants "consciously and intentionally disregarded their responsibilities." The Court also observed that Delaware law sets a very high bar for proving violation of fiduciary duties in the context of executive compensation. Resulting in a multi-million dollar settlement, the Integrated Health Services litigation was one of the few executive compensation cases successfully litigated in Delaware.

## Employment Discrimination and Civil Rights

***Roberts v. Texaco, Inc.*** -- (United States District Court for the Southern District of New York) Six highly qualified African-American employees filed a class action complaint against Texaco Inc. alleging that the Company failed to promote African-American employees to upper level jobs and failed to compensate them fairly in relation to Caucasian employees in similar positions. Two years of intensive investigation on the part of the lawyers of Bernstein Litowitz Berger & Grossmann LLP, including retaining the services of high level expert statistical analysts, revealed that African-Americans were significantly under-represented in high level management jobs and Caucasian employees were promoted more frequently and at far higher rates for comparable positions within the Company. Settled for over $170 million. Texaco also agreed to a Task Force to monitor its diversity programs for five years. The settlement has been described as the most significant race discrimination settlement in history.

***GMAC/NMAC/Ford/Toyota/Chrysler Consumer Finance Discrimination Litigation*** The cases involve allegations that the lending practices of General Motors Acceptance Corporation, Nissan Motor Acceptance Corporation, Ford Motor Credit, Toyota Motor Credit and Chrysler Financial cause black and Hispanic car buyers to pay millions of dollars more for car loans than similarly situated white buyers. At issue is a discriminatory kickback system under which minorities typically pay about 50% more in dealer mark-up which is shared by auto dealers with the defendants. On February 24, 2003, the Honorable Todd J. Campbell of the States District Court for the Middle District of Tennessee granted preliminary approval of the settlement of the class action pending against Nissan Motor Acceptance Corporation ("NMAC"). Under the terms of the settlement, NMAC will offer pre-approved loans to hundreds of thousands of current and potential black and Hispanic NMAC customers, and will limit how much it raises the interest charged to car buyers above the company's minimum acceptable rate. The company will also contribute $1 million to America Saves, to develop a car financing literacy program targeted toward minority consumers. The settlement also provides for the payment of $5,000 to $20,000 to the 10 people named in the class-action lawsuit. Other car buyers wishing to recover damages will still be able to sue NMAC separately. BLB&G continues to prosecute the actions against the other auto lenders.

***Alexander v. Pennzoil Company*** -- (United States District Court, Southern District of Texas) A class action on behalf of all salaried African-American employees at Pennzoil alleging race discrimination in the Company's promotion, compensation and other

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

job related practices. The action settled for $6.75 million.

***Butcher v. Gerber Products Company*** -- (United States District Court, Southern District of New York) Class action asserting violations of the Age Discrimination in Employment Act arising out of the mass discharging of approximately 460 Gerber sales people, the vast majority of whom were long-term Gerber employees aged 40 and older. Settlement terms are confidential.

## Consumer Class Actions

***E\*Trade Group, Inc.*** -- (Superior Court of California, Santa Clara County) A class action filed on behalf of all individuals who have or had accounts with E*Trade from September 1996 to the present. The complaint alleges that E*Trade's representations to customers regarding the manner in which their accounts would be handled were false and misleading; that the electronic trading systems were inadequate to meet customer demands; and that, as a result of these misrepresentations, customers suffered significant losses and have been deprived of the benefits which E*Trade had represented they would receive.

***General Motors Corporation*** -- (Superior Court of New Jersey Law Division, Bergen County) A class action consisting of all persons who owned W-body cars with defective rear disc brake caliper pins which tended to corrode, creating both a safety hazard and premature wearing of the front and rear disc brakes, causing extensive economic damage. BLB&G is co-lead counsel in this case where a proposed settlement would provide $19.5 million to the class for reimbursement of brake repairs.

***Rent-A-Center*** -- (Supreme Court of the State of New York, Bronx County) Deceptive sales and marketing in "rent-to-own" transactions. In this case, BLB&G recently obtained a landmark ruling upholding a rental-purchasers' right to bring suit.

***Empire Blue Cross*** -- (United States District Court, Southern District of New York) Overcharging health care subscribers. BLB&G was lead counsel in a recently approved $6.6 million settlement that represented 130% of the class' damages and offered all the overcharged subscribers 100 cents on the dollar repayment.

***DoubleClick*** -- (United States District Court, Southern District of New York). Internet Privacy. A class action on behalf of Internet users who have had personal information surreptitiously intercepted and sent to a major Internet advertising agency. In the settlement agreement reached in this action, DoubleClick commits to a series of industry-leading privacy protections for online consumers while continuing to offer its full range of products and services. This is likely the largest class action there has ever been - virtually every, if not every, Internet user in the United States.

## Toxic/Mass Torts

***Fen/Phen Litigation ("Diet Drug" Litigation)*** -- -- (Class action lawsuits filed in 10 jurisdictions including New York, New Jersey, Vermont, Pennsylvania, Florida, Kentucky, Indiana, Arizona, Oregon and Arkansas) The firm played a prominent role in the nationwide "diet drug" or "fen-phen" litigation against American Home Products for the Company's sale and marketing of Redux and Pondimin. The suits allege that a number of pharmaceutical companies produced these drugs which, when used in combination, can lead to life-threatening pulmonary hypertension and heart valve thickening. The complaint alleges that these manufacturers knew of or should have known of the serious health risks created by the drugs, should have warned users of these risks, knew that the fen/phen combination was not approved by the FDA, had not been adequately studied, and yet was being routinely prescribed by physicians. This litigation led to one of the largest class action settlements in history, the multi-billion dollar Nationwide Class Action Settlement with American Home Products approved by the United States District Court for the Eastern District of Pennsylvania. In this litigation, BLB&G was involved in lawsuits filed in the 10 jurisdictions and was designated Class Counsel in the Consolidated New York and New Jersey state court litigations. Additionally, the firm was Co-Liaison Counsel in the New York litigations and served as the State Court Certified Class Counsel for the New York Certified Class to the Nationwide Settlement.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

## CLIENTS AND FEES

Most of the firm's clients are referred by other clients, law firms and lawyers, bankers, investors and accountants. A considerable number of clients have been referred to the firm by former adversaries. We have always maintained a high level of independence and discretion in the cases we decide to prosecute. As a result, the level of personal satisfaction and commitment to our work is high.

As stated, our client roster includes many large and well known financial and lending institutions and pension funds, as well as privately held corporate entities which are attracted to our firm because of our reputation, particular expertise and fee structure.

We are firm believers in the contingency fee as a socially useful, productive and satisfying basis of compensation for legal services, particularly in litigation. Wherever appropriate, even with our corporate clients, we will encourage a retention where our fee is at least partially contingent on the outcome of the litigation. This way, it is not the number of hours worked that will determine our fee but, rather, the result achieved for our client.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

## IN THE PUBLIC INTEREST

Bernstein Litowitz Berger & Grossmann LLP is guided by two principles: excellence in legal work and a belief that the law should serve a socially useful and dynamic purpose. Attorneys at the firm are active in academic, community and *pro bono* activities, as well as participating as speakers and contributors to professional organizations. In addition, the firm endows a public interest law fellowship and sponsors an academic scholarship at Columbia Law School.

**The Bernstein Litowitz Berger & Grossmann Public Interest Law Fellowship**, Columbia Law School. BLB&G is committed to fighting discrimination and effecting positive social change. In support of this commitment, the firm donated funds to Columbia Law School to create the Bernstein Litowitz Berger & Grossmann Public Interest Law Fellowship. This newly endowed fund at Columbia Law School will provide Fellows with 100% of the funding needed to make payments on their law school tuition loans so long as such graduates remain in the public interest law field. The Bernstein Litowitz Berger & Grossmann Fellows will be able to leave law school free of any law school debt if they make a long term commitment to public interest law.

**Firm sponsorship of *inMotion***, New York, NY. BLB&G is a sponsor of inMotion, a non-profit organization in New York City dedicated to providing *pro bono* legal representation to indigent women, principally battered women, in connection with the myriad legal problems they face. The organization trains and supports the efforts of New York lawyers, typically associates at law firms or in-house counsel, who provide *pro bono* counsel to these women. Several members and associates of the firm volunteer their time and energies to help women who need divorces from abusive spouses, or representation on legal issues such as child support, custody and visitation. To read more about inMotion and the remarkable services it provides, visit the organization's website at www.inmotiononline.org.

**The Paul M. Bernstein Memorial Scholarship**, Columbia Law School. Paul M. Bernstein was the founding senior partner of the firm. Mr. Bernstein led a distinguished career as a lawyer and teacher and was deeply committed to the professional and personal development of young lawyers. The Paul M. Bernstein Memorial Scholarship Fund is a gift of the firm of Bernstein Litowitz Berger & Grossmann LLP, and the family and friends of Paul M. Bernstein. Established in 1990, the scholarship is awarded annually to one or more second-year students selected for their academic excellence in their first year, professional responsibility, financial need and contributions to fellow students and the community.

**Firm sponsorship of City Year New York**, New York, NY. BLB&G is also an active supporter of City Year New York, a division of AmeriCorps. The program was founded in 1988 as a means of encouraging young people to devote time to public service and unites a diverse group of volunteers for a demanding year of full-time community service, leadership development and civic engagement. Through their service, corps members experience a rite of passage that can inspire a lifetime of citizenship and build a stronger democracy.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

## THE MEMBERS OF THE FIRM

**MAX W. BERGER,** a founding partner of the firm, supervises the firm's litigation practice and prosecutes class and individual actions on behalf of the firm's clients.

Mr. Berger has litigated many of the firm's most high profile and significant cases. Together, with other partners at the firm, he has obtained five of the largest securities fraud recoveries in history—the $6.15 billion settlement of *In re WorldCom, Inc. Securities Litigation*, the $3.2 billion settlement of *In re Cendant Corporation Securities Litigation*, the $1.3 billion recovery in *In re Nortel Networks Corporation Securities Litigation*, the $1.03 billion partial settlement of *In re McKesson HBOC, Inc. Securities Litigation*, and the over $600 million investor recovery in *In re Lucent Technologies, Inc. Securities Litigation*.

Mr. Berger's role in the *WorldCom* case received extensive media attention and has been the subject of feature articles in numerous major publications including *BusinessWeek* and *The American Lawyer*. For their outstanding efforts on behalf of the *WorldCom* Class, *The National Law Journal* profiled Mr. Berger and his partner Sean Coffey (two of only eleven attorneys selected nationwide) in its special June 2005 "Winning Attorneys" section. Additionally, Mr. Berger was featured in the July 2006 *New York Times* article, "A Class-Action Shuffle," which assessed the evolving landscape of the securities litigation arena.

Mr. Berger is widely recognized for his professional excellence and achievements.  For the second year in a row, he received the top attorney ranking for the "Litigation—Securities Mainly Plaintiff" category by the *Chambers and Partners' 2007 Guide to America's Leading Lawyers for Business*. The inaugural issue of *Benchmark: The Definitive Guide to America's Leading Litigation Firms & Attorneys* (published by Legal Media Group—*Institutional Investor* and *Euromoney*) singled out Mr. Berger as one of a handful of New York's "local litigation stars."  Additionally, he was named a "litigation star" by the 2007 edition of the *US Legal 500*, one of "10 Legal Superstars" by *Securities Law360*, and is consistently named as one of the "500 Leading Lawyers in America" by *Lawdragon* magazine.

Mr. Berger also serves the academic community in numerous capacities as a member of the Dean's Council to Columbia Law School, and as a member of the Board of Trustees of Baruch College. In May 2006, he was presented with the Distinguished Alumnus Award for his many and varied contributions to Baruch College. Mr. Berger has also been selected as an Advisor to the American Law Institute, Restatement Third of Torts, and he currently serves on the Advisory Board of Columbia Law School's Center on Corporate Governance. Additionally, Mr. Berger has taught Profession of Law, an ethics course at Columbia.

Mr. Berger is a past chairman of the Commercial Litigation Section of the Association of Trial Lawyers of America (now known as the American Association for Justice) and lectures for numerous professional organizations. In 1997, Mr. Berger was honored for his outstanding contribution to the public interest by Trial Lawyers For Public Justice, where he was a "Trial Lawyer of the Year" Finalist for his work in *Roberts, et al. v. Texaco*, the celebrated race discrimination case, on behalf of Texaco's African-American employees.

Among numerous charitable and volunteer works, Mr. Berger is an active supporter of City Year New York, a division of AmeriCorps, dedicated to encouraging young people to devote time to public service. In July 2005, he was named City Year New York's "Idealist of the Year," for his long-time service and work in the community.  He and his wife, Dale, have also established the Dale and Max Berger Public Interest Law Fellowship at Columbia Law School and the Max W. Berger Pre-Law Program at Baruch College.

EDUCATION: Baruch College-City University of New York, B.A., Accounting, 1968; President of the student body and recipient of numerous awards.  Columbia Law School, J.D., 1971, Editor of the *Columbia Survey of Human Rights Law*.

BAR ADMISSIONS: New York; U.S. District Courts for the Eastern and Southern Districts of New York; U.S. Court of Appeals, Second Circuit; U.S. District Court, District of Arizona; U.S. Supreme Court.

****

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

**EDWARD A. GROSSMANN,** one of the firm's founding partners, served as lead counsel in the *Prudential-Bache Energy Income Limited Partnership* and the *In re Bennett Funding Group* class actions, well-publicized cases which have each settled for in excess of $120 million.

Mr. Grossmann is a past chairman of the Class and Derivative Action Trials Subcommittee of the Litigation Section of the American Bar Association and a past chairman of the Commercial Litigation Section of the Association of Trial Lawyers of America (now known as the American Association for Justice) and has lectured for that organization. Mr. Grossmann is a member of the Committee of Visitors of the University of Michigan Law School and a member of the Committee of Visitors of the University of Wisconsin Center for Jewish Studies. He is also past President of the JCC on the Palisades and is a past trustee of the UJA Federation of Northern New Jersey.

