**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE BRISTOL-MYERS SQUIBB CO. SECURITIES LITIGATION | File No. 07-CV-5867 (PAC) |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED
MOTION FOR ORDER APPROVING DISTRIBUTION OF NET SETTLEMENT FUND**

Pursuant to Federal Rule of Civil Procedure 23(e), Lead Plaintiff the Ontario Teachers' Pension Plan Board ("Lead Plaintiff"), through its undersigned counsel, hereby moves this Court to enter the accompanying [Proposed] Order Approving Distribution of Net Settlement Fund ("Class Distribution Order") in the above-referenced action, as set forth in the accompanying declaration of the Court-approved Claims Administrator, the Garden City Group, Inc. ("Claims Administrator," "Garden City Group" or "GCG"), the Declaration of Stephen J. Cirami in Support of Lead Plaintiff's Motion for Approval of Distribution Plan (the "Cirami Declaration").

If approved, the Class Distribution Order will, *inter alia*:

(i) Approve the administrative determinations concerning the acceptance and rejection of the Claims submitted, including the determination to accept otherwise valid Claims filed after the December 30, 2009 deadline ("Late Claims") but before September 30, 2010, and the determination to reject wholly ineligible or otherwise deficient claims, as recommended by Garden City Group as stated in the Cirami Declaration;

(ii) Direct an initial distribution of 90% of the Net Settlement Fund to the Authorized Claimants pursuant to the Court-approved Plan of Allocation;

(iii) Adopt the recommended plan for the remaining funds following the initial distribution; and

(iv) Authorize payment to the Claims Administrator for claims administration services.

Lead Plaintiff has confirmed that Defendants do not oppose this Motion, and Lead Plaintiff is aware of no other opposition to this Motion.

## I. BACKGROUND

Lead Plaintiff achieved a Settlement of this consolidated action for $125 million all in cash for the benefit of the Class. Pursuant to the Stipulation of Settlement dated July 21, 2009 (the "Stipulation"), on August 31, 2009, Bristol-Myers caused the settlement amount to be paid into an escrow account at Valley National Bank (the "Settlement Fund") that has been earning interest for the benefit of the Class.[1] The Class, as certified by this Court, consists of all persons and entities who purchased or acquired Bristol-Myers common stock during the period from after the close of the market on March 21, 2006, through August 8, 2006, inclusive, and suffered damages as a result (the "Class").[2]

By Order entered August 18, 2009, the Court preliminarily approved the Settlement (the "Preliminary Approval Order," ECF No. 68). Pursuant to the Preliminary Approval Order, Lead Plaintiff was authorized to retain Garden City Group as the Claims Administrator to, among other things, send the Court-approved Notice of the Settlement to potential Class Members, process the Claim Forms submitted by Claimants, and determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund pursuant to the Court-approved Plan of Allocation.

---

[1] The Stipulation was filed with the Court on August 18, 2009, as Exhibit 1 to Lead Plaintiff's Notice of Motion and Unopposed Motion for Preliminary Approval of Settlement, Certification of the Class and Approval of Notice to the Class (ECF No. 69). All capitalized terms not otherwise defined herein shall have the meaning assigned to them in the Stipulation and its exhibits.

[2] Excluded from the Class are Defendants and certain other individuals. Also excluded from the Class are those persons and entities who validly requested exclusion from the Class pursuant to the Notice of Pendency of Class Action and Proposed Settlement, Settlement Fairness Hearing, and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses ("Notice"), as listed in Exhibit 1 to the Court's December 8, 2009 Final Judgment and Order of Dismissal with Prejudice ("Judgment," ECF No. 80).

On December 8, 2009, following a hearing and notice to the Class, the Court granted final approval of the Settlement as fair, reasonable and adequate, and entered the Judgment. The Judgment also approved of the Plan of Allocation as explained in the Court-approved Notice sent to potential Class Members, as providing a fair and equitable basis upon which to allocate the proceeds of the Settlement among the Class Members. The Court retained jurisdiction over matters relating to the Settlement, including, but not limited to, distribution of the Settlement Fund.