EDUCATION: University of Wisconsin, B.A., *cum laude,* 1970.  University of Michigan Law School, J.D., 1973.

BAR ADMISSIONS: New York; U.S. District Courts for the Southern and Eastern Districts of New York; U.S. Courts of Appeals for the Second, Third, Fifth, Ninth and Eleventh Circuits.

**\*\*\*\***

**STEVEN B. SINGER** joined BLB&G is 1994.  He has been responsible for prosecuting a number of significant and high-profile securities fraud cases. Mr. Singer was one of the lead trial lawyers on the *WorldCom Securities Litigation*, which culminated in a four-week trial against WorldCom's auditors, and resulted in the historic recovery of over $6.15 billion from the professionals associated with WorldCom.  He has also been responsible for, among others, *In re Lucent Technologies Securities Litigation*, which resulted in the fifth largest securities settlement of all time; *In re 3Com Securities Litigation*, at the time the largest securities fraud class action recovery in Ninth Circuit history; and a multi-million dollar private action arising out of the demise of Lernout & Hauspie Speech Products, N.V.  He is currently responsible for the Firm's cases against Biovail Corporation, Mills Corporation, and Converium Holding AG, R&G Financial Corp., American Home Mortgage Investment Corporation, MBIA, Inc., among others.

Mr. Singer has also distinguished himself in the firm's other practice areas, securing large recoveries for victims of discrimination and consumer fraud. In 1997, the Trial Lawyers for Public Justice named Mr. Singer as a finalist for "Trial Lawyer of the Year" for his role in the prosecution of the celebrated race discrimination litigation, *Roberts v. Texaco*, which resulted in the largest discrimination settlement in history.

Mr. Singer frequently lectures at the firm's Forum for Institutional Investors and is an active member of the New York State and American Bar Associations. He is also a speaker at various continuing legal education programs offered by the Practising Law Institute ("PLI").

EDUCATION: Duke University, B.A., *cum laude,* 1988. Northwestern University School of Law, J.D., 1991.

BAR ADMISSIONS: New York; U.S. District Courts for the Eastern and Southern Districts of New York.

**\*\*\*\***

**CHAD JOHNSON** is involved in all areas of the firm's litigation practice, with particular emphasis on prosecuting securities fraud actions, complex commercial litigation, patent litigation, and trial practice.

Among other matters, Mr. Johnson was one of the partners who prosecuted the *WorldCom, Inc. Securities Litigation* – resulting in a recovery for investors of over $6.15 billion after five weeks of trial. Mr. Johnson was primarily involved in dismantling the underwriters' due diligence defense in that case, which helped result in the multi-billion dollar recovery for investors.

Mr. Johnson was also the lead partner who oversaw the prosecution of the *Williams Securities Litigation*.  Shortly before trial, BLB&G and the Lead Plaintiffs were able to obtain a total recovery of $311 million on behalf of investors, including $21 million from the company's auditor. This is among the largest recoveries ever achieved in a securities class action where the SEC did not obtain any recovery for investors.

17

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Mr. Johnson is leading the firm's prosecution of the securities class action concerning allegations of fraud in Washington Mutual's home loan business. The case is being prosecuted on behalf of Lead Plaintiff, Ontario Teachers' Pension Plan Board, and a class of other investors. The complaint filed by BLB&G on behalf of Ontario Teachers is based on the results of one of the most wide-ranging and fruitful investigations conducted in this practice area. The complaint presents evidence gathered from eighty-nine (89) confidential witnesses and many previously-undisclosed documents obtained through BLB&G's investigation. The U.S. Attorney's Office for the Western District of Washington and a federal grand jury in Seattle are reportedly making use of the facts detailed in BLB&G's complaint in connection with their review of the wrongdoing at WaMu.

Mr. Johnson is also leading the firm's prosecution, along with co-counsel, of numerous patent litigations now pending against major electronics manufacturers including Nikon, Sharp, Samsung, LG.Philips, and others. These patent litigations relate to the technology used to manufacture flat panel displays, including LCD televisions. The revenues defendants are generating using the plaintiff's patented technology is in the billions of dollars per year. This litigation has been featured in an ABC News story, which included interviews with Mr. Johnson and the inventor of the technology.

Mr. Johnson is also overseeing the firm's prosecution of the federal derivative action against the individuals involved in the options backdating scandal at UnitedHealth Group, Inc. BLB&G represents several public pension funds, all of whom are Court-appointed Lead Plaintiffs in the case. Since the initiation of that lawsuit, the company has effectively acknowledged that it engaged in options backdating and the company' Chairman and CEO (and a recipient of hundreds of millions of dollars of apparently backdated stock options), William McGuire, has been forced out of the company because of his involvement in the scandal.

Prior to joining the firm, Mr. Johnson was a partner with Latham & Watkins, where he practiced for ten years. While with Latham & Watkins, he represented investment banks, accounting firms, law firms, boards of directors, patent holders, and both publicly and privately held companies. He has extensive experience in the areas of securities litigation, complex commercial litigation, patent litigation, and international arbitration. He has also handled a variety of matters before federal and state courts, as well as arbitration tribunals both in the United States and abroad, including the International Chamber of Commerce, the London Court of International Arbitration, the Netherlands Arbitration Institute, the Permanent Court of Arbitration, the American Arbitration Association, and JAMS/Endispute.

EDUCATION: University of Michigan, *with high distinction;* Angell scholar.  Harvard Law School, *cum laude;* President of Harvard Law School Forum.

BAR ADMISSIONS: Illinois, District of Columbia, New York.

****

**GERALD H. SILK**'s practice focuses on representing institutional investors on matters involving federal and state securities laws, accountants' liability and the fiduciary duties of corporate officials. He also advises creditors on their rights with respect to pursuing affirmative claims against officers and directors, as well as professionals both inside and outside the bankruptcy context. Additionally, Mr. Silk is one of the partners who oversee the firm's new matter department, in which he, along with a group of financial analysts and investigators, counsels institutional clients on potential legal claims. He was the subject of "Picking Winning Securities Cases," a feature article in the June 2005 issue of *Bloomberg Markets* magazine, which detailed his work for the firm in this capacity. He was also named one of the "100 Securities Litigators You Need to Know," one of America's top 500 "rising stars" in the legal profession and one of the 3000 Leading Plaintiffs' Lawyers in America by *Lawdragon* magazine. Additionally, Mr. Silk was selected for inclusion in the list of 2006, 2007 and 2008 *New York Super Lawyers*.  In October of 2008, Mr. Silk was named by *Lawdragon* magazine as one of the "500 Leading Lawyers in America."

Mr. Silk is currently representing Ontario Teachers' Pension Plan in a securities class action against American International Group, Inc. (AIG) which alleges that AIG misled investors by misrepresenting the nature of the Company's massive exposure to the subprime crisis, specifically billions in losses in credit default swaps. Mr. Silk is also leading the prosecution of state securities actions on behalf of bond and preferred stock investors in Citigroup and Merrill Lynch.  These cases allege that Citigroup and Merrill Lynch issued securities pursuant to prospectuses that were materially false and misleading in that they misrepresented the value of and exposure to mortgage related

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

and subprime securities as well as exposure arising out of their participation in the auction rate securities market. Mr. Silk is also actively involved in the firm's prosecution of highly successful M&A litigation, representing shareholders in widely publicized lawsuits, including the litigation arising from the proposed acquisition of Caremark Rx, Inc. by CVS Corporation - which led to an increase of approximately $3.5 billion in the consideration offered to shareholders.

Mr. Silk was one of the principal attorneys responsible for prosecuting the *In re Independent Energy Holdings Securities Litigation*, a case against the officers and directors of Independent Energy as well as several investment banking firms which underwrote a $200 million secondary offering of ADRs by the U.K.-based Independent Energy. The Independent Energy litigation was resolved for $48 million. Mr. Silk has also prosecuted and successfully resolved several other securities class actions, which resulted in substantial cash recoveries for investors, including *In re Sykes Enterprises, Inc. Securities Litigation* in the Middle District of Florida, and *In re OM Group, Inc. Securities Litigation* in the Northern District of Ohio. He was also a member of the litigation team responsible for the successful prosecution of *In re Cendant Corporation Securities Litigation* in the District of New Jersey, which was resolved for $3.2 billion.

A graduate of the Wharton School of Business, University of Pennsylvania and Brooklyn Law School, in 1995-96, Mr. Silk served as a law clerk to the Hon. Steven M. Gold, U.S.M.J., in the United States District Court for the Eastern District of New York.

Mr. Silk lectures to institutional investors at conferences throughout the country, and has written or substantially contributed to several articles on developments in securities and corporate law, including "The Compensation Game," *Lawdragon*, Fall 2006; "Institutional Investors as Lead Plaintiffs: Is There A New And Changing Landscape?", 75 *St. John's Law Review* 31 (Winter 2001); "The Duty To Supervise, Poser, Broker-Dealer Law and Regulation", 3rd Ed. 2000, Chapter 15; "Derivative Litigation In New York after Marx v. Akers", *New York Business Law Journal*, Vol. 1, No. 1 (Fall 1997).

EDUCATION:  Wharton School of the University of Pennsylvania, B.S., Economics, 1991.  Brooklyn Law School, J.D., *cum laude,* 1995.

BAR ADMISSIONS: New York; U.S. District Courts for the Southern and Eastern Districts of New York.

**\*\*\*\***

**BLAIR A. NICHOLAS** has successfully represented numerous institutional investors in high-profile actions involving federal and state securities laws, accountants' liability, and corporate governance matters.

He served as one of the lead trial counsel in *In re Clarent Corporation Securities Litigation*, a securities fraud class action prosecuted before the Federal District Court for the Northern District of California. After a four week jury trial, in which Mr. Nicholas delivered the closing argument, the jury returned a securities fraud verdict in favor of investors against the former Chief Executive Officer of Clarent.

Recently, Mr. Nicholas served as lead counsel on behalf of prominent mutual funds, hedge funds and a public pension fund in an opt-out securities fraud against Tyco International, which was resolved for $100 million. This opt-out recovery represented a significant multiplier over the recovery in a related securities class action. Mr. Nicholas also served as one of the principal attorneys responsible for prosecuting *In re Williams Securities Litigation*, resolved for $311 million; *In re Informix Securities Litigation*, resolved for $142 million; *In re Gemstar Securities Litigation*, resolved for $92.5 million; *In re Legato Systems Securities Litigation*, resolved for $85 million; *In re Network Associates Securities Litigation*, resolved for $70 million; and *In re Finova Group Securities Litigation*, resolved for $42 million.

Mr. Nicholas was named by *The American Lawyer* as one of its "Fab Fifty Young Litigators"—one of the top 50 litigators in the country, 45 and under, who have "made their marks already and whom [they] expect to see leading the field for years to come." He was also honored in the *Daily Journal's* January 2007 issue, as being among the "Top 20 Under 40" attorneys in California, "rack[ing] up a string of multi-million dollar victories for investors." He has been named one of the *San Diego Super Lawyers* and was honored with the selection by *Lawdragon* magazine as one of the "Top 100 Securities Litigators You Need to Know."

19

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Mr. Nicholas has presented at institutional investor conferences throughout the United States and has written articles relating to the application of the federal and state securities laws, including the articles "Credit Rating Agencies: Out of Control and in Need of Reform," *Securities Litigation & Regulation Reporter* (June 30, 2009) (co-author); "South Ferry: Applying Tellabs, 9th Circuit Lowers The Bar for Pleading Scienter Under the PSLRA," *Securities Litigation & Regulation Reporter* (October 2008); "The 7th Circuit Sends a Strong Message: Institutions Must Monitor Securities Class Actions Claims," *The NAPPA Report* (August 2008); "Industry-Wide Collapse Defense Falls Flat in Recent Subprime-Related Securities Fraud Decisions," *Securities Litigation & Regulation Reporter* (July 2008) (co-author); "Auditor Liability: Institutional Investors Pursue Opt-Out Actions To Maximize Recovery of Securities Fraud Losses," Securities Litigation and Enforcement Institute (PLI 2007) (co-author); and "Reforming the Reform Act and Restoring Investor Confidence in the Securities Markets," *Securities Reform Act Litigation Reporter* (July 2002).

Mr. Nicholas served as Vice President on the Executive Committee of the San Diego Chapter of the Federal Bar Association and is an active member of the Association of Business Trial Lawyers of San Diego, Litigation Section of the State Bar of California, and the San Diego County Bar Association.

EDUCATION:  University of California, Santa Barbara, B.A., Economics. University of San Diego School of Law, J.D.; Lead Articles Editor of the *San Diego Law Review*.

BAR ADMISSIONS:  California; U.S. Court of Appeals, Ninth Circuit; U.S. District Courts for the Southern, Central and Northern Districts of California; U.S. District Court for the District of Arizona.

****

**DAVID R. STICKNEY** practices in the firm's California office, where he focuses on complex litigation in state and federal courts nationwide at both the trial court and appellate levels. He has prosecuted many class and individual actions and has successfully resolved a number of the firm's prominent cases, including, for example, *In re McKesson Securities Litigation*, which settled before trial for a total of $1.023 billion, the largest settlement amount in history for any securities class action within the Ninth Circuit; *Wyatt v. El Paso Corp.*, which recently settled for $285 million; *BFA Liquidation Trust v. Arthur Andersen LLP*, which settled during trial for $217 million; and *In re EMAC Securities Litigation*, which settled on undisclosed terms before trial.

During 1996-1997, Mr. Stickney served as law clerk to the Honorable Bailey Brown of the United States Court of Appeals for the Sixth Circuit. Mr. Stickney lectures on securities litigation and shareholder matters for seminars and programs sponsored by professional organizations including the Practising Law Institute and Glasser Legalworks. He has also authored and co-authored several articles concerning securities litigation and class actions. His professional affiliations include the Association of Business Trial Lawyers.