Following entry of the Judgment, the Effective Date of the Settlement has occurred, and the initial claims administration has been completed. As detailed in the Cirami Declaration, beginning on August 20, 2009, Garden City Group distributed over 245,000 copies of the Court-approved Notice to potential Class Members who were identified by Bristol-Myers and/or banks, brokerage firms, and other third-party nominees. *See* Cirami Decl. ¶3. In response, Garden City Group received and processed a total of 60,719 Claims. *Id.* ¶4. As described below and in the Cirami Declaration, following Garden City Group's comprehensive claims administration, deficiency remedial procedures, and quality assurance procedures, Garden City Group recommends, and Lead Plaintiff agrees, that 39,363 of the Claims should be accepted in whole or in part as valid, and that 21,356 of the Claims should be wholly rejected as either ineligible, wholly deficient or as having no Recognized Loss Amount when calculated in accordance with the Court-approved Plan of Allocation. *Id.* ¶34.

As of October 4, 2010, the value of the Settlement Fund (after deduction for Court-awarded attorneys' fees and expenses and escrow fees), is $103,537,988.12.[3] Pursuant to paragraph 25 of the Stipulation, Lead Counsel now requests that the Court authorize the

---

[3] Disbursements from the Settlement Fund as of October 4, 2010, include the following: (i) the Court-approved attorneys' fees and expenses and interest thereon ($21,646,130.45); (ii) the Court-approved reimbursement of expenses to the Lead Plaintiff ($19,680.47); and (iii) escrow fees ($240.00). As of October 4, 2010, the Settlement Fund has accrued additional value in interest in the amount of $204,039.48.

distribution of the Net Settlement Fund (after payment of the Claims Administrator expenses as discussed below, and payment of, or reserve for, taxes, tax preparation fees and escrow fees), to Authorized Claimants.[4]

## II. CLAIMS ADMINISTRATION

Pursuant to the Stipulation, the Court's Preliminary Approval Order, and the Notice, all Class Members wishing to be eligible to participate in the Settlement Fund were required to submit Claim Forms, postmarked on or before December 30, 2009.

As detailed in the accompanying Cirami Declaration, Garden City Group utilized a complex Deficiency Process which involved letters and emails to Claimants, and inbound and outbound calls to Claimants, and which was intended to assist claimants in properly completing their otherwise deficient Claim submissions.  *See* Cirami Decl. ¶19.

For example, if Garden City Group determined that a Proof of Claim was initially wholly or partially deficient (*e.g.,* wholly deficient Claims include those that contained no documentation, where the Claimant failed to sign the Claim Form, or where the Proof of Claim had no Recognized Loss Amount under the Plan of Allocation; partially deficient Claims include those where transactional information or documentation was missing for only part of the Claim), Garden City Group mailed a letter to the Claimant describing the defects and what, if anything, was necessary to cure the defects, and informing the Claimants that they must respond within 20 days of the letter or the Claim would be recommended for whole or partial rejection, as

---

[4]  Paragraph 25 of the Stipulation provides as follows:  "Lead Counsel will apply to the Court, on notice to all Defendants, for a Class Distribution Order:  (i) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (ii) approving payment of any additional unpaid or anticipated administration fees and expenses associated with the administration of the Settlement from the Escrow Account; (iii) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account; and (iv) other relief as appropriate."

appropriate.[5]  If a Claimant's response corrected the defect, Garden City Group updated the status of the Claim to be recommended for acceptance.  *Id.* ¶¶21-24.

After the responses to the deficiency letters were received and evaluated, Garden City Group called Claimants with still-deficient Claims amounting to potential Recognized Loss Amounts in excess of $5,000 to provide them with a final opportunity to cure the deficiencies.  *Id.* ¶¶24-27.