EDUCATION:  University of California, Davis, B.A., 1993. University of Cincinnati College of Law, J.D., 1996; Jacob B. Cox Scholar; Lead Articles Editor of *The University of Cincinnati Law Review*.

BAR ADMISSIONS: California; U.S. Courts of Appeals for the Fifth, Sixth, Eighth and Ninth Circuits; U.S. District Courts for the Northern, Southern and Central Districts of California.

****

**SALVATORE J. GRAZIANO,** an experienced trial attorney, has taken a leading role in a number of major securities fraud class actions including cases against: (i) Raytheon Company and PricewaterhouseCoopers LLP, total recoveries of $460 million; (ii) MicroStrategy, Inc. and PricewaterhouseCoopers LLP, total recoveries valued in excess of $150 million; (iii) i2 Technologies, Inc. and Arthur Andersen LLP, total recovery of $87.75 million; and (iv) Aetna, Inc., total recovery of $82.5 million.

Mr. Graziano has litigated cases resulting in favorable decisions for securities investors nationwide, including the seminal Second Circuit decision of *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000), interpreting the pleading standards of the Private Securities Litigation Reform Act of 1995.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Upon graduation from law school, Mr. Graziano served as an Assistant District Attorney in the Manhattan District Attorney's Office. He has over 10 years of securities fraud civil litigation experience. Mr. Graziano has previously served as a member of the Financial Reporting Committee of the Association of the Bar of the City of New York and as a member of the Securities Regulation Committee of the New York City Bar Association. Mr. Graziano has been a panelist on numerous CLE litigation programs.

EDUCATION:  New York University College of Arts and Science, B.A., psychology, *cum laude,* 1988.  New York University School of Law, J.D., *cum laude,* 1991.

BAR ADMISSIONS:  New York; U.S. District Courts for the Southern and Eastern Districts of New York; U.S. Courts of Appeals for the First, Second and Eleventh Circuits.

**\*\*\*\***

**WILLIAM C. FREDERICKS** clerked for the Hon. Robert S. Gawthrop III of the U.S. District Court for the Eastern District of Pennsylvania after law school, and then spent seven years practicing securities and complex commercial litigation as an associate at Simpson Thacher & Bartlett and Willkie Farr & Gallagher before moving to the plaintiffs' side of the bar in 1997.

Mr. Fredericks has represented investors as a lead or co-lead counsel in over two dozen securities class actions, notably *In re Rite Aid Securities Litigation* (E.D. Pa.) (total settlements of $323 million, including the then-second largest securities fraud settlement ever against a Big Four accounting firm); *In re Sears Roebuck & Co. Securities Litigation* (N.D. Ill.) ($215 million settlement announced, subject to judicial approval); and *Irvine v. Imclone Systems, Inc.* (S.D.N.Y.) ($75 million settlement). Mr. Fredericks has also successfully represented several institutional clients (including Mexico's TV Azteca and Australia's Australis Media Group) in private commercial disputes at both the trial and appellate level. See, e.g., *National Broadcasting Co. v. Bear Stearns & Co., et al.*, 165 F.3d 184 (2d Cir. 1999); *News Ltd. v. Australis Holdings Pty. Limited*, 728 N.Y.S. 2d 667 (1st Dep't 2001) and 742 N.Y.S. 2d 190 (1st Dep't 2002).

Mr. Fredericks has been a panelist on a variety of litigation programs sponsored by various organizations, including the Practising Law Institute (PLI) and the American Law Institute/American Bar Association (ALI/ABA). He is a member of the Association of the Bar of the City of New York, and a former chairman of the Association's Committee on Military Affairs and Justice.

EDUCATION:  Swarthmore College, B.A., Political Science, high honors, 1983.  Oxford University (England), M.Litt., International Relations, 1988. Columbia University, J.D., 1988; three-time Harlan Fiske Stone Scholar; Columbia University International Fellow, Articles Editor of *The Columbia Journal of Transnational Law*; Beck Prize in property law; Toppan Prize in advanced constitutional law.

BAR ADMISSIONS:  New York; U.S. District Courts for the Southern and Eastern Districts of New York and the District of Colorado; U.S. Courts of Appeals for the Second, Third, Sixth and Tenth Circuits.

**\*\*\*\***

**JOHN C. BROWNE** was previously an attorney at Latham & Watkins, where he had a wide range of experience in commercial litigation, including defending corporate officers and directors in securities class actions and derivative suits, and representing major corporate clients in state and federal court litigations and arbitrations. Mr. Browne was a member of the team representing the New York State Common Retirement Fund in *In re WorldCom, Inc. Securities Litigation*, which culminated in a five-week trial against Arthur Andersen LLP and a recovery for investors of over $6.15 billion—the second largest securities fraud recovery in history.

Mr. Browne prosecuted *In re King Pharmaceuticals Litigation*, which settled for $38.25 million. In March 2008, he achieved a $28.5 million settlement on behalf of shareholders in *In re SFBC Securities Litigation.*  Mr. Browne is currently prosecuting a number of securities and other cases, including *In re Refco Securities Litigation*, in which a partial settlement of $140 million has been achieved, *In re RAIT Financial Trust Securities Litigation*, and *The Football Association Premier League Limited, et al. v. YouTube, Inc., et al.*

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Mr. Browne has been a panelist at various continuing legal education programs offered by the American Law Institute ("ALI") and has published several articles relating to securities litigation. Most recently, Mr. Browne co-authored, along with senior partner Max Berger, "Is the Sky Really Falling on the U.S. Capital Markets?," *The NAPPA Report*, Vol. 21, May 2007, available at www.nappa.org.

EDUCATION: James Madison University, B.A., Economics, *magna cum laude*, 1994. Cornell Law School, J.D., *cum laude*, 1998; Editor of *The Cornell Law Review*.

BAR ADMISSION: New York.

**** 

**MARK LEBOVITCH** is primarily responsible for the firm's corporate governance litigation practice, focusing on derivative suits and transactional litigation. Among other things, he is currently prosecuting a case of first impression challenge to the legal validity of "Proxy Puts" – contractual provisions that are common in corporate debt agreements and that allegedly undermine shareholders' fundamental voting rights. In addition, he is prosecuting the allegedly self-interested termination of a premium acquisition agreement by the CEO of the Landry's Restaurants, Inc., the Emulex board's allegedly bad faith rejection of a premium takeover offer by Broadcom Corporation, the restructuring transactions of DirecTV, and the inclusion in the Atmel Corporation poison pill of vaguely defined derivative securities.

In prior matters, he represented public pension systems seeking to vindicate shareholder voting rights allegedly infringed by Yahoo!, Inc.'s employee severance plan and by unique merger agreement and standstill provisions used in the private equity buyout of Ceridian Corporation. He recently obtained up to $57 million for shareholders over a year after the closing of the buyout of Dollar General Stores. He has also helped obtain for shareholders higher prices and meaningful corporate governance improvements in suits arising from, among other things, the hostile takeover battles over Caremark Rx, Inc., CBOT Holdings, Inc., Longs Drug Stores, Inc., and Anheuser-Busch Companies, Inc.

Mr. Lebovitch is also a member of the firm's subprime litigation team, and in that capacity is currently prosecuting *In re MBIA, Inc. Securities Litigation* and *In re Merrill Lynch Bondholders Litigation*, which recently settled for $150 million.

Mr. Lebovitch clerked for Vice Chancellor Stephen P. Lamb on the Court of Chancery of the State of Delaware, and was a litigation associate at Skadden, Arps, Slate, Meagher & Flom in New York, where he represented clients in a variety of corporate governance, commercial and federal securities matters.

Mr. Lebovitch is a member of the Board of Advisors for the Institute for Law and Economics, and an author and frequent speaker at industry events and continuing legal education programs on a wide range of corporate governance and securities related issues. His publications include "'Novel Issues' or a Return to Core Principles? Analyzing the Common Link Between the Delaware Chancery Court's Recent Rulings in Option Backdating and Transactional Cases" (*NYU Journal of Law & Business*, Volume 4, Number 2); "Calling a Duck a Duck: Determining the Validity of Deal Protection Provisions in Merger of Equals Transactions" (2001 *Columbia Business Law Review* 1) and "Practical Refinement" (*The Daily Deal*, January 2002), each of which discussed evolving developments in the law of directors fiduciary duties.

EDUCATION: Binghamton University – State University of New York, B.A., *cum laude*, 1996. New York University School of Law, J.D., *cum laude*, 1999.

BAR ADMISSIONS: New York; U. S. District Courts for the Southern and Eastern Districts of New York.

****

22

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

**HANNAH GREENWALD ROSS** was a prosecutor in the Insurance and Unemployment Fraud Division of the Massachusetts Attorney General's office before joining BLB&G. Prior to that, she was an Assistant District Attorney in the Middlesex County (Massachusetts) District Attorney's office from 1998 to 2000.

Ms. Ross's practice at the firm focuses on securities fraud litigation. Part of the team that successfully prosecuted the securities class action against the Federal Home Loan Mortgage Corporation ("Freddie Mac") resulting in a settlement of $410 million, she was also a member of the team that litigated the *In re OM Group, Inc. Securities Litigation,* which resulted in a settlement of $92.4 million.

Ms. Ross is currently prosecuting a number of other securities cases, including *In re The Mills Corporation Securities Litigation*, *In re Delphi Corporation Securities Litigation*, *In re New Century* and *In re Washington Mutual Securities Litigation.*

EDUCATION: Cornell University, B.A, *cum laude,* 1995. Penn State Dickinson School of Law, J.D., 1998; Woolsack Honor Society; Comments Editor of the *Dickinson Law Review;* D. Arthur Magaziner Human Services Award.

BAR ADMISSIONS: Massachusetts, New York.

****

**BEATA GOCYK-FARBER** is involved in all areas of the firm's litigation practice, with particular emphasis on securities fraud actions, complex commercial litigation, and trial practice. Additionally, she is in charge of the firm's European business development.

Ms. Gocyk-Farber was a senior member of the litigation and trial team that prosecuted *In re WorldCom, Inc. Securities Litigation,* resulting in a recovery for investors of over $6.15 billion—the second largest securities fraud recovery in the history of the financial markets. She was also one of the senior lawyers leading the prosecution of *In re Williams Securities Litigation*, which resulted in $311 million in recoveries for the plaintiffs shortly before trial. This was one of the largest recoveries in a securities class action in which the corporate defendant did not restate its financial results. She is currently a senior member of the team prosecuting *In re HealthSouth Securities Litigation* and *In re Converium Securities Litigation*. Ms. Gocyk-Farber also has extensive experience in prosecuting executive compensation cases and is one of the senior lawyers prosecuting the federal derivative action against the individuals involved in the options backdating scandal at *UnitedHealth Group, Inc.*

Prior to joining BLB&G in 2001, Ms. Gocyk-Farber was an associate with Cleary Gottlieb Steen & Hamilton in New York, where she represented large financial institutions and sovereign governments in securities and merger and acquisitions transactions. Ms. Gocyk-Farber is fluent in Polish and has working knowledge of Russian. She is a member of the International Law Section of the American Bar Association.

EDUCATION: Benjamin N. Cardozo School of Law - Yeshiva University, 1997, J.D., *summa cum laude*; Cardozo Law Review; the Order of the Coif; Balkin Scholar; West Publishing Award for Academic Excellence

BAR ADMISSIONS: New York, U.S. District Court for the Southern District of New York.

****

**TIMOTHY A. DeLANGE** focuses on complex litigation in state and federal courts nationwide. Mr. DeLange is a member of the team prosecuting *In re McKesson Securities Litigation*, together with firm partners Max Berger and David Stickney. In that case, a partial settlement was reached for $960 million, the largest recovery for securities class-action settlements in courts within the Ninth Circuit.

Mr. DeLange is currently prosecuting a number of other securities cases, including, along with firm partner Blair Nicholas, *In re Accredo Health, Inc. Securities Litigation*. Mr. DeLange also serves as the editor of the firm's quarterly publication, the *Advocate for Institutional Investors.*

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Prior to joining the firm, Mr. DeLange practiced complex litigation at Brobeck, Phleger & Harrison LLP. He practices out of the firm's California office.

EDUCATION: University of California, Riverside, B.A., 1994. University of San Diego School of Law, J.D., 1997. Recipient of the American Jurisprudence Award in Contracts, 1994.

BAR ADMISSIONS: California; U.S. District Courts for the Northern, Eastern, Central and Southern Districts of California.

## OF COUNSEL

**ELLIOTT J. WEISS**, one of America's most highly respected experts in securities and corporate law, joined the firm as Counsel in December 2005 after retiring from his post as the Charles E. Ares Professor of Law at the University of Arizona's Rogers College of Law.

Having spent nearly three decades of commitment to the development of young lawyers at several of the country's finest academic institutions, Professor Weiss has enjoyed a remarkable career teaching, writing and lecturing, having strongly influenced and directed public policy regarding our capital markets.

He has authored and co-authored several seminal texts and over 30 influential articles on securities litigation and corporate law throughout his career. Among his many published works, Professor Weiss was the lead co-author of "Let the Money Do the Monitoring: How Institutional Investors Can Reduce Agency Costs in Securities Class Actions" *{104 Yale L.J. 2053 (1995)}*, which proposed new rules governing the organization of securities class actions. Congress based the lead plaintiff provisions of the Private Securities Litigation Reform Act of 1995 on that article and thus changed dramatically the dynamics of the securities class action litigation process. He recently reviewed the impact of those provisions in "The Lead Plaintiff Provisions After a Decade, or 'Look What's Happened to My Baby,'" forthcoming in the *Vanderbilt Law Review*.

Professor Weiss also was the first Executive Director of the Investor Responsibility Research Center, where he did groundbreaking work on institutional investors' responsibility for corporate governance issues, and has served as a member of the National Adjudicatory Council of NASD-Regulation and as a consultant to the United States' Securities and Exchange Commission.