As explained in the Cirami Declaration, Garden City Group's Deficiency Process was extremely successful, as a very large percentage of Claimants, excluding those who submitted Proofs of Claim with incurable deficiencies (*e.g.,* claims that lack any purchases during the Class Period or claims that have no Recognized Loss Amount when calculated according to the Plan of Allocation), are now being recommended for acceptance, and only a relatively small percentage of Claimants did not cure their deficiencies in their Claims and, therefore, are being recommended for rejection.  Moreover, no Claimants continue to dispute Garden City Group's administrative determination to reject their Claims, and there are no outstanding requests for judicial review.  *See* Cirami Decl. ¶¶19-31.

## III.    LATE BUT OTHERWISE ELIGIBLE CLAIMS

Through September 30, 2010, Garden City Group received a total of 209 otherwise eligible Claims that were postmarked after the December 30, 2009 deadline for submitting claims, as ordered in this Court's Preliminary Approval Order ("Late Claims").  *See* Cirami Decl. ¶28.  Due to the amount of time needed to process all of the Claims received, no delay has resulted from processing the Late Claims.  In addition, the total Recognized Loss Amounts for the otherwise eligible Late Claims is only approximately two percent (2%) of the total Recognized Loss Amounts of all Authorized Claimants.  Garden City Group thus recommends, and Lead Plaintiff agrees, that Late Claims that are otherwise eligible should be accepted.  *See*

---

[5] *Id.* ¶¶20, 22.  Examples of such deficiency letters are attached as Exhibit ("Ex.") A to the Cirami Declaration.

Cirami Decl. ¶28. When the equities are balanced, it would be unfair to prevent an otherwise eligible Claim from participating in the Net Settlement Fund solely because it was submitted after the cut-off date, when it was submitted while Claims were still being processed. In addition, both the Stipulation of Settlement and the Notice anticipate that the deadline for submitting Claim Forms may be extended by the Court.[6]

To facilitate the efficient *pro rata* distribution of the Net Settlement Fund, however, there must be a final cut-off after which no other Claims may be accepted. The processing of any Proof of Claim received after preparation of this motion would necessarily require a delay in the distribution. Accordingly, it is respectfully requested that the Class Distribution Order provide that no Claim submitted after September 30, 2010, be accepted for any reason whatsoever. *See* Cirami Decl. ¶29.

## IV.    DISTRIBUTION OF NET SETTLEMENT FUND

Lead Plaintiff submits that the administration of the Settlement and the proposed distribution of the Net Settlement Fund comply with the terms of the Stipulation and the Plan of Allocation approved by this Court. Accordingly, Lead Plaintiff requests that the Court approve the administrative recommendations of Garden City Group to accept in whole or in part, as appropriate, the 39,363 Claims that Garden City Group determined are acceptable in whole or in part (including the Late Claims) as set forth in Exhibits B-1 and B-2 to the Cirami Declaration, and to reject the 21,356 Claims that Garden City Group determined were wholly ineligible as set forth in Exhibit B-3 to the Cirami Decl. *See* Cirami Decl. ¶34.

---

[6] Paragraph 23b of the Stipulation provides in part as follows: "All Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice, unless such deadline is extended by Order of the Court. Any Class Member who fails to submit a Claim Form by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless, by Order of the Court, late-filed Claim Forms are accepted) . . . ." The Notice provides in part as follows: "Unless the Court otherwise orders, any Class Member who fails to submit a Claim Form postmarked no later than December 30, 2009 shall be forever barred from receiving payments . . . ."

The sum total of Recognized Loss Amounts for all Proofs of Claim recommended for acceptance, as calculated in accordance with the Court-approved Plan of Allocation is $258,232,012.17, representing approximately 175 million damaged shares.[7] According to the Plan of Allocation, each Authorized Claimant shall be allocated a *pro rata* share of the Net Settlement Fund based on his, her or its Recognized Loss Amount as compared to the total Recognized Loss Amounts of all Authorized Claimants.[8] Upon approval by the Court, Garden City Group will receive the Net Settlement Fund into a distribution account, calculate each Authorized Claimant's *pro rata* share of 90% of the Net Settlement Fund pursuant to the Plan of Allocation, and will prepare and mail checks (or wire transfers where applicable) to Authorized Claimants for their *pro rata* share.[9]

---

[7] *See* Cirami Decl. ¶36. The $125 million settlement thus represents an average gross recovery per damaged share of approximately $0.71. As anticipated, this recovery is higher than the estimated recovery per damaged share of $0.42 as stated in the Notice, which estimate assumed that 100% of damaged shares submitted valid claim forms.