A member, past and present, of numerous esteemed professional associations, including the American Law Institute, Professor Weiss has been a force for positive change in the legal, financial and business communities, and continues his long career defending the rights of investors and demanding responsible behavior from corporate management.

Professor Weiss resides in Tucson, Arizona and maintains an office at the Rogers College of Law.

EDUCATION: Dartmouth College and Yale Law School, J.D.

BAR ADMISSIONS: California (inactive), New York.

****

**G. ANTHONY GELDERMAN, III** heads the firm's Louisiana office and is responsible for the firm's institutional investor and client outreach. He is a frequent speaker at U.S. and European investor conferences and has written numerous articles on securities litigation and asset protection.

Earlier in his career, Mr. Gelderman served as Chief of Staff and General Counsel to the Treasurer of the State of Louisiana, (1992-1996) and prior to that served as General Counsel to the Louisiana Department of the Treasury. Mr. Gelderman also coordinated all legislative matters for the State Treasurer during his tenure with the Treasury Department. Earlier in Mr. Gelderman's legal career, he served as law clerk to U.S. District Judge Charles Schwartz, Jr., Eastern District of Louisiana (1986-1987).

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Mr. Gelderman is a former adjunct professor of law at the Tulane Law School where he has taught a course in legislative process. In 1995, Mr. Gelderman was profiled by the American Bar Association in *Barrister* magazine as one of the 25 young lawyers in America making a difference in the legal profession. He is a member of the Louisiana State (Chairman, Young Lawyers Continuing Legal Education Committee, 1990-1993) and American Bar Associations.

BAR ADMISSIONS: Louisiana; U.S. District Courts for the Eastern and Middle Districts of Louisiana.

****

**KURT HUNCIKER's** practice is concentrated in complex business and securities litigation. Prior to joining BLB&G, Mr. Hunciker represented clients in a number of class actions and other actions brought under the federal securities laws and the Racketeer Influenced and Corrupt Organizations Act. He has also represented clients in actions brought under intellectual property laws, federal antitrust laws, and the common law governing business relationships.

Mr. Hunciker served as a member of the trial team for the *In re WorldCom, Inc. Securities Litigation* and is currently a member of the teams prosecuting the *In re Biovail Corp. Securities Litigation* and *In re Mutual Funds Securities Litigation.*

EDUCATION: Stanford University, B.A.; Phi Beta Kappa. Harvard Law School, J.D., Founding Editor of the *Harvard Environmental Law Review.*

BAR ADMISSIONS: New York; U.S. District Courts for the Southern, Eastern and Northern Districts of New York; U.S. Courts of Appeals for the Second, Fourth and Ninth Circuits.

****

**BRUCE D. BERNSTEIN** has extensive experience prosecuting securities fraud class actions. He has played a significant role in obtaining substantial recoveries on behalf of investors in numerous matters, including *In re Oxford Health Plans, Inc. Securities Litigation* (total recoveries of $300 million); *In re PNC Financial Services, Inc. Securities Litigation* (total recoveries of $45.675 million); and *In re Martha Stewart Living Omnimedia, Inc. Securities Litigation* (total recoveries of $30 million). In addition, he has worked extensively on appeals resulting in favorable decisions for investors, including *In re Cabletron Systems, Inc. Securities Litigation*, 311 F.3d 11 (1st Cir. 2002), in which the First Circuit interpreted the pleading standards of the Private Securities Litigation Reform Act of 1995. At BLB&G, he is a member of the team prosecuting *In re Merck & Co., Inc. Securities Litigation.*

Mr. Bernstein is also active in the community, having served in various leadership positions for several philanthropic organizations, including UJA-Federation of New York (Co-Chair of Young Lawyers) and Seeds of Peace (Co-Chair of the YLC Benefit).

EDUCATION: University of Vermont, B.A., *with honors,* 1994. George Washington University Law School, J.D.

BAR ADMISSIONS: New York; U.S. District Courts for the Southern and Eastern Districts of New York.

****

**JOSHUA L. RASKIN's** practice at the firm concentrates on all areas of intellectual property litigation, with an emphasis on patent litigation. A registered patent attorney, Mr. Raskin has extensive experience in complex federal patent and trademark matters at the trial and appellate stages. He has litigated numerous patent and trademark cases in federal courts across the country and has argued before the Courts of Appeals for the Federal and Second Circuits. He is currently prosecuting patent cases on behalf of inventors in a variety of industries including electronics, liquid crystal display ("LCD") panels, and computer technology. Defendants in these high profile cases include many of the world's largest high-technology companies such as Microsoft, Intel, Samsung, Hewlett-Packard, Dell, Nikon, LG Philips, and others.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Mr. Raskin has experience preparing and prosecuting patent applications in such technical fields as the mechanical and electrical arts as well as directed towards methods of conducting business on the Internet. He has conducted infringement opinions and patentability searches, prepared license agreements and performed due diligence on the intellectual property assets of target-acquisition companies.

Some of his notable achievements include:

- Winning a judgment of non-infringement on behalf of the manufacturer of high speed data connectors in a patent infringement case.
- Winning a jury trial on behalf of the defendant in a patent infringement case involving dental fluoride foams.

- Successfully representing the defendant in a complex copyright/trademark infringement case concerning audiovisual display of electronic gaming machines.

- Obtaining a preliminary and permanent injunction in a design patent infringement case relating to the ornamental design of children's furniture.

- Obtaining a preliminary injunction on behalf of a large yellow pages directory company in a false advertising case relating to the operation of a gripe web site on the Internet.

- Successfully defending a patent infringement and trade secret case relating to a business method for conducting online free lotteries.

- Successfully representing the plaintiff in a design patent infringement case relating to the ornamental design of a foot massager in which Mr. Raskin argued one of the first Markman hearings in a design patent infringement case.

- Successfully representing the defendant in a patent infringement case relating to software for storing and displaying intra-oral radiographs.

- Successfully representing the plaintiff in a patent and trade dress infringement case relating to audio speakers.

- Successfully representing the plaintiff in a patent infringement case relating to scaffolding design.

- Successfully representing the defendant in a patent infringement case relating to the design of a cosmetics case.

Mr. Raskin is a member of the Intellectual Property Sections of the New York State Bar Association and the American Bar Association, the Litigation Section of the American Bar Association, the International Trademark Association and the New York Intellectual Property Law Association. Prior to joining the firm, Mr. Raskin was a Shareholder in the New York Office of Cozen O'Connor.

EDUCATION:  University of Michigan School of Engineering, BSE, 1993.  Brooklyn Law School, J.D. 1996.

BAR ADMISSIONS:  New York; U.S. District Courts for the Eastern and Southern Districts of New York; U.S. Patent and Trademark Office; U.S. Courts of Appeals for the Federal and Second Circuits.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

### SENIOR COUNSEL

**ROCHELLE FEDER HANSEN** has handled a number of high profile securities fraud cases at the firm, including *In re StorageTek Securities Litigation, In re First Republic Securities Litigation,* and *In re RJR Nabisco Litigation.* Ms. Hansen has also acted as Antitrust Program Coordinator for Columbia Law School's Continuing Legal Education Trial Practice Program for Lawyers.

EDUCATION:  Brooklyn College of the City University of New York, B.A., 1966; M.S., 1976. Benjamin N. Cardozo School of Law, J.D., *magna cum laude,* 1979; Member, *Cardozo Law Review.*

BAR ADMISSIONS: New York; U.S. District Courts for the Southern and Eastern Districts of New York; U.S. Court of Appeals, Fifth Circuit.

****

**NIKI L. MENDOZA** joined the San Diego office in 2002. Since joining the firm, Ms. Mendoza has helped obtain hundreds of millions of dollars in recoveries on behalf of defrauded investors, including her involvement in the *In re El Paso Corp. Securities Litigation, In re Symbol Technologies Corp. Securities Litigation,* and *In re Gemstar-TV Guide International, Inc. Securities Litigation,* among others.

Some of Ms. Mendoza's more notable accomplishments include assisting in a full jury trial and achieving a rare securities fraud verdict against the company's CEO in *In re Clarent Corporations Securities Litigation.* She also recently conducted extensive fact and expert discovery, full motion practice and completed substantial trial preparation in *In re Electronic Data Systems, Inc. Securities Litigation,* resulting in settlement just prior to trial for $137.5 million; one of the larger settlements in non-restatement cases since the passage of the PSLRA. Ms. Mendoza also advocates for employee rights, and is currently working to end racial steering through her prosecution of a race discrimination class action lawsuit filed against Bank of America.

Ms. Mendoza co-authored various articles which have been cited in federal court opinions (including *Dura Pharm., Inc. v. Broudo*-The Least of All Evils, 1505 PLI/Corp. 272, 274 (Sept. 2005) and  "Dura-Bull: Myths of Loss Causation," 1557 PLI/Corp. 339 (Sept. 2006)).  She was also a recent panel speaker at the Securities Litigation & Enforcement Institute 2007, Practicing Legal Institute (San Francisco, October 2007).  In addition to her practice, she serves as a 2007 Co-Chair of the Steering Committee of the San Diego County Bar Association's Children At Risk committee, a committee that works with schools and children's organizations and coordinates literacy and enrichment programs that rely on attorney volunteers.

Ms. Mendoza served as judicial law clerk to the Honorable Chief Judge Michael R. Hogan of the United States District Court for the District of Oregon from 1998 to 2001 where she received the Distinguished Service Recognition. While serving as Managing Editor for the *Oregon Law Review,* Ms. Mendoza authored *"Rooney v. Kulungoski,* Limiting The Principle of Separation of Powers?"

Before joining BLB&G, Ms. Mendoza represented both plaintiffs and defendants in commercial and employment litigation, practicing in both Hawaii and California.  Ms. Mendoza is a member of the State Bar of California and the State Bar of Hawaii (inactive).  She practices out of the firm's California Office.

EDUCATION: University of Oregon, B.A. and J.D.; Order of the Coif; Managing Editor of the *Oregon Law Review.*

BAR ADMISSIONS:  Hawaii; California; U.S. District Courts for the Districts of Hawaii, and Northern, Southern, Central and Eastern Districts of California; U.S. Circuit Courts of Appeal for the Fifth, Ninth and Tenth Circuits.

****

27

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

**ELIZABETH P. LIN** practices out of the firm's California office, where she focuses primarily on complex securities and business litigation.

With over fourteen years of experience litigating shareholder and securities class actions, Ms. Lin has helped to recover millions of dollars on behalf of defrauded investors, with a leading role in numerous high profile cases. Ms. Lin is currently representing major institutional investors in a number of significant securities fraud cases, including *In re Lehman Brothers Holdings Securities Litigation; Turnley, et al. v. Bank of America, et al., Fouad v. Isilon Systems, Inc., et al., In re New Century Securities Litigation,* and *In re International Rectifier Corporation Securities Litigation.*

EDUCATION: University of California, Los Angeles, B.A., *magna cum laude,*1991; Phi Beta Kappa.  University of California, Los Angeles, School of Law, J.D., 1994; Moot Court Honors Program; Articles Editor, *Pacific Basin Law Journal.*

BAR ADMISSIONS:  California; U.S. District Courts, Central, Northern, Eastern and Southern Districts of California; U.S. Courts of Appeals for the Ninth and Tenth Circuits; U.S. District Court, Western District of Michigan; U.S. District Court for the District of Colorado.

****

**JAI K. CHANDRASEKHAR**  Prior to joining the firm, Mr. Chandrasekhar was a Staff Attorney with the Division of Enforcement of the United States Securities and Exchange Commission, where he investigated securities law violations and coordinated investigations involving multiple SEC offices and other government agencies.

Before his tenure at the SEC, he was an Associate at Sullivan & Cromwell LLP, where he represented corporate issuers and underwriters in public and private offerings of stocks, bonds, and complex securities and advised corporations on periodic reporting under the Securities Exchange Act of 1934, compliance with the Sarbanes-Oxley Act of 2002, and other corporate and securities matters.

EDUCATION: Yale University, B.A., *summa cum laude,*1987; Phi Beta Kappa. Yale Law School, J.D., 1997; Book Review Editor of the *Yale Law Journal.*

BAR ADMISSIONS: New York; U.S. District Courts, Southern and Eastern Districts of New York; U.S. Courts of Appeals for the Second and Third Circuits.

****

**SAMUEL J. LIEBERMAN** has extensive experience handling all stages of high-profile securities fraud class actions, including three of the largest in history, *Tyco International Ltd.; Lucent Technologies, Inc.* and *Bristol-Myers Squibb Co.*  In addition, he has recently handled cutting-edge matters involving the collapse of the subprime mortgage-backed securities market, including the recent litigation and investigations into the collapse of two Bear Stearns hedge funds.  He also has focused on complex commercial litigation and trial practice, as well as SEC and U.S. Attorney's Office investigations.

Mr. Lieberman is a member of the Securities Litigation and Trial Practice Committees of the American Bar Association's Litigation Section, and is a member of the New York State Bar Association and the Association of the Bar of the City of New York.  In addition, he is a member of the Pro Bono Panel of the U.S. Court of Appeals for the Second Circuit.

Mr. Lieberman's civic activities include serving as a member of the American Technion Society's Leadership Development Committee and the New York Lawyers' Division of the Anti-Defamation League.  After graduating law school, he served as a law clerk for Hon. Patricia M. Wald of the U.S. Court of Appeals for the D.C. Circuit, and Hon. Raymond C. Fisher of the U.S. Court of Appeals for the Ninth Circuit.  Prior to joining BLB&G, Mr. Lieberman worked at WilmerHale.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

EDUCATION:  Columbia Law School, 1999, J.D.; Senior Editor, *Columbia Law Review*; Kent Scholar; Stone Scholar.  Binghamton University, State University of New York, 1996, B.A.

BAR ADMISSIONS:  United States District Court, Southern District of New York; U.S. Courts of Appeals, Second, Third, Fifth and Ninth Circuits.