[8] As explained in the Court-approved Plan of Allocation, however, if an Authorized Claimant's prorated payment calculates to less than $10.00, it will not be included in the calculation and the Claimant will not receive any distribution. Courts routinely approve settlements that require a class member's payment to exceed a minimum threshold in order to recover from a settlement fund. *See, e.g., In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1268 (D. Kan. 2006) ($25 minimum allowed); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 463 (S.D.N.Y. 2004) ($10 minimum allowed); *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 783 (7th Cir. 2004) (stating that a settlement may give nothing to people with claims "worth too little to justify a distribution"). The Plan of Allocation is detailed in paragraphs 26 through 51 of the Notice, attached as Ex. A to the Affidavit of Stephen J. Cirami Regarding (A) Mailing of the Notice and Proof of Claim; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion ("Cirami Affidavit"), which was previously filed as Ex. E to the Declaration of Salvatore J. Graziano in Support of Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation of Settlement Proceeds and Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses dated November 20, 2009 ("Graziano Decl.," ECF No. 76).

[9] Garden City Group recommends, and Lead Counsel agrees, that 10% of the Net Settlement Fund should be reserved in the initial distribution in order to address, if necessary, any challenge by an Authorized Claimant as to his, her or its amount of distribution. *See* Cirami Decl. ¶38b.

Garden City Group and Lead Counsel propose a Distribution Plan whereby, following the initial distribution, Garden City Group will conduct a second distribution of the remaining Net Settlement Fund (including the 10% reserve and the funds for all void stale-dated drafts from the initial distribution), after deducting Garden City Group's additional reasonable costs and expenses incurred in connection with the second distribution and paying or reserving for any additional taxes and tax preparation fees.[10]  Garden City Group recommends, and Lead Counsel agrees, that the second distribution should be made to Authorized Claimants who have cashed their initial distribution checks and who would receive at least $25 from such re-distribution.  *See* Cirami Decl. ¶38e.  Requiring a $25 minimum in the second distribution will help ensure that the remaining settlement fund will not be largely consumed by administrative expenses.

In order to allow a final distribution of any balance that may remain in the Settlement Fund after the second distribution, whether by reason of returned funds, tax refunds, interest, uncashed checks, or otherwise, Garden City Group recommends, and Lead Counsel agrees, that:

    i.    If cost effective, not less than six months after the second distribution is conducted, a further distribution of the remaining Net Settlement Fund, pursuant to which all funds from undeliverable, uncashed, or returned checks, after payment to any Authorized Claimants who validly contest the amount they deserve, and after payment of any additional reasonable unpaid costs or fees

---

[10]  In order to bring to GCG's, Lead Counsel's and, if necessary, the Court's attention a challenge by an Authorized Claimant that his, her or its Recognized Claim amount of Initial Distribution amount was not properly determined under the terms of the Court-approved Plan of Allocation, each Authorized Claimant who receives an Initial Distribution from the Net Settlement Fund shall simultaneously receive notification advising that, should an Authorized Claimant disagree with the calculation of his, her or its Recognized Claim amount or Initial Distribution amount, such disagreement must be made in writing, detailing the disagreement, and must be sent to GCG, postmarked no later than twenty (20) days after the Initial Distribution draft is mailed.  The notification will advise each Authorized Claimant that should he, she or it fail to timely advise GCG of his, her or its objection in the manner provided, he, she or it shall be deemed to have forever waived all objections to the amount of their Initial Distribution and any subsequent distribution of the Net Settlement Fund pursuant to paragraph 26 of the Stipulation.

        incurred or to be incurred in connection with administering the Net Settlement Fund (including the estimated reasonable costs of conducting such additional distributions), shall be distributed to Authorized Claimants who cashed their second distribution checks and who would receive at least $25 in such further distribution, with additional distributions thereafter in six-month intervals until Garden City Group and Lead Counsel determine that further redistribution is not cost-effective; and

  ii.    At such time as Garden City Group and Lead Counsel determine that further redistribution is not cost-effective, the balance of the remaining Net Settlement Fund, after payment of any additional reasonable unpaid costs or fees incurred in connection with administering the Net Settlement Fund, shall be donated to non-sectarian, not-for-profit, 501(c)(3) organization(s) designated by Lead Counsel, without further Order of the Court.[11]

*See* Cirami Decl. ¶38.