## ASSOCIATES

**IAN D. BERG's** practice focuses on securities fraud litigation, subprime litigation and derivative claims.  Mr. Berg has litigated a number of cases on behalf of public pension funds and shareholders, including *In re Delphi Corp. Securities Litigation* and *In re Tyco International Ltd. Securities Litigation,* which recovered over $3 billion for harmed shareholders. In addition, Mr. Berg has extensive experience in implementing and managing electronic discovery initiatives.

Mr. Berg currently practices out of the firm's California office.

EDUCATION: Northwestern University, B.A., 1998. Northwestern University School of Law, J.D., 2001.

BAR ADMISSIONS: California; Illinois; Pennsylvania; U.S. District Court, District of Colorado.

**JERALD BIEN-WILLNER** focuses his practice on complex litigation in federal and state courts nationwide.  In particular, Mr. Bien-Willner has significant experience representing public institutional investors in federal securities actions, from the initial case investigation stage through successful resolution.

Prior to joining the firm in 2004, Mr. Bien-Willner was in-house counsel for a real estate holding company where he advised on legal and business matters and participated in a wide range of business litigation.

Mr. Bien-Willner is proficient in Spanish.

EDUCATION: Claremont McKenna College, B.A., *cum laude,* 1997; Dean's List, Claremont McKenna Distinguished Scholar, McKenna Scholar four-year merit scholarship recipient, Outstanding Literature graduate. James E. Rogers College of Law, The University of Arizona, J.D., 2002; Snell and Wilmer Scholar, Moot Court Board, National Moot Court Team, Best Oral Advocate.

BAR ADMISSIONS: California, Arizona and the U.S. District Courts for the Southern and Central Districts of California.

**MICHAEL D. BLATCHLEY's** practice focuses on securities fraud litigation.  He is currently a member of the firm's new matter department in which he, along with a team of attorneys, financial analysts, forensic accountants, and investigators, counsels the firm's clients on their legal claims.

While attending Brooklyn Law School, Mr. Blatchley held a judicial internship position for the Honorable David G. Trager, United States District Judge for the Eastern District of New York.  In addition, he worked as an intern at The Legal Aid Society's Harlem Community Law Office, as well as at Brooklyn Law School's Second Look and Workers' Rights Clinics, and provided legal assistance to victims of Hurricane Katrina in New Orleans, Louisiana.

EDUCATION: University of Wisconsin, B.A., 2000. Brooklyn Law School, J.D., *cum laude,* 2007; Edward V. Sparer Public Interest Law Fellowship, William Payson Richardson Memorial Prize, Richard Elliott Blyn Memorial Prize, Editor for the *Brooklyn Law Review,* Moot Court Honor Society.

BAR ADMISSION: New Jersey.

**BENJAMIN GALDSTON** primarily focuses on complex securities fraud litigation and corporate governance matters. He practices in the firm's California office. Mr. Galdston participated in prosecuting *In re McKesson Securities Litigation*, together with firm partners Max Berger and David Stickney. In that case, a partial settlement was reached for $960 million, the largest recovery for securities class-action settlements in courts within the Ninth

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Circuit. Together with firm partners Max Berger and David Stickney, Mr. Galdston recently represented institutional investors seeking to recover damages in *In re EMAC Securities Litigation*, a case that arose from a private offering of asset-backed securities. Among other cases, Mr. Galdston currently represents a certified class of investors in *In re Retek, Inc. Securities Litigation*, pending in the U.S. District Court for the District of Minnesota. Mr. Galdston also represents the Lead Plaintiff in *In re Stone Energy Corp. Securities litigation*, pending in the U.S. District Court for the Western District of Louisiana, and plaintiffs in *The Football Association Premier League Ltd., v. YouTube, Inc. et al.,* a copyright infringement class action pending in the U.S. District Court for the Southern District of New York.

While in law school, Mr. Galdston competed in national Moot Court tournaments, and directed the University of San Diego School of Law National Criminal Procedure Moot Court Tournament. Following law school, Mr. Galdston represented investors in securities fraud actions at another national law firm.

Previously, Mr. Galdston was the sole proprietor of Litigation Support Systems, where he designed, constructed and maintained relational document databases for small law firms litigating document-intensive cases. He has published several articles concerning practice in the federal courts. He is President of the Greater San Diego Barristers Club and a member of the California Bar Association and the Federal Bar Association.

EDUCATION: University of San Diego School of Law, J.D., 2000; American Trial Lawyers' Association Book Award for Outstanding Scholarship in Appellate Advocacy, American Jurisprudence Award for Property, and the Computer Assisted Learning Institute Award for Excellence.

BAR ADMISSIONS: California; U.S. District Courts for the Southern, Northern and Central Districts of California.

**PATRICIA S. GILLANE** is the author of "One Moment in Time: The Second Circuit Ponders Choreographic Photography as a Copyright Infringement: Horgan vs. MacMillan." She is a member of the American Bar Association and a former member of the Association of the Bar of the City of New York, where she served on the Professional Responsibility Committee.

Together with firm partners Max Berger and Edward Grossmann, Ms. Gillane successfully prosecuted *In re Bennett Funding Group Litigation* which arose out of the largest Ponzi scheme in history. After years of litigation, the matter settled for a total of over $165 million.

Most recently, she was a member of the team representing the New York State Common Retirement Fund in *In re WorldCom, Inc. Securities Litigation*, which culminated in a five-week trial against Arthur Andersen LLP and a recovery for investors of over $6.15 billion—the second largest securities fraud recovery in history.

EDUCATION: Columbia University, B.A., *cum laude,* 1985. Brooklyn Law School, J.D., 1989; Editor of the *Brooklyn Law Review.*

ADMISSIONS: New York; U.S. District Courts, Southern and Eastern Districts of New York.

**LAURA H. GUNDERSHEIM** has represented institutional investors as a lead or co-lead counsel in a number of class and derivative actions, including cases involving securities fraud, consumer fraud, copyright infringement, and employment discrimination. Most notably, she was an integral part of the team that prosecuted the landmark *In Re Walt Disney Derivative Litigation*, which redefined the fiduciary duties of directors in public companies.

She is currently a member of the teams prosecuting *In re The Mills Corporation Securities Litigation, In re Converse Technology, Inc. Derivative Litigation, In re Sunrise Senior Living Securities Litigation, In re Openwave Securities Litigation, In re WellCare Health Plans, Inc. Securities Litigation* and *Fleishman v. Huang et al. Derivative Litigation.*

While in law school, Ms. Gundersheim worked at the Lawyers' Committee for Civil Rights, Health Law Advocates, The Hale & Dorr Legal Services Center and the Tenant Advocacy Project.

Ms. Gundersheim is a member of the New York Bar Association's Consumer Affairs Committee and Trial Lawyers for Public Justice.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

EDUCATION: University of California, Los Angeles, B.A, *magna cum laude,* 2001; Phi Beta Kappa. Harvard Law School, J.D., 2004; Founding Member and the Vice-President of the Harvard Advocates for Reproductive Choices; Executive Committee, *Women's Law Journal.*

BAR ADMISSIONS: New York; U.S. District Courts for the Southern and Eastern Districts of New York.

**AVI JOSEFSON** prosecutes securities fraud litigation for the firm's institutional investor clients, and has participated in many of the Firm's significant representations, including *In re SCOR Holding (Switzerland) AG Securities Litigation*, which resulted in a recovery worth in excess of $143 million for investors. He was also a member of the team that litigated the *In re OM Group, Inc. Securities Litigation,* which resulted in a settlement of $92.4 million. Mr. Josefson is also actively involved in the M&A litigation practice, and represented shareholders in the litigation arising from the proposed acquisitions of Ceridian Corporation and Anheuser-Busch. A member of the firm's subprime litigation team, he is currently involved in the securities fraud action arising from the collapse of subprime mortgage lender American Home Mortgage and the actions against Lehman Brothers, Citigroup and Merrill Lynch, arising from those banks' multi-billion dollar loss from mortgage-backed investments. As a member of the firm's new matter department, he counsels institutional clients on potential legal claims. Mr. Josefson has presented argument in several federal and state courts, including an appeal he argued before the Delaware Supreme Court.

Prior to joining BLB&G, Mr. Josefson was a litigation associate at Sachnoff & Weaver in Chicago, where his practice focused on insurance coverage litigation.

EDUCATION: Brandeis University, B.A., *cum laude,* 1997. Northwestern University, J.D., 2000; *Dean's List;* Justice Stevens Public Interest Fellowship (1999); Public Interest Law Initiative Fellowship (2000).

BAR ADMISSIONS: Illinois, New York.

**MATTHEW P. JUBENVILLE**'s practice focuses on complex securities litigation. He was part of the team that successfully prosecuted *In re Williams Securities Litigation*, which resulted in a $311 million cash settlement against defendants, including $21 million from Ernst & Young LLP. Currently, Mr. Jubenville is a member of the teams prosecuting *In re Accredo Health, Inc. Securities Litigation*, *In re Dura Pharmaceuticals, Inc. Securities Litigation* and *Turnley et al. v. Bank of America, N.A. et al.*

Mr. Jubenville practices out of the firm's California office.

EDUCATION: University of Colorado, B.A., *with distinction,* Molecular, Cellular and Developmental Biology, 2000; Phi Beta Kappa. University of San Diego School of Law, J.D., 2003; Member, *San Diego Law Review.*

BAR ADMISSIONS: California, U.S. District Courts for the Northern, Central and Southern Districts of California.

**TAKEO A. KELLAR**'s practice at the firm focuses on securities fraud, corporate governance and shareholder rights litigation. Mr. Kellar was part of the trial team that successfully prosecuted *In re Clarent Corp. Securities Litigation,* which resulted in a jury verdict in favor of plaintiffs and against the founder and former Chief Executive Officer of Clarent. He was also a member of the team that successfully prosecuted *In re Williams Securities Litigation* resulting in a settlement of $311 million shortly before trial.

Based in the firm's California office, Mr. Kellar is currently a member of the teams prosecuting *Atlas v. Accredited Home Lenders Holding Co., et al.*, *In re Connetics, Inc. Securities Litigation*, *In re Dura Pharmaceuticals, Inc. Securities Litigation*, *In re Maxim Integrated Products, Inc. Securities Litigation* and *In re New Century Securities Litigation.*

EDUCATION: University of California, Riverside, B.A., *magna cum laude,* 1997; Phi Beta Kappa. University of San Diego School of Law, J.D., 2004, Executive Board Member of the Appellate Moot Court Board.

BAR ADMISSIONS: California; U.S. District Courts for the Central, Northern and Southern Districts of California.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

**ANN LIPTON**'s practice focuses on complex commercial and appellate litigation. Following law school, Ms. Lipton clerked for the Chief Judge Edward R. Becker of the Third Circuit Court of Appeals and the Associate Justice David H. Souter of the United States Supreme Court. She has also served as an adjunct professor of legal writing at Benjamin N. Cardozo School of Law.

EDUCATION: Stanford University, B.A., *with distinction*, 1995; Phi Beta Kappa. Harvard Law School, J.D., *magna cum laude*, 2000; Sears Prize for 2nd-Year GPA; Articles and Commentaries Committee of *Harvard Law Review*; Best Brief in 1st-Year Ames Moot Court Competition; Prison Legal Assistance Project.

BAR ADMISSIONS: New York; U.S. District Courts for the Eastern and Southern Districts of New York; U.S. Courts of Appeals for the Second and Third Circuits.

**KARINE LOUIS** has extensive experience prosecuting a wide variety of patent, securities and commercial litigation. In particular, she has participated in numerous multi-million dollar patent litigations involving Internet technology. Her experience also includes arbitration of securities claims, patent infringement and theft of intellectual property. She is currently a member of the firm's patent litigation team.

EDUCATION: Colgate University, B.A., *magna cum laude*, 1995. Brooklyn Law School, J.D., 2003; Moot Court Honor Society; three-time recipient of the Martin Luther King Scholarship.

BAR ADMISSIONS: New York; New Jersey; U.S. District Courts for the Southern and Eastern Districts of New York; U.S. District Court of New Jersey

**NOAM MANDEL** prosecutes securities fraud, corporate governance and shareholder rights litigation for the firm's institutional investor clients. He has been a member of the litigation teams on several of the firm's recent high profile cases including *In re Nortel Networks Corporation Securities Litigation*, which resulted in a recovery worth in excess of $1.3 billion in cash and stock, as well as the securities class action against the Federal Home Loan Mortgage Corporation ("Freddie Mac"), in which a $410 million settlement was obtained for defrauded investors. More recently, he was a member of the team that prosecuted the *Caremark Merger Litigation*, a shareholder class action contesting the terms of a proposed merger between Caremark Rx, Inc. and CVS Corporation on behalf of Caremark's shareholders. The litigation resulted in over $3 billion in additional consideration being offered to Caremark shareholders by CVS.

Prior to joining BLB&G, Mr. Mandel was a litigation associate at Simpson Thacher & Bartlett LLP, where his practice focused on securities, shareholder and ERISA fiduciary matters. While in law school, Mr. Mandel participated in an exchange program with the University of Leiden, the Netherlands, where he concentrated his studies on international and comparative law.

EDUCATION: Georgetown University, B.S.F.S., 1998. Boston University School of Law, J.D., *cum laude*, 2002; an Editor for the *Boston University Law Review;* recipient of awards in civil procedure, evidence, and international law.

BAR ADMISSIONS: New York; United States District Court, Southern District of New York.

**LAUREN A. McMILLEN** Following law school, Ms. McMillen served as a law clerk for the Honorable Colleen McMahon, District Court Judge for the Southern District of New York.

Prior to joining the firm in 2007, Ms. McMillen was a litigation associate at Heller Ehrman LLP. She has extensive experience in securities litigation and complex commercial litigation, and has defended various corporations and accounting firms in securities class actions and represented individuals in regulatory investigations before the Securities and Exchange Commission.