## V.    RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is respectfully requested that the Court bar any further Claims against the Net Settlement Fund beyond the amount allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. *See* Cirami Decl. ¶38g.

---

[11] Pursuant to paragraph 12 of the Stipulation, there will be no reversion of any of the Settlement Fund to Defendants.

## VI.    PAYMENT TO CLAIMS ADMINISTRATOR

The Stipulation and Preliminary Approval Order authorize payment from the Settlement Fund of the fees and costs incurred in connection with the notice to the Class and the claims administration.  Such reasonable and customary fees and costs include Garden City Group performing claims administration services in connection with the Settlement Fund distribution, as well as an estimate of additional fees and expenses required to complete the administration and initial distribution of the Net Settlement Fund, including, but not limited to, calculating distribution amounts, printing and mailing checks, monitoring uncashed and undeliverable checks, making telephone calls to Authorized Claimants with uncashed checks and searching for current addresses if undeliverable.

As set forth in the Cirami Declaration (¶37), Garden City Group's invoices, attached as Exhibit C to the Cirami Declaration, reflect the fees and expenses incurred and estimated to be incurred through the end of the initial distribution, in the total amount of $1,260,914.60.[12]  Thus far, Garden City Group has received no payment on account from the Settlement Fund.  Garden City Group therefore requests approval of the payment of the amount for Garden City Group's fees and expenses through the initial distribution.  As set forth in the Cirami Declaration and pursuant to paragraph 14 of the Stipulation, Garden City Group further requests that the Court authorize payment from the Settlement Fund for Garden City Group's additional reasonable fees and expenses in connection with further distribution(s) without further Order of the Court.

---

[12] As explained in the previously-filed Cirami Affidavit ¶¶13-15 (Ex. E to Graziano Decl., ECF No. 76), and the Graziano Declaration ¶101, Lead Plaintiff, with the Court's approval, retained Garden City Group as the Claims Administrator.  Garden City Group was selected through a competitive bidding process and additional negotiations, in which Garden City Group agreed to a processing rate per claim of $6.25, plus certain other fees and reimbursement of out-of-pocket expenses.  As explained in the Cirami Affidavit, the $6.25 per claim rate is very competitive for an administration of this size and complexity.  The selection of Garden City Group was approved by Lead Plaintiff Ontario Teachers' Pension Plan Board.

## VII.     CONCLUSION

As explained above and in the Cirami Declaration, the work performed by Garden City Group was conducted fairly and in accordance with the terms and provisions of the Stipulation. Accordingly, in order to, *inter alia*, allow prompt distribution of the Net Settlement Fund to the eligible Authorized Claimants, Lead Plaintiff respectfully requests that the Court enter the proposed Class Distribution Order submitted herewith.

Dated: October 13, 2010                                    Respectfully submitted,

          **BERNSTEIN LITOWITZ BERGER**
            **& GROSSMANN LLP**

          By:     */s/ Salvatore Graziano*
              Max W. Berger
              max@blbglaw.com
              Salvatore J. Graziano
              sgraziano@blbglaw.com
              1285 Avenue of the Americas
              New York, New York 10019
              Telephone:  (212) 554-1400
              Facsimile:   (212) 554-1444

*Attorneys for Lead Plaintiff Ontario Teachers' Pension Plan Board and Lead Counsel for the Class*

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (FF-9102)
Joel B. Strauss (JS-6585)
850 Third Avenue
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

       -and-

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
Richard A. Lockridge
Karen H. Riebel
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 399-0981

*Attorneys for Plaintiff Minneapolis Firefighters' Relief Association*