Ms. McMillen is currently a member of the teams prosecuting *In re New Century Securities Litigation*, *The Football Association Premier League Limited, et. al. v. YouTube, Inc., et al.*, *In re HealthSouth Bondholder Litigation*, and *In re Converium Holding AG Securities Litigation*.

EDUCATION: Duke University, B.A., History, 1996. University of Pennsylvania Law School, J.D., *cum laude*, 2000; Research Editor for the University of Pennsylvania Law Review.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

BAR ADMISSIONS: New York; U. S. District Court, Southern District of New York; U.S. District Court, Eastern District of New York.

**BRETT M. MIDDLETON** primarily focuses in the areas of corporate transaction and derivative litigation, as well as securities fraud litigation. He has significant trial experience, having worked on the trial team responsible for successfully prosecuting *In re Clarent Corp. Securities Litigation*, which resulted in a jury verdict in favor of plaintiffs and against the founder and former CEO of Clarent Corp.

Mr. Middleton has experience prosecuting significant corporate transaction shareholder class action cases. Currently, he is assisting in prosecuting breach of fiduciary duty claims on behalf of two public pension systems in the *Yahoo!, Inc. Shareholder Litigation* in the Delaware Court of the Chancery. He is also prosecuting the *Longs Drug Stores Corp. Shareholders Litigation* in the Superior Court for the State of California contesting the adequacy of disclosures relating to the acquisition of Longs by CVS Caremark Corporation.

Previously, Mr. Middleton was on the team that successfully prosecuted the *Caremark Merger Litigation*, a shareholder class action in the Delaware Court of the Chancery, contesting the terms of a proposed merger between Caremark Rx, Inc. and CVS Corporation on behalf of Caremark's shareholders. The litigation resulted in over $3 billion in additional consideration being offered to Caremark shareholders to CVS.

Recently, Mr. Middleton assisted in successfully prosecuting and settling two important derivative stock option backdating cases. In the U.S. District Court for the District of Arizona, he helped bring to a successful conclusion the federal derivative action regarding the options backdating scandal at *Apollo Group, Inc.* which is the parent company of the University of Phoenix. In the Superior Court of the State of California, Mr. Middleton helped successfully conclude the firm's representation of Amalgamated Bank as lead plaintiff against certain officers and directors of *Activision, Inc.* for their alleged role in the backdating of stock options.

In addition, Mr. Middleton has significant experience prosecuting securities fraud class actions. He was on the litigation team responsible for prosecuting *In re Williams Securities Litigation*, which resulted in a $311 million cash settlement against all defendants. As part of this action, the team engaged in a massive discovery effort which included taking more than 180 depositions and reviewing in excess of 18 million pages of documents. Mr. Middleton was responsible for the prosecution of the case against Ernst & Young for its 2001 audit of Williams Energy Marketing & Trading subsidiary and was instrumental in obtaining a settlement from Ernst & Young in the amount of $21 million.

Mr. Middleton also assisted in prosecuting the *In re Accredo Health, Inc. Securities Litigation* (U.S. District Court for the Western District of Tennessee) which resulted in a $33 million settlement. Recently, he helped bring to a close the *In re Dura Pharmaceuticals, Inc. Securities Litigation* (U.S. District Court for the Southern District of California).

Among other matters, Mr. Middleton is currently a member of the teams prosecuting *Atlas v. Accredited Home Lenders Holding Co.* (United States District Court, Southern District of California) as well as the *Morgan Stanley Mortgage Pass-Through Litigation* (Superior Court of California, Orange County).

EDUCATION: University of California, Los Angeles, 1993. University of San Diego School of Law, J.D., 1998.

BAR ADMISSIONS: California; U.S. District Courts for the Central, Southern and Northern Districts of California.

**AMY MILLER** has extensive experience handling a variety of sophisticated business litigation, ranging from securities, corporate governance, and other complex commercial litigation. In addition, she has participated in a number of securities and corporate governance-related investigations by the SEC, Massachusetts United States Attorney's Office and Illinois United States Attorney's Office. Ms. Miller has also devoted considerable time to *pro bono* activities.

She is currently a member of the teams prosecuting shareholder class actions against Atmel Corporation, Amylin Pharmaceuticals, Inc. and Landry's Restaurants, Inc.

Ms. Miller participated in an externship with the Honorable George B. Daniels of the U.S. District Court for the Southern District of New York. Prior to joining BLB&G, Ms. Miller worked at Cadwalader, Wickersham & Taft LLP.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

EDUCATION: Boston University, B.A., *magna cum laude*, 1995. New York Law School, J.D., *summa cum laude*, 2001; Member and Articles Editor, *New York Law School Law Review*; Merit Based Scholarship.

BAR ADMISSIONS: New York; U.S. District Courts for the Southern and Eastern Districts of New York.

**JOHN J. MILLS'** practice concentrates on Class Action Settlements and Settlement Administration. Mr. Mills also has experience representing large financial institutions in corporate finance transactions.

EDUCATION: Duke University, B.A., 1997. Brooklyn Law School, J.D., *cum laude*, 2000; Member of *The Brooklyn Journal of International Law*; Carswell Merit Scholar recipient.

BAR ADMISSIONS: New York; U.S. District Courts for the Southern and Eastern Districts of New York.

**SEAN O'DOWD**   Prior to joining BLB&G, Mr. O'Dowd was an associate at Latham & Watkins LLP, where his practice focused on trial and appellate litigation, including civil and criminal investigations by the Department of Justice and the SEC. In addition, Mr. O'Dowd litigated on behalf of torture victims seeking asylum in the United States and represented domestic violence survivors in proceedings under the Violence Against Women Act.

Following law school, Mr. O'Dowd served as a judicial law clerk to the Honorable William M. Acker, Jr., Senior United States District Judge, Northern District of Alabama.

EDUCATION: Cornell University, B.A., with distinction in all subjects, 2001. Northwestern University, J.D., *cum laude*, 2005; Senior Editor, *Journal of International Law & Business;* Recipient, Francis Kosmerl Merit Scholarship, Rubinowitz Public Interest Fellowship and Public Service Star Award.

BAR ADMISSIONS: New York; United States District Courts for the Southern and Eastern Districts of New York.

**MICHAEL PETRUSIC** has experience practicing a wide range of litigation, including complex commercial litigation, intellectual property, and securities enforcement.  He has also devoted considerable time to *pro bono* matters.

During law school, Mr. Petrusic served as a summer intern for the Kings County District Attorney's Office in Brooklyn, New York, where he assisted the prosecution of two felony trials as second chair. He was also the managing editor of the *North Carolina Law Review*, which published two of his articles: *Oil and the National Security: CNOOC's Failed Bid to Purchase Unocal*, 84 N.C. L. REV. 1373 (2006) and *Enemy Combatants in the War on Terror and the Implications for the U.S. Armed Forces*, 85 N.C. L. REV. 636 (2007). Prior to attending law school, Mr. Petrusic was a Captain in the U.S. Army.  He deployed to Iraq as a member of the 82nd Airborne Division, and was awarded the Bronze Star Medal and the Meritorious Service Medal.

Mr. Petrusic is currently a member of the Board of Directors of "Girl Talk: Read to Achieve," a nonprofit organization that seeks to empower at-risk adolescent girls through the discussion of literature.

EDUCATION: University of Virginia, B.A., *with distinction,* 1999.  University of North Carolina School of Law, J.D., *with honors*, 2007; Managing Editor, *North Carolina Law Review.*

BAR ADMISSION: New York

**JOHN RIZIO-HAMILTON** has extensive experience in civil and criminal litigation. Prior to joining the firm, he clerked for the Honorable Chester J. Straub of the United States Court of Appeals for the Second Circuit. In that capacity, he worked on cases involving an accountant's duty to correct under the Securities Exchange Act of 1934 and a question of first impression regarding class certification under Federal Rule of Civil Procedure 23(b)(3). Prior to clerking for Judge Straub, Mr. Rizio-Hamilton clerked for the Honorable Sidney H. Stein of the United States District Court for the Southern District of New York.

Mr. Rizio-Hamilton is currently a member of the teams prosecuting *In re Affiliated Computer Services, Inc. Derivative Litigation, In re RAIT Financial Trust Securities Litigation*, and *Mohammed Al-Beitawi, et al., v. Fremont General Corporation, et al.*

34

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

EDUCATION: The Johns Hopkins University, B.A., *with honors*, 1997. Brooklyn Law School, J.D., *summa cum laude;* Editor-in-Chief of the *Brooklyn Law Review;* first-place winner of the J. Braxton Craven Memorial Constitutional Law Moot Court Competition.

BAR ADMISSION: New York.

**JEREMY P. ROBINSON** has extensive experience in securities and general commercial litigation. Prior to joining BLB&G, Mr. Robinson worked as a litigation associate at major law firm headquartered in Toronto, Canada, during which time he co-authored numerous publications, including one of the first books published regarding Canadian private sector privacy litigation.

In 2000, Mr. Robinson was awarded a Harold G. Fox scholarship and spent a year in London, England working with barristers and judges of the Middle Temple, Inns of Court.

EDUCATION: Queen's University, Faculty of Law in Kingston, Ontario, Canada, LL.B., 1998; graduated within the top 10% of class; Best Brief in the Niagara International Moot Court Competition. Columbia Law School, M.A., 2005; Harlan Fiske Stone Scholar.

BAR ADMISSIONS: Ontario, Canada; New York.

**MICHAEL SCHUMACHER**'s practice at the firm focuses on the institutional investor and client outreach. In particular, he serves as a liaison between the firm and Taft-Hartley benefit fund clients, assisting in their participation and recovery in securities fraud and ERISA class action suits. Prior to joining the firm, Mr. Schumacher worked as a client liaison at Saxena White P.A.

EDUCATION: University of California, Berkeley, B.A. 1997; Phi Kappa Sigma Fraternity. University of Southern California Law Center, J.D., 2000.

BAR ADMISSION: California

**KATHERINE McCRACKEN SINDERSON**'s practice focuses on securities fraud and class action litigation. She is currently a member of the teams prosecuting *In re Washington Mutual, Inc. Securities Litigation; Mohammed Al-Beitawi, et al., v. Fremont General Corporation, et al., In re Bristol-Myers Squibb Co. Securities Litigation, In re Dollar General*, a shareholder class action pending in Tennessee state court, and *In re Comverse Technology, Inc. Derivative Shareholder Litigation*, the stock options backdating case currently pending in the Eastern District of New York.

EDUCATION: Baylor University, B.A., *cum laude,* 2002. Georgetown University, J.D., *cum laude*, 2006; Dean's Scholar; Articles Editor for *The Georgetown Journal of Gender and the Law*.

BAR ADMISSION: New York.

**JEROEN VAN KWAWEGEN** has litigated a wide array of derivative actions, breach of contract disputes, as well as professional and general liability disputes. He has participated in Foreign Corrupt Practices Act investigations in Europe and South America and has also been involved in international arbitration proceedings. In addition, Mr. van Kwawegen's numerous *pro bono* activities include post-conviction relief proceedings on behalf of a person sentenced to death, Center for Journalists and Accountability representation in the Southern District of New York and constitutional challenges to federal and state Internet censorship statutes.

Prior to joining BLB&G, Mr. van Kwawegen was an associate at Latham and Watkins LLP. He also worked as an associate at Schut & Grosheide in the Netherlands where his practice focused on international arbitration and summary judgment proceedings.

Mr. van Kwawegen is a member of the First Amendment and Media Litigation Committee of the American Bar Association, the Civil Rights Committee of the New York State Bar Association, the Foreign and Comparative Law Committee of the New York City Bar Association and the International Center for Dispute Resolution.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

EDUCATION:  University of Amsterdam School of Law, 1998, LLM. Columbia University Law School, 2003, J.D., Harlan Fiske Stone Scholar.

BAR ADMISSIONS: New York, U.S. Courts of Appeals for the Second and Third Circuits; U.S. District Courts for the Southern and Eastern Districts of New York.

**BOAZ WEINSTEIN's** practice focuses on complex commercial litigation.  Prior to joining the firm, Mr. Weinstein was an associate at Cleary Gottlieb Steen & Hamilton LLP, where he represented financial institutions, broker-dealers, private equity funds, and other clients in a wide range of commercial litigation, including M&A and securities litigations, securities arbitrations, and other regulatory proceedings.  From 2007-2008, Mr. Weinstein served as Secretary of the Securities Litigation Committee for the New York City Bar.

Following law school, Mr. Weinstein clerked for the Honorable Robert P. Patterson, Jr. of the United States District Court in the Southern District of New York and the Honorable Pamela B. Minzner, Chief Justice of New Mexico's Supreme Court.

Mr. Weinstein is currently a member of the teams prosecuting the *In re Merck Securities Litigation*, which arose out of that company's worldwide withdrawal of Vioxx, and *In re Bristol-Myers Squibb Co. Securities Litigation*.

EDUCATION: Harvard University, B.A., 1996; John Harvard Scholarship for Academic Achievement. Columbia Law School,, J.D., 2000; Harlan Fiske Stone Scholar for Academic Achievement; NYS Bar Association President's Pro Bono Law Student Award; NYS Bar Association Award for Legal Ethics.

BAR ADMISSIONS: New York, California, New Mexico.

**ADAM H. WIERZBOWSKI's** practice focuses on securities and patent litigation in state and federal courts.

At BLB&G, Mr. Wierzbowski has litigated a number of cases on behalf of public pension funds against individuals involved in stock options backdating, including *Monster Worldwide, Progress Software* and *UnitedHealth*.  In addition, he is currently prosecuting patent litigations related to flat panel display and semiconductor technology.

Mr. Wierzbowski is also a member of the teams prosecuting the *Merck Securities Litigation*, which arose out of that company's worldwide withdrawal of Vioxx, and *the Mutual Fund Investment Multi-District Litigation*, which includes Invesco, MFS and Pilgrim Baxter.

EDUCATION: Dartmouth College, B.A., *magna cum laude,* 2000. The George Washington University Law School, J.D., *with honors*, 2003; Notes Editor for *The George Washington International Law Review;* Member of the Moot Court Board.

BAR ADMISSIONS: New York; U.S. District Courts for the Southern and Eastern Districts of New York.

**JON F. WORM** While attending the University of Notre Dame Law School, Mr. Worm served as a staff member for the *Notre Dame Law Review*, worked as a teaching assistant for the first year legal writing program, and served as Vice President of the American Constitution Society for Law and Policy, a leading progressive legal organization.

Prior to joining BLB&G, Mr. Worm served as a law clerk to the Honorable Marilyn L. Huff, United States District Judge for the Southern District of California.  Prior to that, he served as a law clerk to the Honorable Federico A. Moreno, United States District Judge for the Southern District of Florida.  Mr. Worm also worked as a litigation associate at Mayer Brown LLP in Chicago where he represented plaintiffs and defendants in civil and criminal cases.

Mr. Worm practices out of the firm's California office and focuses on securities fraud litigation.

EDUCATION: University of Notre Dame, B.S., *cum laude,* 1997; J.D., *magna cum laude*, 2003.

BAR ADMISSIONS: Illinois, California; U.S. District Court, Eastern District of Wisconsin; U.S. District Court, Central District of California.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE BRISTOL-MYERS SQUIBB CO.
SECURITIES LITIGATION

File No. 07-CV-5867 (PAC)

---

**DECLARATION OF BRIAN P. MURRAY**
**IN SUPPORT OF JOINT PETITION FOR ATTORNEYS'**
**FEES AND REIMBURSEMENT OF EXPENSES FILED ON BEHALF OF**
**MURRAY, FRANK & SAILER LLP**

**BRIAN P. MURRAY**, declares as follows:

1.      I am a member of the law firm of Murray, Frank & Sailer LLP.  I submit this declaration in support of my firm's application for an award of attorneys' fees in connection with services rendered in the above-captioned consolidated securities class action (the "Action"), as well as for reimbursement of expenses incurred by my firm in connection with the Action.

2.      My firm acted as one of plaintiffs' counsel in the Action.  In this capacity, my firm participated in the discovery phase of the action by reviewing and coding documents.

3.      The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by each attorney and professional support staff of my firm who was involved in this action, and the lodestar calculation based on my firm's current billing rates. For personnel who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for such personnel in his or her final year of employment by my firm. The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by my firm, which are available at the request of the Court. Time expended in preparing this application for fees and

reimbursement of expenses has not been included in this request.

4.      The hourly rates for the attorneys and professional support staff in my firm included in Exhibit 1 are the same as the regular current rates charged for their services in non-contingent matters and/or which have been accepted in other securities or shareholder litigation.

5.      The total number of hours expended on this litigation by my firm through October 31, 2009 is 527.0.  The total lodestar for my firm is $223,975, consisting of $223,975 for attorneys' time.

6.      My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items.  Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

7.      With respect to the standing of my firm, attached hereto as Exhibit 2 is a brief biography of my firm and attorneys in my firm who were principally involved in the Action.

I declare, under penalty of perjury, that the foregoing facts are true and correct.  Executed on November 10, 2009.

_____
BRIAN P. MURRAY

2

# Exhibit 1

EXHIBIT 1

*In re Bristol-Myers Squibb Co. Securities Litigation*
File No. 07-CV-5867 (PAC)

MURRAY, FRANK & SAILER LLP

TIME REPORT

Inception through October 31, 2009

| NAME | HOURS | HOURLY RATE | LODESTAR |
|------|-------|-------------|----------|
| Associate | | | |
| Angela Finlay | 527.0 | $425 | $223,975 |
| TOTAL LODESTAR | 527.0 | | $223,975 |

# Exhibit 2

# MURRAY, FRANK & SAILER LLP

ATTORNEYS AT LAW

# FIRM RESUME

275 MADISON AVENUE
SUITE 801
NEW YORK, NY  10061

| | |
|---|---|
| Telephone: | (212) 682-1818 |
| U.S. Toll Free: | (800) 497-8076 |
| Facsimile: | (212) 682-1892 |

info@murrayfrank.com
www.murrayfrank.com

**M**URRAY, FRANK & SAILER LLP concentrates its practice in class action litigation, particularly in cases involving federal securities law, federal antitrust law, ERISA, and state consumer protection law. The Firm is also active in mass tort litigation.

## SECURITIES FRAUD

MURRAY, FRANK & SAILER has represented lead plaintiffs as lead counsel or a member of the executive committee and has also represented class representatives in successful securities actions throughout the United States, including the following:

*In re Royal Ahold Securities Litigation* (recovery of $1.1 billion); *In re Merrill Lynch & Co. Sec., Deriv., & ERISA Litig.* ($475 million); *In re Williams Sec. Litig.* ($311 million); *In re General Motors Corp. Sec. Litig.* ($303 million); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.* ($125 million); *In re JWP Inc. Sec. Litig.* ($40 million); *In re Turkcell Iletisim Hizmetleri A.S. Sec. Litig.* ($19.2 million); *In re PictureTel Inc. Sec. Litig.* ($14 million); *In re Marion Merrell Dow Inc. Sec. Litig.* ($14 million); *LaVallie v. Owens-Corning Fiberglas Corp.* ($10 million); *In re USX Sec. Litig.* ($9 million); *Feiner v. SS&C Tech., Inc.* ($8.8 million); *Lowry v. Andrx Corp.* ($8 million); *In re Xybernaut Corp. Securities MDL Litigation* ($6.3 million); *Brody v. Zix Corp.* ($5.6 million); *In re ContiFinancial Sec. Litig.* ($5.5 million); *In re EIS Int'l Inc. Sec. Litig.* ($3.8 million); *In re Quintiles Transnational Sec. Litig.* ($3 million).

The firm is currently lead or co-lead counsel, a member of the executive committee, or counsel to a class representative in many cases, including the following:

*In re New Century Sec. Litig.*; *In re Vivendi Universal, S.A. Sec. Litig.*; *In re Harley-Davidson, Inc. Sec. Litig.*; *In re Infineon Technologies AG Sec. Litig.*; *In re Crompton Corp. Sec. Litig.*; *Steinberg v. Ericsson LM Telephone Co.*; *In re Royal Bank of Scotland Group PLC Sec. Litig.*; *In re Deutsche Bank AG Sec. Litig.*

MURRAY, FRANK & SAILER also represented institutional plaintiffs in individual actions against AOL Time Warner and Royal Dutch Petroleum for violations of the United States securities laws.

## SHAREHOLDER RIGHTS AND DERIVATIVE ACTIONS

MURRAY, FRANK & SAILER is very active litigating actions on behalf of companies against their officers and directors for breach of fiduciary duties or against third parties for breach of contract. MURRAY, FRANK & SAILER is co-lead counsel in a derivative action for the benefit of Krispy Kreme Doughnuts, Inc. for breach of fiduciary duties and is also co-lead counsel in a derivative action for the benefit of Sara Lee Corp. for breach of fiduciary duties. In

addition, MURRAY, FRANK & SAILER is or has been lead or co-lead counsel or represented a plaintiff in derivative actions for the benefit of nVidia Corp., The Limited, Inc., Gilman and Ciocia, Inc., Hain Celestial Group, Inc., Ambac Financial Group, Inc., Norland Medical Systems, Foundry Networks, Inc., Jabil Circuits, Inc., Equinix, Inc, Arbitron, Inc., PMC Sierra, Inc., First Marblehead Corp., and Microtune, Inc.

MURRAY, FRANK & SAILER is also active representing shareholders of companies being acquired for inadequate takeover premiums or failure to maximize shareholder value. MURRAY, FRANK & SAILER is currently lead counsel representing shareholders of Northstar Neuroscience, Inc. and has represented shareholders in cases involving Claire's Stores, Inc., Charlotte Russe Holding, Inc., BJ Services, Co., Hearst-Argyle Television, Inc., Medarex, Inc., Centerplate, Inc., Sirna Therapeutics, Inc., Chaparral Resources, Inc., The Topps Company, Inc., Genentech, Inc., and Jacuzzi Brands, Inc..

## ANTITRUST

MURRAY, FRANK & SAILER has represented plaintiffs in federal and state class actions arising out of antitrust law violations, including *Bar-Bri, Infant Formula, Brand Name Pharmaceutical, Nasdaq, VISA/MasterCard, Playmobil, Disposable Contact Lens,* and *Time Warner* cases.

MURRAY, FRANK & SAILER is currently counsel in many cases involving Sherman Act violations including: *In re American Express Antitrust Litigation*; *Dahl v. Bain Capital Partners; In re Trans Pacific Passenger Air Transportation Antitrust Litig.; In re Flat Glass Antitrust Litig; In re Air Cargo Carrier Antitrust Litig.; Slattery v. Apple Computer Inc.; Payment Card Interchange Fee and Merchant Discount Antitrust Litig.; McDonough v. Toys "R" Us; In re Fasteners Antitrust Litig.; In re Cathode Ray Tube (CRT) Antitrust Litig.;* and *In re Korean Airlines Co. Ltd. Antitrust Litig.*

In the *Playmobil* case MURRAY, FRANK & SAILER was co-lead counsel representing a class of purchasers of Playmobil products. MURRAY, FRANK & SAILER was successful in obtaining certification of a plaintiff class in an oft-cited opinion and settling the case on favorable terms to the class. The Court, at the fairness hearing, "compliment[ed] both counsel in the fine job done negotiating with each other and also the legal work that has been submitted to the Court." In the *Disposable Contact Lens* case, MURRAY, FRANK & SAILER represented a class of purchasers of disposable contact lenses in California, and eventually obtained reversal in the California appellate courts of a denial of class certification. In the *Time Warner* case MURRAY, FRANK & SAILER was co-lead counsel representing a class of subscribers of Time Warner's high

2

speed internet service. MURRAY, FRANK & SAILER successfully overcame an arbitration clause and obtained favorable settlement for the class.

## CONSUMER PROTECTION

In the consumer protection area, MURRAY, FRANK & SAILER as lead counsel has represented consumers in class actions involving, *inter alia,* mold in front-loading washing machines; wrongful billing practices and poor service by wireless communications providers; wrongful billing practices by credit card companies, banks and retailers; problems with appliances and their installation; mislabeling of imported olive oil; mislabeling of domestic pasta; brokerage fees imposed with no or insufficient notice; Medicaid overcharges; and faulty automobile seat heaters.

Among its cases of note, MURRAY, FRANK & SAILER recovered benefits worth $40 million in *Naevus Int'l v. AT&T Corp.*, a consumer class action brought in New York State Supreme Court on behalf of consumers who subscribed to AT&T's Digital One Rate wireless service. In 2005, the firm settled with Volkswagen of America, forcing a recall of all 2003 and 2004 Volkswagen Jettas for faulty automobile seat heaters.

In *Sclafani v. Barilla America, Inc.*, a consumer class action brought in New York State Supreme Court on behalf of consumers who purchased Barilla brand pasta, MURRAY, FRANK & SAILER successfully argued that Barilla's packaging misled consumers into believing the company's pasta was made in Italy, obtaining a reversal of a trial court dismissal.

Similarly, in *Lomenzo v. Bertolli USA Inc.*, a consumer class action brought in New York State Supreme Court on behalf of consumers who purchased Bertolli brand olive oil, MURRAY, FRANK & SAILER successfully argued that Bertolli's labeling misled consumers into believing the company's olive oil was Italian.

## ERISA

MURRAY, FRANK & SAILER is prosecuting several actions in federal court against employers on behalf of employees for employee investment fund mismanagement; knowingly offering, marketing, and selling improper investments to employees for their retirement accounts; and knowingly misrepresenting the prospects of the employees' company in order to sell company stock to them. The firm served as co-lead counsel in *In re Winn-Dixie Stores, Inc. ERISA Litig.*, which settled for $3 million and plaintiffs' class counsel in *In re AON ERISA Litig.* and *In re Cardinal Health, Inc. ERISA Litig.*

3

## MASS TORT

Mass torts occur when large numbers of people are similarly injured by the same defective product. These products are often prescription drugs and medical devices. MURRAY, FRANK & SAILER is currently counsel in *In re Avandia Marketing, Sales Pracices and Products Liability Litigation* alleging, on behalf of its clients, that they were injured in connection with the design, development, manufacture, distribution, labeling and marketing of a widely used diabetes prescription drug.

MURRAY, FRANK & SAILER is currently on the class action committee and co-chair of the e-discovery committee in the Avandia Litigation.

## FIRM HIGHLIGHTS

In ISS's "Accountability Goes Global," 2008 Report, MURRAY, FRANK & SAILER was ranked fifth in representing international lead plaintiff movants.

MURRAY, FRANK & SAILER is also a member of the Executive Committee of the National Association of Shareholder and Consumer Attorneys (NASCAT).

## MAJOR ONGOING CASES

*In re Infineon Technologies A.G. Securities Litigation* – MURRAY, FRANK & SAILER is co-lead counsel representing a class of investors of Infineon Technologies securities.

*Scapini v. Argentina* – MURRAY, FRANK & SAILER is lead counsel representing a class of investors who purchased government bonds from Argentina.

*In re Crompton Corp. Securities Litigation* – MURRAY, FRANK & SAILER is co-lead counsel representing a class of investors in Crompton Corp. securities.

*Steinberg v. Ericsson LM Telephone Co.* – MURRAY, FRANK & SAILER is lead counsel representing a class of investors of Ericsson LM Telephone Co. securities.

*Mofidi v. Levy* – MURRAY, FRANK & SAILER is lead counsel representing Northstar Neuroscience shareholders alleging a failure to maximize shareholder value.

## JUDICIAL COMMENDATIONS

*Kosseff v. Gilman & Ciocia, Inc.*, C.A. No. 188-MG (Del. Ch. Oct. 31, 2008), in which the Court stated "I note that plaintiff's attorneys are capable of sophisticated corporate litigation and have a good reputation within the bar."

4

*Park v. The Thompson Corp.*, 2008 WL 4684232 (S.D.N.Y. Oct. 22, 2008), in which the court stated "class counsel have provided extremely high-quality representation."

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D 156, 164, 174 (S.D.N.Y. 2007), in which the Court commend MURRAY, FRANK & SAILER's "skillful and zealous representation over a six-year period," and finding the "high quality of representation provided by Lead Counsel is evident from the extensive record of this case."

*In re Qiao Xing Universal Telephone, Inc.*, 07-cv-7829 (S.D.N.Y.), in which the court stated "I think they performed extraordinarily well in the settlement process and this is an extraordinarily positive settlement for the class and I have to attribute that significantly to the performance of class counsel in the settlement discussion process."

*In re General Motors Corp. Sec. Litig.*, 05-CV-8088 (S.D.N.Y. 2006), in which the Court, before appointing the firm lead counsel, stated: "we know Mr. Frank very well, so they are both esteemed and experienced attorneys in these matters, and I don't think anybody could go wrong with either one of them to be honest with you."

*In re EIS International, Inc. Sec. Litig.*, 97-cv-813 (D. Conn. 2006), in

which the Court stated: "I wanted to compliment counsel . . . We have been together quite a long time in the case and I appreciate all the fine legal work that you've done."

*In re Credit Suisse First Boston Corp. (Agilent Tech. Inc.) Analyst Reports Sec. Litig.*, 431 F.3d 36 (1st Cir. 2008), in which the First Circuit stated the plaintiffs were "ably represented."

*Kinney v. Metro Global Media, Inc.*, 170 F. Supp. 2d 173 (D.R.I. 2001), in which the court expressed an "appreciation for how difficult this case was for all sides, for how hotly contested many of the issues in this case were from the get-go and how reaching a settlement, given all of those considerations, was particularly difficult; so I commend all of you for persevering in the efforts that you made toward reaching a settlement . . . [and] for achieving what I find to be a fair, adequate and reasonable result[.]"

*Miller v. Bonmati*, Del. Ch., C.A. No. 15849, Lamb, V.C. (Del. Ch. March 18, 1999), in which the Court stated "I am quite pleased by the work that was done by the plaintiffs' counsel. They seem to have done a very professional job of dealing with a difficult situation and have obtained, from everything I can ascertain from the record in front of me, quite a beneficial settlement that gives an opportunity for this situation to work itself out."

5

*Adair v. Bristol Tech. Systems, Inc.*, 179 F.R.D. 126 (S.D.N.Y. 1998), in which Judge Robert Sweet stated plaintiffs' counsel were "skilled advocates and negotiators."

*Adair v. Microfield Graphics, Inc.* (D. Or. 1998), in a case that recovered 47% of estimated damages, the Court noted "Plaintiff's counsel have exhibited a high quality of work in prosecuting this action."

*Steffen v. Playmobil USA, Inc.*, Civ No. 95-2896 (E.D.N.Y.), in which the Court "compliment[ed] both counsel in the fine job done negotiating with each other and also the legal work that has been submitted to the Court."

### PRECEDENT SETTING DECISIONS

In *Cambridge Biotech Corp. v. Deloitte and Touche LLP*, 6 Mass. L. Rptr. 367 (Mass. Super. Jan 28, 1997), on a case of first impression, the Superior Court of Massachusetts applied the doctrine of continuous representation for statute of limitations purposes to accountants for the first time in Massachusetts.

In *Kinney v. Metro Global Media, Inc.*, 170 F. Supp. 2d 173 (D.R.I. 2001), MURRAY, FRANK & SAILER successfully argued on a case of first impression in the District of Rhode Island for the pleading standard for claims against an auditor under the Private Securities Litigation Reform Act of 1995.

In *Feiner v. SS&C Tech., Inc.*, 11 F. Supp. 2d 204 (D. Conn. 1998), MURRAY, FRANK & SAILER prevailed on an issue of first impression concerning the liability of a qualified independent underwriter for an initial public offering.

In *Adair v. Bristol Tech. Sys., Inc.*, 179 F.R.D. 126 (S.D.N.Y. 1998), MURRAY, FRANK & SAILER prevailed on an issue of first impression in the Southern District of New York, successfully arguing that standing under the Securities Act of 1933 was not limited to buyers who purchased directly on an initial public offering. The opinion was subsequently cited in decisions and secondary sources over 88 times.

6

### THE PARTNERS

**BRIAN MURRAY**, a partner, was admitted to the bars of Connecticut in 1990, New York and the United States District Courts for the Southern and Eastern Districts of New York in 1991, the Second Circuit in 1997, the First and Fifth Circuits in 2000, and the Ninth Circuit in 2002. He received Bachelor of Arts and Master of Arts degrees from the University of Notre Dame in 1983 and 1986, respectively. He received a Juris Doctor degree, *cum laude*, from St. John's University School of Law in 1990. At St. John's, he was the Articles Editor of the ST. JOHN'S LAW REVIEW. Mr. Murray co-wrote: *Jurisdição Estrangeira Tem Papel Relevante Na De Fiesa De Investidores Brasileiros*, ESPAÇA JURÍDICO BOVESPA (August 2008); *The Proportionate Trading Model: Real Science or Junk Science?*, 52 CLEVELAND ST. L. REV. 391 (2004-05); *The Accident of Efficiency: Foreign Exchanges, American Depository Receipts, and Space Arbitrage*, 51 BUFFALO L. REV. 383 (2003); *You Shouldn't Be Required To Plead More Than You Have To Prove*, 53 BAYLOR L. REV. 783 (2001); *He Lies, You Die: Criminal Trials, Truth, Perjury, and Fairness*, 27 NEW ENGLAND J. ON CIVIL AND CRIMINAL CONFINEMENT 1 (2001); *Subject Matter Jurisdiction Under the Federal Securities Laws: The State of Affairs After Itoba*, 20 MARYLAND J. OF INT'L L. AND TRADE 235 (1996); *Determining Excessive Trading in Option Accounts: A Synthetic Valuation Approach*, 23 U. DAYTON L. REV. 316 (1997); *Loss Causation Pleading Standard*, NEW YORK LAW JOURNAL (Feb. 25, 2005); *The PSLRA 'Automatic Stay' of Discovery*, NEW YORK LAW JOURNAL (March 3, 2003); and *Inherent Risk In Securities Cases In The Second Circuit*, NEW YORK LAW JOURNAL (Aug. 26, 2004). He also authored *Protecting The Rights of International Clients in U.S. Securities Class Action Litigation*, INTERNATIONAL LITIGATION NEWS (Sept. 2007); *Lifting the PSLRA "Automatic Stay" of Discovery*, 80 N. DAK. L. REV. 405 (2004); *Aftermarket Purchaser Standing Under § 11 of the Securities Act of 1933*, 73 ST. JOHN'S L. REV. 633 (1999); *Recent Rulings Allow Section 11 Suits By Aftermarket Securities Purchasers*, NEW YORK LAW JOURNAL (Sept. 24, 1998); and Comment, Weissmann v. Freeman: *The Second Circuit Errs in its Analysis of Derivative Copyrights by Joint Authors*, 63 ST. JOHN'S L. REV. 771 (1989).

Mr. Murray was on the trial team that prosecuted a securities fraud case under Section 10(b) of the Securities Exchange Act of 1934 against Microdyne Corporation in the Eastern District of Virginia and he was also on the trial team that presented a claim under Section 14 of the Securities Exchange Act of 1934 against Artek Systems Corporation and Dynatach Group which settled midway through the trial.

Mr. Murray's major cases include *In re Eagle Bldg. Tech. Sec. Litig.*, 221 F.R.D. 582 (S.D. Fla. 2004), 319 F. Supp. 2d 1318 (S.D. Fla. 2004) (complaint against

auditor sustained due to magnitude and nature of fraud; no allegations of a "tip-off" were necessary); *In re Turkcell Iletisim A.S. Sec. Litig.*, 209 F.R.D. 353 (S.D.N.Y. 2002) (defining standards by which investment advisors have standing to sue); *In re Turkcell Iletisim A.S. Sec. Litig.*, 202 F. Supp. 2d 8 (S.D.N.Y. 2001) (liability found for false statements in prospectus concerning churn rates); *Feiner v. SS&C Tech., Inc.*, 11 F. Supp. 2d 204 (D. Conn. 1998) (qualified independent underwriters held liable for pricing of offering); *Malone v. Microdyne Corp.*, 26 F.3d 471 (4th Cir. 1994) (reversal of directed verdict for defendants); and *Adair v. Bristol Tech. Systems, Inc.*, 179 F.R.D. 126 (S.D.N.Y. 1998) (aftermarket purchasers have standing under section 11 of the Securities Act of 1933). Mr. Murray also prevailed on an issue of first impression in the Superior Court of Massachusetts, in *Cambridge Biotech Corp. v. Deloitte and Touche LLP*, in which the court applied the doctrine of continuous representation for statute of limitations purposes to accountants for the first time in Massachusetts. 6 Mass. L. Rptr. 367 (Mass. Super. Jan. 28, 1997). In addition, in *Adair v. Microfield Graphics, Inc.* (D. Or.), Mr. Murray settled the case for 47% of estimated damages.

Mr. Murray served as a Trustee of the Incorporated Village of Garden City (2000-2002); Commissioner of Police for Garden City (2000-2001); Co-Chairman, Derivative Suits Subcommittee, American Bar Association Class Action and Derivative Suits Committee, (2007-Present); Member, Sports Law Committee, Association of the Bar for the City of New York, 1994-1997; Member, Litigation Committee, Association of the Bar for the City of New York, 2003-2007; Member, New York State Bar Association Committee on Federal Constitution and Legislation, 2005-2008; Member, Federal Bar Council, Second Circuit Committee, 2007-present.

Mr. Murray has been a panelist at CLEs sponsored by the Federal Bar Council and the Institute for Law and Economic Policy, at the German-American Lawyers Association Annual Meeting in Frankfurt, Germany, and is a frequent lecturer before institutional investors in Europe and South America on the topic of class actions.

8

MARVIN L. FRANK, the managing partner, was admitted to the bars of New York, New Jersey, and the United States District Court for the District of New Jersey in 1991, the United States District Courts for the Southern and Eastern Districts of New York in 1992, the Second Circuit in 1998, the Seventh Circuit in 1999, the United States Supreme Court in 2004, the District of Nebraska in 2005, the Eastern District of Michigan in 2006, the Northern District of Texas in 2006, the Western District of New York in 2008, and the Northern District of Illinois in 2008. Mr. Frank graduated with a Bachelor of Arts degree from The City College of New York in 1969, a Master of Business Administration degree from Bernard M. Baruch College in 1974, and received his Juris Doctor degree, *magna cum laude*, from New York Law School in 1991. At New York Law School, he received the Kaplun Foundation Award For Academic Excellence.

Mr. Frank's major cases include *In re General Motors Corp. Sec. Litig.*, 05-CV-8088 (S.D.N.Y.), in which the Court, before appointing the firm lead counsel, stated "we know Mr. Frank very well, so they are both esteemed and experienced attorneys in these matters, and I don't think anybody could go wrong with either one of them to be honest with you"; *Kosseff v. Gilman & Ciocia, Inc.*, C.A. No. 188-MG (Del. Ch. Oct. 31, 2008), in which the Court stated "I note that plaintiff's attorneys are capable of sophisticated corporate litigation and have a good reputation within the bar"; *Sclafani v. Barilla America, Inc.*, 2004-03542 (N.Y. App. Div.), in which Mr. Frank successfully argued before the Supreme Court's Appellate Division that General Business Law § 349(d) did not establish a complete defense to a plaintiff's allegation that Barilla's packaging misled consumers into believing the company's pasta was made in Italy, obtaining a reversal of a trial court dismissal; *Miller v. Bonmati*, Del. Ch., C.A. No. 15849 (Lamb, V.C.) (Del. Ch. Mar. 18, 1999), in which the Court stated, while approving a $9.9 million recovery: "I am quite pleased by the work that was done by the plaintiffs' counsel. They seem to have done a very professional job of dealing with a difficult situation and have obtained, from everything I can ascertain from the record in front of me, quite a beneficial settlement that gives an opportunity for this situation to work itself out."; *In re JWP Inc. Sec. Litig.* (S.D.N.Y.) ($40 million recovery); *In re Marion Merrell Dow Inc. Sec. Litig.* (W.D. Mo.) ($14 million); *In re PictureTel Inc. Sec. Litig.* (D. Mass.) ($14 million); *In re ContiFinancial Sec. Litig.* (S.D.N.Y.) ($5.5 million); *In re EIS International, Inc. Sec. Litig.*, 97-cv-813 (D. Conn. 2006), in which the Court stated: "I wanted to compliment counsel . . . We have been together quite a long time in the case and I appreciate all the fine legal work that you've done."; and *In re Quintiles Transnational Sec. Litig.* (M.D.N.C.) ($3 million).

Mr. Frank is the firm's representative on the Executive Committee of the National Association of Shareholder and Consumer Attorneys (NASCAT). He is also Vice President of the Institute for Law and Economic Policy (ILEP), a public policy

9

research and educational foundation established to preserve, study, and enhance access to the civil justice system by shareholders and consumers and is Vice President of the Emerald Green Property Owners Association in Rock Hill, New York.

Mr. Frank co-wrote *Staying Derivative Actions Pursuant to PSLRA and SLUSA*, NEW YORK LAW JOURNAL (Oct. 21, 2005) and the SECURITIES REFORM ACT LITIGATION REPORTER, Vol. 20, No. 3 (Dec. 2005). Mr. Frank has been a panelist at the American Banker's Association Operations Conference for Securities, Brokerage & Trust in Memphis, Tennessee; a panelist at the Magenta One Conference for Securities and Trust on the Isle of Jersey, United Kingdom; and a panelist at the Global Pensions' Conference on Shareholder Responsibility and Class Action Law in London.